# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

Joshua Wright,

        *Plaintiff,*

    v.

The Rector and Visitors of
George Mason University *et al.,*

        *Defendants.*

Case No. 1:24-cv-00002 (PTG/IDD)

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS
## MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES.......................................................................................... ii

BACKGROUND ............................................................................................................ 1

ARGUMENT ................................................................................................................. 5

   I.  Legal Standard .................................................................................................. 5

   II.  The Court Should Grant Mr. Wright's Motion for a Preliminary Injunction. .... 6

       a.  Mr. Wright's First Amendment claim is likely to succeed on the merits. .... 7
       b.  First Amendment harms are always irreparable. ....................................... 12
       c.  The balance of equities weighs sharply in Mr. Wright's favor because the
           government simply has no interest in injecting itself into a dispute between
           two private parties. ....................................................................................... 14
       d.  An injunction is in the public interest because the people are served by the
           enforcement of constitutional rights. .......................................................... 15

   III.  The Court Should Set a Nominal Bond. ......................................................... 16

CONCLUSION ........................................................................................................... 16

CERTIFICATE OF SERVICE .................................................................................... 18

# TABLE OF AUTHORITIES

### Cases

*BE & K Const. Co. v. N.L.R.B.,*

   536 U.S. 516, 524 (2002) .................................................................... 8

*Booker v. S.C. Dep't of Corr.,*

   855 F.3d 533, 541 (4th Cir. 2017) ...................................................... 7

*Borkowski v. Baltimore Cnty., Maryland,*

   583 F. Supp. 3d 687 (D. Md. 2021) ................................................. 8, 9

*Borough of Duryea, Pa. v. Guarnieri,*

   564 U.S. 379, 387 (2011) .......................................................... 6, 7, 12

*Bos. Correll v. Herring,*

   212 F. Supp. 3d 584, 615 (E.D. Va. 2016) ........................................ 12

*California Motor Transp. Co. v. Trucking Unlimited,*

   404 U.S. 508, 510 (1972) .................................................................... 7

*Constantine v. Rectors & Visitors of George Mason Univ.,*

   411 F.3d 474, 499 (4th Cir. 2005) ................................................... 7, 8

*Cooksey v. Futrell,*

   721 F.3d 226 (4th Cir. 2013) .............................................................. 9

*Di Biase v. SPX Corp.,*

   872 F.3d 224, 230 (4th Cir. 2017) ...................................................... 5

*Doe v. Rector & Visitors of Univ. of Virginia*,

    No. 3:19CV00038, 2019 WL 2718496, at *7 (W.D. Va. June 28, 2019)................. 13

*Doe v. Univ. of N. Carolina Sys.*,

    No. 1:23-CV-00041-MR, 2023 WL 8246155, at *3–7 (W.D.N.C. Nov. 28, 2023) 5, 14

*Durham v. Rapp*,

    64 F. Supp. 3d 740, 751 (D. Md. 2014) ...................................................................... 8

*Elrod v. Burns*,

    427 U.S. 347, 373 (1976) ......................................................................................... 12

*G.G. ex rel. Grimm v. Gloucester Cnty. Sch. Bd.*,

    822 F.3d 709, 725 (4th Cir. 2016) *vacated and remanded on other grounds*, 580 U.S.

    1168 (2017) ................................................................................................................ 1

*Giovani Carandola, Ltd. v. Bason*,

    303 F.3d 507, 521 (4th Cir. 2002) ..................................................................... 13, 14

*Hebb v. City of Asheville, N. Carolina*,

    655 F. Supp. 3d 388, 394 (W.D.N.C. 2023) .............................................................. 1

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,

    174 F.3d 411, 421 n.3 (4th Cir. 1999) .................................................................... 15

*Joelner v. Vill. of Washington Park, Illinois*,

    378 F.3d 613, 620 (7th Cir. 2004) .......................................................................... 14

*Johnson v. Bergland*,

    586 F.2d 993, 995 (4th Cir.1978) ........................................................................... 12

*Kirby v. City of Elizabeth City*,

    388 F.3d 440, 450 n.8 (4th Cir. 2004) ....................................................... 8

*Legend Night Club v. Miller*,

    637 F.3d 291, 302 (4th Cir.2011) ...................................................... 12, 14

*Martin v. Duffy*,

    858 F.3d 239, 249 (4th Cir. 2017) ............................................................ 7

*Martin v. Duffy*,

    977 F.3d 294, 303–04 (4th Cir. 2020) ..................................................... 10

*Metro. Regul. Info. Sys., Inc. v. Am. Home Realty Network, Inc.*,

    722 F.3d 591, 595 (4th Cir. 2013) ............................................................ 5

*Pashby v. Delia*,

    709 F.3d 307, 320 (4th Cir. 2013) ............................................................ 6

*Raub v. Campbell*,

    785 F.3d 876, 885 (4th Cir. 2015) ......................................................... 10

*Sprouse v. Babcock*,

    870 F.2d 450, 452 (8th Cir. 1989) ............................................................ 7

*Stinnie v. Holcomb*,

    77 F.4th 200, 208 (4th Cir. 2023) ....................................................... 5, 6

*Trump v. Int'l Refugee Assistance Project*,

    582 U.S. 571, 579–80 (2017) .................................................................. 6

*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*,

    425 U.S. 748, 749 n.1 (1976) .................................................................. 7

*Winter v. Nat. Res. Def. Council, Inc.*,

    555 U.S. 7, 20 (2008) ............................................................................ 5, 12

**Rules**

Fed. R. Civ. P. 65(c) ................................................................................ 14

**Regulations**

34 C.F.R. § 106.45(b)(3)(i) ....................................................................... 11

**U.S. Constitution**

U.S. CONST. amend. I ................................................................................ 7

The government should not be allowed to punish a private citizen for filing a lawsuit. Yet, that is exactly what George Mason University is attempting in its current investigation against Mr. Wright wherein the University charged him with "retaliation" for filing a defamation lawsuit against an attorney who is neither currently enrolled nor employed by the University. Despite Mr. Wright's right to petition his government for a redress of grievances, the University is subjecting him to an official investigation in clear violation of his First Amendment rights, thereby causing an unconstitutional chilling effect. The Court should enjoin the University from continuing to retaliate against Mr. Wright for the exercise of his First Amendment right to petition.

## BACKGROUND[1]

Mr. Wright is a former law professor at George Mason University (the "University" or "government"), having resigned effective August 8, 2023. ECF No. 1-2, at ¶ 104. Towards the end of his employment at the University, Mr. Wright was

---

[1] Mr. Wright attaches to this motion an affidavit verifying the allegations in his complaint, thereby transforming his complaint into a verified complaint for purposes of a preliminary injunction. *See* Exhibit A; *G.G. ex rel. Grimm v. Gloucester Cnty. Sch. Bd.*, 822 F.3d 709, 725 (4th Cir. 2016) (a court should consider the well-pleaded allegations of a complaint when considering a motion for preliminary injunction), *vacated and remanded on other grounds*, 580 U.S. 1168 (2017); *Hebb v. City of Asheville, N. Carolina*, 655 F. Supp. 3d 388, 394 (W.D.N.C. 2023) ("At a preliminary injunction stage, allegations set forth in a verified complaint are treated the same as affidavits").

embroiled in what has become a very public dispute. *Id.*, at ¶¶ 51–59, 87. The dispute began when one of his former students, the complainant, filed a false Title IX complaint against him in December 2021.[2] *Id.*, at ¶¶ 61–65. The dispute eventually metastasized into the complainant defaming Mr. Wright to his private clients. *Id.*, at ¶ 89. Then, it became very public defamation in the news media. Exhibit B.

When Mr. Wright was first informed that the complainant and her co-conspirator were contacting his clients, he filed a Title IX complaint against the complainant for retaliation and harassment, believing that she was still an adjunct professor or had some professional connection with the University. ECF No. 1-2, at ¶¶ 89–92; Exhibit C. The University dismissed his complaint without investigation, citing its lack of "jurisdiction" over Ms. Dorsey because she was not enrolled or employed at the University. *Id.*; Exhibit D.

After she and her co-conspirator defamed Mr. Wright in the news media and he lost millions of dollars in revenue, he was left with no choice but to sue them for defamation. Exhibit E (referred to herein as the "Defamation Case"). At the time of filing the Defamation Case, he had resigned from the University and neither he nor the complainant had any connection to the University. Exhibit E; Exhibit F. The University was not sued, nor was it a party in the Defamation Case. *Id.* Remarkably, however, the University decided to charge Mr. Wright with "retaliation" under its

_____

[2] While not necessarily relevant to the instant motion, it is worth noting that the Title IX process initiated by the complainant continues to this day.

Title IX policy. ECF No. 1-2, at ¶ 133; Exhibit A[3]; Exhibit G (Defendant Bluestein writing, among other things, "As you are aware, the Notice of Investigation in your Title IX matter was recently amended to add a new claim by the Complainant of Retaliation, specifically that a lawsuit filed by you in Fairfax Circuit Court against her constitutes retaliation"). In stark contrast to how the University treated the complainant, it did not make the same decision that it lacked "jurisdiction" over Mr. Wright because he was no longer employed.

The University exercises discretion over what to charge in its Title IX cases. Its Policy explains that "[i]f the Title IX Coordinator determines that the report relates to possible Prohibited Conduct under Policy1202…" a complainant will have the option to file a Formal Complaint. Exhibit H, at 6. Further, even after a Formal Complaint is filed, the Title IX Coordinator shall "make a determination whether or not the Formal Complaint details Prohibited Conduct." *Id.*, at 12. Therefore, it is not as if the University merely passes along charges by the Complainant – it decides what

---

[3] Rather than attaching the University's Second Amended Notice of Investigation to this motion, and moving to seal that document, Mr. Wright refers to the allegation in his Complaint, verified by his affidavit attached as Exhibit A. Acknowledging that motions to seal are heavily disfavored in this Court per L.R. 5, but also acknowledging that the University's Second Amended Notice of Investigation implicates significant privacy concerns for both Mr. Wright and nonparties, Mr. Wright offers to the Court that he will produce this document for *in camera* review at the request of the Court. The document directly states that the University retaliation charge was prompted by the "fil[ing] of a lawsuit against [complainant] alleging defamation, including other claims, in Fairfax County, Virginia[,]" which is in substance the same statement as Mr. Wright's allegation in paragraph ¶ 133 of the Complaint that "[t]he University charged Mr. Wright with retaliation because he filed his lawsuit."

charges may be brought. Accordingly, here, it made the decision to charge Mr. Wright and made the decision not to charge the complainant.

Also pursuant to its Policy, the University requires dismissal where "The alleged Prohibited Conduct did not occur in locations, events, or circumstances over which the University exercised substantial control over both the Respondent and the context in which the Prohibited Conduct occurred . . ." Exhibit H, at 14. Accordingly, in deciding to move forward with its retaliation charge against Mr. Wright, the University must also have made the decision that it had "substantial control" over both Mr. Wright *and* his filing of the lawsuit in Fairfax County Circuit Court.

In response to the retaliation charge, Mr. Wright objected through counsel citing his First Amendment rights, among other issues. His objections were overruled. The University then informed him that a University hearing officer would be assessing (1) whether the First Amendment protected the filing of the Defamation Case (this would necessarily be before a final decision on the merits in Fairfax County Circuit court by an actual judge); and (2) whether his lawsuit constituted retaliation under the University's policies. Exhibit G. In other words, a University hearing officer (who is not required to have any legal training) would be making constitutional decisions for Mr. Wright relating to whether he was entitled to petition the government for redress. After setting forth these remarkable rules, made especially for Mr. Wright (indeed, these are not written in any University policy), the University began its investigation. Exhibit I.

The government has clearly demonstrated that it will pursue a retaliation charge in (ironic) retaliation for Mr. Wright filing his lawsuit and is currently planning to investigation Mr. Wright (Exhibit I). After exhausting all non-litigation attempts to correct the government's error, Mr. Wright filed this case and now seeks a preliminary injunction to enjoin the unconstitutional retaliation charge.

## ARGUMENT

### I.    Legal Standard

"A plaintiff seeking a preliminary injunction must establish that he [1] is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (numeration added). The "likelihood of success" showing does not require a plaintiff to show that his success is certain but requires him to "make a clear showing that he is likely to succeed at trial." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017). Indeed, prevailing at the preliminary injunction stage does not mean the plaintiff will ultimately prevail—it is "more 'closely analogous' to surviving a motion to dismiss than securing a final judgment on the merits." *Stinnie v. Holcomb*, 77 F.4th 200, 208 (4th Cir. 2023).

Further, so long as the plaintiff shows a likelihood of success on one of his claims, this burden is satisfied. *See, e.g., Doe v. Univ. of N. Carolina Sys.*, No. 1:23-CV-00041-MR, 2023 WL 8246155, at *3–7 (W.D.N.C. Nov. 28, 2023) (granting motion

for preliminary injunction where plaintiff demonstrated likelihood of success of his "primary" federal claim). Ultimately, the decision as to whether to grant preliminary injunctive relief lies within the Court's discretion. *Metro. Regul. Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591, 595 (4th Cir. 2013).

If the Court finds that a preliminary injunction is warranted, it retains the authority to craft an injunction to meet the equities and exigencies of the particular case. *See, e.g., Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 579–80 (2017). Generally, the purpose of a preliminary injunction "is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit, thus preserving the court's ability to render a meaningful judgment on the merits." *Stinnie*, 77 F.4th at 212 (internal quotations and citations omitted). Therefore, for an injunction to be effective, it must at a minimum preserve the status quo—the "last uncontested status between the parties which preceded the controversy." *Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013).

## II.  The Court Should Grant Mr. Wright's Motion for a Preliminary Injunction.

The Commonwealth of Virginia, through regulatory sanctions, seeks to punish a private citizen for filing a lawsuit. This is textbook First Amendment retaliation. *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011). Mr. Wright easily meets the four requirements for a preliminary injunction. Absent showing an extraordinary governmental interest, which the University does not have, the

University cannot hope to avoid the clear conclusion that an injunction must issue from this Court, preserving the status quo.

### a. Mr. Wright's First Amendment claim is likely to succeed on the merits.

Mr. Wright seeks to enjoin the state government from continuing to retaliate against his exercise of his right to petition. The First Amendment to the United States Constitution protects, among other things, the right of the people to "petition the government for a redress of grievances." U.S. CONST. amend. I. This is incorporated against the States through the Fourteenth Amendment. *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 749 n.1 (1976). Put simply, the Petition Clause protects the right of the people to file lawsuits or to file complaints in other fora established by the government. *Guarnieri*, 564 U.S. at 387. It follows that when the government takes adverse action against a citizen because he filed a lawsuit, the government violates the First Amendment. *Id.* In the context of state government retaliation, that violation is redressable through 42 U.S.C. § 1983. *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017).

To succeed on a First Amendment retaliation claim, a plaintiff must show "(1) [he] engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendants' conduct." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005). Mr. Wright easily satisfies each of these elements.

First, it is well settled that "the right of access to the courts is indeed but one aspect of the right of petition." *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972); *Guarnieri*, 564 U.S. at 387; *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017) (noting that a prison's retaliation against a prisoner's lawsuit violates the First Amendment, and holding that it is "clearly established" that a prison may not retaliate against a prisoner for filing an informal grievance), *citing Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *Durham v. Rapp*, 64 F. Supp. 3d 740, 751 (D. Md. 2014) (the filing of a lawsuit is protected activity); *see also BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 524 (2002) ("We have recognized this right to petition as one of the most precious of the liberties safeguarded by the Bill of Rights"). Therefore, Mr. Wright engaged in protected activity when he filed his lawsuit in the Defamation Case.

Second, the University took adverse action against Mr. Wright when it formally charged him with retaliation for filing the lawsuit and began its investigation into the Defamation Case. In the First Amendment context, governmental retaliatory action is sufficiently "adverse" when it tends to "chill" the exercise of First Amendment rights; that is, "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Constantine*, 411 F.3d at 500. This is not a subjective standard, and the plaintiff need not show that he was, in fact, chilled from exercising his rights. *Id.* Indeed, "[e]ven minor retaliation can have a chilling effect on future expression." *Kirby v. City of Elizabeth City*, 388 F.3d 440,

450 n.8 (4th Cir. 2004). A District of Maryland case is instructive on this point. *Borkowski v. Baltimore Cnty., Maryland*, 583 F. Supp. 3d 687 (D. Md. 2021).

In *Borkowski,* a University of Maryland student petitioned the state government to prosecute another student who she alleged had raped her. *Id* at 691–93. In response, the State Attorney's office sent police officers to the plaintiff's home, and repeatedly called her to tell her (implicitly, because the parties in the case agreed the officers did not express his message explicitly) to "stop filing" the petition or face "civil or criminal" charges. *Borkowski*, 583 F. Supp. 3d at 698–99. The court held that the "gratuitous show of [ ] law enforcement interest" was "implicitly menacing" even without any explicit threat of enforcement and could be sufficiently adverse for First Amendment purposes. *Id.* This is because a reasonable person in plaintiff's position would have been deterred from filing a petition by the implicit threats of the officers. *Id.*

A Fourth Circuit case further illustrates that threats of government enforcement can cause unconstitutional chilling. *Cooksey v. Futrell*, 721 F.3d 226 (4th Cir. 2013). In *Cooksey*, the Fourth Circuit held that the plaintiff had suffered an unconstitutional chilling effect where he had received a phone call from a state agency threatening to seek an injunction against him if he did not alter the content of his website. *Id.* at 236. Again, "a person of ordinary firmness would surely feel a chilling effect," the Fourth Circuit reasoned, from the government's threats of initiating an enforcement action. *Id.* at 237.

While mere threats of enforcement are sufficient to cause unconstitutional chilling, the facts of this case go well beyond threats. Mr. Wright was not just threatened with an unspecified governmental enforcement—the government actually initiated that enforcement by charging him with "retaliation" and pursuing an investigation. ECF No. 1-2, at ¶ 133; Exhibit I. Certainly, if threats of enforcement are sufficient, so is the enforcement itself. Under these facts, "a person of ordinary firmness" would be deterred by the government's initiation of enforcement. *Cooksey*, 721 F.3d at 237. Accordingly, there is a chilling effect and this element is satisfied.

Finally, Mr. Wright must show that his lawsuit was a but-for cause of the government's retaliation. *Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015). While in other cases this test might be "rigorous," *id.*, it is easily satisfied here. In the government's "Second Amended Notice of Investigation," it explicitly offered that it was investigating "fil[ing] of a lawsuit against [complainant] alleging defamation, including other claims, in Fairfax County, Virginia."[4] Defendant Bluestein verified as much in his email to Mr. Wright. Exhibit G ("As you are aware, the Notice of Investigation in your Title IX matter was recently amended to add a new claim by the Complainant of Retaliation, specifically that a lawsuit filed by you in Fairfax

─────────────────

[4] Due to confidentiality and privacy concerns as well as filing documents under seal being disfavored in this Court, Mr. Wright did not file this document as an exhibit under seal. Should the Court decide review of this document would be helpful in making its decision, Mr. Wright will promptly provide this document for an *in camera* review or will file it under seal. *See supra* n.3.

Circuit Court against her constitutes retaliation"). In other words, the government expressly charged Mr. Wright with retaliation because he filed his lawsuit. ECF No. 1-2, at ¶ 133. Accordingly, and again because the University decides whether and what to charge (Exhibit H, at 12), it cannot be disputed that Mr. Wright's lawsuit was the but-for cause of the retaliation charge premised upon that lawsuit.

To the extent that this case presents what the Fourth Circuit has described as a "unitary event" causation case, where there could be different motives for the alleged retaliatory action, the burden to show a non-retaliatory motive rests with the government. *See Martin v. Duffy*, 977 F.3d 294, 303–04 (4th Cir. 2020). This alternate construction of the causation requirement is unavailing for the government, however, because there is no legitimate non-retaliatory reason for why the government would inject itself into a lawsuit between two private citizens by trying to sanction one side. Only a retaliatory motive could explain why the government would, by virtue of its decision to charge Mr. Wright with retaliation, take the ludicrous position, through application of its Policy (Exhibit H, at 14) that the Fairfax County Circuit Court is within its substantial control, or that Mr. Wright is under its substantial control since he resigned from public employment. *See also* 34 C.F.R. § 106.45(b)(3)(i) (limiting the jurisdiction of the Title IX process to the "education program or activity" of the university; the Fairfax County Circuit Court is obviously *not* an "education program or activity" of the University).

Additionally, only a retaliatory motive could explain why the government would expend significant resources prosecuting and investigating a private citizen for

filing a lawsuit in which the government has no interest in the outcome. And, only a retaliatory (or discriminatory)[5] motive could explain why the government took the position that it lacked "jurisdiction" to investigate the complainant while she was not enrolled or employed, but that it would, over vigorous objection, investigate Mr. Wright even though he is not enrolled or employed. Accordingly, even if the government were to invoke this alternate conception of causation, the government cannot carry its burden. Under either theory, it is clear that Mr. Wright's lawsuit is the but-for cause of the retaliation charge. Because Mr. Wright satisfies all of the elements of his First Amendment retaliation claim, he has shown a likelihood of success on the merits.

### b. First Amendment harms are always irreparable.

Because Mr. Wright has shown a violation of his First Amendment rights, as shown above, "it necessarily follows that he has shown irreparable injury." *Bos. Correll v. Herring*, 212 F. Supp. 3d 584, 615 (E.D. Va. 2016). It is well established in the Fourth Circuit that "[t]he loss of First Amendment [rights], for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427

---

[5] While Mr. Wright does not pursue his discrimination claims for purposes of a preliminary injunction, it is worth noting that there is substantial evidence to suggest that the government is also engaging in discrimination, including making his female accusers official speakers on campus and paying them hundreds of thousands of dollars in the middle of the Title IX process, among other actions. ECF No. 1-2, at ¶¶ 161–195.

U.S. 347, 373 (1976); *see also Johnson v. Bergland*, 586 F.2d 993, 995 (4th Cir.1978) ("[v]iolations of First Amendment rights constitute per se irreparable injury"); *Legend Night Club v. Miller*, 637 F.3d 291, 302 (4th Cir.2011) ("monetary damages are inadequate to compensate for the loss of First Amendment freedoms"). Mr. Wright has shown irreparable injury.

In addition to the law, the facts also show irreparable harm absent an injunction. While mere threats of enforcement may be sufficient to show irreparable harm under the First Amendment, here the government actually initiated enforcement by charging Mr. Wright with "retaliation" and pursuing an investigation. ECF No. 1-2, at ¶ 133; Exhibit I. This is not at all speculative – absent this motion or an injunction from the Court,[6] the University will proceed and investigate Mr. Wright for filing his lawsuit. *See* Exhibit I (the investigator's email chain, the latest one dated November 30, 2023, asking Mr. Wright for interview dates for December 2023). Accordingly, the government is actively punishing Mr. Wright for filing his lawsuit. Because "a person of ordinary firmness" would be deterred by the government's initiation of enforcement, there has been irreparable harm – and a chilling effect – under the First Amendment. *See Cooksey*, 721 F.3d at 237.

---

[6] Indeed, the only reason Defendants are not currently proceeding as this motion is pending is due to an agreement of counsel wherein the University would pause its investigation while the Court hears Mr. Wright's motion for preliminary injunction. If Mr. Wright filed no motion, or if the Court denies his motion, the First Amendment harm will continue immediately through Defendants' official investigation of his protected activity.

c. **The balance of equities weighs sharply in Mr. Wright's favor because the government simply has no interest in injecting itself into a dispute between two private parties.**

When evaluating the balance of equities between the parties, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24. Here, the balance of equities plainly favors Mr. Wright. Mr. Wright has a constitutional right to access the courts. *Guarnieri*, 564 U.S. at 387. He will be prejudiced by a government finding that his lawsuit is retaliatory before the Fairfax County Circuit Court is able to reach any final decision of its own because that will severely stigmatize him in the public eye and impair his future employment prospects (not to mention the chilling effect it will have on other respondents).

By contrast, the Fourth Circuit has clearly pronounced that the government has no valid interest in unconstitutional enforcements—"[i]f anything, the system is improved by such an injunction." *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002). Accordingly, the government has no valid competing interests, and the balance of equities tips sharply in Mr. Wright's favor.

Moreover, not only does the government not have an interest in the outcome of the Defamation Case, but it also has no interest in disciplining a private citizen not affiliated with the University. If Mr. Wright or the complainant were still enrolled or employed at the University, the University could perhaps argue that it has a "strong interest in maintaining campus safety and disciplining [faculty] who have committed . . . misconduct" as other schools have done in Title IX matters (though it should be

noted those schools were not attempting to punish a respondent for pursuing legal action). *See Doe v. Rector & Visitors of Univ. of Virginia*, No. 3:19CV00038, 2019 WL 2718496, at *7 (W.D. Va. June 28, 2019). But the government cannot make that argument here because neither Mr. Wright nor the complainant have any present connection to the University. As *Doe v. Rector & Visitors of Univ. of Virginia* held when it was evaluating a motion for preliminary injunction involving a respondent in a university Title IX process who had since separated from the university:

> [The accused] is no longer enrolled at the University, and he is no longer on campus. Therefore, there is *no basis* to believe that staying [the University process] would pose a risk of harm to students or employees of the University. There is also *no basis* to find that a stay would unduly prejudice the alleged victim, who has no affiliation with the University.

*Doe v. Rector & Visitors of Univ. of Virginia*, 2019 WL 2718496, at *7 (emphasis added). For these reasons, Mr. Wright has a strong interest in a preliminary injunction to protect his First Amendment rights, and the government has no compelling interest against one. The balance of equities weighs decisively in Mr. Wright's favor.

### d.   An injunction is in the public interest because the people are served by the enforcement of constitutional rights.

The law is well settled that "it is always in the public interest to protect First Amendment liberties." *Legend Night Club v. Miller*, 637 F.3d 291, 303 (4th Cir. 2011), *citing Joelner v. Vill. of Washington Park, Illinois*, 378 F.3d 613, 620 (7th Cir. 2004). Indeed, "upholding constitutional rights surely serves the public interest." *Carandola*, 303 F.3d at 521. Mr. Wright has shown a violation of his First Amendment

right to petition. Accordingly, an injunction to avoid that outcome is in the public interest.

## III. The Court Should Set a Nominal Bond.

Federal Rule of Civil Procedure 65(c) provides that courts "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Although the requirement to post bond is mandatory, courts are permitted to require plaintiffs to only post a "nominal" bond, even zero dollars, when it appears that a preliminary injunction will not harm the defendant. *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999). Because an injunction will not harm any legitimate interest of the government, the Court should set a "nominal" bond at zero dollars. *Id.*

## CONCLUSION

The Commonwealth of Virginia is punishing a private citizen for filing a lawsuit against another private citizen. Because Mr. Wright has decisively met each requirement for a preliminary injunction, this Court should enjoin the government from continuing to retaliate against the exercise of his First Amendment rights by issuing an order staying the investigation of the Second Amended Notice of Investigation in the Title IX action at the University until Mr. Wright can fully litigate his rights in this Court.

Dated: January 26, 2024                    Respectfully submitted,

                                          /s/ *Benjamin F. North*
                                          Benjamin F. North, VA Bar # 97439
                                          Lindsay R. McKasson, VA Bar # 96074
                                          BINNALL LAW GROUP, PLLC
                                          717 King Street, Suite 200
                                          Alexandria, Virginia 22314
                                          Phone: (703) 888-1943
                                          Fax: (703) 888-1930
                                          lindsay@binnall.com
                                          ben@binnall.com

                                          *Attorneys for Plaintiff Joshua Wright*

## CERTIFICATE OF SERVICE

I certify that on January 26, 2024, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ *Benjamin F. North*
Benjamin F. North, VA Bar # 97439

*Attorney for Plaintiff Joshua Wright*