# EXHIBIT C



Ben North &lt;ben@binnall.com&gt;

## Fwd: Complaint



\---------- Forwarded message ---------
From: **Joshua Wright** &lt;joshua.wright@gmail.com&gt;
Date: Mon, Jun 6, 2022 at 8:46 AM
Subject: Complaint
To: &lt;ccoombes@gmu.edu&gt;
Cc: Lindsay McKasson &lt;lindsay@binnall.com&gt;


Dear Crystal,

Attached please find my formal complaint against Ms. Dorsey.

Thank you,

Josh Wright


\--
**Lindsay R. McKasson**
**Partner** | Binnall Law Group
717 King Street | Suite 200 | Alexandria, VA 22314
(571) 771-0019 (direct)
(703) 888-1943 (office)
lindsay@binnall.com



   

This electronic message transmission contains information from the Binnall Law Group, PLLC that may be confidential or privileged.  The information is intended solely for the recipient and use by any other party is not authorized.  If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this electronic transmission in error, please notify us immediately by telephone at (703) 888-1943 or by replying to this e-mail.  Thank you.

 **Formal Complaint against Dorsey.pdf**
113K

JOSHUA WRIGHT COMPLAINT AGAINST ELYSE DORSEY

For his complaint against Elyse Dorsey, Joshua Wright states as follows:

1. Sexual Harassment

    a. Alleged Violation: University Policy Hostile Environment Sexual Harassment, Policy 1202 Section III(B).

        i. "Unwelcome conduct based on sex that is so severe, persistent, or pervasive that it alters the conditions of education, employment, or participation in a University program or activity, thereby creating an environment that a reasonable person in similar circumstances and with similar identities would find hostile, intimidating, or abusive."

    b. Allegations:
        i. Elyse Dorsey is a faculty member of George Mason University ("University"). Dorsey engaged in a pattern of conduct from October 2021 to the date of filing of this complaint that has been so severe, persistent, or pervasive as to alter the conditions of Joshua Wright's employment at the University.

        ii. On or about October 20, 2021, Wright ended the romantic relationship between him and Dorsey.

        iii. Soon thereafter, after witnessing concerning behavior by Dorsey, Wright informed Dorsey that he needed to limit personal communication with her. This was communicated to Dorsey in person and via email on or about October 29, 2021.

        iv. Despite Wright informing her he did not wish further personal communication, in late October 2021, Dorsey waited outside the classroom at the University, while class was in session with students, and followed him from the classroom to his office when the class ended. Dorsey entered Wright's office, unannounced and uninvited, and proceeded to yell loudly at him regarding the cessation of their personal relationship and demanded to speak with him. Wright repeatedly asked Dorsey to leave. Dorsey eventually slammed the office door and left.

        v. Following this unwanted visit to Wright's workplace (the University), Dorsey repeatedly attempted to contact Wright via email or phone or text message in an attempt to maintain their romantic or personal relationship, or to demand further explanation, without substantive response from Wright.

vi. Dorsey repeatedly contacted Wright's live-in girlfriend, including on her birthday, with text messages and phone calls. These contacts were unwelcomed.

vii. Dorsey also contacted his assistant, Judy Jin, on several occasions.

viii. Dorsey knows where Wright lives and of his custodial schedule with his children. After more than a decade of friendship in which he had never before seen this type of behavior from Dorsey, it concerned Wright, and he became fearful for his and his children's safety.

ix. In the spring of 2022, Dorsey began stating falsely to third parties associated with the University that Wright had sexually harassed and assaulted her. Specifically, she stated these false allegations to Dean Ken Randall of the University's law school, who is Wright's direct superior. Dorsey made these false allegations at least twice via email to Dean Randall, between March and May of 2022.

x. On or about May 6, 2022, Dorsey stated these false allegations to one of Wright's major consulting clients, as well as stating that he was under investigation and involved in a Title IX proceeding at the University. She also stated detailed falsehoods to this client such as that Wright had been barred from participating in important professional events, for example, the American Bar Association panels, and that there were "multiple" complaints against him. Although this client is not directly connected to the University, Wright's standing in the antitrust community, which includes his employment as a professor at the University and the Executive Director of the Global Antitrust Institute, is at risk should Dorsey continue to contact his major clients.

xi. On May 19, 2022, the same client asked Wright to stop all work and to suspend the business relationship until the matter (i.e. the Title IX process) is resolved, causing Wright significant financial loss and reputational harm.

xii. On or about May 23, 2022, Dorsey contacted a former RA of Wright's for the purpose of harassing Wright through that RA. Specifically, Dorsey repeatedly and aggressively contacted Jennifer Fauver via email and demanded status updates on a project in which Dorsey and Wright are involved. At all times, Dorsey had access to the information for which she was requesting, and therefore she had no legitimate business purpose for her demands. Fauver felt harassed by this contact and contacted Wright, as was Dorsey's intended consequence.

    xiii. Further, Dorsey told Fauver that she had a current Title IX matter against Wright and that a no contact order existed between she and Wright. She volunteered this information to hurt Wright's reputation and to harass him.

    xiv. Dorsey's false allegations were severe because they alleged falsely that Wright had committed a serious crime and because they threatened Wright's status and reputation at the University and in the general public. Further, Dorsey's continued unwanted, hostile contact with Wright, directly or indirectly, was severe because it put Wright in fear of his and his family's safety, as well as fear for professional, reputational, and financial harm due to her actions and indeed caused such harm.

    xv. Dorsey's behavior is persistent or pervasive as it is a course of repeated conduct across the months from October 2021 to the present.

    xvi. Dorsey's conduct altered the conditions of Wright's employment because, among other things, he has had to defend his reputation to his immediate superior and to defend his employment generally.

    xvii. A reasonable person in similar circumstances and with similar identities would find Dorsey's conduct hostile, intimidating or abusive.

2. Retaliation

    a. Alleged Violation: University Policy Hostile Environment Sexual Harassment, Policy 1202 Section III(C):

        i. Under the no contact order, retaliation is defined as "any adverse action taken against a person for making a good faith report of Prohibited Conduct or participating in any proceeding."

        ii. Under Policy 1202, no person may "intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by Title IX or this policy, or because the individual has made a report or complaint, testified, assisted, participated, or refused to participate in any manner in an investigation, proceeding, or hearing under Title IX or this policy."

    b. Allegations:

        i. As described above, Dorsey contacted Wright's client and professional associates, including a former University RA, and described his

3

      participation in the present Title IX proceeding with the purpose of intimidating and threatening Wright.

    ii. Dorsey's conduct was intended to interfere with Wright's rights and privileges secured by Title IX and University Policy, including the right to be presumed not responsible until a determination is made at the end of the grievance process. Dorsey's conduct was designed to impugn Wright's reputation at the University to such a degree that Wright would be considered "responsible" by the University community regardless of the outcome of the Title IX process.

3. Retaliation

   a. Alleged Violation: University Policy Hostile Environment Sexual Harassment, Policy 1201 Section VI:

      i. Under Policy 1201, no person may "intimidate, harass, coerce, or discriminate" against an individual because the individual has participated in the DEI process in some manner.

   b. Allegations:

      i. As described above, Dorsey contacted Wright's client and professional associates, including a former University RA, and described his participation in the present proceeding with the purpose of intimidating and harassing Wright.

4. No Contact Order Violation

   a. Alleged Violation: No Contact Order issued on January 28, 2022:

      i. Dorsey was prohibited from having any direct or *indirect* contact with Wright, including "any contact physically, in person, by phone, text, email, instant messenger, written notes, social media, (including, but not limited to, Facebook, Twitter, Snapchat, Instagram, Google Hangout) or any other method of communication."

   b. Allegations:

      i. As described above, on or about May 23, 2022, Dorsey contacted a former RA of Wright's for the purpose of contacting Wright through that RA. Specifically, Dorsey repeatedly and aggressively contacted Fauver via email and demanded status updates on a project in which Dorsey and Wright are

    involved. At all times, Dorsey had access to the information for which she was requesting, and therefore she had no legitimate business purpose for her demands. Fauver felt harassed by this contact and contacted Wright, as was Dorsey's intended consequence.

  ii. Further, Dorsey told Fauver that she had a current Title IX matter against Wright and that a no contact order existed between she and Wright. She volunteered this information to hurt Wright's reputation.

  iii. Dorsey knew that her contact of Fauver would result in Fauver referring the information to Wright and causing Wright emotional distress, and Dorsey had no legitimate purpose for contacting Fauver. Dorsey contacted Fauver with the purpose of contacting Wright through Fauver.

5. Faculty Handbook Violation

    a. The University Faculty Handbook, Section 2.10.2 prohibits faculty from engaging in "unprofessional or unethical conduct."

    b. Dorsey's behavior, as described above, is unprofessional and unethical.

Dated: June 3, 2022

                                                                      Joshua Wright