# EXHIBIT H

**Appendix A: Procedures for Responding to Reports of Prohibited Conduct Committed by Students and Employees**

# Table of Contents

I.    **REPORTING PROHIBITED CONDUCT** ....................................................................... 3

    A.  Title IX Coordinator, Senior Deputy Coordinator, Deputy Coordinators ............................. 3

    B.  Right to Involve Law Enforcement .......................................................................................... 5

    C.  Confidential Resources ............................................................................................................ 5

II.    **PROCEDURE PURPOSE AND DESIGN** ............................................................................. 5

III.    **INITIAL STEPS UPON RECEIPT OF A REPORT** ........................................................... 6

    A.  Initial Assessment of Incident Report .................................................................................... 6

    B.  Contacting Reporting Party (and Complainant, if different and known) ................................. 6

    C.  Initial Meeting – Information Session -- with Complainant and/or Respondent ..................... 6

    D.  Advisors .................................................................................................................................. 7

    E.  Supportive Measures ............................................................................................................... 8

    F.  Va. Code §23.1-806 Review .................................................................................................... 8

    G.  Safety Assessment .................................................................................................................. 9

IV.    **ROUTES TO RESOLUTION** ............................................................................................. 10

    Option 1: No Formal Action .................................................................................................... 10

    Options 2 and 3:  Formal Actions ............................................................................................ 10

    A. Process When Individual Does Not Want to Pursue a Formal Process .............................. 11

    B.  Initiating a Formal Process – Filing a Formal Complaint ..................................................... 11

        1.  Individual Initiates: ......................................................................................................... 11

    B.  University Initiated Complaint ............................................................................................... 12

    C.  Dismissal of Formal Complaint ............................................................................................ 13

    D.  Dismissal Required: .............................................................................................................. 13

    E.  Dismissal For Other Reasons: ............................................................................................... 14

    F.  Appeal of Dismissal: ............................................................................................................. 14

    G.  Other Forms of Discriminatory and/or Harassing Conduct ................................................. 15

V.    **FORMAL GRIEVANCE PROCEDURE – INVESTIGATION** .......................................... 15

    A.  Expected Time and Good Cause Delays ............................................................................... 15

    B.  Assignment of Investigator ................................................................................................... 16

    C.  Notice of Investigation .......................................................................................................... 16

    D.  Challenging the Investigator .................................................................................................. 17

    E.  Acceptance of Responsibility ................................................................................................ 17

F.   Investigation .......................................................................................................... 18

G.   Review of Evidence by Parties ............................................................................... 19

H.   Final Investigation Report ...................................................................................... 20

VI.   **FORMAL GRIEVANCE PROCEDURE – HEARING** ............................................. 20

A.   Transmission of Case for Hearing .......................................................................... 21

B.   Pre-Hearing Meeting ............................................................................................... 22

C.   Confirmation of the Hearing Officer ...................................................................... 22

D.   Scheduling of Hearing ............................................................................................ 23

E.   Evidence Allowed at Hearing ................................................................................. 24

F.   Other Pre-Hearing Matters ..................................................................................... 24

G.   The Hearing ............................................................................................................. 24

H.    Impact Statements .................................................................................................. 27

I.   Determination .......................................................................................................... 27

J.   Sanctions ................................................................................................................. 28

K.    Notice of Determination ......................................................................................... 28

L.   Compliance with Sanctions ..................................................................................... 29

M.   Transcript Notation for Students ............................................................................ 29

VII.   **FORMAL GRIEVANCE PROCEDURE – APPEAL** ............................................... 30

A.   Filing an Appeal ...................................................................................................... 30

B.   Notice of Appeal; Right to Submit Response ......................................................... 31

C.   Challenging an Appeal Officer ............................................................................... 31

D.   Appeal Determination ............................................................................................. 32

VIII.   **INFORMAL RESOLUTION PROCESS** .................................................................. 32

A.   Initiating the Informal Resolution Process ............................................................. 33

B.   Notice of Informal Resolution Process ................................................................... 33

C.   Consent Required .................................................................................................... 33

D.   When an Informal Resolution Process is Not Permitted ........................................ 34

E.   Informal Resolution Processes ................................................................................ 34

F.   Impact on Ability to Pursue a Formal Grievance Procedure .................................. 35

These procedures are applicable to any report alleging a student or an employee committed Prohibited Conduct under *University Policy 1202: Sexual and Gender-Based Misconduct and Other Forms of Interpersonal Violence* ("Policy"). These procedures apply to all reports of Prohibited Conduct received after August 19, 2022.

While these procedures apply to all reports received after August 19, 2022, in determining whether the alleged conduct constitutes Prohibited Conduct, the University will use the version of Policy 1202 applicable **at the time of the alleged conduct.**

The Office of Diversity, Equity and Inclusion (DEI) may revise these procedures subject to review and approval through the University process for revising procedures. If the procedures outlined in this Appendix are altered, impacted parties will be notified of the changes as soon as practicable, or within 10 (ten) business days of the change.

**NOTE: In the case of an emergency or where there is the presence of danger to an individual or the campus community, please call 911.**

I.      **REPORTING PROHIBITED CONDUCT**

A.  **Title IX Coordinator, Senior Deputy Coordinator, Deputy Coordinators**

The University encourages anyone[1] who experiences or becomes aware of an incident of Prohibited Conduct involving a student or an employee while on University property or while at or participating in a University sponsored event, activity, or program to *immediately* report the incident to the University by contacting the University's Title IX Coordinator by telephone, email, in person during regular office hours, or by completing the Sexual and Interpersonal Misconduct Reporting Form.[2]

*Although the University has identified senior and deputy coordinators to ensure ease of access across campus locations, central reporting of incidents must be to the Title IX Coordinator.*

**Thomas M. Bluestein**
Interim Assistant Vice President, Equity and Access Services
Interim Title IX Coordinator
Diversity, Equity, and Inclusion
Fairfax Campus
Aquia Room 373
Phone: (703) 993-8730
Email: titleix@gmu.edu

---

[1] Pursuant to University policy, certain University employees, called "Non-Confidential Employees," are *required* to report to the Title IX Coordinator all information disclosed to them about an incident of Prohibited Conduct. See Policy 1202: *Sexual and Gender-Based Misconduct and Other Forms of Interpersonal Misconduct.*
[2] The reporting form is not considered a formal complaint but may become part of the official record to be referenced in the sequence of events related to the matter being reported.

Online: Sexual and Interpersonal Misconduct Reporting Form

**Dara G. Finley**
Deputy Title IX Coordinator
Diversity, Equity, and Inclusion
Fairfax Campus
Aquia Room 373
Phone: (703) 993-8730
Email: dfinley2@gmu.edu

**Nena Rodgers**
Senior Associate Athletic Director, Academic Services
Fairfax Campus
120 Field House
Phone: 703-993-3594
Email: nrodgers1@gmu.edu

**Christopher Carr**
Chief Diversity Officer
Dean's Office, Volgenau School of Engineering
Fairfax Campus
2202 Nguyen Engineering
Building Phone: (703) 993-2567
Email: ccarr21@gmu.edu

**Kent Zimmerman**
Director for Student Success/Professor of Information Technology
Deputy Title IX Coordinator
Mason Korea Campus Academic Building, Room G660
Phone: +82-32-626-5110
Email: dzimmer2@gmu.edu

**Leigh Winstead**
Clinical Professor
Deputy Director, Mason Veterans and Service Members Clinic
Arlington-Mason Square Campus
Hazel Hall Room 404
Phone: (703) 993-8210
Email: lwinste2@gmu.edu

**Christian Barber**
Director of Residence Life
Fairfax Campus
Housing and Residence Life Central Office
Phone: (703) 993-2720
Email: cbarber6@gmu.edu

**Christi Wilcox**
College of Engineering and Computing Diversity Associate
Fairfax Campus
Nguyen Engineering Building, Suite 2500
Phone: (703) 993-1000
Email: cwilcox6@gmu.edu

**Sara Hawes**
Director of Administration and Operations
Auxiliary Enterprises
Arlington-Mason Square Campus and Loudon Campus
Phone: (703) 993-8284
Email: sdolan5@gmu.edu

### B. Right to Involve Law Enforcement

An individual may choose to report to law enforcement and make a report or file a Formal Complaint to the Title IX Coordinator. An individual may pursue any or all of these options at the same time. An individual who wishes to pursue criminal action in addition to, or instead of, making a report under these Procedures should contact law enforcement directly:

911 (for emergencies in Virginia)
119 (for emergencies at Mason Korea)
University Police (703) 993-2810 (for non-emergencies)
Fairfax County Police (703) 691-2131 (for non-emergencies)
City of Fairfax Police (703) 385-7924) (for non-emergencies)
Manassas Police (703) 257-8000 (for non-emergencies)
Arlington County Police (703) 558-2222 (for non-emergencies)

### C. Confidential Resources

The University offers referral and access for students and employees to confidential resources for individuals who may be seeking counseling or other emotional support. Access to these services is not dependent on submission of a report or Formal Complaint to the University. University Policy 1202 Appendix B: Resources and Reporting Guide for Students & Employees identifies confidential resources, both at the University and in the Fairfax community.

## II.    PROCEDURE PURPOSE AND DESIGN

The purpose of this Procedure is to apply a consistent and defined process to address Policy 1202, which defines Prohibited Conduct under Title IX and outlines the possible University steps available to respond to such reports. This Procedure details the procedural steps that may occur when an alleged violation has been reported to the University.

The following section introduces and provides an explanation of the two options available to individuals who wish to pursue a Formal Title IX Process relating to an incident will be detailed. The Title IX Office also provides an opportunity for an in person or virtual review of this Procedure for those who request it.

III.      **INITIAL STEPS UPON RECEIPT OF A REPORT**

### A. Initial Assessment of Incident Report

Upon receipt of an incident report, the Title IX Coordinator[3] will conduct an initial assessment to determine if the report relates to conduct that is prohibited under Policy 1202. If the report relates to conduct that is not addressed by Title IX and/or Policy 1202 (e.g., harassment based on something other than sex, dispute over a grade), the Title IX Coordinator shall refer the matter to the appropriate University office and notify the reporting party that the referral has been made.

### B. Contacting Reporting Party (and Complainant, if different and known)

If the Title IX Coordinator determines that the report relates to possible Prohibited Conduct under Policy 1202, the Title IX Coordinator will contact the individual making the report of Prohibited Conduct (if known) and the individual understood to be the complainant (if known and different than the person making the report). This contact is the initial outreach from the Title IX Coordinator. The initial outreach invites the complainant to a meeting called an Information Session where the Title IX Coordinator discusses information about this policy, the process for filing a Formal Complaint, the availability of supportive measures and their availability regardless of whether the complainant files a Formal Complaint, and the ability to have an advisor of choice attend all meetings and hearings.

### C. Initial Meeting – Information Session -- with Complainant and/or Respondent

During an Information Session, the Title IX Coordinator or their designee will meet with the Complainant and/or Respondent.

At the Information Session, the Title IX Coordinator will:

- Review University and community resources, the right to seek appropriate and available supportive measures, and how to request those resources and measures;
- Discuss which Supportive Measures the complainant or respondent wishes to have put in place;
- Assess safety and offer Supportive Measures as determined appropriate by the Title IX Coordinator;

---

3 The Title IX Coordinator may delegate any responsibility of the Title IX Coordinator to a designee. In the case that the Title IX Coordinator has a conflict of interest in a particular case, another university employee will be appointed to serve as the interim Title IX Coordinator for that case.

- Explain the right to seek medical treatment, if applicable, and explain the importance of obtaining and preserving forensic and other evidence;
- Explain the right to contact law enforcement, decline to contact law enforcement, and/or seek a protective order;
- Review the right to seek formal or informal resolution under these Procedures and explain the procedures for a formal and informal resolution;
- Ascertain the complainant's expressed preference (if the complainant has, at the time of the initial meeting, a preference) for pursuing a Formal Complaint or an informal resolution, or neither; and discuss any concerns or barriers to participating in any University investigation and resolution under these Procedures;
- Explain the University's prohibition against Retaliation and that the University will take prompt action in response to any act of Retaliation;
- Gather any information about the Prohibited Conduct that the Title IX Coordinator believes is necessary; and,
- Ascertain the ages of the complainant and the respondent, if known, and, if either of the parties is a minor (under 18), contact the appropriate child protective service agency.

If the Complainant decides not to accept the invitation for an Information Session, the Title IX Coordinator will review the available information to determine whether the University must take action. The Complainant may, at any time, reconsider their decision and request to meet with the Title IX Coordinator for an Information Session.

If a Formal Complaint is submitted or received, the Title IX Coordinator will offer an Information Session to the named Respondent(s) where the same information listed above is discussed.

Though the University encourages an individual to choose to attend an Information Session when offered, it is the right of the individual, whether they are a Complainant, Respondent, or other involved party to choose to attend an Information Session or not.

### D. Advisors

At all times, including during an Information Session and/or during an investigation and resolution process, the Complainant and Respondent may choose to have an advisor present with them. The advisor may be any person, including an attorney, who is not otherwise a party or witness involved in the matter. The University maintains a list of trained advisors that are available to serve the Complainant or Respondent if the party chooses to request one of these trained advisors. Each party may be accompanied by their respective advisor at any meeting or proceeding, including throughout the investigation, hearing, and appeal stages.

While the advisor may provide support and advice to the party at any meeting and/or proceeding, they may not speak on behalf of the party or otherwise participate in, or in any manner disrupt, such meetings and/or proceedings (except as provided below during questioning within the hearing process).

7

An advisor who is not complying with these procedures or who is otherwise obstructing any meeting or the hearing may be removed from the meeting or hearing by the investigator or hearing officer. Additionally, the University reserves the right to prohibit an advisor from participating in or serving as an advisor if they repeatedly violate the guidelines of decorum or obstructs a meeting or hearing. An advisor who has been removed or barred may seek review of that decision by the Title IX Coordinator, or if the decision was made by the Title IX Coordinator, the Vice President of DEI.

### E. Supportive Measures

At any point, a complainant or respondent may request supportive measures from the Title IX Coordinator. The Title IX Coordinator is responsible for ensuring that the parties and any other involved party receive supportive measures deemed appropriate by the Title IX Coordinator. The University will offer reasonable and appropriate supportive measures to protect continued access to University employment or education programs and activities.

Supportive measures may be address safety and well-being as well as support continued access to educational opportunities for the individual or may address the overall safety of the campus community. Supportive measures may be temporary or permanent and may include, but are not limited to, no-contact directives, residence modifications, academic modifications and support, work schedule modifications, interim disciplinary suspension, interim suspension from employment, or pre-disciplinary leave (with or without pay).

**Supportive measures are available regardless of whether a formal complaint is received under these Procedures.** The University will maintain the confidentiality of any supportive measures provided to the extent practicable and will promptly address any violation of the supportive measures when notified an alleged violation has occurred. The Title IX Coordinator has the discretion to impose and/or modify any supportive measure based on all available information. The Title IX Coordinator is available to meet with complainants or respondents to address any concerns about the provision of supportive measures.

### F. Va. Code §23.1-806 Review

In the event that the report relates to an allegation of sexual assault, the Title IX Coordinator will also notify the committee required by Va. Code § 23.1-806 ("Committee"). The Committee will convene (in person, by telephone, or by e-mail) within 72 hours after receiving a report of an alleged incident of sexual assault. The Committee shall include, at a minimum: (1) the Title IX Coordinator, or their designee, (2) a representative of the University Police Department (the "UPD Representative"), and (3) a representative from the Office of Student Conduct or a representative of University Life. If the report involves an employee, the Department of Human Resources will participate in the evaluation of the report with the Committee.

The Committee operates pursuant to Va. Code §23.1-806 ("Reporting acts of sexual violence") and has access, under Virginia law, to certain otherwise confidential information, including law enforcement records, criminal history record information, as provided in Va. Code §19.2-389

and §19.2- 389.1; health records, as provided in Va. Code §32.1-127.1:03; University disciplinary, academic and/or personnel records; and any other information or evidence known to the University or to law enforcement.The Committee may seek additional information about the reported incident through any other legally permissible means.

The Committee will reconvene as necessary to continue to evaluate whether any new or additional information received triggers any further obligation(s) under the Clery Act with respect to any child protective service agency, and will direct the Title IX Coordinator to take such further actions, asnecessary.

Pursuant to Va. Code §23.1-806, the Committee is *required* to disclose information about certain allegations of Prohibited Conduct to law enforcement.

### G. Safety Assessment

The Title IX Coordinator (in consultation with the Committee and/or other University officials, as appropriate) will make a determination of whether, based on reported information and any other available information, an individual involved in the report poses an immediate threat to the physical health or safety of any student or other individual arising from the allegations of sexual harassment that justifies placing the named individual on an emergency temporary suspension, administrative leave, or other appropriate measures(e.g., temporary removal from housing) pending the outcome of the Procedures.

The Title IX Coordinator will make this determination based upon an individualized assessment of the totality of the known circumstances, and will be guided by a consideration of the following factors (the "Risk Factors"):

- Whether the individual has prior arrests, is the subject of prior reports and/or complaints related to any form of Prohibited Conduct, or has any history of violent behavior;
- Whether the individual has a history of failing to comply with any University No-Contact Directive, other University support measures, and/or any judicial protective order;
- Whether the individual has threatened to commit violence or any form of Prohibited Conduct;
- Whether the Prohibited Conduct involved multiple individuals;
- Whether the Prohibited Conduct involved the use of weapons or physical violence. "Physical violence" means exerting control over another person through the use of physical force. Examplesof physical violence include hitting, punching, slapping, kicking, restraining, choking and brandishing  or using any weapon;
- Whether the report reveals a pattern of Prohibited Conduct (e.g., by the individual, by a particular group or organization, around a particular recurring event or activity, or at a particular location);
- Whether the complainant in the reported matter is (or was at the time of the Prohibited Conduct) a minor (under 18); and/or,
- Whether any other aggravating circumstances or signs of predatory behavior are present.

The Title IX Coordinator may at any point reevaluate whether the individual should be placed on

interim suspension or administrative leave based on new information and then initiate the proper process and referrals.

If the Title IX Coordinator determines that an interim suspension or administrative leave is necessary, the Title IX Coordinator will work with the appropriate University Office (Office of Student Conduct within University Life for students, Human Resources for employees) to put in place the suspension or leave. The individual will be notifiedof the action and have the opportunity to appeal the decision via the appropriate office and per the procedures applicable to the individual based on their relationship to the University. The notice provided will inform the individual of how to appeal the decision.

## IV.    ROUTES TO RESOLUTION

When a Title IX Report is received and/or when the above-mentioned Information Session is held with the individual, there are three (3) options available to the individual to resolve the report.

### Option 1: No Formal Action

In Option 1, the individual complainant may choose to take **no formal action** to resolve the report. This means that the complainant has decided not to pursue a formal process under these Procedures. If the complainant chooses to take no formal action, they may still request supportive measures. However, choosing to take no formal action means that any supportive measures may not negatively impact the respondent because the respondent is not informed that a report was received by the University. If a complainant chooses to take no formal action, they may later request to reopen the report at a later time.

### Options 2 and 3:  Formal Actions

**In Options 2 and 3, the Complainant chooses to submit a Formal Complaint, which means that they would like to pursue either a Formal Grievance Procedure (Option 2) or an Informal Resolution Procedure (Option 3).**

➢ Option 2: **Formal Grievance Procedure**. This option requires an investigation and hearing to adjudicate responsibility for the alleged Prohibited Conduct.  Following the issuance of a decision, either party may appeal the decision.  The investigation, hearing, and any appeal are conducted following the procedures described below.  These procedures are reviewed with the complainant at the Information Session (and then with the Respondent if the Respondent chooses to attend an Information Session) and detailed further in a later section of this Procedure.

➢ Option 3: **Informal Resolution Procedure**. The Informal Resolution Procedure can look like mediation and is reviewed at the Information Session (and then with the

Respondent if the Respondent chooses to attend an Information Session) and will be explained in more detail in a later section of this Procedure.

NOTE: Recall that the initial report is not a Formal Complaint, so submitting a report of alleged prohibited conduct does not automatically put the matter into the Formal Processes described above.

No matter the option chosen, the Complainant still has the choice to determine which option to request and to change their request or withdraw their request or participation in the Procedures at any time prior the conclusion of a Formal Action.

### A. Process When Individual Does Not Want to Pursue a Formal Process

If the individual does not wish to pursue a Formal Process, the individual can request that the University take no action with regard to the reported Prohibited Conduct.

If the individual requests that no action be taken, and the Title IX Coordinator determines that it is not necessary to proceed with a Formal Grievance Procedure, the Title IX Coordinator must still provide the individuals involved appropriate supportive measures.

### B. Initiating a Formal Process – Filing a Formal Complaint

Federal Title IX Regulations require that a Formal Complaint be received by the University to initiate a Formal Process. There are two (2) ways a Formal Process may be initiated. Either the individual initiates the process by submitting a Formal Complaint OR the University may initiate the Formal Process by the Title IX Coordinator submitting a Formal Complaint.

### 1. Individual Initiates:

In order to request that the University initiate a Formal Process to resolve a complaint of Prohibited Conduct, the individual, now identified as the Complainant, must file a Formal Complaint with the Title IX Coordinator. A Formal Complaint can be filed by mail, email, or in person with the Title IX Coordinator:

> **Thomas M. Bluestein**
> **Interim Assistant Vice President, Equity and Access Services**
> **Interim Title IX Coordinator** Diversity, Equity and Inclusion
> Fairfax Campus
> Aquia Room 373
> Phone: (703) 993-8730
> Email: titleix@gmu.edu

A Formal Complaint must contain the Complainant's physical or digital signature or must otherwise demonstrate that it was filed by the Complainant. An email sent from a student or employee's official University email will be considered sufficient to demonstrate that it was filed by that individual.

11

The Formal Complaint must:

A. Provide a description of the alleged Prohibited Conduct including the date(s), time(s), and location(s), if known, of the alleged Prohibited Conduct;
B. Name the Respondent accused of the Prohibited Conduct; and,
C. Request that the University initiate a Formal Process to resolve the allegations of Prohibited Conduct, ideally with specifications as to which Formal Process the Complainant would prefer (Informal Resolution Process or Formal Grievance Procedure).

The Title IX Coordinator may meet with the Complainant to clarify the complaint—a process in which the complaint is reviewed to ensure that the University sufficiently understands the allegations being made-- in order to make a determination whether or not the Formal Complaint details Prohibited Conduct. During or after this meeting, the Complainant may amend the Formal Complaint and submit an Amended Formal Complaint. As well, the Complainant may withdraw the Formal Complaint altogether at any time during this or the remainder of the Formal Process.

In the event that the Respondent named in a Formal Complaint is likely to graduate prior to the completion of the Formal Process, the Title IX Coordinator shall work with the appropriate University office to place a graduation hold on the Respondent's account.

Once a Formal Complaint has been filed and the Complainant has stated their preferred option for resolution, the process will progress depending on which Formal Process the Complainant chooses--the Informal Resolution Process or the Formal Grievance Procedure. If Informal Resolution is preferred, the Title IX Coordinator must agree that Informal Resolution Process is appropriate.

NOTE: At any point in a Formal Process, prior to a full and complete resolution of the Complaint, the Complainant may decide to either (1) change the Formal Process used for resolution, (2) amend the Formal Complaint, or (3) withdraw their Formal Complaint and request no Formal Process be pursued.

### B. University Initiated Complaint

The University will, where possible, respect the wishes of the individual; however, in certain circumstances, it may be necessary for the Title IX Coordinator to initiate a Formal Grievance Procedure by signing a Formal Complaint even though the complainant does not wish to proceed with a Formal Grievance Procedure.

The Title IX Coordinator will only sign a Formal Complaint contrary to the wishes of the individual(s) identified as complainant(s) of the Prohibited Conduct where the Title IX Coordinator determines that it is necessary to do so either to (1) protect the health and safety of the University community or (2) to address systemic, ongoing, or reoccurring Prohibited Conduct.

Where the Title IX Coordinator has determined that the University must proceed with a Formal Grievance Procedure, the Title IX Coordinator will notify the individual that the University intends to proceed with an investigation and the individual will receive the required Notice of Investigation and all other relevant notices and opportunities to participate, should they choose to do so.

Where the Title IX Coordinator signs and submits a Formal Complaint, the Title IX Coordinator and the University do not become the Complainant. The individual alleged to be the victim of the alleged Prohibited Conduct (a complainant with a lower case "c") remains the identified complainant and is afforded the rights associated as a party to the complaint throughout the remainder of the investigation and hearing. The complainant may decide to or not to participate in the investigation or hearing at any time.

NOTE: No matter who initiates a Formal Complaint, the process of Notification discussed in Section V (C) and VIII (B). must be followed. This means that specific information about the incident that informs the allegations in the Notice of Investigation or the Notice of Informal Resolution must be included.

### C. Dismissal of Formal Complaint

The receipt of the Formal Complaint is the first step in a formal process. Once the Formal Complaint is received, the Title IX Coordinator must review the Formal Complaint. In some instances, as described below, the Formal Complaint cannot be acted upon by the Title IX Coordinator and the Formal Complaint must be dismissed. If the Formal Complaint is dismissed, the Title IX Coordinator must send a Notice of Dismissal to the Complainant(s) that submitted the Formal Complaint. The Notice of Dismissal explains the reason for the dismissal, provides information about how to appeal the dismissal, and reiterates the University's directive related to any actions of retaliation. As required by the Federal Title IX Regulations, the same Notice of Dismissal must be sent individual named as the Respondent [4].

The next sections provide information on the reasons a Formal Complaint must or may be dismissed.

### D. Dismissal Required:

In the following situations the Title IX Coordinator **is required** by Department of Education's Title IX Regulations to dismiss allegations of Prohibited Conduct received in a Formal Complaint under Title IX:

1) At the time of filing a formal complaint, the Complainant was not participating in or attempting toparticipate in the education program or activity of the University.
2) The alleged Prohibited Conduct occurred outside of the United States.

---

[4] In the event that the Title IX Coordinator only dismisses a Formal Complaint under Title IX, but continues the investigation under Policy 1202, the Notice of Dismissal will make clear that the investigation will continue.

3) The alleged Prohibited Conduct did not occur in locations, events, or circumstances over which the University exercised substantial control over both the Respondent and the context in which the Prohibited Conduct occurred or in any building owned or controlled by a student organization that is officially recognized by a postsecondary institution.

4) The alleged Prohibited Conducted, even if proved true, would not constitute sexual harassment as defined in the Title IX regulations (see Section A of the definition of Prohibited Conduct in Policy 1202).

Such a dismissal does not necessarily constitute a dismissal of the Formal Complaint as to violations of Policy 1202.[5] If the Title IX Coordinator determines that a Formal Complaint must be dismissed under Title IX, it may still proceed in a formal process to determine if violations of Policy 1202 occurred.

### E. Dismissal For Other Reasons:

The Title IX Coordinator **may** dismiss allegations of Prohibited Conduct in a Formal Complaint in the following situations:

1) The Complainant notifies the Title IX Coordinator in writing that the Complainant would like to withdraw the Formal Complaint or remove any allegation within the Formal Complaint;

2) The Respondent is no longer enrolled at or employed by the University; or,[6]

3) Specific circumstances prevent the University from gathering evidence sufficient to reach a determination.

### F. Appeal of Dismissal:

Either Party may appeal a dismissal.  Any appeal must be submitted in writing within five (5) business days of the date the notification of the dismissal was sent by sending the appeal to titleix@gmu.edu. The appeal will be heard by an appeal officer.

The only grounds to appeal a dismissal are:

- Procedural irregularity that affected the decision to dismiss the Formal Complaint.
- The discovery of new evidence that was not reasonably available at the time the determination to dismiss  was made that could affect the outcome of the matter.
- The Title IX Coordinator or Investigator(s), had a conflict of interest or bias for or against complainants or respondents that affected the decision to dismiss the Formal Complaint.

---

[5] The scope in Policy 1202 is broader than the Title IX regulations and prohibits conduct beyond the definition of sexual harassment in the Title IX Regulations.

[6] If a student withdraws from the University during a formal process, the University is required by Virginia law to place a notation on the student's transcript stating that the student withdrew while under investigation, *see* Section VI (M) below.

Upon receipt of an appeal the Title IX Coordinator or designee shall notify the other party of the appeal, provide them with a copy of the appeal documents, and inform them that they may submit a written response within five (5) business days.  Any written response received will be provided to the appealing party and the appeal officer.

The appeal officer may also consult with or request information from the Title IX Coordinator or other University employees (e.g., information about an alleged procedural irregularity or bias). Any such consultations or requests and information provided in response shall be documented and maintained as a part of the official record.

The decision of the appeal officer regarding the outcome of the appeal is the final decision of the University.

### G.  Other Forms of Discriminatory and/or Harassing Conduct

If a Formal Complaint also implicates other forms of discriminatory and/or harassing conduct prohibited byUniversity Policy 1201: Non-Discrimination Policy and/or any other violation(s) of the University's Code of Student Conduct or University Policy, the Title IX Coordinator will refer such allegations to the appropriate University office. The Title IX Coordinator will notify the Complainant that any such referrals have been made and provide contact information for the relevant office(s).

### V.       FORMAL GRIEVANCE PROCEDURE – INVESTIGATION

The Formal Grievance Procedure is broken down into three main stages: (1) the Investigation stage, (2) the Hearing stage, and (3) the Appeal stage. This section will describe the Investigation Stage which begins after the Title IX Coordinator has accepted and clarified the Formal Complaint.

### A.  Expected Time and Good Cause Delays

During an investigation, the University will make every effort to resolve the Formal Complaint within one hundred and eighty (180) business days after the Notice of Investigation is sent. This timeframe may be extended for **good cause**, which may exist if or when any of the following exists:

- additional time is necessary to ensure the integrity and completeness of the investigation;
- to comply with a request by external law enforcement for temporary delay to gather evidence for a criminal investigation (NOTE: The investigation will promptly resume when the University is notified that law enforcement has completed the evidence-gathering stage of its criminal investigation);
- to accommodate the availability of witnesses;

- to account for University breaks or vacations;
- to account for complexities of a case, including the number of witnesses and volume of information provided by the Parties;
- if additional allegations of Prohibited Conduct are made or discovered while an investigation is pending, requiring the issuance of an Amended Notice of Investigation; or,
- for other legitimate reasons at the discretion of the Title IX Coordinator.

The Title IX Coordinator or Investigator will notify the parties via University email of any significant delays. The Title IX Coordinator will ensure that the parties are provided with regular updates, specifically when the matter progresses to a new stage or is delayed for good cause.

### B. Assignment of Investigator

Prior to issuing the Notice of Investigation to both the Complainant(s) and the Respondent(s), the Title IX Coordinator shall assign a Title IX Investigator to conduct the investigation into the Prohibited Conduct alleged in the Formal Complaint.

The Title IX investigator may be an investigator with the Office of Diversity, Equity and Inclusion or an external investigator. The investigator is a fact-finder and **is not** the decision maker. This means that the investigator is assigned to collect information, complete investigative interviews and submit a report of all facts, including all evidence collected, that is specific only to the allegations within the Notice of Investigation described in the next section.

### C. Notice of Investigation

Once the Title IX Coordinator has determined that the Formal Complaint should move forward, the Title IX Coordinator creates and sends the Complainant and Respondent (now called the "Parties") a Notice of Investigation. The Notice of Investigation includes:

- A description of the alleged Prohibited Conduct, including the identities of the individuals involved, if known, the conduct allegedly constituting Prohibited Conduct, and the date(s) and location(s) of the alleged Prohibited Conduct, if known.
- A copy of the applicable version of Policy 1202
- A copy of these procedures (known as Appendix A)
- A statement of the alleged violations of Policy 1202 which will be investigated and adjudicated
- A statement that the Respondent is presumed not responsible for the alleged conduct and that a determination regarding responsibility is made at the conclusion of the grievance process
- A statement that determinations of responsibility are made using the preponderance of the evidence standard
- A statement that parties are not required to participate in the investigation
- A statement that Policy 1202 prohibits knowingly making false statements or

16

knowingly submitting false information during the grievance process[7]
- A statement that the parties may have an advisor of their choice, who may be, but is not required to be an attorney, at all meetings and hearings.
- A statement that a University trained advisor (who is not an attorney) is available to the Party if that Party requests assistance finding an advisor
- A statement that the Parties may inspect and review evidence collected during the investigation at the conclusion of the investigation and prior to the preparation of the Final Investigation Report
- Information regarding requesting accommodations during the process for a disability. Accommodations may be different than academic accommodations that have been received, if the student or employee has registered with either ODS or ADA
- A statement regarding the availability of supportive measures
- The name of the assigned investigator and instructions for how to notify the Title IX Coordinator if a Party has a prior relationship with the assigned investigator or believes that the assigned investigator has a bias or other conflict of interest with a Party
- A request to preserve and not destroy any evidence directly related to the allegations[8]
- An invitation to meet with the Title IX Coordinator to discuss the formal process and/or supportive measures

If, in the course of an investigation, the University decides to investigate allegations about the Complainant or Respondent that are not included in the original Notice of Investigation, the Title IX Coordinator will notify the Parties by providing an Amended Notice of Investigation.

After the Notice of Investigation is sent, at any point during the formal process, either Party may ask to meet with the Title IX Coordinator to discuss the formal process and/or supportive measures that may be available.

### D.  Challenging the Investigator

Either Party may submit a request to the Title IX Coordinator to challenge the assigned investigator because of a prior relationship with a Party or because the Party believes that the Investigator is biased for or against either Party or otherwise has a conflict of interest.  The Title IX Coordinator will determine whether to replace an investigator in response to a request from a Party. In no event will the Investigator's status in any protected category/class be considered a valid reason to claim bias by either the Complainant or the Respondent.

### E.  Acceptance of Responsibility

At any point during the investigation, the Respondent may accept responsibility for some or all of the alleged Prohibited Conduct by notifying the Title IX Coordinator or the Investigator. If the

---

[7] Such conduct, may constitute a separate policy violation under the Student Code of Conduct or Human Resources policies.

[8] The University does not have authority to compel an individual to preserve evidence in their personal possession.

Respondent accepts responsibility for all alleged conduct, the Title IX Coordinator will discuss with the parties the option for changing to an Informal Resolution Process to resolve the Formal Complaint.

The decision to enter an alternative process from Formal Grievance Process and Investigation is one that is voluntary and must be agreed upon by both Parties.

If both parties do not agree, the Investigation will continue.

### F.  Investigation

The investigation is a neutral fact-gathering process. As stated before, the Investigator is a fact-finder, not a decision maker. There is a presumption of non-responsibility for the alleged Prohibited Conduct until a determination regarding responsibility is made at the conclusion of the grievance procedure hearing. Such a presumption does not, however, preclude the University from taking interim measures that may prevent the recurrence of alleged Prohibited Conduct.

Neither Party is required to participate in the investigation nor any form of resolution under these Procedures. The Investigator will not draw any adverse inference from a decision by either Party not to participate.

At the beginning of the investigation, the Investigator (or designee called a Title IX Liaison) will contact the parties to request that each Party provide:

- Dates and times when the Party is available for an interview with the Investigator;
- A list of witnesses the Party wants the Investigator to interview and a brief explanation of the evidence the Party expects the witness to provide;
- All evidence the Party wants the Investigator to consider including any electronic or other records of communications between the Parties or witnesses (via voice-mail, text message, email and social media sites), photographs (including those stored on computers and smartphones), and medical records (subject to the consent of the applicable party); and,
- Any questions that the Party wants the Investigator to ask any other Party or witness.

At any point during the investigation, a Party may provide additional evidence, propose witnesses, or propose questions to the Investigator.

The Investigator will attempt to interview each Party at least once and may request additional interviews as necessary. Prior to any interview, the Investigator will provide the Party with a written notification stating the date, time, location, participants, and purpose of the interview. This notification will be provided with sufficient time for the Party to prepare for the interview. The Title IX Coordinator and/or Investigator will provide regular updates via University email on the status of the investigation to all Parties.

The Investigator has the discretion to decide which witnesses to interview (including witnesses not identified by either Party) and what questions to ask the Parties and any witnesses. The Investigator will only interview witnesses who have information that is **directly related** to the alleged Prohibited Conduct.

The Investigator will document all interviews via an interview summary, sent to the interviewee for review and input, and which shall be considered the record of the interview.

The Investigator may request additional evidence from any Party, witness, or other third-party. The Investigator cannot access, consider, disclose, or otherwise use a Party's records that are made or maintained by a physician, psychiatrist, psychologist, or other recognized professional or paraprofessional acting in their professional capacity, or assisting in that capacity, and in connection with the provision of treatment to the Party, unless the party gives voluntary, written consent for such a record to be obtained and considered by the Investigator.

The Investigator may visit relevant sites or locations and record observations through written, photographic, or other means.

The Investigator may consult medical, forensic, technological or other experts when expertise on a topic is needed to achieve a fuller understanding of the issues under investigation.

The Investigator may contact any law enforcement agency that is conducting its own investigation to inform that agency that a University investigation is also in progress; to ascertain the status of the criminal investigation; and/or to determine the extent to which any evidence collected by law enforcement may be available to the University in its investigation.

### G. Review of Evidence by Parties

When the Investigator has completed the collection of evidence for the investigation, the Investigator will notify the Parties that the collection of evidence has been completed and that they will have an opportunity to review all evidence and witness interview summaries that are directly related to the allegations in the Formal Complaint, i.e., the "Evidence Package." If either Party has an advisor, the Parties must also sign a FERPA consent form authorizing the release of student records related to the investigation to any advisor.

The Investigator will share the completed Evidence Package via access to a restricted electronic portal or provide an opportunity to review a hard copy upon the request of the Party. When the matter moves to the Hearing stage, the Parties will receive a Final Investigation Report that includes the completed Evidence Package.

The Evidence Package includes copies of all evidence obtained as part of the investigation. This includes evidence that is directly related to the allegations raised in a Formal Complaint, and evidence upon which the Investigator does not intend to rely on in preparing the Final Investigation Report. This includes both inculpatory (evidence supporting that the Respondent is responsible) or exculpatory (evidence supporting that the Respondent is not responsible) evidence

whether obtained from a Party or other source. The Investigator may redact personally identifying information unless redaction of the information would destroy the meaning or context of the document.

The Parties will have ten (10) business days from when the Evidence Package is released to review and submit a written response to the Investigator. In the written response, parties may provide new information they wish to submit as evidence, name additional witnesses, and/or submit questions for the Investigator to consider. The Investigator will consider any written responses in preparing the Final Investigation Report and the written responses will be included in the final Evidence Package. The Investigator has the discretion to determine if additional witnesses should be interviewed and/or whether additional questions should be posed. The Party naming additional witnesses in the written response may provide a brief explanation of the evidence the Party expects the witness to provide.

### H. Final Investigation Report

After reviewing any written responses related to the Evidence Package submitted by the Parties, the Investigator will create an investigative report that fairly summarizes the facts and all relevant evidence. The Investigator does not make a determination as to credibility or responsibility for the alleged Prohibited Conduct.

The Investigator has the discretion to determine the relevance of any evidence. Information is relevant if it makes a fact in question more or less likely to be true.  Evidence about the Complainant's sexual predisposition or prior sexual behavior are not relevant, unless such evidence about the Complainant's prior sexual behavior are offered to prove that someone other than the Respondent committed the conduct alleged by the Complainant, or if the evidence concerns specific incidents of the Complainant's prior sexual behavior with respect to the Respondent and are offered to prove consent.

The Title IX Coordinator will review the investigation report prepared by the Investigator and may refer the investigation report back to the Investigator for further investigation if necessary.[9] When the Title IX Coordinator determines that the investigation is complete, the Investigator shall finalize the report and submit to the Title IX Coordinator a Final Investigation Report that includes the Evidence Package.

### VI.    FORMAL GRIEVANCE PROCEDURE – HEARING

Per Federal Regulations, the Formal Grievance Procedure must utilize a live Hearing as the next stage in the process. The Hearing has an assigned Hearing Officer, who is the sole decision-maker in the case and is responsible for any determination of responsibility or non-responsibility.

---

[9] If further evidence is collected, the Parties and Advisors will again have ten business days to review and provide written comments on any additional evidence collected.

This next section will describe the Hearing Stage of the Formal Grievance Procedure.

### A. Transmission of Case for Hearing

After the Investigator has submitted the Final Investigation Report, the Title IX Coordinator will send the Final Investigation Report and Evidence Package to the assigned Hearing Coordinator.[10] This begins the process to move forward toward a hearing.

Title IX Coordinator will send a Notice of Hearing, a copy of these Procedures, the Final Investigation Report, and the Evidence Package to the Parties.

The Notice of Hearing will include the following information:

- Notice that he case has been sent to the assigned Hearing Coordinator and name of the Hearing Coordinator;
- A request that the Party should contact the Hearing Coordinator within five (5) business days to schedule a Pre-Hearing Meeting, if so desired:
- Notice that per the Title IX Regulations, no hearing can be scheduled fewer than ten (10) business days[11] after the Final Investigation Report is sent to the Parties. The notice will list the earliest date that the hearing can be held.
- Notice that informs the Parties **they must** contact the Hearing Coordinator within five (5) business days and provide the availability of the Party, their Advisor, and their witnesses to participate in the Hearing during a two-week period following the end of the ten (10) business day wait period;
- A request that the Party provide a list of any witnesses the Party intends to present at the hearing;
- Notification that the Parties may, but are not required to, provide a written response to the Final Investigation Report. Such a response should be submitted to the Hearing Coordinator at any time prior to the start of the hearing.
- Party will be provided with information regarding requesting accommodations for a disability in the context of the hearing process.
- A reminder that the University will provide information about advisors available through the University and inform the Party that if they do not have an advisor of choice at the hearing, the University will provide an advisor [12] on behalf of the party at the hearing, as described below in Section VI (G).
- A list of potential hearing officers who may be selected for the matter. Additionally, the Notice of Hearing informs the Party that they have five (5) business days to notify the Hearing Coordinator if there are any potential hearing officers listed with whom they have a prior relationship with or a reason to believe a hearing officer(s) has a bias

---

[10] The Hearing Coordinator may be a representative from Diversity, Equity and Inclusion, the Office of Student Conduct (in student matters), or the Department of Human Resources Management (in employee matters).

[11] OCR does not define the ten (10) day period under calendar or business days. The University allows for consistency in its procedures and using the greater number business days.

[12] An advisor assigned at the Hearing will be limited in their role. They specifically will ask questions on behalf of the Party.

against the Party or any other conflict of interest.

- An explanation of the options for conducting the hearing remotely via video conferencing platforms[13], such as Zoom, or in person using separate rooms. Each Party can express a desire to use one of these options for the hearing.

## B. Pre-Hearing Meeting

The Hearing Coordinator will contact each Party separately to inquire whether the Party wishes to have a Pre-Hearing Meeting. Parties are not required to participate in a Pre-Hearing Meeting but participation in this informational meeting is encouraged. In the event that a Party does not respond to the invitation for a Pre-Hearing Meeting within five (5) business days, the Hearing Coordinator will send a reminder email to the Party asking for hearing availability and will again extend an offer for a Pre-Hearing Meeting. The Party will be made aware that the process and hearing will not be delayed or pushed back to accommodate a request for a Pre-Hearing Meeting that comes after the stated period of five (5) business days, except in rare cases or exceptions for documented emergent circumstances.

The Pre-Hearing Meetings will be conducted by the Hearing Coordinator. The facts of a particular case will not be discussed during the Pre-Hearing Meeting. The following will occur and can be expected from the Hearing Coordinator during the Pre-Hearing Meeting:

- Provide the Party with a description of the hearing process and answer any questions related to the hearing process;
- Review the dates and times when the Party, the Party's advisor (if any), and any witnesses the
  Party intends to present at the hearing are available;
- Explain options for conducting the hearing remotely (via videoconferencing platform) or using separate rooms using video technology, and obtain the Party's preference on these options;
- Provide the Party with information regarding requesting accommodations for a disability in the context of the hearing process;
- If the Party does not have an advisor, the Hearing Coordinator will share resources about advisors and inform the Party that if they do not have an advisor at the hearing, the University will provide an advisor to ask questions on behalf of the party at the hearing, as described below in Section VI (G).
- Information regarding any change in process not currently reflected in the Procedure due to changes in Regulation or Guidance per OCR that impacts Title IX processes; and,
- Review of expected guidelines for decorum during the hearing process.

## C. Confirmation of the Hearing Officer

The Hearing Coordinator will select the Hearing Officer from the list provided in the Notice of

---

[13] The Title IX regulations state that a live video conference hearing satisfies the requirement for a live hearing.

Hearing. In selecting the Hearing Officer, the Hearing Coordinator shall consider the availability (e.g., availability at same times as the Parties) and experience of the potential hearing officers.

If either Party asserts that any of the potential hearing officers listed in the Notice of Hearing have a bias or conflict of interest, the Hearing Coordinator will review the assertion and consider it in making the selection of a Hearing Officer. In no event will the Hearing Officer's status in any protected category/class be considered a valid reason to claim bias by either the Complainant or the Respondent.

Once the Hearing Officer is selected, the Hearing Coordinator will promptly send the Hearing Officer the Final Investigation Report and Evidence Package including any written responses to the Investigation Report submitted by the Parties.

### D. Scheduling of Hearing

The Hearing Coordinator shall use the availability information provided by the Parties to schedule the hearing. The Hearing Coordinator shall also consider the schedule of the Hearing Officer and the Investigator.

If a Party does not provide their availability within five (5) business days from when the Notice of Hearing was  sent to the Parties, the Hearing Coordinator shall proceed with scheduling the hearing. The hearing must be scheduled at the earliest possible date and time based on the availability of the Parties, Hearing Officer, and Investigator. Based on the Federal Title IX Regulations, the hearing must occur at least ten (10) business days after the date that the Final Investigation Report was sent to the Parties.

In the event that the Hearing Coordinator determines that a Party is not acting in good faith in providing availability, the Hearing Coordinator will schedule the hearing without regard for that Party's availability.

Once the Hearing Coordinator has determined a date and time for the hearing, the Hearing Coordinator shall send a Notice of Date and Time of Hearing to both Parties and any advisors. This Notice shall also state the name of the Hearing Officer and will provide any additional information regarding the format for the hearing (e.g., conducted via videoconferencing, conducted in person using separate rooms). This Notice must be sent at least five (5) business days prior to the date of the hearing.

Once this Notice is sent to the Parties, the time and date of the hearing will not be changed except at the discretion of the Hearing Coordinator in the case of a documented emergency[14].

After the Notice is sent to the Parties, the Hearing Coordinator or Title IX Coordinator (or

---

[14] Documentation must be acceptable to the University and should support that an emergency existed. Documentation could include, but not be limited to, medical documentation of unavailability due to a medical condition, emergency involving a medical condition of a dependent family member, natural disaster or other such circumstance that a reasonable person would consider cause for rescheduling.

Designee) shall inform all witnesses involved in the Investigation of the date and time of the hearing and invite them to participate in the hearing. Witnesses will also be informed that if they wish to participate in the hearing they should contact the Hearing Coordinator. Scheduling of witnesses with special circumstances (for example, significant time zone differences or work schedule) will be at the discretion of the Hearing Coordinator and Hearing Officer.

### E.  Evidence Allowed at Hearing

The only evidence (including witnesses) that will be allowed to be presented or referenced at the hearing are those that were provided to the Investigator during the investigation and which are directly related to the allegations in the Formal Complaint (i.e., the evidence shared with the Parties during the review period described above), even if that evidence was not relied on by the Investigator.

The only exception to this rule is in the case of evidence that was unknown or unavailable to the Party at the time of the investigation,[15] and is directly related to the allegations in the Formal Complaint. If a Party wishes to present such evidence at the hearing, the Party must contact the Hearing Coordinator at least three (3) business days before the hearing and provide the evidence and an explanation of why the evidence was unknown or unavailable to the Party at the time of the investigation. The Hearing Coordinator shall consult with the Title IX Coordinator and determine whether the evidence is directly related to the allegations in the Formal Complaint and whether the evidence was unknown or unavailable to the Party at the time of the investigation.

If it is determined that the evidence meets both criteria, the case shall be referred back to the Investigator to consider the new evidence and the new evidence shall also be provided to the other Party. If necessary, the Hearing Coordinator may delay the hearing to allow the Investigator and/or Parties time to review and consider the new evidence; however, if the matter is not referred back to the investigator, the scheduled hearing will proceed.

### F.  Other Pre-Hearing Matters

If a Party does not intend to have an advisor present at the hearing or if the Party's advisor will not be asking questions for the Party, the Party is encouraged to notify the Hearing Coordinator at least three (3) business days prior to the hearing so that the Hearing Coordinator can arrange for a University advisor to ask questions on the Party's behalf at the hearing.

The Parties are encouraged but not required to send the Hearing Coordinator any questions that they expect to ask of the other Party or witnesses in advance of the hearing. The Hearing Coordinator will provide these questions to the Hearing Officer to review in order to expedite determinations of relevance during the hearing. A Party is not limited or restricted to only asking questions that are provided in advance.

### G.  The Hearing

---

[15] Evidence that a Party was aware of or had access to but chose not to share with the Investigator for any reason does not meet this requirement.

The Hearing Officer will use a procedural outline to facilitate the hearing. The Hearing Coordinator or Designee shall be present at the hearing to provide logistical support, facilitate the hearing, and ensure that the hearing complies with these procedures.

The hearing will be recorded. The recording will be stored and maintained by the Title IX Office pursuant to federal and state requirements. Upon request, either Party may be provided access to review the recording. Additional recordings or recording devices are strictly prohibited.

At the hearing, the Complainant and the Respondent meet with the Hearing Officer simultaneously. As explained above, prior to the hearing, either Party may request to be physically located outside the presence of the other Party and participate by video conference. [16] This request must be provided to the Hearing Coordinator no later than three (3) business days before the scheduled date of the hearing.

At the outset of the hearing, the Respondent will be given the opportunity to accept responsibility for any of the alleged violations. Any allegations that the Respondent does not accept responsibility for will be examined at the remainder of the hearing. The Hearing Officer will reflect acceptance of any allegations in their report.

Both Parties will be offered an opportunity to provide an opening statement that is no longer than five minutes and a closing statement that is no longer than eight minutes. The Hearing Officer retains the discretion to ensure that statements remain relevant and directly related to the allegations.

During the hearing, the Parties may refer to and present any (and only) evidence contained in the Evidence Package, even if that evidence was not relied on by the Investigator. The Hearing Officer shall determine the relevance of any evidence presented and shall only consider, when making a determination, evidence, that is determined to be relevant. **<u>Evidence will be considered relevant if it makes a fact in question more or less likely to be true.</u>**

The Investigator will be available at the time of the hearing to answer any clarifying questions regarding information contained in the Final Investigation Report. The Hearing Officer may ask questions of the Investigator. Questions from the Parties for the Investigator shall be submitted in writing to the Hearing Officer before, at the start of, or during the questioning of the Investigator.

The Hearing Officer may ask questions of the Parties and any witnesses.

Witnesses, who are present for the hearing, will not be allowed to offer direct oral testimony

---

[16] If the hearing is conducted remotely or using separate rooms, video technology will be used so that the parties and the Hearing Officer can simultaneously see any individual answering questions during the hearing (as required by the Title IX Regulations).

during the hearing. The witness statement   contained in the Final Investigation Report will be considered the witness's testimony. Witnesses may choose not to answer questions posed to them.

The Parties are encouraged, but not required to attend the hearing. If a Party does not attend the hearing, the Party's statement and evidence included in the Final Investigation Report will be the information used by the Hearing Officer. A Party who is present may decide to not submit to questioning by the advisor for the other Party at the hearing. The Hearing Officer may not draw an inference about the determination regarding responsibility based solely on a Party's or witness's absence from the live hearing or refusal to answer questions.


The advisor for each Party will be given the opportunity to ask questions of the other Parties and any witnesses present at the hearing.[17] The Parties themselves may not ask any questions, although they may provide questions to their advisors to ask. Only relevant (defined as something that makes a fact in question more or less likely to be true) questions may be asked. Additionally, duplicative questions that are identical to previously asked questions are not allowed. Prior to a Party or witness answering a question, the Hearing Officer must first determine whether the question is relevant and explain any decision to exclude a question as not relevant.The Hearing Officer may allow a Party who does not have an advisor or Party's Advisor to explain why a question is or is not relevant, but is not required to do so.

If a Party does not have an advisor at the hearing (or if the Party's advisor is removed from the hearing for violating the rules related to advisors) or if the Party's advisor is unable or unwilling to ask questions on behalf of the Party, the University will provide a University advisor who will ask questions of the other Party and witnesses on behalf of the Party. This Advisor will not provide advice to the Party and will not formulate questions to be asked. The Party must give this Advisor the questions that the Party wants the Advisor to ask, and the Advisor's sole responsibility is to ask the questions provided. The Advisor will only be present during the questioning portion of the hearing. If it is necessary to provide an Advisor at the hearing to a Party, a document explaining the role of the provided Advisor will be provided to the Party.

If a Party's advisor wishes to ask questions at the hearing, but a documented emergency circumstance precludes the advisor from attending, the Hearing Coordinator may consider rescheduling the hearing for a later date where the advisor (and all other Parties and advisors) can attend. [18]

---

[17] This is the sole exception to the rule that advisors may not speak during meetings or hearings.  It is the expectation under these Procedures that the Party and their advisor have consulted regarding any/all questions to be asked and that the Party has authorized the advisor, on their behalf, to ask such questions.

[18] Documentation must be acceptable to the University and should support that an emergency existed. Documentation could include, but not be limited to, medical documentation of unavailability due to a medical condition, emergency involving a medical condition of a dependent family member, natural disaster or other such circumstance that a reasonable person would consider cause for rescheduling.

Questions and evidence about the Complainant's sexual predisposition or prior sexual behavior are not relevant, unless such questions and evidence about the Complainant's prior sexual behavior are offered to prove that someone other than the Respondent committed the conduct alleged by the Complainant, or if the questions and evidence concern specific incidents of the Complainant's prior sexual behavior with respect to the Respondent and are offered to prove consent.

After the Parties have presented their evidence, all available and participating Parties and witnesses have been questioned, and the Parties have had an opportunity to give a closing statement, the Hearing Officer shall close the hearing unless the Hearing Officer determines that there is additional evidence needed to reach a determination. In such a circumstance, the Hearing Officer may refer the case back to the Investigator to collect additional information or evidence, provide it to both Parties, and update the Final Investigation Report, as necessary. The Hearing Officer may continue the hearing to a future date to allow for this additional inquiry.

### H.  Impact Statements

Within three (3) business days of the conclusion of the hearing, both Parties may (but are not required to) submit a written statement to the Hearing Coordinator detailing how the process and situation impacted the Party. This statement may include making a recommendation for the sanctions imposed should the Respondent be found responsible for the alleged conduct. Any statements submitted will be considered by the University in determining sanctions if the Respondent is found responsible.

### I.  Determination

The Hearing Officer will make a determination of responsibility (responsible or not responsible) for the alleged violations of Policy 1202 stated in the Notice of Investigation. The Hearing Officer will apply a preponderance of evidence standard (more likely than not) in determining responsibility for the alleged violation(s). In reaching the determination of responsibility, the Hearing Officer may not make credibility determinations based on a Parties' status as a Complainant, Respondent, or witness.

If the Hearing Officer determines that the Respondent **is not** responsible, the Hearing Officer shall prepare a written Notice of Determination.

If the Hearing Officer determines that the Respondent **is** responsible:

> **In cases where the Respondent is a student**, the Director of Student Conduct or their designee will consult with the Title IX Coordinator regarding what sanctions to impose. The final determination as to what sanctions to impose is made by the Director of Student Conduct or their designee. The sanctions will be communicated to the Hearing Officer so that the Hearing Officer can prepare a written Notice of Determination.

> **In cases where the Respondent is an employee**, a representative of Human Resources & Payroll shall consult with the Title IX Coordinator, the employee's supervisor, and other relevant University officials and/or policies (based on employment type) to determine sanctions. The final determination as to sanctions rests with the University. The sanctions will be communicated to the Hearing Officer so that the Hearing Officer can prepare a written Notice of Determination.

In making a decision as to sanctions, University officials may consult with the Hearing Officer regarding their factual findings and reasons for finding the Respondent responsible.

## J.  Sanctions

Potential sanctions for violating Policy 1202 range from a written warning to expulsion or termination, and may include but are not limited to: probationary periods, required educational programs, limiting or removing duties, responsibilities, or rights, demotion, suspension, placement on unpaid leave, trespass from campus or a portion thereof, referral for termination proceedings (in the case of some employees), termination, expulsion, and cancelation of degree (for graduates).[19]

Factors to be considered in determining sanctions include, but are not limited to:

- The severity, persistence, or pervasiveness of the violation;
- The nature or violence of the violation;
- The perceived impact of the violation on the Complainant;
- The perceived impact on the University community;
- The prior disciplinary record of the Respondent;
- The maintenance of a safe, nondiscriminatory environment that is conducive to learning; and,
- Any other mitigating or compelling factors.

## K.  Notice of Determination

The Hearing Officer must prepare a written Notice of Determination. The Notice of Determination must contain    the following:

- Identification of the allegations potentially constituting sexual harassment (Prohibited Conduct) as defined in Policy 1202;
- A description of the procedural steps taken from the receipt of the Formal Complaint through the determination, including any notifications to the Parties,

---

[19] A full list and description of sanctions applicable to students can be found in the Code of Student Conduct, http://studentconduct.gmu.edu/university-policies/code-of-student-conduct/. Sanctioning process may vary depending on the employee's status (i.e. Classified Employee, whose status requires certain processes under DHRM; Faculty member whose status requires reference to the Faculty Handbook)

interviews with Parties and witnesses, site visits, methods used to gather other evidence, and hearings held;
- Findings of fact supporting the determination;
- Conclusions regarding the application of Policy 1202 to the facts;
- A statement of, and rationale for, the result as to each allegation, including a determination regarding responsibility;
- Any disciplinary sanctions the University imposes on the Respondent;
- Whether supportive measures will be provided to the Complainant;[20] and,
- The University's procedures and permissible bases for the Complainant and Respondent to  appeal.

The Hearing Officer may request information from the Hearing Coordinator, Title IX Coordinator, or Title IX  Investigator to assist in preparing the Notice of Determination.   The Hearing Officer will provide the Notice of Determination to the Hearing Coordinator and the Title IX Coordinator. The Title IX Coordinator or the Hearing Coordinator (with a copy to the Title IX Coordinator) shall send the written Notice of Determination to the parties simultaneously.

If an appeal is not filed within the timeframe stated below, the decision stated in the Notice of Determination is final. If no appeal is filed before the deadline, the Hearing Coordinator shall notify both Parties (with a copy to the Title IX Coordinator) that no appeal was filed and that the Notice of Determination and any sanctions imposed are final.

### L.  Compliance with Sanctions

For cases where the Respondent is a student, the Office of Student Conduct is responsible for instituting and monitoring compliance with sanctions. For cases where the Respondent is an employee the Department of Human Resources and/or the employee's supervisor are responsible for instituting and monitoring compliance with sanctions.

The Title IX Coordinator must coordinate with relevant offices for the monitor of sanctions. The Title IX Coordinator has the responsibility to ensure that any remedies outlined in the Notice of Determination are effectively implemented. The Title IX Coordinator will be notified when a Respondent completes the required sanctions or if the Respondent fails to complete the required sanctions.

Failure to comply with the sanctions may result in further disciplinary action.

### M. Transcript Notation for Students

As is required by Virginia law (23.1-900, "Academic transcripts, suspension, permanent dismissal,

---

[20] The Notice of Determination will not state what, if any supportive measures are provided to the Complainant, just whether or not supportive measures have been or will be provided.

or withdrawal from institution"), a student who has been suspended or expelled for a violation of the institution's sexual misconduct policy   shall have a prominent notation placed on their academic transcript. The notation will state that the student has been "Suspended or Dismissed for a Violation of the Code of Student Conduct." Additionally, any student who is alleged to have violated this policy and who withdraws from the University while under investigation will also have a prominent notation placed on their academic transcript; this notation will state that the student has withdrawn from the institution while under investigation for a violation.

The University may also move forward with conduct proceedings if the student(s) has withdrawn.

The University maintains a procedure for the removal of any notation placed on their transcript. This procedure includes the mandatory removal of the prominent transcript notation if a Respondent is found not responsible for a violation of the Policy or once the student has completed the term and any conditions of a suspension and has been determined to be in good standing. Additionally, this procedure allows for the expungement of the prominent notation for good cause shown after a period of three years.

VII.    **FORMAL GRIEVANCE PROCEDURE – APPEAL**

The final stage of the Formal Grievance Procedure is the Appeal Stage. This section will describe the Appeal Stage.

### A.  Filing an Appeal

Either Party may appeal the outcome of the hearing. Disagreement with the outcome is not a basis  for appeal. A witness or Party failing to appear at the hearing or a Party not providing information available to the Party to the Investigator, is also not valid grounds for appeal.

Valid grounds for an appeal  of the outcome of the hearing are limited to:

- Procedural irregularity that affected the outcome of the hearing;
- The discovery of new evidence that was not reasonably available at the time the determination  regarding responsibility was made that could affect the outcome of the hearing;[21] ;
- The Title IX Coordinator, Investigator(s), or Hearing Officer had a conflict of interest or bias for or against complainants or respondents generally or either Party that affected the outcome of the hearing.

---

[21] Evidence that a Party first learns of less than three (3) business days prior to the hearing is considered to not be reasonably available at the time of the determination.  This is due to the requirement that Parties identify any new evidence they intend to present at the hearing at least three days prior to the hearing.  See Section VI.E.  A Party must still demonstrate that the new evidence could have affected the outcome of the hearing.

**In order to file an appeal, the appeal must be submitted within five (5) business days from the date of the written Notice of Determination that is sent to the Parties. The appeal must be received by 5:00 p.m. on the last day of the appeal period. Late appeals will NOT be considered.**

### How to File an Appeal

**For Students:** Students must submit appeals by using the Office of Student Conduct form located at:https://studentconduct.gmu.edu

**For Employees:** Employees must submit their appeal directly to titleix@gmu.edu.

If an appeal is filed, any sanctions imposed in the Notice of Determination are stayed pending resolution of the appeal. This means that no sanction shall be implemented pending any decision on the appeal. Interim measures implemented during the Formal Grievance Procedure or additional interim measures, as necessary, may remain in place during the appeal period.

Upon receipt of the appeal, the Hearing Coordinator (or Designee) will notify the Title IX Coordinator by sending a copy of the appeal to the Title IX Coordinator. The Hearing Coordinator will then assign the appeal to an Appeal Officer. The Appeal Officer will be a person who has no prior substantive knowledge of the facts of the case, and has no personal knowledge of, or association with either the Respondent or Complainant.

### B. Notice of Appeal; Right to Submit Response

If an appeal is filed, the Title IX Coordinator or the Hearing Coordinator (with copy to the Title IX Coordinator) will send both Parties a Notice of Appeal within five (5) business days. The Notice of Appeal will provide both Parties with any appeal documents that have been filed and the name of the Appeal Officer. The Notice of Appeal will also state that each Party may submit a written response to any appeal submitted by the other Party and will define the deadline for doing so.

**If a Party wishes to provide a response to the appeal, the response must be provided to the Hearing Coordinator no later than five (5) business days following the transmission of the Notice of Appeal (by 5:00 p.m.). Late responses will NOT be considered.** The Hearing Coordinator will provide a copy of any response to the other Party, the Appeal Officer, and the Title IX Coordinator.

### C. Challenging an Appeal Officer

Either Party may challenge the impartiality of the assigned Appeal Officer based on a prior relationship or a bias or conflict of interest. A challenge may not be based solely on the Appeal Officer's status in a protected identify/category. In order to so do, the Party must submit an explanation of the basis for the challenge in writing to the Hearing Coordinator within five (5) business days (and by 5:00 p.m. at the end of the fifth day) following transmission of the Notice

of Appeal. If a Party challenges the impartiality of the assigned Appeal Officer, the Hearing Coordinator shall consider the basis for the challenge and may assign a new Appeal Officer. The decision of the Hearing Coordinator on any such challenge is final.

### D. Appeal Determination

The Appeal Officer will base their decision on the written appeal request, any response, all case materials,and the recording of the hearing. The Appeal Officer's review does not include an additional hearing. The Appeal Officer may also consult with or request information from the Hearing Coordinator, the Title IX Coordinator, or the Title IX Investigator (e.g., information about an alleged procedural irregularity or bias). Any such consultations or requests and information provided in response shall be documented and maintained as a part of the official record.

When making a determination on the appeal, the Appeal Officers may not substitute their judgment for the judgment of the Hearing Officer as to the merits of the case. An Appeal Officer's disagreement with the determination made by the Hearing Officer is not a basis to grant an appeal. Rather, an Appeal Officer must find, by a preponderance of the evidence, that one of the bases for granting an appeal has been shown by the appealing Party.

The Appeal Officer may decide to:

- Deny the Appeal; or,
- Remand the case with instructions to conduct a new hearing.

The Appeal Officer shall prepare a written decision and send it to the Hearing Coordinator and Title IX Coordinator. The Title IX Coordinator or Hearing Coordinator (with a copy to the Title IX Coordinator) will send a copy of the written decision to both Parties simultaneously.  The documentation will contain the rationale for the appeal decision.

Appeals will ordinarily conclude within twenty (20) business days from receipt of the non-appealing party's statement (or passage of the deadline to do so if no statement is provided) unless a longer period of time is determined to be necessary. If a longer time is needed, the Hearing Coordinator will notify the Parties and document the rationale for the decision to extend the period beyond the twenty (20) business day period.

**If the Appeal Officer denies the appeal**, this is a final decision of the University. The decision and sanctions in the Notice of Determination are final and shall take effect immediately.

**If the Appeal Officer remands the case,** the Hearing Coordinator will schedule a new hearing. The Hearing Coordinator will select a new Hearing Officer on remand.

VIII.        **INFORMAL RESOLUTION PROCESS**

The second option for a Complainant who wishes to pursue a Formal Process is the Informal Resolution Process. The Informal Resolution Process is referred to as a type of Formal Process because the Complainant must still submit a Formal Complaint in order to initiate the Informal Resolution Process as described in Section IV (B).

The Informal Resolution Process is only available if both Parties voluntarily agree to participate. It involves the Parties working with a third party trained in informal resolution and/or mediation to reach a mutually agreeable resolution. This section will describe the Informal Resolution Process.

### A. Initiating the Informal Resolution Process

Either Party may request an Informal Resolution Process instead of a formal Investigation and Hearing. A request for an Informal Resolution Process may be received as a part of the formal Complaint or may be requested by the Complainant or Respondent.  The Title IX Coordinator, however, has the discretion to determine whether the nature of the reported conduct is appropriate for the Informal Resolution Process, to determine the form of resolution most appropriate in a specific case, and to refer a report of Prohibited Conduct for formal investigation at any time. A determination of the use of Informal Resolution Process will be made by the Title IX Coordinator who will give both Parties written notice of the determination to use the informal resolution process as noted in Section V (B) below.

The Title IX Coordinator may decline the request for informal resolution in any particular case and may terminate an ongoing informal resolution process at any time.

### B. Notice of Informal Resolution Process

Prior to commencing an informal resolution process, the Title IX Coordinator must give both Parties a written notice disclosing:

- The allegations made in the Formal Complaint;
- The requirements of the process, including the circumstances under which it precludes the Parties from resuming a Formal Complaint arising from the same allegations; and,
- Any consequences resulting from participating in the informal resolution process, including the records that will be maintained or could be shared from during the Informal Resolution Process.

### C. Consent Required

**<u>Both Parties must give their consent in writing to initiate an informal resolution process.</u>**
Participation in an informal resolution process (including any specific form of informal resolution) is voluntary. The University will not compel a Complainant or a Respondent to engage in an informal resolution process, will not compel the Parties to confront one another

33

face-to-face, and will allow a Complainant or a Respondent to withdraw from the informal resolution process at any time except if a written outcome has been reached, agreed to, and is affected by signatures of all parties.

### D. When an Informal Resolution Process is Not Permitted

An Informal resolution process **is not permitted** to resolve allegations that a University employee engaged in Prohibited Conduct towards a student. In other words, when the identified Respondent(s) is an employee and the Complainant is a student, the Informal Resolution Process is not an option under any circumstances. Additionally, if a Complainant alleges sexual assault and the Respondent is a student, the University will use discretion to determine whether the Informal Resolution Process is an appropriate method to resolve the Formal Complaint.

### E. Informal Resolution Processes

The Informal Resolution Process is one in which the Parties work with a mediator—a trained University official or assigned outside mediator—to address the Formal Complaint and come to an agreement that is formalized in a written document called an Informal Resolution Agreement, which resolves the complaint.

The Informal Resolution Agreement  may include interventions and remedies, such as actions designed to maximize access to education, extracurricular and/or other University activities; increased monitoring, supervision and/or security on or around campus; targeted or broad-based educational programming or training for relevant individuals or groups; academic, workplace and/or University housing accommodations; restorative sanctions; and/or any other support measures to help achieve the goals of this Policy. Such an agreement **will not** be considered a sanction.

Whether an agreement is reached or not, the informal resolution processes should be concluded within sixty (60) business days of the date of Notice of Informal Resolution Process. At the end of sixty (60) business days, if an agreement has not been reached, the Parties and the University will discuss what steps to take going forward. If terms are included in an agreement, the agreement must define the timeframe in which all terms will be completed. The timeframe to complete the agreed upon terms of the Resolution Agreement may not exceed 120 days, or the length of a full semester.

If, at the conclusion of the informal resolution, an agreement is reached and is acceptable to the University, the Complainant, and the Respondent the terms of the agreement are implemented and the matter is considered by the University to be resolved and closed. If an agreement is not reached, the Title IX Coordinator shall confer with the Complainant and determine if the Complainant wishes to withdraw their complaint or move forward with a formal investigation.

If a signed agreement is created and either party fails to comply with the terms of the signed informal resolution agreement, the matter may be referred for a formal investigation and subsequent hearing under these Procedures or will be referred to the Office of Student Conduct for consideration of violation of the Student Code of Conduct.

**F. Impact on Ability to Pursue a Formal Grievance Procedure**

At any time prior to signing the Informal Resolution Agreement either Party has the right to withdraw from the Informal Resolution Process and start or resume the Formal Grievance Procedure.

Pursuing an Informal Resolution Process does not preclude later use of the Formal Grievance Procedure, if the Informal Resolution Process **fails to achieve** a resolution acceptable to the Parties and the University.

If Informal Resolution Process **does achieve** a resolution acceptable to the Parties and the University, that resolution will be documented by the Title IX Coordinator.[22] The matter will be considered closed and resolved once the terms of the resolution are completed and no Formal Grievance Procedure may be initiated based on the allegations in the Formal Complaint.

---

[22] This document will be maintained in the office record as per federal and state requirements.