**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | | |
|---|---|---|
| Joshua Wright , | : | |
| Plaintiff, | : | |
| v. | : | Case No. 24-cv-00002-PTG-IDD |
| The Rector and Visitors of George Mason University *et al.*, | : | |
| Defendants. | : | |

**<u>DEFENDANTS' MEMORANDAUM IN SUPPORT OF MOTION TO DISMISS</u>**

Plaintiff, Joshua Wright, is a former George Mason University ("Mason") law school faculty member who has admitted to having a sexual relationship with a student while he was a faculty member.  Despite having been accused by several women of inappropriate sexual conduct, in this lawsuit he attempts to recast himself as the victim of sexual harassment and anti-male gender bias.  But his complaint fails to plead either.  Nor has he plausibly alleged the necessary elements of any of the seven different theories he attempts in the complaint; indeed, in several cases, his own allegations plead him out of his claim.

For example. Wright tries to claim that Mason was deliberately indifferent to his claim that one of his accusers, Ms. Dorsey, was sexually harassing him.  But his own allegations show that her alleged actions did not constitute sexual harassment and, even if they did, Mason was not deliberately indifferent.  Rather, Mason made the reasonable decision to dismiss Wright's complaint because Dorsey was not an employee of Mason.  Likewise, Wright's assertion that Mason's decision to investigate the claims against him and not his claim against Dorsey was the result of anti-male gender bias fails because he and Dorsey are not valid comparators—they were accused of vastly different misconduct and had completely different employment statuses—and he has failed to allege any facts that suggest the decision was the result of anti-male bias (as opposed to the stated reason that Dorsey was not a Mason employee).

Perhaps most bizarrely, Wright attempts to claim that Mason has violated Title IX by disciplining him because of his sex.  Leaving aside that Wright has alleged nothing that plausibly suggests gender bias, his claim makes no sense because he has ***not*** been disciplined by Mason. Wright repeatedly alleges that he may be disciplined; not only is that pure speculation, it is wrong.  Wright is no longer a Mason employee, so even if he is found responsible of violating

Title IX, Mason has no ability to discipline him.  He cannot base a claim on discipline that has not, and never will, occur.

Wright's attempts to state § 1983 claims under the Equal Protection and Due Process Clause fail for the same reasons—he has not alleged a proper comparator or discriminatory intent (Equal Protection) and he has not been terminated or demoted (Due Process).  His § 1983 Petition Clause claim fails because the standard he posits Mason should use to evaluate a claim that a lawsuit he filed against Dorsey was retaliation has no basis in law, and the standard Mason is using is based on Supreme Court and Fourth Circuit precedent.  Finally, Wright's attempt to repackage his claims as a breach of contract claim fails because there is no contract or breach.

## FACTUAL BACKGROUND

Mason is a public institution of higher education in Virginia.  Compl. ¶ 3.  Wright was a law professor at Mason until his resignation effective August 8, 2023.  *Id.* ¶¶ 2, 104.  In December 2021, Mason received a Title IX complaint from Elyse Dorsey, alleging that Wright and she began a sexual relationship when she was a student at Mason's law school and Wright was a professor and that he sexually assaulted her by pressuring her to engage in non-consensual sex at the beginning of their relationship.  *Id.* ¶¶ 60, 62.  Dorsey also alleged that the relationship continued after her graduation and that when she ended that relationship, Wright engaged in quid pro quo sexual harassment and retaliation by removing opportunities to teach as an adjunct at Mason's Law School and other academic opportunities.  *Id.* ¶ 63.  As required by Title IX, Mason opened an investigation and also issued a directive to Wright and Dorsey that they were not to have contact with each other.  *Id.* ¶¶ 77, 78.  The investigation is ongoing.  *Id.* ¶86.

On June 6, 2022, Wright submitted a Title IX complaint against Dorsey alleging that she had sexually harassed and retaliated against him by (1) once yelling at him about the end of their relationship, (2) contacting other individuals associated with him, and (3) telling clients of his

private consulting business about her allegations.  *Id.* ¶¶ 88, 89.  Seven days later, Mason's then-Title IX Coordinator, Crystal Coombes, met with Wright.  *See* Ex. 1 (incorporated by reference Compl. ¶ 91).[1]  During that meeting, Dorsey's employment status was discussed and Wright asserted that Dorsey was an "active employee" because of her involvement with the Law School's online LLM program.  Ex. 1.  Coombes further reviewed Dorsey's employment status, consulted with Human Resources, and determined that Dorsey was no longer employed by Mason.  Ex. 1.  Coombes' determination is consistent with Dorsey's "arrangement to monitor an online LLM class," which ended May 31, 2021, Compl. ¶ 93; Ex. 2, and Wright's allegation that Dorsey's former position had been filled by someone else in October 2021, Compl. ¶ 69.  Pursuant to 34 C.F.R. § 106.45(b)(3)(ii) of the Title IX regulation, Mason dismissed Wright's complaint because Dorsey was "not enrolled or employed at the University."  Ex. 1; Compl. ¶ 92 (admitting notice of dismissal tracks the applicable regulation).  Wright did not appeal the dismissal of his complaint, as he was allowed to do under Mason's procedures.  *See* Ex. 1.

On June 26, 2023, Wright submitted his resignation from Mason effective August 8, 2023.  Compl. ¶ 104.  Shortly after his resignation, several women made accusations on social media that Wright had engaged in or solicited sexual relationships with law students and applicants for jobs at Mason's Law School while he was a faculty member.  *See* Compl. ¶¶ 105-6; Ex. 3.  In response to the already public allegations, Mason made public statements explaining the steps Mason had and was taking in response to the accusations.  *See* Ex. 4; Compl. ¶¶ 107-115, 124).[2]  None of the statements disclose the specifics of Dorsey's Title IX accusations; rather

---

[1] On a Rule 12(b)(6) motion to dismiss a court may consider "documents incorporated into the complaint by reference."  *Tallabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[2] The Court need not accept as true Wright's hyperbolic characterizations of the statements since it can take judicial notice of these documents incorporated by reference and review the actual

they either do not refer to Wright at all or refer to the already public accusations of Wright engaging in and soliciting relationships with students and job applicants.  *See* Ex. 4.

On August 24, 2023, Wright filed a defamation lawsuit against Dorsey in Fairfax Circuit Court.  Compl. ¶ 120.  In response to that lawsuit, Dorsey sought to amend her complaint in the ongoing Title IX investigation against Wright to add an allegation that the filing of the defamation lawsuit constituted retaliation.  *Id.* ¶ 132.  In response to complaints from Wright that the retaliation claim violated his rights under the Petition Clause, *see id.* ¶ 136, Mason's current Title IX Coordinator, Thomas Bluestein, sent an email to Wright and Dorsey explaining how Mason would approach the claim by following Supreme Court and Fourth Circuit law governing when a lawsuit is not considered protected by the First Amendment.  *See* Ex. 5 (incorporated by reference Compl. ¶ 140).  Specifically, following *Bill Johnson's Rests. v. NLRB*, 461 U.S. 731 (1983) and *Darveau v. Detecon*, 515 F.3d 334 (4th Cir., 2008), Mason informed both parties that it could not find Wright's lawsuit to be retaliation unless it was "filed with retaliatory motive and lacking a reasonable basis in fact or law."  Ex. 5 (quoting *Darveau*, 515 F.3d at 341).  As such, Mason's investigation and adjudication of the claim would involve determining whether the lawsuit was filed with a retaliatory motive and lacked a reasonable basis in fact or law.  *Id.*  If both could not be established, Wright could not be found responsible for retaliation.  *Id.*

No hearing has been held in the Title IX matter and, therefore, no determination has been made as to any of the Title IX allegations against Wright.  Compl. ¶ 86.  Mason has also not imposed any discipline on Wright.  If he is ultimately found responsible, Mason cannot impose discipline on him as he is no longer a Mason employee.  Notwithstanding that Wright has not

---

statements.  *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (court does not accept as "true allegations that contradict matters properly subject to judicial notice or by exhibit")

been found responsible or disciplined, nor will he ever be disciplined by Mason, he filed this lawsuit.

## STANDARD OF REVIEW

"A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).  To survive a motion to dismiss, a complaint must contain sufficient factual matter which, accepted as true, "state(s) a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Courts "must consider the complaint in its entirety, as well as . . . documents incorporated in the complaint by reference, and matters of which a court may take judicial notice." *Tallabs*, 551 U.S. at 322.  A court "need not accept as true mere legal conclusions couched as factual allegations." *Assa'ad-Faltas v. Virginia*, 738 F. Supp. 982, 985 (E.D. Va. 1989).  A court also should not accept allegations that are contradicted by documents incorporated by reference into the Complaint.  *See Veney*, 293 F.3d at 730.  Finally, a plaintiff can "plead himself out of court" by alleging facts that "demonstrate that he has no legal claim."  *N. Tr. Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995); *see also Schreiber v. Dunabin*, 938 F. Supp. 2d 587, 594 (E.D. Va. 2013).

For a motion to dismiss under Rule 12(b)(1), "a court must dismiss a case where the court finds subject matter jurisdiction lacking."  *Medtronic, Inc. v. Lee*, 151 F. Supp. 3d 665, 671 (E.D. Va. 2016).  Sovereign immunity and lack of standing are grounds to dismiss under Rule 12(b)(1).

## ARGUMENT

### I.  Wright Fails to State a Deliberate Indifference Claim under Title IX. (Count I)

Count I of the Complaint attempts to state a claim for deliberate indifference under Title IX based on Mason's decision to dismiss Wright's Title IX complaint against Dorsey.  In this claim, Wright tries to assert that he was the victim of sexual harassment, and Mason's response in dismissing his complaint was "clearly unreasonable."  Compl. ¶ 158.  Wright's claim fails at

the outset because he is turning Title IX on its head by claiming that Dorsey's accusations against him of sexual misconduct somehow made him the victim of sexual harassment. Moreover, his claim ignores his own allegations and the documents incorporated by reference showing that Mason did respond to his Title IX complaint.  Wright's disagreement with how Mason handled his Title IX complaint is not a basis to find deliberate indifference.  *See Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648 (1999) ("courts should refrain from second-guessing the disciplinary decisions made by school administrators").

In order to state a deliberate indifference claim, a plaintiff must plead "(1) that the educational institution receives federal funds, (2) the plaintiff was subjected to harassment based on [their] sex, (3) the harassment was sufficiently severe and pervasive to create a hostile environment in an educational program or activity, and (4) there is a basis to impute liability to the institution."  *Stover v. Coll. of William & Mary in Va.*, 635 F. Supp. 3d 429, 442 (E.D. Va. 2022).  Here, Wright has failed to sufficiently allege the second, third, and fourth elements.

As to the second element, Wright has failed to allege that he was subjected to harassment based on his sex.  Wright's sole attempt to do so is his allegation that "[b]y slandering Mr. Wright as a perpetrator of sexual harassment, Ms. Dorsey subjected Mr. Wright to harassment on the basis of sex."  Compl. ¶ 156.  Wright's claim falters because accusing someone of sexual harassment is not itself sexual harassment.  As the Fourth Circuit held in *Balazs v. Liebenthal*, 32 F.3d 151, 155 (4th Cir. 1994) "[a]n allegation that [plaintiff] was falsely accused of conduct, which if true might have given rise to a claim of employment discrimination based on sex by someone else, in no way states a cause of action that plaintiff himself was a victim of discrimination based on sex."

Rather, "[s]exual harassment occurs when the victim is subjected to sex-specific language that is aimed to humiliate, ridicule, or intimidate." *Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007). Accusing someone of sexual harassment does not involve "sex-specific" language, nor is it aimed to humiliate, ridicule or intimidate. If Wright's argument were correct, then every individual who reports sexual harassment would themselves be committing sexual harassment. If that were true, it would be impossible for victims of sexual harassment to report accusations or for universities to address sexual harassment, thus defeating the entire purpose of Title IX. Moreover, a deliberate indifference claim requires a plaintiff to plead "facts showing that [the alleged harasser] subjected [the plaintiff] to harassment . . . *based on [their] sex*." *Jennings*, 482 F.3d at 695 (emphasis added). As the Fourth Circuit held in *Balazs*, accusing another individual of sexual harassment does not involve harassment or discrimination *on the basis* of that individual's sex. Indeed, accusing someone of committing sexual harassment relates only to that individual's alleged conduct; it has nothing to do with the sex of the individual being accused.

As to the third element, Wright has failed to allege Dorsey's accusations of sexual harassment "created a hostile environment in an educational program or activity." All he does is conclusively allege that Dorsey's accusations were "widespread at the University," *see* Compl. ¶ 157, without alleging any facts to support his claim that others at Mason were aware of the allegations.[3] Nor does he allege anyway in which those accusations had a "concrete, negative effect on [Wright's] ability to participate in [Mason's educational] program[s] or activit[ies],"

---

[3] This allegation is also contradicted by the Complaint. As Wright alleges, Dorsey's allegations against Wright did not become publicly known until after his resignation in August 2023 when Dorsey "went to the media" with her accusations. Compl. ¶¶ 105, 106. Wright does not, and cannot allege, that prior to his resignation Dorsey's allegations were "widespread" on campus.

the required standard for pleading a hostile environment. *Jennings*, 482 F.3d at 699.  Nor could he, because he remained a tenured full professor at Mason until his voluntary resignation.  The only impact Wright alleges Dorsey's statements had in Mason's educational programs and activities was that Mason opened a Title IX investigation, which cannot be a basis to claim a hostile environment.[4]  *See Doe v. Columbia Univ.*, 551 F. Supp. 3d 433, 473 (S.D.N.Y. 2021) ("no authority to support the proposition that investigating an allegation of sexual assault constitutes harassment").

Even if Wright had sufficiently pled the second and third elements, he cannot meet the fourth element.  In order for there to be a basis to impute liability to Mason under Title IX, Mason must have been "deliberately indifferent" to his claim that Dorsey was sexually harassing him by accusing him of being a perpetrator of sexual harassment.  Deliberate indifference is a "high standard" for a plaintiff to meet because it requires showing that the university's response was "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648.

Wright's sole basis to claim deliberate indifference is that Mason "acted clearly unreasonably in light of known circumstances by dismissing his complaint without any investigation."  Compl. ¶ 158.  However, the documents incorporated by reference demonstrate the exact opposite, that Mason was not deliberately indifferent but rather made the decision to dismiss Wright's complaint after meeting with him and considering the issues.  Mason's  then-Title IX coordinator, Ms. Coombes, met with Wright within a week of him filing his complaint.

---

[4] Wright also alleges that Dorsey shared her accusations with clients of Wright's private consulting firm.  *See* Compl. ¶ 87.  Dorsey's actions with regard to Wright's private consulting clients and any impact those actions had on Wright fall outside of the scope of Title IX and cannot be a basis for a deliberate indifference claim as they are unrelated to Mason's educational programs and activities.

*See* Ex. 1.  During that meeting, the issue of Dorsey's employment status was discussed, and

Wright asserted that Dorsey was an "active" employee.  *Id.*[5]  In response, Coombes consulted

with Human Resources and determined that Dorsey was not currently enrolled or employed.  *Id.*

As Wright admits, the Title IX regulations, 34 C.F.R. §106.45(b)(3)(ii), permits universities to

dismiss a formal complaint if the respondent (here Dorsey) is "no longer enrolled or employed

by the recipient."  *See also* Compl. ¶ 92 (admitting the language in the dismissal notice "tracks

the permissive dismissal section of the Title IX regulation").

Wright's attempts to get this Court to second guess the determination that Dorsey was not

an employee is foreclosed by the Supreme Court's directive in *Davis* that "courts should refrain

from second-guessing the disciplinary decisions made by school administrators." 526 U.S. at

648.  The inquiry is not whether Coombes' decision was correct, but rather whether her decision

to dismiss Wright's formal complaint was "clearly unreasonable in light of known

circumstances."  As demonstrated by Ex. 1, at the time Coombes made the decision, her

understanding based on conversations with Human Resources was that Dorsey was not an

employee. Given those circumstances, her decision to dismiss the case as permitted by 34 C.F.R.

§106.45(b)(3)(ii) cannot be "clearly unreasonable."  Wright also did not appeal the determination

as he was expressly told he could in the dismissal notice.  *See* Ex. 1.

Even if the Court were to second guess Mason's conclusion, Wright's own allegations

and the documents incorporated by reference demonstrate that Coombes' conclusion was correct.

---

[5] Wright attempts to argue that the use of the term "active employee" in the dismissal notice
"suggests" that Mason knew Dorsey was in fact employed in some manner.  Compl. ¶ 93. On top
of being linguistic hair-splitting, Wright's argument is factually wrong.  A "close reading of the
dismissal notice" (as Wright suggests, *id.*) shows that it uses the term "active employee" in its
description of how *Wright* described Dorsey's relationship with Mason. Ex. 1.  The paragraph
explaining Mason's conclusion that it would dismiss the formal complaint does not use that term
and instead says that Dorsey is "no longer enrolled at or employed by the University."  *Id.*

Wright's sole basis for challenging the decision is his claim that Dorsey "did, in fact, have some sort of employment relationship with the University – she had an arrangement to monitor an online LLM class at the University." Compl. ¶ 93. But Wright admits that as of October 13, 2021 (months before he filed his Title IX complaint), the position Dorsey previously held had "already [been] filled" by another individual. Compl. ¶ 69. Moreover, the "arrangement" Dorsey had to work on the online LLM class, was in fact a term-limited adjunct faculty contract, which ended on May 31, 2021—more than a full year before Wright filed his formal complaint. *Id.* ¶ 93; Ex. 2. Wright has thus "pled himself out of court" by alleging facts that "demonstrate that he has no legal claim." *Peters*, 69 F.3d at 129; *see also Veney*, 293 F.3d at 730 (court does not accept as true allegations contradicted by documents incorporated by reference).

Mason deciding to exercise its legally authorized discretion to dismiss a complaint against a respondent who was not currently employed or enrolled—after consultation and review of that individual's employment status—cannot be a basis to claim deliberate indifference. *See Doe v. Ky. State Univ.*, 2021 U.S. Dist. LEXIS 238552, at *20 (E.D. Ky. Dec. 13, 2021) (university was not deliberately indifferent when dismissing formal complaint when respondent was not employed). Holding otherwise would eviscerate the discretion universities are given in 34 C.F.R. §106.45(b)(3)(ii) to dismiss formal complaints in exactly that situation. [6]

Doing so, would also be in direct conflict with the Supreme Court's holding in *Davis* that the deliberate indifference theory of liability is limited to "circumstances wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurred" and that a "recipient cannot be directly liable for its indifference where it

---

[6] Additionally, at the time of Wright's complaint Mason had already put a no-contact order in place to prevent contact between Dorsey and Wright, which is further evidence that Mason's response was not clearly unreasonable. Compl. ¶ 78.

lacks the authority to take remedial action." *Davis*, 526 U.S. at 644-45.  Here, the alleged harassment occurred when Dorsey allegedly contacted clients of Wright's private consulting firm.  *See* Compl. ¶¶ 87-89; 156.  Mason does not have "substantial control" over conversations that Dorsey had as a private citizen with Wright's private clients.  Mason, therefore, cannot be found liable under a deliberate indifference theory.  Nor did Mason have control over Dorsey because she was not an employee of Mason at the time she engaged in the alleged conduct.  *See supra*.  Thus, Mason did not have authority to take any remedial action.  Under the binding holding of *Davis*, Mason cannot be found to have been deliberately indifferent for dismissing a case where it "lack[ed] the authority to take remedial action."

> For all of the foregoing reasons, Count I must be dismissed with prejudice.

## II.     Wright Has Failed to State a Selective Enforcement Title IX Claim. (Count II)

> In Count II, Wright changes tact and tries to assert a Title IX claim based on Mason's investigation of him in response to Dorsey's complaint.  In *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 235 (4th Cir. 2021), the Fourth Circuit established that a party challenging a university disciplinary process under Title IX must "allege facts [that] if true, raise a plausible inference that the university discriminated against [the plaintiff] on the basis of sex."  The Fourth Circuit stressed that this standard requires that the Plaintiff plead "but-for causation" i.e., that the challenged disciplinary action would not have occurred "but-for" the plaintiff's sex.  *Id.*

> Count II attempts to assert a Title IX claim under a "selective enforcement" theory, which was recognized in *Sheppard* as a valid theory if the complaint pled "sufficient facts" to plausibly allege that the plaintiff was treated differently than a similarly situated individual because of the plaintiff's gender.  *See id.* at 235 n.6 & 236.  In *Kashdan v. George Mason University*, 70 F.4th 694, 701 (4th Cir. 2023), the Fourth Circuit further clarified that "[t]o state a

selective-enforcement claim, a plaintiff must plausibly allege that regardless of his guilt or innocence, his gender was a but-for cause of . . . the decision to initiate the challenged disciplinary. . ..  A plaintiff . . . can do this by plausibly showing that a similarly situated person of the opposite sex was treated more favorably."  While the Fourth Circuit has not addressed what makes a comparator "similarly situated" in a Title IX case, it has held in the analogous Title VII context that a plaintiff is "required to show that they are similar in all relevant respects to their comparator.. . . Such a showing would include evidence that the employees deal with the same supervisor, were subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct of the employer's treatment of them for it."  *Haywood v. Locke*, 387 F. Appx. 355, 359 (4th Cir. 2010); *see also Owen v. Liberty Univ.* 2020 U.S. Dist. LEXIS 64579, at *15 (E.D. Va. Apr. 13, 2020) (applying standard in Title IX case).

Here, Wright attempts to use Dorsey as his comparator on the grounds that Mason investigated her complaint against him, but dismissed his complaint against her.  This claim fails for a number of reasons.  *First*, courts have repeatedly rejected attempts by an accused individual to use their accuser as a comparator.  *See Doe 1-2 v. Regents of the Univ. of Minn.*, 999 F.3d 571, 580 (8th Cir. 2021) ("It goes almost without saying that a sexual assault complainant and those she accuses of sexual assault are not similarly situated as complainants."); *Doe v. Univ. of Va.*, 2023 U.S. Dist. LEXIS 63108, at *19-20 (E.D. Va. Apr. 10, 2023) (collecting cases).

*Second*, Wright and Dorsey were not alleged to have engaged in anywhere close to the "same conduct."  Dorsey's complaint alleged that Wright (1) sexually assaulted her while he was a law professor and she was a student when he coerced her to engage in sexual activity, (2) engaged in quid pro quo sexual harassment by removing professional opportunities after she

ended their relationship, and (3) retaliated against her by denying her the opportunity to teach as an adjunct. *See* Compl. ¶¶ 62; 63. Wright, on the other hand, alleged that Dorsey "(1) retaliated against him" by sharing her allegations about him, and (2) "sexually harassed him by contacting his clients and telling them falsely that he sexually harassed her, and by her coming to Mr. Wright's office uninvited and berating him about their romantic relationship, and by calling his girlfriend repeatedly." Compl. ¶ 89. Wright attempts to paper over the fundamental differences here by claiming broadly that both he and Dorsey "filed complaints alleging retaliation and sexual harassment," Compl. ¶ 165, but a faculty member being accused of coercing a student to have sex and then removing job opportunities when the relationship ended is not even remotely the same as Wright's accusations of yelling, attempted verbal contact, and sharing accusations with others. *See Owen*, 2020 U.S. Dist. LEXIS 64579, at *18 (dismissing selective enforcement claim where plaintiff "attempts to make her claim at too high a level of generality").

*Third,* Wright and Dorsey were not similarly situated with regard to their employment status. At the time of Dorsey's formal complaint against him, Wright was a tenured University Professor at Mason (the highest level a professor can obtain). *See* Compl. ¶ 9. As discussed above, at the time of Wright's formal complaint against her, Dorsey was not employed by Mason and her only previous employment was as a part-time adjunct faculty member in Mason's online LLM program. *See supra* at 10; Exs. 1 & 2. Given that the Title IX regulations expressly permit universities to dismiss complaints against individuals who are not currently enrolled or employed, the difference in employment status is a "differentiating or mitigating circumstances that would distinguish . . . the employer's treatment of them." *Haywood*, 387 F. Appx. at 359.

To the extent Wright is basing his selective enforcement claim on Mason allowing Dorsey to amend her formal complaint to add a new claim of retaliation after Wright resigned

from Mason, his claim fares no better.  As an initial matter, Dorsey's new allegation of retaliation (that Wright's defamation lawsuit against her was retaliation for filing her Title IX formal complaint) and Wright's allegations of retaliation (that Dorsey retaliated against him by sharing her accusations) bear no similarity and involved completely different alleged conduct. Moreover, the circumstances of the two decisions are fundamentally different.  In the case of Dorsey's amended complaint, there was an ongoing Title IX matter that was initiated when Wright was an employee of Mason to which the additional claim was added.  That is an entirely different context than Wright's attempt to initiate a new Title IX matter against a non-employee. This again constitutes "differentiating or mitigating circumstances that would distinguish . . . the employer's treatment of them."  *Haywood*, 387 F. Appx. at 359.

*Finally,* Wright has alleged nothing that makes it plausible that the reason Mason handled Wright and Dorsey's formal complaints differently had anything to do with Wright's gender. *See Owen*, 2020 U.S. Dist. LEXIS 64579, at *18-20 (dismissing selective enforcement claim where no allegations that "the selective enforcement of this policy was motivated by gender bias").  As the Fourth Circuit held in *Sheppard*, regardless of the Title IX theory, a plaintiff must plausibly plead that gender bias was a "but-for cause" of the challenged action.  Here, Wright offers nothing that even suggests that the different handling of his and Dorsey's complaints was because of his gender; alleging only conclusorily that "[t]his disparate treatment was caused by Mr. Wright's sex."  *See ACA Fin. Guar. Corp v. City of Buena Vista,* 917 F.3d 206, 212 (4th Cir. 2019) ("[S]imply reciting the cause of actions' elements and supporting them by conclusory statements does not meet the required standard.").  Nor could he, since Mason's reason for not pursuing his formal complaint was based on Dorsey's employment status, not Wright's gender.

14

*See* Ex. 1; *see also Veney*, 293 F.3d at 730 (court does not accept as "true allegations that contradict matters properly subject to judicial notice or by exhibit").

**III.    Wright Cannot State a Title IX Claim Under *Sheppard.***

In Count III, Wright attempts to make another claim under *Sheppard*, now asserting a claim on the basis that Title IX "bar[s] discipline in educational institutions subject to Title IX where the plaintiff's sex is the but-for cause of the discipline."  Compl. ¶ 173.  While Wright correctly states the law, he has no claim because he has not been disciplined by Mason.  Wright concedes this by admitting that the Title IX matter is ongoing, *Id.* ¶ 86, thus foreclosing his claim.  And Wright's claim that he is "imminently going to be disciplined by the University," Compl. ¶ 174, is pure speculation.  Prior to any finding, Mason must first complete its investigation, then the parties will have an opportunity to present their evidence and arguments to a neutral external hearing officer who will make a determination of responsibility.  Wright may appeal any adverse finding to a different neutral external appeal officer. Only after all of these steps would a final determination be made as to Wright's responsibility for the alleged Title IX violations.

Since no finding has been made, his claim is premature and should be dismissed.  Indeed, the Fourth Circuit held just this month that a Title IX plaintiff does "not have a complete and present cause of action for Title IX discrimination . . . until the [university] made clear its official position that [plaintiff] violated university policy."  *Reid v. James Madison Univ.*, 2024 U.S. App. LEXIS 575, at *18 (4th Cir. 2024). And even if he is found responsible after all of the above described process, he will not face discipline because he is no longer a Mason employee. *See* Compl. ¶ 104.  As such, Mason has no ability to impose discipline on him, further requiring dismissal of this claim.  The Court should dismiss this claim on these grounds alone.

Likely recognizing that he cannot state a claim based on actual discipline, Wright tries to shoehorn in a claim by claiming that statements made by the University "have a similar effect to publicly and officially disciplining him." Compl. ¶ 174. Wright fails to explain how making statements is the same thing as discipline, nor could he since the statements he references in the complaint had no impact on his employment status, salary, or any other condition of his employment, and all occurred after his resignation. *Sheppard*, the case under which Wright asserts this claim, specifically held that it was articulating the standard for claims about "higher-education disciplinary proceedings." 993 F.3d 230.[7] Likewise, Title IX only prohibits "exclud[ing] from participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination under any educational program or activity," 20 U.S.C. § 1681(a), and Wright offers no explanation for how a university making public statements about a non-employee falls into any of those categories. Accepting Wright's argument would dramatically expand the scope of Title IX far beyond the text of the statute and the Fourth Circuit's holding in *Sheppard.*

The Court should not entertain Wright's attempt to manufacture a Title IX claim, but even if it does choose to consider the claim, Wright's claim that the statements are the same as "officially disciplining" him is a gross exaggeration. Wright uses hyperbole and insinuation to make the statements out to be worse for him than they actually are. *See, e.g.,* Compl. ¶¶ 114, 127. A review of the actual texts of the statements shows that, to the extent they refer to Wright

---

[7] Moreover, even if such statements could be a basis for a Title IX claim, the claim must be dismissed because the statements Wright alleges all occurred after he resigned from Mason. *See* Compl. ¶ 104. As the First Circuit explained in the leading case on Title IX claims by individuals who are not university students or employees, a Title IX plaintiff "must suffer unjust or prejudicial treatment on the basis of sex while participating, or at least attempting to participate, in the funding recipient's education program or activity." *Doe v. Brown Univ.*, 896 F.3d 127, 131 (1st Cir. 2018). At the time the alleged statements were made, Wright was not participating or attempting to participate in any of Mason's educational programs or activities since he had already resigned.

at all, they refer to the already public accusations against him as allegations, making clear that the truth of the accusations had not yet been determined. *See* Ex. 4; Compl. ¶¶ 108-109, 114, 115, 125.[8]  Nor is it tantamount to discipline, for Mason to refer to the allegations that Wright repeatedly attempted to and, in some cases, did have sexual relationships with students and job applicants as "deeply concerning."  Likewise, Mason commending individuals for reporting allegations of sexual misconduct and condemning any attempt to silence or intimidate victims of sexual misconduct from coming forward does not pre-judge or "condemn" Wright; it only reinforces the crucial message that it is important to report allegations of sexual misconduct so they can be investigated.  Wright's attempt to make innocuous statements into "discipline," only shows how far he must reach to create a Title IX claim given that he has faced no discipline.

Assuming, *arguendo*, that Wright could somehow base a *Sheppard* claim on the statements referenced in the complaint, his claim would still fail because he has not plausibly alleged that his sex was the but-for cause of Mason making the statements. *See Sheppard*, 993 F.3d at 235.  To the contrary, his own allegations demonstrate that his sex was not the but-for cause of the statements.  As to the statements made by Dean Randall, Wright alleges that Dean Randall called him and told him the "Law School needed to make a statement because 'they were getting killed by the press.'" Compl. ¶ 112.  Wright has therefore pled himself out of the claim by pleading that the reason for making the statement had nothing do with Wright's gender, but rather public relations considerations. *See Peters*, 69 F.3d at 129.  Similarly, as to Mason's statement, Wright alleges that it was a "condemnation of Mr. Wright's lawsuit."  Compl. ¶ 127.

---

[8] Wright also references an event held by the American Constitution Society, a law student organization.  Wright misleadingly refers to the event as an "official event," suggesting that it was sponsored by the Mason.  Compl. ¶ 121.  Student organization events are not sponsored or controlled by Mason, nor could Mason consistent with the First Amendment stop a student organization from holding an event based on the content or subject matter of the event.

Again, Wright has pled himself out a claim by alleging that the reason for Mason's statement was to condemn his defamation lawsuit, which has nothing to do with his sex.

In addition to alleging facts that demonstrate that Wright's sex was *not* the but-for cause of the referenced statements, Wright also fails to allege any facts that would plausibly suggest that his sex was the but-for cause of the statements. The Fourth Circuit's recent holding in *Kashdan* is instructive. There, the Fourth Circuit affirmed the district court's dismissal of a similar claim brought by another Mason faculty member (who had actually been disciplined for Title IX violations). 70 F.4th at 701. Like Wright here, Kashdan also attempted to plead causation by pointing to "public statements" "as well as pressure from the Department of Education and the general climate at [Mason]." *Id.* The Fourth Circuit rejected those attempts holding the statements could not satisfy the pleading requirement because they "did not plausibly show anti-male bias" and that allegations of pressure and general campus climate do "not suffice itself to plausibly allege sex discrimination in a particular instance." *Id.*

Likewise, here, Wright has not alleged any statements that show *anti-male* bias. *Cf. Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 585 (E.D. Va. 2018) (finding plaintiff pled gender bias based on statement by decision maker that suggested he believed men always enjoy sexual contact even when not consensual). None of the statements discuss Wright's gender let alone contain statements suggesting Mason holds "outdated and discriminatory views of gender and sexuality." *Id.*; *see also Kashdan*, 70 F.4th at 701 (affirming dismissal where statements did not "plausibly show anti-male bias"). Even taking Wright's insinuations about the meaning of the statements as true, he has at most alleged that Mason may be anti-Wright,[9] but has offered

---

[9] Mason denies that it is in fact biased against Wright.

nothing to plausibly suggest Mason holds that view because of his gender.  "[B]ias against

people accused of sexual harassment and in favor of victims . . . indicate[s] nothing about gender

discrimination."  *Haley v. Va. Commonwealth Univ.*, 948 F. Supp. 573, 579 (E.D. Va. 1996).

Additionally, if Kashdan's allegations of pressure from the Department of Education and

general campus climate were insufficient to state a claim, *see* 70 F.4ᵗʰ at 701, then Wright's

certainly do not.[10]  Wright's allegations are even more of a stretch, since they rely on a Dear

Colleague Letter that was "rescinded in 2017," Compl. ¶ 25, and replaced with the current Title

IX regulation which requires universities to treat all parties in a Title IX case equally regardless

of sex.[11]  Wright fails to provide any explanation for why or how Mason could feel pressure to

comply with non-binding guidance that has been rescinded.  And courts have uniformly rejected

the argument that compliance with Title IX can be a basis to find sex-discrimination.  *See, e.g.,*

*Doe v. Fairfax Cty. Sch. Bd.*, 403 F. Supp. 3d 508, 519 (E.D. Va. 2019) ("Courts have widely

held that vigilance in enforcing Title IX, even when it results in bias in favor of victims and

against those accused of misconduct, is not evidence of anti-male bias.").

---

[10] To the extent the Court wishes to compare the allegations, Kashdan's complaint can be found
in E.D. Va. Case No. 19-cv-1249 (ECF 1).  Additionally, numerous courts have rejected the
"pressure" argument.  *See, e.g.*, *Doe v. Univ. of Colo.*, 255 F. Supp. 3d 1064, 1078 (D. Colo.
2017) ("pressure from the federal government to investigate sexual assault allegations more
aggressively—either general pressure exerted by the Dear Colleague Letter or specific pressure
exerted by an investigation directed at the University, or both—say nothing about the
University's alleged desire to find men responsible because they are men."); *Doe v. Univ. of
Cincinnati*, 173 F. Supp. 3d 586, 602 (S.D. Ohio 2016) ("[I]t is not reasonable to infer that UC
has a practice of railroading students accused of sexual misconduct simply to appease the
Department of Education and preserve its federal funding.").

[11] Wright oddly argues that Mason is still complying with the Dear Colleague Letter because it
still has a Title IX Coordinator.  Compl. ¶¶ 25-26.  Mason, like all universities subject to Title
IX, is required by the 2020 Title IX regulation to have a Title IX Coordinator.

Finally, Wright attempts a last Hail-Mary to try to plead anti-male bias by listing five complaints about the Title IX process that he claims "evidence[s]" that Mason's treatment of him is caused by his male sex. *See* Compl. ¶ 175.  As demonstrated elsewhere in this brief, none of these complaints are valid.  But even if they were valid complaints about the Title IX process, that would still be insufficient to plead Mason's statements were caused by gender bias.  None of the complaints have anything to do with Wright's gender so there is no basis for Wright to rely on them to plead gender bias.  Nor do any of them satisfy the requirements that this district has put on Title IX plaintiffs to plead gender bias by "pointing to statistical evidence of gender bias in the University's decision making, policies and procedures that are designed to reach gender-specific outcomes, and/or statements by university officials evidencing gender bias." *Marymount,* 297 F. Supp. 3d 573 at 585.  Wright does not even attempt to plead any of those requirements.  And this district has repeatedly rejected attempts by plaintiffs to plead gender bias in the manner Wright attempts here: listing actions he disagrees with and then claiming conclusorily that they must be because of gender bias.  Such allegations do not plausibly plead gender bias because "in the absence of specific factual allegations pointing to [gender] bias on the part of the defendants, it cannot be said that the discriminatory motive explanation is plausible rather than just conceivable." *Doe v. Rector & Visitor of George Mason Univ.*, 132 F. Supp. 3d 712, 733 (E.D. Va. 2015); *see also Sheppard v. Visitors of Va. State Univ. & Henry Debose*, 2019 U.S. Dist. LEXIS 198012, at *5 (E.D. Va. Nov. 14, 2019) ("allegations of a procedurally or otherwise flawed proceeding . . . combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss").  All Wright has alleged is that he disagrees with how Mason has handled his Title IX case and that he is male.  That is simply not enough to meet the "but-for causation" requirement under *Sheppard*.

## IV.    Wright Has Failed to Allege an Equal Protection Clause Claim. (Counts IV & V)

In Counts IV (individual capacity) and V (official capacity), Wright asserts identical claims under § 1983 for violations of the Equal Protection Clause against Mason's current Title IX Coordinator, Thomas Bluestein.  Wright's claims are based on the same issue as his selective enforcement claim (Count II)—Mason investigating Dorsey's Title IX complaint and dismissing his.  They fail to state a claim for the same reasons: failure to plead a similarly situated comparator or discriminatory animus.  *See Sheppard*, 993 F.3d at 238 (dismissing Equal Protection Clause claim that "rel[ied] on the same facts as [the] Title IX claim")

"In order to survive a motion to dismiss an equal protection claim, a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." *Sheppard*, 993 F.3d at 238.  As discussed above, Wright and Dorsey were not similarly situated: (1) they were accused of vastly different conduct and (2) Wright was employed as a University Professor and Dorsey was not employed by Mason.  *See supra* at 12-14.  Wright also has not and cannot plead that discriminatory animus was the reason his Title IX complaint was dismissed given that the dismissal notice states that the reason was Dorsey's employment status.  *See* Ex. 1. Wright also does not plead a single fact that even attempts to suggest that Bluestein harbors anti-male biases.  All Wright offers is the conclusory allegation that "[t]his disparate treatment was caused by discrimination on the basis of sex."  Compl. ¶ 193.  As in *Sheppard*, such "conclusory statement[s]" are insufficient and "[a]bsent any specific allegations that [Bluestein] was motivated by discriminatory animus, [Wright's complaint] fails to give rise to a plausible equal protection claim."  993 F. 3d at 238.  Counts IV and V must, therefore, be dismissed.

21

Wright's claim against Bluestein in his individual capacity must also be dismissed for the separate reason that Bluestein did not make the decision to dismiss Wright's Title IX formal complaint. In order to state a § 1983 claim, a plaintiff must plead that the defendant "through [his] own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. As the Fourth Circuit has explained, "[t]o establish personal liability under § 1983 . . . the plaintiff must affirmatively show that the *official charged acted personally* in the deprivation of the plaintiff's rights." *Williams v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018). As clearly shown on the dismissal notice, that decision was made by Mason's former Title IX coordinator, Crystal Coombes. *See* Ex. 1. Moreover, the decision was made on June 24, 2022 and Wright alleges (correctly) that Bluestein did not become Mason's Title IX Coordinator until January of 2023. *See* Compl. ¶ 4. Bluestein, therefore, did not personally treat Dorsey's complaint differently than Wright's, which is another reason the individual capacity claim must be dismissed.

## V.   Wright's First Amendment Claims Must Be Dismissed. (Counts VI & VII)

In Counts VI (official capacity) and VII (individual capacity), Wright claims that Mason investigating Dorsey's Title IX claim of retaliation due to Wright's defamation lawsuit violates his rights under the Petition Clause of the First Amendment. Wright's claim, however, ignores that Mason's approach to evaluating the retaliation claim follows both Supreme Court and Fourth Circuit precedent holding that a lawsuit "filed with retaliatory motive and lacking a reasonable basis in fact or law" is not protected by the First Amendment and can constitute retaliation. *Darveau*, 515 F.3d at 341; *Bill Johnson's*, 461 U.S. at 744 (NLRB could enjoin "an improperly motivated suit lacking a reasonable basis"); *see* Ex. 5.

Mason is following these decisions with regard to this retaliation claim because the Title IX regulation states that the "exercise of rights protected under the First Amendment does not

constitute Retaliation." 34 C.F.R. § 106.71(b). Therefore, Wright can only have engaged in retaliation if his lawsuit was not protected by the First Amendment. Likewise, Mason cannot violate Wright's First Amendment rights if it only holds him responsible for retaliation after determining that his lawsuit is not protected by the First Amendment. Mason documented the standard it would use (including citations to the relevant cases) in an email sent to Dorsey and Wright. *See* Ex. 5.[12] As explained in the email, Mason could only find Wright responsible for retaliation if the hearing officer determined that his lawsuit was not protected First Amendment activity under *Bill Johnson's* and *Darveau*, i.e., that the lawsuit lacked a reasonable basis in law or fact and was filed with a retaliatory motive. *See* Ex. 5.

Mason believes that this approach is correct and in compliance with the applicable Supreme Court and Fourth Circuit law. And Wright concedes in his complaint that there are circumstances under which filing a lawsuit is not protected by the First Amendment. *See* Compl. ¶ 210. Wright asserts, however, that the proper standard is that the lawsuit must be "utterly baseless or filed with knowledge of falsity." *Id.* **Therefore, the only dispute appears to be whether Mason is applying the correct standard.** Wright provides no explanation for where he derives his proposed standard and the terms "utterly baseless" [13] and "filed with knowledge of

---

[12] Wright complains that Mason relying on case law is problematic because parties to a Title IX matter may not be attorneys or represented. Wright's complaint is not well taken given that both Wright and Dorsey are attorneys and both are represented by sophisticated legal counsel.

[13] In *Bill Johnson's*, the Court uses the term "baseless" and "lacking a reasonable basis" interchangeably to describe lawsuits that are not protected by the First Amendment. *See* 461 U.S. at 743-744. And in *Darveau*, the Fourth Circuit interpreted the Supreme Court's use of the term "baseless" to mean "lacking a reasonable basis in fact or law." 515 F.3d at 341. Mason, therefore, believes that the two terms are interchangeable as used in this context. Mason also agrees with Wright that even if his lawsuit is ultimately dismissed, that alone would be insufficient to establish that filing it was not First Amendment activity. *See* Compl. ¶ 215.

23

falsity" do not appear in *Bill Johnson's* or *Darveau*, nor has Wright's counsel directed Mason to other case law that supports such a standard.

Mason believes that the standard articulated in Ex. 5 is the correct one, and that Mason's approach does not violate the Petition Clause.  Thus Counts VI and VII should be dismissed with prejudice.  However, if the Court disagrees, Mason would welcome the Court articulating the standard Mason should use.

Additionally, even if the Court finds that Wright can state a claim for violation of the First Amendment against Bluestein in his official capacity, the personal capacity claim (Count VII) should be dismissed under qualified immunity.  Qualified immunity "shields government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person."  *See Meyers v. Balt. Cty.*, 713 F.3d 723, 731 (4th Cir. 2013).  "In conducting the clearly established analysis, [a court] first examine[s] cases of controlling authority in this jurisdiction—that is decisions of the Supreme Court, [the applicable] court of appeals, and the highest court of the state in which the case arose."  *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538 (4th Cir. 2017).  Counsel is unaware of any case law, let alone binding Supreme Court or Fourth Circuit case law, that has dealt with the precise situation at issue here in the Title IX context.  *See Doe v. Russell Cty. Sch. Bd.*, 292 F. Supp. 3d 690, 713 (W.D. Va. 2018) (granting qualified immunity where "plaintiff has not pointed the court to any controlling authority sufficiently similar to the situation confronted by" the defendants).  As Exhibit 5 demonstrates, Bluestein looked to analogous Supreme Court and Fourth Circuit law to determine the best course of action.  Even if the Court determines that the wrong decision was made, Bluestein cannot be held personally liable where there is no clearly established law and he relied on the closest analogous law.  *See*

*Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) ("When properly applied [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law."); *Raub v. Campbell*, 785 F.3d 876, 881 (4th Cir. 2015) ("[W]e have emphasized repeatedly, officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.").

## VI.     Wright's Due Process Claim Must Be Dismissed.  (Count VIII)

In Count VIII, Wright attempts to plead a § 1983 due process liberty claim against Bluestein in his official capacity.  This claim must be dismissed for several reasons.

As an initial matter, this claim is barred by sovereign immunity.  "A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" and is therefore "no different from a suit against the State itself." *Fauconier v. Clarke*, 966 F.3d 265, 279 (4th Cir. 2020).  Mason is a "state-supported university that is entitled to the same sovereign immunity as the Commonwealth of Virginia," *Adkins v. Rector & Visitors of George Mason Univ.*, 2015 U.S. Dist. LEXIS 128150, at *3 (E.D. Va. Sept. 23, 2015). It is well established that Congress did not abrogate the state's sovereign immunity from § 1983 claims.  *See Quern v. Jordan*, 440 U.S. 332, 342, 345 (1979).

Given that Wright limits the request sought in Count VIII to injunctive relief, it is likely that he will try to argue that the claim can survive under the *Ex parte Young* exception.  But that "narrow" exception is inapplicable because it "applies only to prospective relief [and] does not permit judgments against state officers declaring that they violated federal law in the past." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).  Here, Wright's claim is that Mason violated his due process rights when it previously made statements about him, and he does *not* allege that Mason will or intends to make any future statements about him. *See* Compl. ¶ 222.  In other words, Wright seeks an injunction declaring past actions by Mason

25

to be unlawful, exactly what is not permitted by the *Ex parte Young* exception.  *Id* ¶ 225.  The exception "does not apply when the alleged violation of federal law occurred entirely in the past."  *DeBauche v. Trani*, 191 F.3d 499, 505 (4th Cir. 1999).[14]

Wright's claim must also be dismissed because he has not alleged that Bluestein was involved in making the statements nor that he has the ability to rescind the statements, the injunctive relief sought.  *See* Compl. ¶ 225.  The "*Ex parte Young* exception is directed at officers of the state who are clothed with some duty in regard to the enforcement of the laws of the state, *and* who threaten and are about to commence proceedings to enforce against parties affected by an unconstitutional act."  *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010).  The state officer must have both "proximity to and responsibility for the challenged state action."  *Id.*  Likewise, "the *Ex parte Young* exception only authorizes suits against state officials who have the power to provide the injunctive relief requested by the plaintiff."  *Al-Habashy v. Va. Dep't of Juvenile Justice*, 2014 U.S. Dist. LEXIS 134848, at *28-29 (W.D. Va. Sept. 24, 2014).  As Bluestein was neither involved in making the statements nor has the ability to rescind them, Wright's claim must be dismissed.[15]

Even if the Court could exercise jurisdiction, this claim must be dismissed under the Fourth Circuit's recent holding in *Reid* that a § 1983 due process claim is "premature" if brought

---

[14] For the same reasons, Wright also lacks standing to seek an injunction under *Los Angeles v. Lyons*, 461 U.S. 95, 103, 111 (1983), because an injunction "is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again" and "past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy."

[15] Wright also cannot meet the redressability requirement for standing to seek an injunction for the same reasons.  *See Disability Rights S.C. v. McMasters*, 24 F.4th 893, 903 (4th Cir. 2022) (no redressability because defendant "has no responsibility for enforcing the Proviso" so injunction enjoining enforcement "would have no effect on his conduct").

before the "final determination in [the] Title IX proceedings.  2024 U.S. App. LEXIS 575, at *21.  As explained, no final determination has been made in Wright's Title IX matter.

Assuming, *arguendo*, that Wright could overcome all the above, he also fails to state a liberty interest due process claim.  "To state this type of claim, a plaintiff must plausibly allege that the charges against him: (1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." *Kashdan*, 70 F.4th at 702; *see also Paul v. Davis*, 424 U.S. 693, 701 (1976) ("reputation alone, apart from some more tangible interest such as employment," is neither "'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause.").

*First*, Wright does not allege that Mason made public the charges against him.  To the contrary, Wright alleges repeatedly that it was Dorsey who publicized the allegations against him.  *See* Compl. ¶¶ 87, 105, 106.  All of the statements Wright alleges Mason made occurred *after* there were numerous "media articles labeling [Wright] a perpetrator of sexual harassment, *because of the women's statements*."  *Id.* ¶ 106 (emphasis added), Ex. 3.  Nor does Wright identify a single statement by Mason that disclosed the *charges* against him.  All he alleges is that Mason made public statements responding to the already public allegations against him.  *See* Compl. ¶ 107 (alleging that "University statements were made "in response to Ms. Dorsey's public statements").  And a review of the statements incorporated by reference in the complaint, show that Mason never confirmed or in any way affirmed the charges against Wright.  *See* Ex. 4.

*Second,* and most fatally, Wright cannot allege that any statements made by Mason "were made in conjunction with his termination or demotion," *Kashdan*, 70 F.4th at 702—because he was neither terminated or demoted.  *See* Compl. ¶ 104 (admitting Wright resigned).  Indeed, his resignation occurred prior to any of the alleged statements by Mason.  *See id.* ¶¶104-115, 125-

127.  As the Fourth Circuit held in *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 171 n.5 (4th Cir. 1988), "a public employer's stigmatizing remarks do not deprive an employee of a liberty interest unless they are made in the course of a discharge or significant demotion" and where the employee "resigned voluntarily" that "effectively disposes of any liberty interest claim he might assert." *See also Kashdan*, 70 F.4th at 702 (affirming dismissal of liberty interest claim where professor was not terminated or demoted).

Likely recognizing this problem, Wright tries to save his claim by asserting that the statements were made "in connection with an official act that altered Mr. Wright's legal status – it charged him with retaliation."  Compl. ¶ 224.  In addition to failing to allege any connection between the statements and the decision to proceed with Dorsey's retaliation claim, Wright also fails to explain how Mason investigating Wright for retaliation "altered" his "legal status."  Nor could he, since the decision to investigate Wright had no impact on his employment or any other status, especially since he had already resigned from Mason.  And even if he could explain it, his claim would still fail because his allegation does not even come close to meeting the termination or demotion requirement for a due process liberty interest claim.  Wright appears to be referencing language in *Paul* that a plaintiff in a liberty interest claim must plead an "alteration of legal status," 424 U.S. at 708, but the Fourth Circuit has held, consistent with the requirement to plead termination or demotion, that "[i]n the context of public employment, this change in status occurs when the government acting as an employer discharges one of its employees." *Shirvinski v. United States Coast Guard*, 673 F.3d 308, 315 (4th Cir. 2012).  Again, Wright was not discharged or demoted, and thus cannot state a liberty interest claim.

*Finally*, Wright does not allege that Mason made any false statements about him.  *See* Compl. ¶¶ 104-115, 125-127.  Nor could he since the statements are opinions.  *See id.* ¶ 114

(Dean Randall stating that he was "deeply concerned" about allegations); ¶ 125 (stating Mason's opinion that it was courageous for Dorsey to bring allegations about Wright to the University's attention).  His failure to allege falsity is another reason the claim must be dismissed.

## VII.   The Breach of Contract Claim Must Be Dismissed. (Count IX)

Finally, Wright attempts to repackage his previous claims as a breach of contract claim. As an initial matter, Wright's breach of contract claim is barred by sovereign immunity.  As noted above Mason is a "state-supported university that is entitled to the same sovereign immunity as the Commonwealth of Virginia," *Adkins*, 2015 U.S. Dist. LEXIS 128150, at *3.  As has been repeatedly recognized by this Court, Virginia has only waived its sovereign immunity as to contract claims if a plaintiff has complied with the requirements of Virginia Code § 2.2-814.  *See Amaram v. Va. State Univ.*, 476 F. Supp. 2d 535, 540 (E.D. Va. 2007) ("Limited waivers of immunity are strictly construed in favor of the sovereign, and to be effective as against the sovereign must be strictly observed.").  Wright does not allege that he has complied with the requirements of Virginia Code § 2.2-814, and thus this claim must be dismissed.

Even if this claim was not barred by sovereign immunity, it would still fail because Wright has failed to allege that Mason breached "a legally enforceable obligation" it owed to him.  *See Jones v. Fulton Bank, N.A.*, 565 Fed. Appx. 251, 252 (4th Cir. 2014) (stating the elements of a breach of contract claim under Virginia law).  Wright's claim is based on Mason allegedly breaching his employment contract by supposedly violating Mason's Title IX policy in four ways.  *See* Compl. ¶ 229.  But three of the four ways (1, 3, and 4) all occurred *after* Wright's employment contract ended with his resignation.  *Compare* Compl. ¶ 104 (Wright resigned effective August 8, 2023) *with id.* ¶ 133 (on September 7, 2023 Mason issued notice that it would be investigating retaliation claim); ¶ 124 (on September 14, 2023 Mason made

public statements supposedly condemning him); and ¶ 140 (on October 4, 2023 Mason sent an email explaining the standard for evaluating the retaliation claim).  Wright cannot allege Mason breached a contract based on actions that occurred after he terminated the contract by resigning. *See Amaram*, 476 F. Supp. 2d at 541 ("[v]ery simply, an action for breach of contract will not lie where there is no contract."); *see also Amazon.com Inc v. WDC Holdings LLC*, 2023 U.S. Dist. LEXIS 61285, at *36-37 (E.D. Va. Apr. 6, 2023) (dismissing breach of contract claim based on conduct that occurred after termination of contract).  Moreover, Wright has not identified any provisions of his contract or university policy that these actions breached; all he has alleged is his disagreement with Mason's decisions.

Likewise, the final action alleged—Wright repeating his misleading complaint about Mason's "use of the term 'active employee' to reject Mr. Wright's complaint," Compl. ¶ 229—is not a basis to assert a breach of contract.  As explained above, Wright is misrepresenting how that term was used in the notice of dismissal. *See supra* at 9-10; *see* Ex. 1.  He has also failed to point to any policy language that Mason breached by making the determination that Dorsey was not a Mason employee or by using the term "active employee" in the dismissal notice.  Wright cannot transform his disagreement with Mason's decision into a breach of contract claim.

## CONCLUSION

For the foregoing reasons the complaint should be dismissed with prejudice.

January 26, 2024                                 RESPECTFULLY SUBMITTED

_____/s/_____

Eli S. Schlam, Asst. Atty. Gen.
Virginia Bar Number 92987
George Mason University
4400 University Drive,
MS 2A3
Fairfax, VA 22030
Phone: (703) 993-2619
Fax: (703) 993-2340
eschlam@gmu.edu

*Attorney for the Rector and Visitors of George Mason University and Thomas Bluestein*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of January 2024, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to counsel of record in this case.

\_\_\_\_\_/s/_____

Eli S. Schlam, Asst. Atty. Gen.
Virginia Bar Number 92987
George Mason University
4400 University Drive,
MS 2A3
Fairfax, VA 22030
Phone: (703) 993-2619
Fax: (703) 993-2340
eschlam@gmu.edu