# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

Joshua Wright,                               )
                                             )
                                             )
                    *Plaintiff,*             )
                                             )
                                             )          Case No. 1:24-cv-00002 (PTG/IDD)
             v.                              )
                                             )
The Rector and Visitors of                   )
George Mason University *et al.,*            )
                                             )
                    *Defendants.*            )
                                             )

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................ i

TABLE OF AUTHORITIES.................................................................................... ii

BACKGROUND......................................................................................................1

ARGUMENT ...........................................................................................................5

    I.   Legal Standard. ...........................................................................................5

        a.   Federal Rule of Civil Procedure 12(b)(1)....................................5
        b.   Federal Rule of Civil Procedure 12(b)(6). ................................. 6

    II.   Defendants' 12(b)(1) motion must be denied because this Court possesses subject matter jurisdiction over Mr. Wright's claims. ................................................. 6

    III.   Defendants' 12(b)(6) motion must be denied. ...................................................10

        a.   Defendants' documents are outside of the pleadings and must be ignored. .................................................................................... 11
        b.   Mr. Wright states a Title IX deliberate indifference claim. .......................13
        c.   Mr. Wright alleged a selective enforcement claim....................................19
        d.   Mr. Wright's *Sheppard* claim survives...................................................... 22
        e.   Mr. Wright stated Equal Protection claims for the same reasons he stated Title IX claims. .................................................................. 26
        f.   Mr. Wright states First Amendment claims.................................................27
        g.   Mr. Wright requests leave to amend his complaint relating to his liberty interest.................................................................................. 29
        h.   Mr. Wright stated a breach of contract claim. ......................................... 29

CONCLUSION....................................................................................................... 30

CERTIFICATE OF SERVICE ............................................................................... 32

## TABLE OF AUTHORITIES

**Cases**

*A Soc'y Without A Name v. Virginia,*

    655 F.3d 342, 348 (4th Cir. 2011) ................................................................................. 26

*Ashcroft v. al-Kidd,*

    563 U.S. 731, 743 (2011) ............................................................................................... 28

*Ashcroft v. Iqbal,*

    556 U.S. 662, 678 (2009) ..................................................................................... 6, 11, 12

*Balazs v. Liebenthal,*

    32 F.3d 151, 155 (4th Cir. 1994) ...................................................................................15

*Bill Johnson's Restaurants, Inc. v. N.L.R.B.,*

    461 U.S. 731 (1983) ................................................................................................. 27, 28

*Bland v. Roberts,*

    730 F.3d 368 (4th Cir. 2013) ..........................................................................................7

*Bostock v. Clayton Cnty., Georgia,*

    140 S. Ct. 1731, 1739 (2020) ................................................................................... 22, 24

*Cavalier v. Cath. Univ. of Am.,*

    306 F. Supp. 3d 9, 29 (D.D.C. 2018) ...........................................................................18

*City of Los Angeles v. Lyons,*

    461 U.S. 95, 111 (1983) ................................................................................................. 8

*Darveau v. Detecon, Inc.,*

    515 F.3d 334 (4th Cir. 2008) ................................................................................... 27, 28

*Davis v. Monroe Cnty. Bd. Of Ed.*,

   526 U.S. 629 (1999) .................................................................................. 13, 18

*Doe 2 by & through Doe 1 v. Fairfax Cnty. Sch. Bd.*,

   384 F. Supp. 3d 598, 608 (E.D. Va. 2019) *aff'd*, 832 F. App'x 802 (4th Cir. 2020).... 20

*Doe v. Baum*,

   903 F.3d 575, 586 (6th Cir. 2018) .................................................................. 23

*Doe v. Columbia Univ.*,

   831 F.3d 46, 58 n.11 (2d Cir. 2016) ............................................................... 24

*Doe v. Columbia Univ.*,

   831 F.3d 46, 58-59 (2d Cir. 2016) ................................................................. 23

*Doe v. Fairfax Cnty. Sch. Bd.*,

   1 F.4th 257, 275 (4th Cir. 2021) .................................................................... 17

*Doe v. Hamilton Cnty. Bd. of Educ.*,

   329 F. Supp. 3d 543, 558 (E.D. Tenn. 2018) ............................................. 13, 14

*Doe v. Princeton Univ.*,

   30 F.4th 335, 342 (3d Cir. 2022) ................................................... 12, 19, 21, 25

*Doe v. Purdue*,

   928 F.3d 652, 668-69 (7th Cir. 2019) .......................................................... 23

*Doe v. Salisbury Univ.*,

   107 F. Supp. 3d 481 (D. Md. 2015) .............................................................. 14

*Doe v. Univ. of S. Ind.*,

   43 F.4th 784, 793 (7th Cir. 2022) ............................................................ 22, 23

*Doe v. Univ. of Virginia*,

   No. 3:22-CV-00064, 2023 WL 2873379, at *5 (W.D. Va. Apr. 10, 2023) ............. 12, 23

*Doe v. Virginia Polytechnic Inst. & State Univ.*,

    400 F. Supp. 3d 479, 488-489 (W.D. Va. 2019)..........................................................7, 8

*Doe v. Virginia Polytechnic Inst.*,

    No. 7:19-CV-00249, 2022 WL 3334501, at *7 n.11 (W.D. Va. Aug. 11, 2022) ....... 22, 24

*Does 1-2 v. Regents of the Univ. of Minnesota*,

    999 F.3d 571, 581 (8th Cir. 2021).................................................................................. 20

*Ex parte Young*,

    209 U.S. 123 (1908).....................................................................................................7, 8

*Feminist Majority Found. v. Hurley*,

    911 F.3d 674, 686 (4th Cir. 2018) ................................................................................13

*Filak v. George*,

    267 Va. 612, 619 (2004) ...............................................................................................29

*Franks v. Ross*,

    313 F.3d 184, 197 (4th Cir. 2002) ..................................................................................7

*Gasner v. Cnty. of Dinwiddie*,

    162 F.R.D. 280, 281 (E.D. Va. 1995) ............................................................................ 11

*Jennings v. Univ. of N. Carolina*,

    482 F.3d 686, 695 (4th Cir. 2007)...........................................................................14, 17

*Kashdan v. George Mason Univ.*,

    70 F.4th 694, 701 (4th Cir. 2023) .....................................................................19, 20, 22

*Luskin v. Univ. of Maryland, Coll. Park, Maryland*,

    No. 22-1910, 2023 WL 2985121 (4th Cir. Apr. 18, 2023)............................................15

*Massey v. Ojaniit*,

    759 F.3d 343, 353 (4th Cir. 2014) ................................................................................. 6

*McBurney v. Cuccinelli,*

   616 F.3d 393, 400-401 (4th Cir. 2010) ....................................................... 8, 9

*Monroe v. City of Charlottesville, Va.,*

   579 F.3d 380, 386 (4th Cir. 2009) .................................................................14

*Ortegel v. Virginia Polytechnic Inst. & State Univ.,*

   No. 7:22-CV-00510, 2023 WL 8014237, at *9 (W.D. Va. Nov. 20, 2023) ............. 24, 26

*Owens v. Baltimore City State's Att'ys Off.,*

   767 F.3d 379, 396 (4th Cir. 2014) ............................................................... 29

*Rouse v. Duke Univ.,*

   869 F. Supp. 2d 674, 384-385 (M.D.N.C. 2012) ............................................14

*Sales v. Grant,*

   224 F.3d 293, 296 (4th Cir. 2000) ............................................................... 26

*Schwake v. Arizona Bd. of Regents,*

   967 F.3d 940, 948 (9th Cir. 2020) ............................................................... 23

*Sheppard v. Visitors of Virginia State Univ.,*

   993 F.3d 230, 236 (4th Cir. 2021) ...............................................13, 22, 24, 26

*Williamson v. Stirling,*

   912 F.3d 154, 171 (4th Cir. 2018) ............................................................... 26

*Zak v. Chelsea Therapeutics Int'l, Ltd.,*

   780 F.3d 597, 607 (4th Cir. 2015) .................................................................12

**Statutes**

20 U.S.C. §1681 ...................................................................................... 13, 14

20 U.S.C. §1681(a) ......................................................................................17

28 U.S.C. §1331............................................................................................ 6

28 U.S.C. §1367 ................................................................................................ 6

Va. Code §2.2-814 ....................................................................................... 7, 10

### Other Authorities

Hearing Transcript at 11:3-12, 45:3-19, *Doe v. University of Maryland*, No. 22-0872-PX

 (D. Maryland March 28, 2023) ................................................................... 15

### Rules

Fed. R. Civ. P. 12(b)(1) ................................................................................ 5, 7

Fed. R. Civ. P. 15(a)(2) ................................................................................... 29

### Regulations

34 C.F.R. §106.44 ............................................................................................ 2

34 C.F.R. §§106.44(a) ..................................................................................... 2

34 C.F.R. §106.30 .............................................................................. 3, 14, 19

34 C.F.R. §106.45(b)(1)(iv) ........................................................................ 2, 5

34 C.F.R. §106.45(b)(3)(i) ..................................................................... 1, 2, 19

34 C.F.R. §106.45(b)(3)(ii) .......................................................................... 1, 2

34 C.F.R. §106.71(a) ........................................................................................ 2

85 Fed. Reg. 30093 ........................................................................................ 18

George Mason University admits it continues to prosecute its Title IX matter against Mr. Wright while no longer having any ability to discipline him. The only reason it would do so is to falsely label him a perpetrator of sexual misconduct and inflict as much harm on him as possible. To continue to expend such resources to prosecute him, while acknowledging it cannot discipline him, only adds to the evidence of gender bias, rather than detracting from it as the University suggests. Its motion to dismiss should be denied.

## BACKGROUND

Before Mr. Wright's Title IX matter began at the University, Defendants were primed to put their thumb on the scale in favor of his female accuser and against him. As such, Mr. Wright pleads a variety of external pressures in his complaint.[1] In sum, the external pressure went one way – against Mr. Wright because he was male.

The University was, however, subject to the regulations promulgated by the Department of Education in 2020, which carefully proscribe the actions the University may take in response to formal complaints of sexual harassment. *Id.* ¶31.[2] Pursuant to the

---

[1] Such allegations include that for over a decade, pressure from the United States Department of Education has been bearing down on the University, beginning with the Dear Colleague Letter and its subsequent guidance, then by federal investigations into its handling of sexual harassment claims (which are ongoing), and then by the confirmation of Assistant Secretary for Civil Rights Catherina Lhamon (a key proponent of Obama-era guidance on Title IX, which weakened protections for accused students and faculty) to her previous post at the Department of Education. *See generally*, ECF No. 1.2, ¶¶14-29. This is to say nothing of the implicit pressure from female students or faculty plaintiffs, who tend to be female. *Id.* ¶15.

[2] Those regulations, at 34 C.F.R. Part 106, establish when a university must dismiss a formal complaint and when it may dismiss a formal complaint, among other things. *Id.* ¶¶32-35; 34 C.F.R. §§106.45(b)(3)(i), 106.45(b)(3)(ii). The University must dismiss a formal complaint "[i]f the conduct alleged in the formal complaint would not constitute sexual harassment as defined in §106.30 even if proved, did not occur in the recipient's education program or activity, or did not occur against a person in the United States…" 34 C.F.R. §106.45(b)(3)(i). Additionally, "For the purposes of this section… §106.45,

regulations, if a formal complaint alleges conduct in which the University does not exercise "substantial control over both the respondent and the context in which the sexual harassment occurs," the University must dismiss the formal complaint. 34 C.F.R. §§106.44(a), 106.45(b)(3)(i). The University's Policy 1202 tracks this same mandatory dismissal language, in compliance with the regulations. ECF No. 1.2, ¶34. By contrast, the University may dismiss a formal complaint where, among other things, the respondent is no longer employed by the University. 34 C.F.R. §106.45(b)(3)(ii); ECF No. 1.2, ¶35.

At all times, the University must presume respondents "not responsible" for the allegations and **may not construe First Amendment protected activity as retaliation**. 34 C.F.R. §§106.45(b)(1)(iv), 106.71(b)(1) (emphasis added); ECF No. 1.2, ¶¶36-37. Finally, it must treat all parties equitably and without discrimination on the basis of sex. 34 C.F.R. §106.44; ECF No. 1.2, ¶38. The University was required to follow these regulations when Mr. Wright's case arose. ECF No. 1.2, ¶¶31, 60.

Mr. Wright met the complainant while teaching at the University over ten years ago. *Id.* ¶39. They began a romantic relationship in 2010 that continued on-and-off until late 2021, eleven years later. *Id.* ¶42. Throughout the relationship, the two accomplished attorneys shared many interests, co-authored several publications, and were part of the same professional organizations. *Id.* ¶¶43-46. But as relationships are wont to do, it ultimately ended. *Id.* ¶50. Mr. Wright ended the romantic relationship by writing to the complainant that he wished to pursue a different relationship. *Id.*

---

'education program or activity' includes *locations, events, or circumstances over which the recipient exercised substantial control over both the respondent and the context in which the sexual harassment occurs, and also includes any building owned or controlled by a student organization that is officially recognized by a postsecondary institution.*" 34 C.F.R. §106.44(a) (emphasis added).

The complainant did not take the breakup well. Her immediate response to the breakup was to text Mr. Wright "WHAT THE ACTUAL FUCK," among other things. *Id.* ¶53. She then came to his office and yelled at him for him ending the relationship. *Id.* ¶¶54-55. When that did not work, she contacted both his assistant and his current girlfriend repeatedly with unwanted calls and texts. *Id.* ¶¶56-57.

Still not receiving the sought after response from Mr. Wright, she turned to more punitive measures – filing a false Title IX complaint against Mr. Wright alleging that he retaliated against her after she ended the relationship, the exact opposite of the truth. *Id.* ¶¶61, 63. Remarkably, she also alleged the entire eleven-year consensual relationship had been a product of coercion and sexual harassment, and that Mr. Wright sexually assaulted her at the beginning of the eleven-year relationship. *Id.* ¶62. Finally, she alleged that Mr. Wright somehow interfered with her funding for a fellowship at the University of Virginia ("UVA"). *Id.* ¶70. She knew these statements were false when she made them. *Id.* ¶64.

As soon as the University's investigation into the complainant's claims began, its bias began to reveal itself. It did not, contrary to its regulatory obligations, dismiss the complainant's allegation relating to the UVA fellowship, despite UVA being outside of the University's "substantial control." *Id.* ¶81.[3] Instead, it adopted the complainant's allegations wholesale and opened an investigation to determine, among other things, if the complainant was sexually harassed or assaulted eleven years prior. *Id.* ¶79.

_____

[3] Notwithstanding Mr. Wright's arguments in Section II, if the University's documents are to be believed and the complainant's employment ended in May 2021, the University should never have initiated the Title IX process in the first place because the complainant was not an employee at the time she filed her original formal complaint. 34 C.F.R. §106.30 ("At the time of filing a formal complaint, a complainant must be participating in or attempting to participate in the education program or activity of the recipient with which the formal complaint is filed.").

Mr. Wright filed a complaint against the complainant, alleging she had subjected him to harassment by falsely alleging that he committed sexual harassment to his clients, coming to his office at the University to berate him about his cessation of the romantic relationship, retaliation, and a violation of the "no contact order" the University had put in place between them. *Id*. ¶¶88-89. The University did not behave similarly in response to his complaint. *Id*. The University refused to accept his complaint, contending it did not have "jurisdiction" over the complaint because the complainant was no longer an employee, thereby using its discretionary dismissal authority instead of proceeding with an investigation against the complainant. *Id*. ¶92. In dismissing Mr. Wright's complaint because the complainant was not employed, the University utilized a phrase not found in its policies – referring to the complainant as not an "active employee." *Id*. ¶¶93-94.

When the complainant sought to amend her complaint after Mr. Wright resigned, the two parties were treated differently again. *Id*. ¶133. Even though Mr. Wright was no longer employed, the University decided it had "jurisdiction" over his lawsuit in Fairfax County Circuit Court and charged him with retaliation. *Id*. Just like with UVA, the University's decision to charge Mr. Wright with retaliation here necessitated that it find it had substantial control over context which it obviously had no control. *Id*. ¶134.

Upon receiving Mr. Wright's complaints of differential treatment, First Amendment retaliation, violation of the Title IX regulations, and breach of contract, the University, through Defendant Bluestein, refused to dismiss the complainant's amended Title IX complaint. *Id*., ¶139. Instead, it came up with an *ad hoc* procedure wherein the University hearing officer (who may or may not be an attorney) would analyze federal caselaw and render a legal judgment about whether the retaliation charge violated Mr. Wright's First Amendment rights. *Id*. ¶¶139-141. This conflicts with the University's

4

policy, which describes the role of the hearing officer as "mak[ing] a determination of responsibility (responsible or not responsible) for the alleged violations of Policy 1202 stated in the Formal Complaint." *Id.* ¶141. In other words, as one might expect, the role of the University hearing officer is to apply University policy, not federal First Amendment jurisprudence. *Id.*

Throughout this saga, the University favored the female complainant in concrete ways – including by paying her hundreds of thousands of dollars in the middle of the Title IX investigation (in which it is obligated to presume Mr. Wright not responsible, 34 C.F.R. §106.45(b)(1)(iv)). *Id.* ¶101. It also made public statements in support of her, including commending her "courage" and "bravery," and condemning Mr. Wright's lawsuit as an attempt to "silence or intimidate" the complainant. *Id.* at 1 n.1, ¶¶107-118, 125-129.

The University took these biased actions while assuring Mr. Wright that he would continue to be presumed not responsible for the allegations of sexual harassment and retaliation. *Id.* ¶129. The University's public statements are tantamount to a formal determination that Mr. Wright had, in fact, committed sexual harassment and retaliation. Accordingly, the University made clear that it would continue to favor the female complainant, without regard to Mr. Wright's rights. To avoid the predestined formal determination, he filed this lawsuit. *Id.* ¶150.

**ARGUMENT**

## I.     Legal Standard.

### a.     Federal Rule of Civil Procedure 12(b)(1).

A motion under Fed. R. Civ. P. 12(b)(1) tests whether the district court has subject matter jurisdiction over the case or controversy. When evaluating a 12(b)(1) motion, the Court applies the standard for summary judgment, "under which the nonmoving party

must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists" as to jurisdiction. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). While the burden to establish subject matter jurisdiction rests on the plaintiff, "the moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (internal citation omitted).

### b.   Federal Rule of Civil Procedure 12(b)(6).

A motion under Rule 12(b)(6) tests whether a complaint states "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a 12(b)(6) motion, a complaint need only plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When defendants bring a 12(b)(6) motion, the Court does not resolve factual disputes; rather, when a complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The Court is "required to accept all well-pleaded allegations of [Mr. Wright's] complaint as true and draw all reasonable factual inferences in his favor." *Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014).

### II.   Defendants' 12(b)(1) motion must be denied because this Court possesses subject matter jurisdiction over Mr. Wright's claims.

This Court has federal question subject matter jurisdiction over the federal law claims and supplemental jurisdiction over the state law breach of contract claim because it is part of the same case or controversy. 28 U.S.C. §§1331, 1367. Mr. Wright's constitutional claims are not barred by sovereign immunity because they are not

functionally against the state. S*ee Ex parte Young*, 209 U.S. 123 (1908). His breach of contract claim is not barred because Mr. Wright notified the University of his claim in advance of this lawsuit. Va. Code §2.2-814; Exhibit A. Nevertheless, Defendants lodge two subject matter jurisdiction challenges to the Complaint under Fed. R. Civ. P. 12(b)(1): (1) sovereign immunity as to the official capacity §1983 claims against Defendant Bluestein; and (2) sovereign immunity over the breach of contract claim. Both of these challenges fail to show a lack of subject matter jurisdiction. The 12(b)(1) motion should be denied.

Defendant Bluestein does not have sovereign immunity because Mr. Wright seeks prospective injunctive relief and because Defendant Bluestein, as the Title IX Coordinator, is the right Defendant to correct Mr. Wright's harm. Generally, a state and its employees (in their official capacities) are immune from suit absent their consent. *Franks v. Ross*, 313 F.3d 184, 197 (4th Cir. 2002). The doctrine of *Ex parte Young*, however, permits claims for injunctive relief against the state to enjoin "ongoing violations of federal law." *Id*. When a plaintiff pleads "form[s] of prospective [injunctive] relief, the refusal to provide that relief when it is requested can constitute an ongoing violation of federal law such that the *Ex parte Young* exception applies." *Bland v. Roberts*, 730 F.3d 368 (4th Cir. 2013). In the academic context, district courts in the Fourth Circuit have repeatedly held that requests to "expunge and clear ... academic records" from wrongful Title IX findings constitutes prospective injunctive relief. *See, e.g., Doe v. Virginia Polytechnic Inst. & State Univ.*, 400 F. Supp. 3d 479, 488-489 (W.D. Va. 2019) (collecting cases).

Here, Mr. Wright unequivocally requested "an order directing Defendant Bluestein to dismiss Ms. Dorsey's amended complaint" as to his Equal Protection and First Amendment claims. ECF No. 1.2, ¶¶195, 217. He also requested, as to his due process

claim, "an order directing the recission of the government's statements against him," referencing the public statements made by the University. *Id.* ¶225. By requesting these prospective actions, Mr. Wright meets the requirements of *Ex parte Young* because, just as clearing an academic record is "prospective injunctive relief," *Virginia Polytechnic,* 400 F. Supp. 3d at 488-489, so too is a request to dismiss an ongoing complaint or to "expunge" public statements – both request an order directing the government to do something in the future. Accordingly, *Ex parte Young* applies and this motion should be denied.[4]

Likewise, the University's second sovereign immunity argument fails because Defendant Bluestein caused the alleged harm. Consistent with the doctrine of *Ex Parte Young*, the law requires a plaintiff to sue the appropriate official, such that an injunction against the chosen defendant will be effective to remedy the harm – in other words, the defendant must have a "special relation" to the claim. *Ex Parte Young*, 209 U.S. at 157. The "special relation" requirement is a "measure[ment] of proximity to and responsibility for the challenged state action." *McBurney v. Cuccinelli*, 616 F.3d 393, 400-401 (4th Cir. 2010). It is not a requirement that the "special relation" have a specific connection to the harm. As *McBurney* further provides:

_____

[4] Defendants confusingly cite *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) for the proposition that a request for injunctive relief requires a showing of irreparable injury. But *Lyons* addressed an entirely different issue – in that case, the plaintiffs had no allegation that they would be harmed again by the police officers who had illegally choked them. *Id.* Here, by contrast, Mr. Wright alleges ongoing constitutional harm (the prosecution of Title IX claims against him in violation of his First Amendment and Equal Protection rights, and the continuing damage of the government's public statements with respect to his Due Process rights). Moreover, in *Lyons*, the Supreme Court went to great lengths to discuss the particular federalism issues related to an injunction prohibiting a state from enforcing state criminal law, concerns that are entirely absent in this case. *Id.*

> This "special relation" requirement ensures that the appropriate party is before the federal court, so as not to interfere with the lawful discretion of state officials. Primarily, the requirement has been a bar to injunctive actions where the relationship between the state official sought to be enjoined and the enforcement of the state statute is significantly attenuated. Such cases have been dismissed on the ground that general authority to enforce the laws of the state is an insufficient ground for abrogating Eleventh Amendment immunity.
>
> Thus, the Director's connection to the [state action] need not be qualitatively special; rather, "special relation" under *Ex parte Young* has served as a measure of proximity to and responsibility for the challenged state action. ***This requirement ensures that a federal injunction will be effective with respect to the underlying claim***.

*McBurney*, 616 F.3d at 400-401. (emphasis added) (internal citation omitted). Accordingly, the purpose of the "special relation" requirement is to ensure that "a federal injunction will be effective with respect to the underlying claim." *Id.*

In keeping with that purpose, Defendant Bluestein is the appropriate defendant here. As the official chiefly responsible for Title IX matters at the University, he retains the ultimate authority over the Title IX operations of the University. Therefore, he has the power to remedy the harm inflicted upon Mr. Wright, including possessing the authority to dismiss the complainant's complaint. ECF No. 1.2, ¶4. His connection need not be "qualitatively special"; rather, the Court need only be satisfied that an injunction issued against Defendant Bluestein would be "effective with respect to the underlying claim." *McBurney*, 616 F.3d at 400-401. By virtue of his authority, Defendant Bluestein has the power to remedy Mr. Wright's harm. While the University states in conclusory fashion that Defendant Bluestein does not have the ability to rescind the statements, ECF No. 7, at 26, there is no evidence to that effect presented by Defendants. Absent discovery, it is impossible to test whether Defendant Bluestein does indeed have the authority to rescind the statements. Defendants' arguments seeking dismissal fail.

As to the University's final 12(b)(1) argument, relating to Mr. Wright's contract claim, the only argument the University makes is that Va. Code §8.01-192 shields it from liability because it has not consented to suit for a pecuniary breach of contract claim (such that sovereign immunity does not apply) as it was not notified of Mr. Wright's claim. ECF No. 7, at 29. Virginia Code §2.2-814 requires that "[a]ny person having any pecuniary claim against the Commonwealth upon any legal ground shall present the same to the head ... agency of the Commonwealth responsible for the alleged act or omission which, if proved, gives rise to the claim." Mr. Wright has done so here because on September 11, 2023, he presented his claim by way of a letter to the University's counsel, who acts as a representative of the "head ... of the agency." *See* Exhibit A; Va. Code §2.2-814. Because Mr. Wright presented his breach of contract claim to the University, through counsel, in advance of the suit, he substantially complied with Va. Code §2.2-814. Should the Court disagree, Mr. Wright seeks leave to amend.[5]

In sum, Defendants' 12(b)(1) arguments fail because (1) Mr. Wright requested injunctive relief such that *Ex Parte Young* applies; (2) Defendant Bluestein has sufficient proximity to the harm and is properly a section 1983 defendant; and (3) Mr. Wright substantially complied with Va. Code §2.2-814.

## III.    Defendants' 12(b)(6) motion must be denied.

The Complaint need only plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

---

[5] The Commonwealth had full knowledge of Mr. Wright's breach of contract claim before he filed. Exhibit A. Mr. Wright can, in short order, complete the ministerial task of sending a letter of the same content to the President of the University pursuant to Va. Code §2.2-814, if the Court so requires.

U.S. at 678. Mr. Wright sufficiently pleaded facts to raise the reasonable inference that Defendants are liable. Defendants' motion must be denied.

### a. Defendants' documents are outside of the pleadings and must be ignored.

A preliminary issue for this Court to decide is whether to consider Defendants' five attached exhibits. ECF No. 7.1, 7.2, 7.3, 7.4, and 7.5.[6] It should decline to do so because that would wrongly convert Defendant's motion into a motion for summary judgment, which must be denied prior to discovery. *Gasner v. Cnty. of Dinwiddie*, 162 F.R.D. 280, 281 (E.D. Va. 1995). Indeed, Courts within the Fourth Circuit generally may not consider documents outside the pleadings on a 12(b)(6) motion to dismiss. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). The Court may only consider documents attached by a defendant if the document "was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Id.* at 234. Because the attached documents were not "integral to and explicitly relied on in the complaint," the Court should not consider the documents. *Id.*

This is exceptionally straightforward for University Exhibits 2 and 3, which are not mentioned in Mr. Wright's Complaint and are therefore not possibly "integral to and explicitly relied on" such that the Court could consider them. *Id.* at 234. Those exhibits should not be considered by the Court.

---

[6] Exhibit 1 is the University's dismissal of Mr. Wright's formal Title IX complaint. Exhibit 2 is purportedly a document showing when the complainant was an employee of the University, which incidentally raises grave questions as to the genesis of this entire dispute. Exhibit 3 is a collection of two news articles about the dispute involving Mr. Wright. Exhibit 4 is an assortment of the University's public statements. Exhibit 5 is Defendant Bluestein's email affirming the University's position against dismissing the complainant's amended complaint.

While Exhibits 1, 4, and 5 were referenced in the Complaint, that is not the end of the inquiry as to whether the documents are integral; rather, "the determination whether a fact properly is considered under this exception depends on the manner in which a court uses this information." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015). A court may not construe external documents in such a manner as to contradict the allegations in the complaint at the 12(b)(6) stage. *Id.* at 606-607; *Doe v. Univ. of Virginia*, No. 3:22-CV-00064, 2023 WL 2873379, at *5 (W.D. Va. Apr. 10, 2023) ("For this motion to dismiss, the Court will not consider Defendants' exhibits … the Court is concerned about considering approximately 91 pages of exhibits when the parties have not been afforded an opportunity to conduct reasonable discovery"); *Doe v. Princeton Univ.,* 30 F.4th 335, 342 (3d Cir. 2022) ("when the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail").

Despite the clear authority, Defendants expressly ask the Court to reject Mr. Wright's factual allegations in the Complaint in favor of Defendants' documents.[7] The Court should not accept this invitation, which would require deviation from the 12(b)(6) standard (whether the complaint states "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678). Accordingly, the Court should not consider these documents. If it chooses to do so, however, the

---

[7] For example, Defendants argue that Mr. Wright's characterization of the statements made by University officials is "hyperbole" and that the Court should credit the exhibit instead. ECF No. 7, at 3 n.2, 17. Taking another example, Defendants ask the Court to find that there was an alternative reason to dismiss Mr. Wright's complaint, using Exhibit 1. ECF No. 7, at 21.

documents cannot supersede the allegations in the Complaint, and Mr. Wright's claims survive, as articulated below.

### b.   Mr. Wright states a Title IX deliberate indifference claim.

Title IX states, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. §1681; *Sheppard v. Visitors of Virginia State Univ.*, 993 F.3d 230, 236 (4th Cir. 2021) ("the text of Title IX prohibits all discrimination on the basis of sex"). Discrimination has long included deliberate indifference to sexual harassment. *Davis v. Monroe Cnty. Bd. of Ed.*, 526 U.S. 629, 644-645 (1999).

To state a Title IX deliberate indifference claim, a plaintiff must plausibly allege four elements: "(1) that the educational institution receives federal funds; (2) that the plaintiff was subjected to harassment based on [his] sex; (3) that the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity; and (4) that there is a basis for imputing liability to the institution." *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 686 (4th Cir. 2018) (internal quotations omitted). Defendants do not dispute the University receiving federal funding but do contest the remaining three elements. For the following reasons, Defendants arguments are unavailing and fail to defeat Mr. Wright's claims.

### 1.   Mr. Wright alleged harassment that was based on sex.

Title IX protects against sex-based harassment. *Davis*, 526 U.S. at 639. Most, but not all, sexual harassment cases follow a similar pattern: harassment that involves some sort of sexual intent on the part of the harasser. *Doe v. Hamilton Cnty. Bd. of Educ.*, 329 F. Supp. 3d 543, 558 (E.D. Tenn. 2018). But "**harassing conduct need not be**

**motivated by sexual desire to support an inference of discrimination on the basis of sex**." *Id.* (emphasis added) (internal citation omitted). Indeed, the plain text of Title IX and its implementing regulations bar all discrimination (*i.e.*, harassment) on the basis of sex, not only where sexual harassment stems from sexual desire. *See* 20 U.S.C. §1681; 34 C.F.R. §106.30. Therefore, a plaintiff need only show "sex-specific conduct aimed to humiliate, ridicule, intimidate, or insult." *Doe v. Salisbury Univ.*, 107 F. Supp. 3d 481 (D. Md. 2015). The question of whether conduct is "sex-specific" is highly factual in nature. *Hamilton*, 329 F. Supp. 3d, at 561. To survive dismissal, it need only be "above the speculative level" that the conduct was "sex-specific." *See Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 386 (4th Cir. 2009).

Here, it is plausible Mr. Wright was subjected to harassment that was based on his sex because the harassment was caused by his romantic relationship with the complainant. The complainant harassed Mr. Wright by berating him publicly about their romantic and sexual relationship and falsely accused him of sexually harassing her during their relationship. ECF No. 1.2, ¶¶54-58, 87. Therefore, it is plausible that the harassment was on the basis of his sex because the harassment (including false allegations of sexual harassment) was directly caused by his cessation of a sexual relationship. *See Rouse v. Duke Univ.*, 869 F. Supp. 2d 674, 384-385 (M.D.N.C. 2012) (Title IX claim survived where plaintiff was the victim of false accusations and where the university did nothing to alleviate the hostile campus atmosphere).

Further, false accusations of sexual harassment contain "sex-specific language aimed [] to humiliate, ridicule, or intimidate" because they contain accusations of sex based conduct that was a result of a sexual relationship. *Jennings v. Univ. of N. Carolina*, 482 F.3d 686, 695 (4th Cir. 2007). A recent decision by the Fourth Circuit underscores

14

this point. *Luskin v. Univ. of Maryland, Coll. Park, Maryland*, No. 22-1910, 2023 WL 2985121 (4th Cir. Apr. 18, 2023). *Luskin* held the plaintiff was subjected to sexual harassment when a male student targeted her because he wanted a sexual relationship with her. *Id.* at *4. The Fourth Circuit agreed with the district court that the harassment "give[s] rise to the inference that C.H. wanted a romantic relationship with [plaintiff] and thus targeted her because of her sex." *Id.* at *3.[8]

Similarly, here, the complainant targeted Mr. Wright because of his sex.[9] Her conduct "give[s] rise to the inference that [the complainant] wanted a romantic relationship with [Mr. Wright] and thus targeted [him] because of [his] sex." *Id.* Mr. Wright has therefore alleged harassment on the basis of his sex.

Defendants' arguments against this conclusion are unavailing. Defendants first argue that false accusations of sexual harassment are categorically not sexual harassment, relying on *Balazs v. Liebenthal*, 32 F.3d 151, 155 (4th Cir. 1994). But that is not what *Balazs* held (if it did, *Luskin* would have had to address why its conclusion conflicted with precedent, *see supra*). *Balazs* merely holds that false accusations themselves are not sex

_____

[8] A district court in the Fourth Circuit recently held that false allegations of rape may plausibly constitute sexual harassment. *See* Hearing Transcript at 11:3-12, 45:3-19, *Doe v. University of Maryland*, No. 22-0872-PX (D. Maryland March 28, 2023) (attached hereto as Exhibit B) ("I guess one could say I'm pressing on my own questions as to why those cases were so easily decided when the woman was a complainant and why we struggle so much when it's the man who is the complainant with similar allegations in terms of making an allegation of rape and then having much adverse speech directed at the plaintiff...So I'm going to deny dismissal of Count One on the question of whether this was sex-based harassment.").

[9] After Mr. Wright ended their relationship, she came to the law school uninvited and positioned herself outside the class he was teaching (ECF No. 1.2, ¶54), followed him to his office and yelled at him about the end of their relationship, and demanded to have a conversation with him. *Id.* ¶55. When he refused, she began to repeatedly contact both Mr. Wright's current girlfriend and his assistant with unwanted calls and texts. *Id.* ¶56.

*discrimination. Id.* at 155. But Mr. Wright does not allege the complainant's false allegations constitute sex discrimination – he alleges the false allegations constitute sexual *harassment* (ECF No. 1.2, ¶¶153-158), where deliberate indifference is still required for liability. *Davis*, 526 U.S. at 633 (liability will only attach when school is deliberately indifferent to sexual harassment, not automatically where there is sexual harassment). Put simply, sexual harassment is only a piece of a sex discrimination claim, not the entire claim. Accordingly, *Balazs* simply has no application here because Mr. Wright is not claiming (as the plaintiff in *Balazs* did) that the defendant is liable simply by virtue of the sexual harassment he suffered.

Defendants' second argument is not legal but policy – that were the Court to adopt Mr. Wright's position, "it would be impossible for victims of sexual harassment to report accusations or for universities to address sexual harassment, thus defeating the entire purpose of Title IX." ECF No. 7, at 7. Mr. Wright's claims, however, do not relate to her report to the University. The claims relate to her berating him and spreading false rumors to others about him sexually harassing her outside of the university process. Under this framework, a complainant would still be free to report alleged conduct to the University – the point is – a male's accusations of sexual harassment should not have been ignored. The University would be and is free to investigate a female complainant's allegations of sexual harassment together with a male respondent's allegations that the female complainant falsely told his friends that he sexually harassed her. Therefore, Defendants' concerns simply do not carry weight. Mr. Wright alleged harassment on the basis of sex and Defendants' defenses (whether legal or policy) fail to defeat that conclusion.

### 2. *Mr. Wright alleged sufficiently severe and pervasive harassment.*

In order to prove harassment was sufficiently severe and pervasive, one must prove a reasonable person would find this "objectively hostile or abusive conduct." *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 275 (4th Cir. 2021). Mr. Wright has alleged such severe and pervasive conduct, including alleging after he ended their relationship, the complainant came to the law school uninvited and positioned herself outside of the class he was teaching, followed him to his office, yelled at him about the end of their relationship and demanded to have a conversation with him. ECF No. 1.2, ¶¶54-55. When he refused, she repeatedly contacted both Mr. Wright's current girlfriend and his assistant with unwanted calls and texts. *Id.* at ¶56. Then, she falsely accused him of sexual harassment to various persons and entities, including clients. *Id.* at ¶87.

Defendants argue that Mr. Wright failed to set forth "a "concrete, negative effect on [Wright's] ability to participate in [Mason's educational] program[s] or activit[ies]." ECF No. 7, at 7-8 (citing *Jennings*, 482 F.3d at 699). But that page of the *Jennings* opinion makes clear that it is discussing a plaintiff's "hostile environment showing at the summary judgment stage." *Jennings*, 482 F.3d at 699. *Jennings* elsewhere held that "harassment reaches the sufficiently severe or pervasive level when it creates an environment that a reasonable person would find hostile or abusive and that the victim herself subjectively perceive[s] ... to be abusive." *Id.* at 696. Any person would find being berated and falsely accused of sexual harassment to be hostile and abusive, and Mr. Wright felt as such. ECF No. 1.2, ¶58 (fearing for his and his children's safety).

Title IX prohibits discrimination in "any education program or activity." 20 U.S.C. §1681(a). The Department of Education interprets this phrase to mean, among other

things, "all of the operations of a postsecondary institution... ." 85 Fed. Reg. 30093. Because Mr. Wright alleged that the false allegations were widespread at the University, that the complainant's harassment occurred on campus (*i.e.*, within "all of the operations of a postsecondary institution..."), and that he suffered severe emotional distress as a result that occurred during his employment, he suffered harm within the University's "education program or activity." ECF No. 1.2, ¶¶56, 157. Therefore, Mr. Wright alleged severe or pervasive harassment. Defendants' arguments to the contrary fail.

### 3. Mr. Wright alleged the University's deliberate indifference.

The last element for deliberate indifference is to plead the University's deliberate indifference. *Davis*, 526 U.S. at 633. A school is "deliberately indifferent" when it behaves in a way that is "clearly unreasonable in light of the known circumstances." *Davis,* 526 U.S. at 648. While schools are generally afforded "flexibility," when it comes to how they choose to discipline, that "flexibility" ends when the school is "clearly unreasonable in light of the known circumstances" because that behavior violates Title IX. *Davis,* 526 U.S. at 648. Deliberate indifference is a "demanding test," but courts have consistently found that failures to appropriately initiate disciplinary proceedings may nevertheless meet the demanding test. *Cavalier v. Cath. Univ. of Am.*, 306 F. Supp. 3d 9, 29 (D.D.C. 2018). Here, it is undisputed that the University never took any investigatory or formal steps in response to Mr. Wright's complaint and he pleaded as such. ECF No. 1.2, ¶90; *Cavalier*, 306 F. Supp. 3d at 29. Accordingly, it was deliberately indifferent.

Defendants argue because the University was permitted to dismiss Mr. Wright's complaint under 34 C.F.R. §106.45(b)(3)(i), it cannot be deliberately indifferent. ECF No. 7, at 8-11. But that conclusion is premised upon an Exhibit attached to Defendants' motion

allegedly showing that the complainant was no longer an employee at the time of Mr. Wright filing the complaint. As discussed *supra*, this Court should not consider such a document at all, but to the extent it does, it does not permit the Court to give favor to an exhibit not attached to the Complaint over the Complaint itself. *Princeton Univ.,* 30 F.4th at 342. In the complaint, Mr. Wright pleads that the letter used to dismiss his complaint without any investigation used the term "active employee," suggesting that complainant was employed in some manner, because there would be no other reason to use the qualifier "active" when that phrase does not appear in the University's policy. ECF No. 1.2, ¶93.[10] Taking Mr. Wright's allegations as true, it is plausible that the complainant was an employee and the University was deliberately indifferent to his complaint.

### c.      Mr. Wright alleged a selective enforcement claim.

To state a selective enforcement claim under Title IX, a plaintiff must show that "his gender was a but-for cause of the ... decision to initiate the challenged disciplinary proceeding in the first place. ... A plaintiff like [Mr. Wright] can do this by plausibly showing that a similarly situated person of the opposite sex was treated more favorably." *Kashdan v. George Mason Univ.*, 70 F.4th 694, 701 (4th Cir. 2023) (internal citation omitted).

Here, both the complainant and Mr. Wright alleged conduct that, if true, would constitute a violation of University policy, and so they were similarly situated. ECF No.

---

[10] Moreover, if Exhibit 1 is to be believed and the complainant's employment "ended on May 31, 2021," that would mean that the University was required to dismiss her original Title IX complaint at the very outset of this entire dispute because she was not attempting to participate in the educational program or activity at the time of her filing her complaint. 34 C.F.R. §§106.30, 106.45(b)(3)(i). But it did not dismiss. ECF No. 1.2, ¶62, 67. This further suggests that Exhibit 1 is not a reliable document – the University believed at the time that the complainant was an employee.

1.2, ¶¶62-66, 89. But the University only initiated disciplinary proceedings against one – Mr. Wright. *Id.* Further, the justifications used for accepting the complaints (or not) are diametrically opposed; whereas the University claimed it had no "jurisdiction" over Mr. Wright's complaint because the complainant was not an "active employee," it chose to prosecute Mr. Wright for retaliation even after he was not employed. *Id.* ¶135. This resulted in a more favorable treatment of the female complainant. *Kashdan*, 70 F.4th at 701. Therefore, Mr. Wright stated a selective enforcement claim.

Defendants seek to avoid this straightforward conclusion by arguing that (1) Mr. Wright and the female complainant were not similarly situated; (2) they did not allege the "same conduct"; (3) that there was a difference in employment status; and finally (4) there is no evidence to suggest gender was the cause of the disparate treatment. ECF No. 7, at 12-13. These arguments fail because both complainant and Mr. Wright were similarly situated having both alleged conduct that would violate University policy.

First, Defendants argue that Mr. Wright and the complainant are not similarly situated because Mr. Wright was the accused. ECF No. 7 (citing *Does 1-2 v. Regents of the Univ. of Minnesota*, 999 F.3d 571, 581 (8th Cir. 2021) ("Jane was not similarly situated because no one filed a complaint against her")). But this argument misses the point entirely. Mr. Wright filed a complaint against the complainant – both parties were simultaneously the accuser and the accused. *Doe 2 by & through Doe 1 v. Fairfax Cnty. Sch. Bd.*, 384 F. Supp. 3d 598, 608 (E.D. Va. 2019) (noting that an accused and accuser may be similarly situated if they file complaints against each other), *aff'd*, 832 F. App'x 802 (4th Cir. 2020). Indeed, the only reason the complainant was not an "accused" is because the University refused to investigate Mr. Wright's complaint. Having both filed

20

complaints against one another alleging violations of University policy, they are similarly situated.

Second, Defendants argue that Mr. Wright and the complainant did not allege the "same conduct." ECF No. 7, at 12-13. But this is neither here nor there. As the Third Circuit in *Princeton* instructs, if both parties report conduct that could be construed as harassment (even where one party reports sexual violence and the other reports lesser verbal offenses), and the university chooses only to investigate one of the reports, that choice can support an inference of sex discrimination. *Princeton*, 30 F.4th at 344. Because both reports alleged conduct that violated University policy, but the University only opened one for investigation, there is selective enforcement. There is no requirement that comparators much allege the exact same conduct, and no rule that simply excuses the University for completely failing to act on complaints of non-physical harassment.

Third, Defendants also argue they were not similarly situated in terms of employment status. ECF No. 7, at 13. Even assuming this is relevant, Mr. Wright pleaded that there was some form of employment of the complainant at the time he filed his formal complaint, by virtue of the University's use of the term "active employee," among other things. ECF No. 1.2, ¶93. Defendants' argument fails simply by reference to the Complaint. Setting that aside, however, the argument fails because the University charged Mr. Wright when he was no longer an employee and refused to charge the complainant when she was allegedly not an employee. ECF No. 1.2, ¶135. They had the same employment status (according to the University) –not employed – yet, Defendants only charged the male.

Finally, Defendants' argument that Mr. Wright cannot show gender bias misunderstands *Sheppard* and the nature of selective enforcement claims. *Sheppard*, 993

21

F.3d at 236. Selective enforcement is one way to state a Title IX claim and therefore one way to show sex discrimination. *Id.* While the Fourth Circuit adopted the Seventh Circuit's *Purdue* pleading standard (except as to causation), it found "no inherent problems with the [earlier] erroneous outcome and selective enforcement theories … [and that] either theory, with sufficient facts, may suffice to state a plausible claim." *Id.* Selective enforcement is one formulation by which Mr. Wright may show that gender was a but-for cause. Because Mr. Wright has shown that a similarly situated person of the opposite sex was treated more favorably, *Kashdan*, 70 F.4th at 701, he has set forth a plausible selective enforcement claim showing that gender was a but-for cause of the University's decision.

### d.    Mr. Wright's *Sheppard* claim survives.

"Title IX prohibits all discrimination on the basis of sex." *Sheppard*, 993 F.3d at 236. Considering the totality of the circumstances, a *Sheppard* claim broadly asks whether a plaintiff's sex is a but-for cause of the University's action. *Id.*[11] "So long as the plaintiff's sex was one but-for cause of that decision [to discipline], that is enough to trigger the law." *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1739 (2020).[12] Courts consistently hold federal or social pressure provides a "backdrop that, when combined with other circumstantial evidence of bias in Doe's specific proceeding, gives rise to a

---

[11] *See also Doe v. Virginia Polytechnic Inst.*, No. 7:19-CV-00249, 2022 WL 3334501, at *7 (W.D. Va. Aug. 11, 2022); *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 792 (7th Cir. 2022) ("the ultimate inquiry must consider the totality of the circumstances").

[12] Defendants argue that *Sheppard* claims are limited to discipline. ECF No. 7, at 15. But because "Title IX prohibits all discrimination on the basis of sex," there is no reason why the cause of action is limited to only discrimination where actual discipline is involved. *Sheppard*, 993 F.3d at 236.

plausible [Title IX] claim." *Doe v. Baum*, 903 F.3d 575, 586 (6th Cir. 2018).[13] Here, it is plausible Mr. Wright's sex is one but-for cause of the University's actions, including, but are not limited to, the University's decisions to charge Mr. Wright but not the complainant, ECF No. 1.2, ¶135, as well as the University's public statements. *Id.* at ¶¶107-128.

Against the "backdrop" of federal pressure, pleaded by Mr. Wright at ECF No. 1.2, ¶¶14-29, "evidence of 'clear procedural irregularities' can support a plausible inference of sex discrimination." *See, e.g.*, *Doe v. Univ. of Virginia*, No. 3:22-CV-00064, 2023 WL 2873379, at *5 (W.D. Va. Apr. 10, 2023). Here, Mr. Wright set forward egregious procedural irregularities that should shock the conscience.[14] That the University would go to such lengths in favor of the female – including paying her hundreds of thousands of dollars in the middle of the process – suggests bias, to put it mildly. Mr. Wright need only make a plausible case; this set of such extreme procedural irregularities satisfies his burden. *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 793 (7th Cir. 2022) ("[A]s the number of

---

[13] *See also Doe v. Purdue*, 928 F.3d 652, 668-69 (7th Cir. 2019); *Doe v. Columbia Univ.*, 831 F.3d 46, 58-59 (2d Cir. 2016); *Doe v. Miami Univ.*, 882 F.3d 579, 594 (6th Cir. 2018); *Schwake v. Arizona Bd. of Regents*, 967 F.3d 940, 948 (9th Cir. 2020) (noting in dicta that OCR pressure may be relevant to a Title IX claim).

[14] Including, the University: choosing to charge Mr. Wright, the male, and dismissing the complaint against the female, who was similarly situated having both filed complaints against the other (*see supra*); paying the female accuser hundreds of thousands of dollars in the middle of the Title IX proceeding, ECF No. 1.2, ¶147; while obligated to presume Mr. Wright not responsible under 34 C.F.R. §106.45(b)(1)(iv), making multiple public statements thanking the "brave ***women***" for "coming forward" and announcing that it is "proud" to count them as alumni, ECF No. 1.2, ¶125 (emphasis added); the decision to require the hearing officer to analyze federal caselaw and render a First Amendment judgment is completely foreign to its own rules, ECF No. 1.2, ¶144.

irregularities increases, or the irregularities become more serious, it begins to look less likely that the errors were due to benign reasons") (internal citation omitted).

In support of its argument regarding dismissal of the *Sheppard* claim, Defendants suggest that sex must be "the" but-for cause of the discipline, not "a" but-for cause (*i.e.*, one of many possible but-for causes). ECF No. 7, at 15. Courts consistently reject Defendants' restrictive position. *Doe v. Virginia Polytechnic Inst.*, No. 7:19-CV-00249, 2022 WL 3334501, at *7 n.11 (W.D. Va. Aug. 11, 2022) ("The court finds that sex must be 'a' but-for cause, not 'the' but-for cause"); *Ortegel v. Virginia Polytechnic Inst. & State Univ.*, No. 7:22-CV-00510, 2023 WL 8014237, at *9 (W.D. Va. Nov. 20, 2023) (citing same). A plaintiff need only plead facts sufficient to raise a plausible inference that sex was one of many but-for causes for the discipline. *See Sheppard*, 993 F.3d at 236 (citing *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1739 (2020) ("a defendant cannot avoid liability just by citing some other factor that contributed to its challenged . . . decision. So long as the plaintiff's sex was one but-for cause of that decision, that is enough to trigger the law")).

Defendants also argue that because the University was motivated by a desire to avoid bad press, it could not have been motivated by sex bias. ECF No. 7, at 17. Of course, a desire to avoid bad press and harboring sex bias are not mutually exclusive, and so this argument fails to prove Defendants' point. But moreover, "[a] covered university that adopts, even temporarily, a policy of bias favoring one sex over the other in a disciplinary dispute, doing so in order to avoid liability or bad publicity, has practiced sex discrimination, notwithstanding that the motive for the discrimination did not come from ingrained or permanent bias against that particular sex." *Doe v. Columbia Univ.*, 831 F.3d 46, 58 n.11 (2d Cir. 2016). Indeed, "the possible motivations mentioned by the

24

[University] as more plausible than sex discrimination, including a fear of negative publicity … are not necessarily, … lawful motivations distinct from sex bias." *Id.*[15] Because anti-male bias is a plausible explanation (and may have been the root cause of the University's desire to avoid bad press), Mr. Wright's claim survives.

Defendants also argue that the harm to Mr. Wright is not actionable because the harm occurred when he was no longer an employee. Defendants ironically argue this would "dramatically expand" the scope of Title IX by including conduct where the plaintiff is no longer attempting to participate in the education program or activity. ECF No. 7, at 16. But Defendants cannot have it both ways. Defendants chose to "expand" the scope of Title IX when they chose to charge Mr. Wright with a Title IX violation after he resigned, having determined (somehow) his conduct fell within its education program or activity. ECF No. 1.2, ¶¶71, 134. They cannot now claim at the same time Title IX should not apply because Mr. Wright was not within their "education program or activity" as a non-employee. Because "education program or activity" includes "all of the operations" of the University, and the University discriminated against Mr. Wright through its own operations (including but not limited to charging him with retaliation even after he resigned), Mr. Wright has alleged harm within its "education program or activity." 85 Fed. Reg. 30093. Defendants' motion should be denied.

---

[15] *See also Princeton Univ.*, 30 F.4th at 345 ("Though Princeton suggests another explanation for why it treated the violations differently, anti-male bias is still a plausible explanation. And we must construe the facts in the light most favorable to Doe at this stage.").

### e.     Mr. Wright stated Equal Protection claims for the same reasons he stated Title IX claims.

Courts generally analyze Title IX and Equal Protection claims together as the elements are "similar." *See, e.g., Ortegel*, 2023 WL 8014237, at *9. Therefore, for the same reasons Mr. Wright's Title IX claim survives (*i.e.*, he pleaded he was treated less favorably than a similarly situated comparator and alleged plausible evidence of discriminatory animus in the form of numerous procedural irregularities that only went one way), his Equal Protection claims survive. *Sheppard*, 993 F.3d at 238.

With respect to the individual capacity Equal Protection claim, Defendants singularly argue that Defendant Bluestein was not personally involved in the dismissal of his Title IX complaint. ECF No. 7, at 22.[16] But Defendant Bluestein was involved in the choice to charge Mr. Wright with retaliation after he resigned, ECF 1.2, ¶135, which is when the Equal Protection claim (treating him differently than a similarly situated female) accrued. *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011) ("A civil rights claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action."). Because Defendant Bluestein personally committed the conduct that caused Mr. Wright's claim to accrue (and it is a reasonable inference he was aware of his predecessor's dismissal of Mr. Wright's complaint), he is properly the subject of an individual capacity §1983 claim. *See Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) ("To establish personal liability under §1983, however, the plaintiff must affirmatively show that the official charged acted personally in the deprivation of the

---

[16] Notably, Defendants failed to assert qualified immunity as to Mr. Wright's individual capacity Equal Protection claim and that defense is therefore waived. *Sales v. Grant*, 224 F.3d 293, 296 (4th Cir. 2000) ("It is well-settled that qualified immunity is an affirmative defense, and that the burden of pleading it rests with the defendant").

plaintiff's rights" (internal quotation omitted)). Mr. Wright properly stated Equal Protection claims.

### f.   Mr. Wright states First Amendment claims.

Mr. Wright incorporates by reference his argument in support of his motion for a preliminary injunction, which argues the success of his First Amendment claim. *See* ECF No. 5.1.

Defendants essentially assert two defenses to Mr. Wright's First Amendment claims. First, relying on an exhibit attached to Defendants' motion, Defendants argue that the only dispute is which standard to apply in the University hearing. ECF No. 7, at 23.[17] This misses the point entirely – Defendants are not allowed to retaliate against a private person for filing a lawsuit. *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011). The standard by which they will assess the conduct is completely irrelevant to the argument because there is no standard that permits a state government agency to intervene to punish a private citizen for filing a lawsuit against another private citizen.

Moreover, the cases upon which the University relies regarding the First Amendment standard to use in a hearing process (ECF No. 7, at 22 (citing *Darveau v. Detecon, Inc.*, 515 F.3d 334 (4th Cir. 2008) and *Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731 (1983)), are totally distinguishable from the present matter because both pertain to whether an employer-initiated lawsuit is an unfair labor practice under the NLRA or whether such a lawsuit is protected by the First Amendment. *Bill Johnson's*, 461 U.S. at 743-745; *Darveau*, 515 F.3d at 341. Setting side that the standard articulated

---

[17] The cited exhibit is a communication between counsel seeking to avoid litigation (it is a compromise rather than a firm position on the law) and the court should not consider the exhibit anyway since it is outside the pleadings. *Am. Chiropractic*, 367 F.3d, at 234.

by the Supreme Court closely resembles the standard articulated by counsel in the University's Exhibit 5,[18] this case has nothing to do with the NLRA or an employer initiated lawsuit – Mr. Wright's lawsuit is between two private parties. Therefore, both cases cited by Defendants are distinguishable and fail to support the idea that there is a clear standard to be used when the government attempts to punish a private citizen for filing a lawsuit against another private citizen.[19]

Next, Defendant's argue qualified immunity shields Defendant Bluestein from liability. But qualified immunity does not protect the "plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). When the University chose to punish Mr. Wright for filing his lawsuit, it was clearly established that filing lawsuits is constitutionally protected petitioning activity. *Guarnieri*, 564 U.S. at 387. Accordingly, no reasonable chief Title IX officer at a public institution (who must have been trained that First Amendment activity may not constitute retaliation under 34 C.F.R. §106.71(b)(1)) would have decided to charge a non-employee with a Title IX violation for filing a lawsuit. While the purpose of qualified immunity is to protect "bad guesses," as Defendants point out (ECF No. 7, at 25), this is so obviously a violation of the First Amendment that it is dubious to suggest that it is a bad guess. In any event, because Mr. Wright need only show a "more-than-conceivable chance of success on the merits" to

---

[18] The Supreme Court articulated that the First Amendment protects lawsuits unless they are a "mere sham" and "knowingly frivolous." *Bill Johnson's*, 461 U.S. at 743. As Mr. Wright's lawsuit has made it past demurrer, it must not be a sham or frivolous.

[19] Moreover, Defendants' cited cases articulate what standard a court must use to evaluate whether an employer-filed lawsuit against an employee is protected by the First Amendment. *Bill Johnson's*, 461 U.S. at 743-745; *Darveau*, 515 F.3d at 341. It does not discuss authorizing a state government agency to intervene and determine *ad hoc* that any lawsuit between private parties is unprotected, as is happening here.

survive qualified immunity at this early stage, the Court should deny Defendants' motion. *See Owens v. Baltimore City State's Att'ys Off.,* 767 F.3d 379, 396 (4th Cir. 2014) (noting that defendants face a "formidable hurdle" asserting qualified immunity at the pleading stage).

> ### g.  Mr. Wright requests leave to amend his complaint relating to his liberty interest.

Mr. Wright concedes he did not fully allege the kinds of facts necessary to show a liberty interest due process claim. Thus, he requests leave to amend to plead facts showing more clearly that he was constructively terminated, including, among other things, that he was placed on extended leave prior to his resignation and prevented from being around students or teaching and was effectively forced to resign. Because leave to amend shall be granted liberally, Fed. R. Civ. P. 15(a)(2), the Court should grant Mr. Wright's request.

> ### h.  Mr. Wright stated a breach of contract claim.

In Virginia, the elements of a breach of contract claim are "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619 (2004). Mr. Wright straightforwardly alleged each of these elements: (1) he had an employment contract with the University, that (2) the University breached its own policies by, among other things, dismissing his complaint,[20] and that (3) he was damaged by the breach. ECF No. 1.2, ¶¶227-229.

---

[20] Additionally, if Exhibit 1 to Defendants' motion is authentic, the University's failure to dismiss the complainant's original complaint could form another breach, since it was obligated to dismiss under its policy formal complaints filed by those not attempting to participate in the University's education program or activity.

Defendants first argue in conclusory fashion that Mr. Wright has only alleged his "disagreement" with how the University handled the Title IX process. ECF No. 7, at 30. But Mr. Wright properly alleged University policies were incorporated by reference into his employment contract (Defendants do not dispute that). In paragraph 229 of the complaint, Mr. Wright set forth four examples of where the University violated its own policies, including the refusal to open his complaint for investigation. ECF No. 1.2, ¶229. Therefore, the failure to follow University policy constitutes a breach. ECF No. 1.2, ¶228. For these reasons, Defendants' conclusory first argument fails.

Second, Defendants argue Mr. Wright cannot rely on any action the University took after he terminated the contract when he resigned. But University policy (incorporated by the employment contract) remains in force as to Mr. Wright by virtue of the University's decision to continue to impose its Title IX process on Mr. Wright. If University policy, which was incorporated into the contract, still applies to Mr. Wright, so do the contractual obligations on the University. The University could have terminated the Title IX process upon Mr. Wright's resignation, it chose not to; accordingly, it cannot avoid its own obligations under that process.[21]

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion.

Dated: February 16, 2024                      Respectfully submitted,

                                              */s/ Benjamin F. North*
                                              Benjamin F. North, VA Bar # 97439

---

[21] Even if the Court excludes any action the University took after he resigned, the University's failure to investigate his claim violated University policy as alleged in the Complaint and as explained *supra*. ECF No. 1.2, ¶¶91-94.

Lindsay R. McKasson, VA Bar # 96074
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
lindsay@binnall.com
ben@binnall.com

*Attorneys for Plaintiff Joshua Wright*

**CERTIFICATE OF SERVICE**

I certify that on February 16, 2024, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ *Benjamin F. North*
Benjamin F. North, VA Bar # 97439

*Attorney for Plaintiff Joshua Wright*

32