# EXHIBIT A



Lindsay McKasson
PARTNER

**D:** 571-771-0019
**E:** lindsay@binnall.com

September 11, 2023

<u>VIA ELECTRONIC MAIL</u>

Eli S. Schlam
Associate University Counsel
George Mason University
4400 University Drive, MS 2A3
Merten Hall, Suite 5400
Fairfax, Virginia 22030
eschlam@gmu.edu

   RE: <u>Amended Notice of Investigation in Title IX Matter involving Joshua Wright</u>

Dear Eli:

  We are in receipt of the University's Second Amended Notice of Investigation ("Amended Notice") issued September 7, 2023, which charges Mr. Wright with retaliation because he filed a lawsuit weeks after he officially resigned from the University (as you know, he gave his notice on June 26, 2023, but the resignation did not take effect until August 8, 2023). This amended complaint must be dismissed because Ms. Dorsey was not participating in the University's "education program or activity" at the time of filing the amended formal complaint and because the University does not exercise "substantial control" over Mr. Wright or the civil court system. 34 C.F.R. §106.45(b)(3)(i). It also must be dismissed because the Amended Notice breaches the employment contract between the University and Mr. Wright and retaliates against him for the exercise of his First Amendment right to "petition the government for a redress of grievances." U.S. Const. Amend. I. Finally, the Amended Notice discriminates against Mr. Wright on the basis of sex in violation of Title IX, considering the University dismissed Mr. Wright's Title IX complaint on the very same basis as it is permitting Ms. Dorsey's complaint to proceed. Because this implicates legal issues, we are sending this to legal counsel. A copy will also be provided to the Title IX Coordinator insofar as it is also implicates both Policy 1202 and the Title IX Regulations. As set forth in detail below, the second amended complaint **must** be immediately dismissed.

  First, under the University's Policy 1202 (which was, like all University policies, incorporated by reference into Mr. Wright's employment contract), the University "**is required** … to dismiss allegations of Prohibited Conduct received in a Formal Complaint

under Title IX [where] … The alleged Prohibited Conduct did not occur in locations, events, or circumstances over which the University exercised substantial control over both the Respondent and the context in which the Prohibited Conduct occurred or in any building owned or controlled by a student organization that is officially recognized by a postsecondary institution." Policy 1202, Appendix A, Section IV(D)(3) (emphasis in original). Mr. Wright resigned and severed all ties with the University as of August 8, 2023. Accordingly, the University cannot claim that it has had "substantial control" over Mr. Wright since that date; likewise, it cannot possibly claim that it has "substantial control" over Fairfax Circuit Court. The University must have substantial control over both the Respondent and "the context in which the Prohibited Conduct occurred" in order to avoid mandatory dismissal. It has neither and therefore must dismiss.

Second, and similarly, federal regulations require that the University dismiss a Title IX formal complaint when it alleges conduct that "did not occur in the recipient's education program or activity." 34 C.F.R. §106.45(b)(3)(i). Obviously, a lawsuit in court has nothing to do with the "education program or activity" of the University. This is consistent with the Department of Education's interpretation of its own regulations: "an educational institution's program or activity includes all of the operations of a postsecondary institution or elementary and secondary school." 85 Fed. Reg. 30093 (internal quotations omitted). It should go without saying, but since the court system is not within the "operations of a postsecondary institution," the alleged conduct did not occur in the "education program or activity," and thus the University must dismiss the formal complaint. Separately, Policy 1202 also provides for mandatory dismissal where "At the time of filing a formal complaint, the Complainant was not participating in or attempting to participate in the education program or activity of the University." Policy 1202, Appendix A, Section IV(D)(1). Since Ms. Dorsey was not participating in or attempting to participate in the University's "education program or activity" at the time of filing her amended formal complaint, the University must dismiss.

Third, the University's failure to treat male and female complaints equally in this case results in Title IX liability. The University dismissed Mr. Wright's Title IX complaint against Ms. Dorsey because "at the time of filing a formal complaint, [Ms. Dorsey] was no longer enrolled at or employed by the University and, as a result, the University therefore has no jurisdiction to pursue the Complaint." Exhibit A. The University is now allowing Ms. Dorsey's complaint to proceed against Mr. Wright even though he is "no longer enrolled at or employed by the University." This abject refusal to investigate male complaints while female complaints are permitted to proceed on the same basis begets Title IX liability. *See, e.g., Doe v. Princeton Univ.*, 30 F.4th 335, 344 (3d Cir. 2022) ("Doe has plausibly alleged that he reported a violation that was not investigated by the University. And that, in turn, plausibly supports the inference that sex was a motivating factor in Princeton's investigation"); *Doe v. Univ. of Scis.*, 961 F.3d 203, 210-211 (3d Cir. 2020) (Title IX claim stated where university investigated female complaint but not male complaint); *Doe v.*

*Virginia Polytechnic Inst. & State Univ.*, No. 7:19-CV-00249, 2020 WL 1309461, at *8 (W.D. Va. Mar. 19, 2020) (same); *Feibleman v. Trustees of Columbia Univ. in City of New York*, No. 19-CV-4327 (VEC), 2020 WL 882429, at *9 (S.D.N.Y. Feb. 24, 2020) (same); *Doe v. Quinnipiac Univ.*, 404 F. Supp. 3d 643, 662-663 (D. Conn. 2019) (same, denying summary judgment to the university). There is no legitimate non-discriminatory reason why the University would dismiss Mr. Wright's complaint because Ms. Dorsey was not enrolled or employed by the University, but then allow her complaint to proceed even though Mr. Wright is not enrolled or employed. Mr. Wright and Ms. Dorsey are perfect comparators here – the only difference is that Mr. Wright is male and Ms. Dorsey is female. The University is liable for violating Title IX because it treats male and female complaints differently.

Finally, the University cannot charge Mr. Wright with retaliation because to do so is itself retaliation for Mr. Wright's exercise of his First Amendment right to petition the court for a redress of grievances. The Supreme Court has indeed "recognized that the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." *Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 741 (1983); *McDonald v. Smith*, 472 U.S. 479, 484 (1985) (same). Charging him with retaliation because he petitioned the court produces an unconstitutional "chilling effect" on protected First Amendment activity even absent any finding of responsibility, because the charge of retaliation is an "official threat[] of enforcement made specifically against [Mr. Wright]." *Bos. Correll v. Herring*, 212 F. Supp. 3d 584, 601 (E.D. Va. 2016), citing *Steffel v. Thompson*, 415 U.S. 452, 455-456 (1974). The only way the government can defeat Mr. Wright's First Amendment right is if it can show definitively that Mr. Wright's lawsuit is "baseless" or was made with actual malice – that is, it was made with knowledge of its falsity. *McDonald*, 472 U.S. at 485. The University cannot meet this high bar, not only because it is obligated to presume Mr. Wright not responsible under 34 C.F.R. §106.45(b)(1)(iv), but also because the facts in the record clearly demonstrate that his lawsuit is, at a minimum, not baseless or made with knowledge of its falsity.

In a single stroke of the proverbial pen, the University has managed to breach its own Policy, the employment contract, the Title IX regulations, the Title IX statute, and the Constitution. All of these authorities require dismissal, and the University must comply. The University knew this in May 2022, when the previous Title IX Coordinator told the undersigned that if Mr. Wright were to file a lawsuit, it would not be considered retaliation. The previous Title IX Coordinator made this assurance, acknowledging that Mr. Wright has a right to pursue legal claims and that the University cannot and should not interfere with those rights.

Alternatively, and at a minimum, the University must stay the Title IX investigation until the lawsuit is resolved at trial. If Mr. Wright prevails, that will be an absolute bar to University retaliation, since the University will be unable to show that his lawsuit was

*Letter to GMU General Counsel*
*September 11, 2023*
*Page 4 of 4*

baseless. Of course, even if he does not prevail, that alone would not show that his lawsuit is baseless or made with knowledge of its falsity. Either way, the University must not proceed with a charge of retaliation on the basis of Mr. Wright's lawsuit. He has a right to access the courts, which is a right with which the government may not interfere simply because it does not approve of the content of his lawsuit.

There is an additional complication for the University if it decides to proceed with an investigation of this new retaliation charge notwithstanding its obligations. The crux of this new charge is whether Mr. Wright filed a lawsuit to retaliate against Ms. Dorsey; that is, whether he had a retaliatory motive in filing suit. But the University will be unable to reach any determination on this charge because it must "[n]ot require, allow, rely upon, or otherwise use questions or evidence that constitute, or seek disclosure of, information protected under a legally recognized privilege." 34 C.F.R. §106.45(b)(1)(x). Because all of the evidence showing Mr. Wright's state of mind is protected by attorney-client privilege, which the University may not attempt to obtain, it will not be able to reach a determination on this charge, which again counsels in favor of dismissal.

As the University knows, it is our position that Mr. Wright has not received basic fairness and equity in this entire process. At every step, the University has demonstrated that it would rather breach its obligations than to treat the male respondent fairly. Allowing this amended complaint to stand is beyond the pale. Please let me know if the University will dismiss the Amended Notice, by September 14, 2023.

Sincerely,

Lindsay R. McKasson

# EXHIBIT A

**GEORGE MASON UNIVERSITY**

**Diversity, Equity, and Inclusion**
4400 University Drive, MS 2C2, Fairfax, Virginia 22030
Phone: 703-993-8730 Fax: 703-993-8899 Web: http://diversity.gmu.edu

**Notice of Dismissal of Complaint**

June 24, 2022

Joshua Wright
George Mason University
Fairfax, VA 22030

**RE: Case# TIX 21220462**

Dear Joshua,

On June 6, 2022 you filed a written Formal Complaint and requested an investigation alleging that beginning on October 20, 2021, Elyse Dorsey, the named Respondent, engaged in an alleged violation of University Policy 1202: Sexual and Gender-Based Misconduct and Other Forms of Interpersonal Violence ("Policy 1202").

On June 13, 2022 a meeting was held with you and your advisor to review and clarify your Complaint.  At that time, given that the Respondent was not actively teaching as an adjunct faculty member nor working for the University in any other known capacity, you noted that special circumstances existed in the School of Law asynchronous MLL program that would provide that the Respondent was an active employee.

Upon review of the written Formal Complaint and with input from Human Resources, the Title IX Coordinator has determined that the University cannot act on the Complaint as per Policy 1202 Section III.F in as much as at the time of filing a formal complaint, the Respondent was no longer enrolled at or employed by the University and, as a result, the University therefore has no jurisdiction to pursue the Complaint.

You may appeal this decision by sending an email setting forth the grounds for your appeal, and an explanation as to why you believe the appeal should be granted. An appeal must be filed within 5-business day(s) of the receipt of this notification, **no later than July 1, 2022 at 5:00 p.m.** close of business. The appeal will be heard by the Vice President of Diversity, Equity and Inclusion ("DEI"). The decision of the Vice President of DEI shall be final.

The only grounds to appeal a dismissal are:

• Procedural irregularity that affected the decision to dismiss the Formal Complaint.
• The discovery of new evidence that was not reasonably available at the time the determination to dismiss was made that could affect the outcome of the matter.

**JOSHUA WRIGHT**
**Dismissal of Complaint**
**TIX21220462**
**June 24, 2022**
**Page 2 of 2**

• The Title IX Coordinator, Investigator(s), or Hearing Officer had a conflict of interest or bias for, or against, Complainants or Respondents generally, or either Party that affected the decision to dismiss the Formal Complaint.

If you have any questions, please feel free to contact me at (titleix@gmu.edu).

Sincerely,

Crystal C. Coombes
Interim Title IX Coordinator
Office of Diversity, Equity, and Inclusion,
George Mason University