# EXHIBIT B

```
                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND
                         SOUTHERN DIVISION

JOHN DOE,                    )
        Plaintiff,           )
                             )
        vs.                  )   CIVIL CASE NO. 22-0872-PX
                             )
THE UNIVERSITY OF MARYLAND)
COLLEGE PARK, MARYLAND,      )
et al,                       )
        Defendants.          )
_____)
```

<div align="center">

Tuesday, March 28, 2023
Courtroom 2C
Greenbelt, Maryland

MOTIONS HEARING

</div>

BEFORE:  THE HONORABLE PAULA XINIS, Judge

For the Plaintiff:
Benjamin North, Esquire
Binnall Law Group, PLLC
717 King Street, Suite 200
Alexandria, VA  22314

Amy Bradley, Esquire
Blankingship & Keith, PC
4020 University Drive, Suite 300
Fairfax, VA  22030

<div align="center">

**Computer-Aided Transcription of Stenotype Notes**

_____

Reported by:
Nadine M. Bachmann, RMR, CRR
Federal Official Court Reporter
101 W. Lombard Street, 4th Floor
Baltimore, Maryland  21201
410-962-4753

</div>

```
1      (Appearances Continued)

2     For the Defendants:

3           For The University of Maryland College Park, Maryland;
4           Grace Karmiol and Angela Nastase
                Ann Marie Sheridan, Esquire
5               Office of the Attorney General, State of Maryland
                Higher Education Division
6               200 Saint Paul Place, 17th Floor
                Baltimore, Maryland  21202
7
            For Defendant Two:
8               C. Jack Condliff, Esquire
                Suite  900
9               1 West Pennsylvania Avenue
                Towson, MD  21204
10
            For Defendant Three:
11              Benjamin Beasley, Esquire
                Rollins, Smalkin, Richards & Mackie, LLC
12              300 E. Lombard Street, Suite 900
                Baltimore, Maryland  21202
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              (Proceeding commenced at 1:01 p.m.)

 2          THE DEPUTY CLERK: The matter now pending before this

 3     Court is Civil Number PX-22-0872, Doe v. The University of

 4     Maryland College Park, Maryland, et al. We're here today for

 5     the purpose of a motions hearing. Counsel, please introduce

 6     yourselves for the record, beginning with the plaintiff.

 7          MR. NORTH:  Good morning, Your Honor.  Benjamin

 8     North for the plaintiff and I'm here with my co-counsel, Amy

 9     Bradley.

10              MS. BRADLEY:  Good afternoon, Your Honor.

11          THE COURT:  Good afternoon.

12          MS. SHERIDAN:  Good afternoon, Your Honor.  Ann

13     Sheridan, Assistant Attorney General representing University

14     of Maryland, College Park and defendants, Grace Karmiol and

15     Angela Nastase. Ms. Nastase is here with me as well.

16          THE COURT:  Okay, good afternoon.

17          MS. SHERIDAN:  Good afternoon.

18          MR. BEASLEY:  Good afternoon, Your Honor.  Ben

19     Beasley on behalf of defendant number three.  Last name

20     B-e-a-s-l-e-y.

21          THE COURT: Thank you.

22          MR. CONDLIFF: Good afternoon, Your Honor.  Jack

23     Condliff on behalf of defendant number two who is seated to my

24     right.

25          THE COURT:  Okay, good afternoon to all of you.
```

1    All right, so pending before the Court are two motions:

2    The first is the University's Motion to Dismiss at ECF 52 and

3    the second is defendant number two's Motion for Summary

4    Judgment at ECF 58.

5    Let me just say in advance, I really appreciate your time

6    today. I have a lot of questions. This is a very, very

7    difficult case and very important case.

8    And so with that, let me start with the University and

9    your argument. Ms. Sheridan, you can either stay seated or

10   move to the podium. It's up to you, but please speak very

11   clearly into the microphone so I can hear you.

12          **MS. SHERIDAN:**  Thank you, Your Honor. I would like

13   to go to the podium, if that's okay.

14          **THE COURT:**  Sure.

15          **MS. SHERIDAN:**  Thank you, Your Honor. We have moved

16   to dismiss based on 12(b)(6) for failure to state a claim

17   because John Doe is urging this Court to impose on the

18   University a new type of Title IX liability not previously

19   recognized by any Court. Mr. Doe's theory represents an

20   extension of Title IX liability not contemplated by the

21   University when it's accepted Title IX funds. And I see the

22   Court's puzzled look and I'll explain why this is.

23          **THE COURT:**  No, I think I know why you say that. I

24   mean, your pleadings push very hard on the Court's rationale

25   in *Nungesser*.  And it seems as if the University is wrapping

1    itself in that decision in terms of if I allow this claim to

2    go forward to discovery here, then any exonerated person

3    accused of rape suddenly has a cause of action. That was

4    stated more than once I think in the pleadings and I think

5    that's what you mean, but tell me if I'm wrong.

6              **MS. SHERIDAN:**  Well, that is what I mean. I guess I

7    want to start by saying, I mean, what's different here is that

8    typically when a respondent is challenging what the University

9    has done with respect to Title IX, it's about the process. And

10   here there's no question that Mr. Doe received a fair process

11   that was not -- I mean, it resulted in his favor. He cannot

12   have any complaints about that. But at the conclusion of the

13   process, he is now indicating that the University's

14   obligations to him under Title IX extend to silencing his

15   accuser and her supporters. But the Department of Education

16   regulation --

17             **THE COURT:**  Is that what the complaint really says?

18   I mean, isn't the complaint saying -- it pleads all of the

19   fact-specific circumstances surrounding the underlying Title

20   IX hearing and process of which I think it's fair to impute it

21   all to the University.  You knew it, it's your process, right?

22   I'm not sure yet even how much it necessarily matters other

23   than what we learn from it, is this all arose from a sexual

24   encounter between a woman and a man. The woman accused the man

25   of rape. It went to a hearing. He was exonerated. Then that

1    same woman in association with a student association that is

2    alleged to be very close to the university's Title IX

3    office -- because it's not just the complainant, the person

4    who says she was raped.  It's also the two leaders of the PSA

5    who then take the next step to say, "John Doe is a rapist.

6    John Doe is still on campus under investigation."  And that

7    was directed at an organization to which John Doe has belonged

8    for a long, long time.

9        And John Doe is not asking for the University to silence

10   that. John Doe is alleging that the University had very

11   specific complaints made and did -- not only did nothing, but

12   in the interactions with John Doe essentially said, "Well the

13   complainant made those allegations in good faith and she

14   perceived John Doe as a perpetrator of a sexual offense

15   against her." I mean, that was -- according to the complaint,

16   that was your agent's words.

17       So the Title IX office at that time, they're in it.

18   They're in the middle of this.  But they're not asked to

19   silence anybody, they're just asked to investigate a

20   complaint.

21           MS. SHERIDAN:  Well, they were asked to treat this

22   as a complaint regarding sexual harassment. And it did not

23   meet the definition of sexual harassment. I mean, as a

24   preliminary matter --

25           THE COURT:  Why is it not based on sex?

1    **MS. SHERIDAN:**  Well, before we even get to sex, I

2    don't think you can even characterize it as harassment because

3    it wasn't directed at Mr. Doe. This is speech that one group

4    of students --

5    **THE COURT:**  It says John Doe -- wait, let's go in

6    order, okay?  You make these arguments in order and I would

7    really like to do it in order because again, this is so

8    important to you, to the University, to Mr. Doe, to the

9    complainants, to the good people who are here.

10   **MS. SHERIDAN:**  I agree.

11   **THE COURT:**  I'm not interested in making a mistake

12   of law or fact, frankly. And I think the problem with a lot of

13   these cases is that they come on a Motion to Dismiss and

14   motions sometimes get the best of folks.  And it is written in

15   a way that is not as careful as we need to be in these

16   circumstances. So I'm really trying hard to be very careful in

17   my words and I'd like to go through this with you in the order

18   in which you raise it, if that's okay, so that I understand

19   fully your arguments.

20   **MS. SHERIDAN:**  Yes, Your Honor.

21   **THE COURT:**  Okay.

22   **MS. SHERIDAN:**  I mean, as far as the initial prong

23   is whether it constitutes sexual harassment.

24   **THE COURT:**  Correct, yes.

25   **MS. SHERIDAN:**  And as an initial matter, it's not at

```
1      all clear that this is harassment as defined by the Department

2      of Education. I mean, harassment as defined by the Department

3      of Education regs is unwelcome conduct of a sexual nature.

4      Unwelcome -- which typically is unwelcome sexual advances,

5      requests for sexual favors.

6               THE COURT:  Right.  But Jennings in the Fourth

7      Circuit says, "Sexual harassment occurs when the victim is

8      subjected to sex-specific language that is aimed to

9      humiliate."  And then there's other words, "humiliate,

10     degradate."  So --

11              MS SHERIDAN:  And certainly that's true with respect

12     to not only with Jennings, but Feminist Majority.  But in

13     those cases, the speech was directed at the plaintiff.

14              THE COURT:  But here the speech is directed at the

15     plaintiff. "John Doe is a rapist" -- to his club, to the club

16     that he belonged.

17              MS. SHERIDAN:  It was directed to third parties.

18     Okay, I see the Court's not buying that.  Okay.

19              THE COURT:  I'm confused.

20              MS. SHERIDAN:  But the harassment is basically, "I'm

21     threatening you.  I'm calling you names to your face." It's

22     not that I'm telling rumors about you to somebody else. I

23     mean, that's -- harassment is conduct speech directed at you.

24     Threats made against you.

25              THE COURT:  So if I threaten -- if I threaten you
```

1   through someone else, it's not harassment?  If I say, "You are
2   a rapist" and the consequences of that is that the third-party
3   takes adverse action against you in a manner designed to
4   humiliate or degrade the person, that's not actionable?

5          **MS. SHERIDAN:**  Well, it might be actionable. I don't
6   know if it's actionable under Title IX. But let me move onto
7   whether it's sex-based or not.

8          **THE COURT:**  Yeah, that's where I thought you were
9   really living in your pleadings.

10         **MS. SHERIDAN:**  What's really important here is, I
11  mean, first of all, "rapist" is not a gender term. Although
12  the traditional definition of rape involves penetration of a
13  vagina by a penis, modern definitions of rape have been
14  expanded so that a woman can be a rapist. A man can be a rape
15  victim.  So the use of that term in and of itself does not
16  make it sexual harassment.

17         **THE COURT:**  And I agree with you. I don't think as
18  in the plaintiff in *Nungesser* maybe overstated the claim and
19  it caused, I think, the Court to have to perhaps wrestle with
20  the concept that it's not necessary. It's not necessary to
21  find that the term "rapist" is inherently gendered.  Because
22  this is all very fact-bound and the facts of this case are
23  that it arose -- the accusations, the hearing, it arose out of
24  a sexual encounter between a man and a woman in that context
25  where the woman said it was rape.  And there was a whole

1    hearing about it in which the accused was exonerated according

2    to the complaint, right?  And now stemming from that there's

3    not just calling him a rapist, but a series of events that

4    take place. And the argument isn't being made that it's

5    inherently gendered, but rather that in this context it is, in

6    part, because Doe is named. That's how I'm reading it.

7         **MS. SHERIDAN:**  Right.  And I don't see any specific

8    facts supporting that allegation that it was because he was

9    male as opposed to because he was a respondent.

10        **THE COURT:**  Are you saying there are no allegations?

11   There's nothing in the complaint from which I can draw --

12        **MS. SHERIDAN:**  There are only conclusory allegations

13   saying that. But there's no -- there's no allegations

14   regarding anybody's statements to anybody from which you can

15   draw that conclusion. It's really just speculative.

16        **THE COURT:**  How about the conversation that took

17   place toward -- there's the point at which Jane Roe was put on

18   the executive committee of the PSA. She announces it on social

19   media in February of 2022. She says that she was raped by two

20   boys.  And in the same media event she says no girl needs to

21   wake up with her pants undone. That prompts another complaint

22   by Mr. Roe in which he alleges to have a conversation with Ms.

23   Nastase in which Ms. Nastase then says she perceived Doe as a

24   perpetrator of a sexual offense against Roe.

25        So all of this is very wrapped up in each other. It is

1    not just about a rape, it's a girl and a boy and this woman

2    accusing this man of rape.

3        And here's my question to you: When the table is turned

4    and we have other cases in which a woman makes a complaint and

5    then there are allegations of similar disparaging, insulting,

6    humiliating comments, we don't go through this attempt to

7    parse out what part of it is because the complainant is a

8    woman, the plaintiff is a woman and what part of it is because

9    she is complaining about rape.  And I'm thinking about *East*

10    *Haven*, I'm thinking about *Rouse*, right?  I mean, we're going

11    through this analysis here to try to disaggregate them and I'm

12    not sure why.

13        **MS. SHERIDAN:**  Your Honor, in those instances, those

14    cases that Your Honor is referring to, it was clear that the

15    harassment, the conduct that was complained about was in

16    response to the person making the report. You know, so the

17    person makes -- the woman makes a report of a sexual assault

18    that she was raped and then there's direct retaliation. And

19    those cases it was never -- it was never argued that, you

20    know, that it was anything other than retaliation.

21        Here, there's no link between the speech that occurred

22    here and his defense of himself in the Title IX proceeding.

23        **THE COURT:**  Why isn't that plausible from the

24    complaint?  The complaint lays out this protracted evidentiary

25    hearing where he had to defend himself against -- at least

1   according to the complaint -- allegations ultimately proven

2   false that went on for months.  And that as soon as that's

3   over, the allegations that form the subject of the Title IX

4   claim begin.

5          **MS. SHERIDAN:**  Well, I mean, temporal proximity may

6   be an appropriate --

7          **THE COURT:**  But it's subject matter proximity too. I

8   mean, it's the same parties. It's the same sexual encounter.

9   It's the same --

10         **MS. SHERIDAN:**  I think what Your Honor is suggesting

11  is that any time, any time a claimant loses a Title IX process

12  and continues to engage in speech, that it's a Title IX issue.

13         **THE COURT:**  I am not.  And that's why we're having

14  this conversation today because I want to be crystal clear

15  about what I'm saying and what I am not saying. I'm pushing

16  back because I think you are disaggregating the facts. And at

17  the Motion to Dismiss stage, I don't believe that that is

18  proper. If I deny your motion, it is not a floodgates moment

19  by any stretch, because these facts are one, it's inherently

20  fact-bound. Two, these facts are not any facts. Every case

21  comes to the Court on its own legs.  And what I don't want to

22  have happen is by deciding this in a Motion to Dismiss, we end

23  up setting law that is really not on all fours with where we

24  should be.

25         And I'm talking about *Nungesser*. I disagree with

1    *Nungesser.*  I think that it sets up this dichotomist variable

2    that does not exist in the law. It is not one motive or

3    another. And in *Nungesser,* the problem that I have with

4    *Nungesser* is the Court found that the only allegation that was

5    made plausible is that it was a -- the subsequent allegations

6    made to *Nungesser* were based on a personal vendetta. And it

7    was personal animus, not arising from any sort of sex-based

8    motivation.

9        And the problem that I have with that is I don't think I

10   have to pick one or the other. If the facts make plausible

11   that it's more than one or both and it's a very fact-bound

12   analysis, then I have to stay with the facts here. And so I'm

13   really going to push back if you say "Well, Judge, if you deny

14   dismissal here, that means, you know, anyone who is exonerated

15   now has a claim." No.

16       **MS. SHERIDAN:**  I think, Your Honor, that

17   universities already have difficulty as it is navigating Title

18   IX.  And I think that they are ill-equipped to adjudicate

19   defamation claims. And that is exactly what the Court is

20   asking them to do.

21       **THE COURT:**  Can I ask you a question about that?

22   Can I ask you about that?  What's the University policy on

23   conduct, including words and actions taken against a person

24   who is accused of sexual misconduct?  What is your policy on

25   that?  So the process just hypothetically I just want to

1    understand the contours. The process is going on. One student

2    makes allegations against another. Title IX office gets

3    involved. There is an investigation and a hearing and no

4    decision has been made yet. In that first phase, what is the

5    University's policy on how other students may or may not

6    behave toward the accused?

7        **MS. SHERIDAN:**  Well, first of all the process itself

8    is protected under FERPA. It's not -- it's not a process

9    that's, you know, that is broadcast to everybody on campus. I

10   mean --

11       **THE COURT:**  I know. I get that. Let me try to make

12   it even simpler. The accuser, the complainant starts spreading

13   the word to the PSA and to other organizations in which the

14   accused belongs. "He's my rapist." "He raped me." And the

15   process is still going on.

16       **MS. SHERIDAN:**  In order to interfere with the

17   process.

18       **THE COURT:**  Well, I don't know.  That's what the

19   person does. What is the University's policy in that regard?

20   Do you take any action against the accuser?  That's phase 1.

21   And then phase 2 is what policy do you have once the case is

22   adjudicated?  If the case is adjudicated one way or another,

23   do you have any sort of policy on what individuals involved in

24   that process can and cannot do?

25       **MS. SHERIDAN:**  May I confer with my --

```
 1          THE COURT:  Sure, of course.
 2          MS. SHERIDAN:  So unfortunately, the Department of
 3   Education regulations and our policy which mirrors that
 4   basically provide that the exercise of rights protected under
 5   the First Amendment do not constitute retaliation under Title
 6   IX. So the University is not in a position to regulate speech.
 7          THE COURT:  But you didn't make that argument in
 8   your pleadings.
 9          MS. SHERIDAN:  Sorry?
10          THE COURT:  You didn't make that argument in the
11   pleadings, right?
12          MS. SHERIDAN:  Your Honor, we did cite to that reg
13   in our reply.
14          THE COURT:  See, what I'm trying to get at is assume
15   for a moment it's not protected speech and it involves
16   allegations of --
17          MS. SHERIDAN:  But Your Honor, that's the rug is
18   assume -- because the University -- you're putting the
19   University in a position of determining whether something is
20   protected speech or not. They're not First Amendment experts.
21   They are not in a position to figure out who has privilege to
22   say what and to do that type of adjudication. That's for
23   courts to do.
24          THE COURT:  But then why didn't you make that
25   argument in your motion, in your first motion when the
```

1   plaintiff is alleging on four or five separate occasions, "I

2   went to the office, the Title IX office. I told them that the

3   accuser was now saying, 'I'm her rapist' and going to my clubs

4   and then my club is now kicking me off," right?  Why isn't

5   argument there --

6           **MS. SHERIDAN:**  I'm sorry, I thought I was making

7   that argument and it certainly was not explicit enough.

8           **THE COURT:**  Well, what page is it on?  Because I

9   literally -- we have gone through your argument, like that's

10  why I wanted to do this step by step because I wanted to know

11  exactly where the University stood on this and I didn't see a

12  First Amendment argument.

13          **MS. SHERIDAN:**  I mean, that's essentially the -- you

14  know, that's what our reliance on *Nungesser* was and I'm sorry

15  if we did not --

16          **THE COURT:**  *Nungesser* isn't a First Amendment

17  argument, though. It's the argument in *Nungesser* is this isn't

18  sex-based. It was a personal vendetta. It was personal animus

19  and personal animus is not protected. It's not sex-based

20  conduct. That was Nungesser.  So now you're throwing at me the

21  First Amendment and I'm just trying to figure out what's the

22  baseline University policy when you've got --

23          **MS. SHERIDAN:**  We can't regulate speech in that way.

24  I mean, we can regulate -- we can try to issue some type of --

25  something to the Office of Student Conduct if there is conduct

1    that's threatening or trying to keep somebody from

2    participating in the process.

3            THE COURT:  Yeah, I mean, I was just about to ask

4    you, we can think of all kinds of speech that's really

5    offensive and humiliating and degrading.

6            MS. SHERIDAN:  True.

7            THE COURT:  And if it were a man saying it to a

8    woman your argument would not be, "We can't get involved

9    because it's speech." Right?  I mean, if a student comes and

10   says "Listen, my professor is making all kinds of comments

11   about my parts and about what" -- you know, just take

12   *Jennings.*  Take the facts in *Jennings*. All that coach did was

13   talk.

14           MS. SHERIDAN:  I know, but here's the difference

15   between *Jennings* and this case:  *Jennings* involved a coach and

16   it involved somebody who was part of the University. He was

17   somebody over whom the University had an employment

18   relationship. It's a much -- I mean, that -- *Davis*, *Davis*

19   actually exhibits a much higher,  more stringent standard for

20   deliberate indifference to student-on-student conduct.

21           THE COURT:  So you're saying if it were a student

22   who made all those comments and persisted in those comments

23   and the student who was getting the comments comes to the

24   office and says, "He keeps saying, you know, awful things

25   about my body and about my parts and asking all of these

1    intimate questions." Your position is, we can't get involved?

2         **MS. SHERIDAN:**  No, no, no.  That's not my position

3    at all. But I think that there's a difference between whether

4    something permits a Title IX response versus whether something

5    constitutes deliberate indifference.  And I think if you look

6    at what occurred here and you look at the timeline of actually

7    what is alleged, I mean, it's alleged that the Title IX

8    process concluded in September in Mr. Doe's favor. A few weeks

9    later, Mr. Doe -- Ms. Roe's friends told the lacrosse team

10   president that he was a rapist under investigation.  And the

11   team cancelled a party scheduled to occur at his apartment.

12        And then in December, Defendants 2 and 3, again, told the

13   lacrosse team's president, "Doe was a rapist under

14   investigation" and Mr. Doe was prohibited from attending a

15   lacrosse team event that month.

16        **THE COURT:**  Okay.

17        **MS. SHERIDAN:**  At that point he files a formal Title

18   IX complaint. I mean, you know, this is not the type of --

19   first of all, it's not clearly gendered and it's not clearly

20   retaliatory. It's not the type of conduct that does require a

21   Title IX response. I mean --

22        **THE COURT:**  But did you respond?  I mean, part of

23   what is a little bit tricky here is you're picking out some

24   facts.

25        **MS. SHERIDAN:**  Well, I'm picking out the only facts

```
1    that are specified in the complaint, because there's a lot of

2    conclusory facts in there.

3              THE COURT:  No, there's actually -- there is a

4    timeline that is pleaded and I'm sure the plaintiff will walk

5    me through it if I don't walk it through with you, but that

6    September, the hearing was concluded. By October, Mr. Doe is

7    complaining. Then --

8              MS. SHERIDAN:  That's not clear from --

9              THE COURT:  That first complaint is in December,

10   right?  Where defendant Karmiol gets involved. She is in the

11   Title IX office. She hears the complaint. She does not say it

12   doesn't belong here or we can't do anything. Defendant Karmiol

13   says she'll instruct PSA to stop harassing Doe. That's what

14   paragraph 84 says. Then she says she needs -- she will also do

15   it protecting Doe's name, right?  And then decides that -- and

16   understood and agreed why she won't use his name and then

17   decides that she can't do that and communicates that to him.

18        So again, in the light most favorable to the plaintiff,

19   today you're saying that Title IX, the office has no business

20   in this. This is protected speech and you shouldn't even be

21   involved. But the complaint says you were involved. Your

22   people actively participated in the complaints and they went

23   from October to December and then we have January and then

24   February.

25              MS. SHERIDAN:  Well, I mean, we can stay involved to
```

1    the extent that we can refer them to other supportive

2    services. Like the complaint alleged that Ms. Nastase did in

3    May when there was an encounter between Mr. Doe and Ms. Roe

4    and her boyfriend and where he was threatened. I mean, the

5    complaint alleges that Ms. Nastase properly referred that to

6    Office of Student Conduct to see whether there had been a

7    violation of the no contact order that was in place between

8    the parties. And so the Title IX office can get involved in

9    that way. It doesn't mean that it triggers a Title IX

10   investigation, a full-fledged investigation.

11        **THE COURT:**  I understand that, but this is in

12   response to you picking certain facts out and saying there's

13   no deliberate indifference, right?  I mean, that's the

14   conversation that we were on.

15        **MS. SHERIDAN:**  Yeah.

16        **THE COURT:**  And here there's -- there are facts pled

17   that there was actual knowledge of what Mr. Doe perceived as

18   the retaliatory and harassing conduct.

19        **MS. SHERIDAN:**  But Your Honor, that's where I think

20   that you're reading into the complaint because I don't see any

21   link linking it to retaliation. It's not --

22        **THE COURT:**  Well then you're moving on to

23   retaliation. I want to stay with the harassment just for a

24   moment. I want to understand your argument with regard to

25   harassment. Your first order of argument is he was not subject

1    to sexual harassment because it just doesn't meet the

2    definition.  And you rely on *Nungesser* for that. Then you say,

3    it wasn't severe and pervasive. Then you say, no facts support

4    deliberate indifference, just on the harassment before we move

5    to retaliation.

6              **MS. SHERIDAN:**  Okay.

7              **THE COURT:**  So on deliberate indifference, why

8    aren't the number of times that Mr. Doe went and made a

9    complaint -- if I accept that it's sexual harassment just for

10   the purpose of this argument and he complains about it to the

11   Title IX office on the numerous occasions that are in the

12   complaint, why wouldn't that be enough of actual knowledge

13   coupled with the decision not to do anything about it --

14             **MS. SHERIDAN:**  Is it something that was clearly

15   sexual harassment, though?  I mean, I think that there's --

16   that Title IX officials have to be given the breathing room to

17   make these close calls in gray areas.  And I don't think that

18   *the Davis* court ever expected that those decisions would be

19   turned over to a jury to second guess.

20             **THE COURT:**  But why then in *Feminist Majority* was

21   that enough?

22             **MS. SHERIDAN:**  Because in *Feminist Majority* there

23   was no question but that it was sex-based and it was

24   retaliatory. That was not argued.

25             **THE COURT:**  But that was different, though. I mean,

1    it wasn't argued and the Fourth Circuit was like, of course it

2    is because --

3              **MS. SHERIDAN:**  Well, it clearly was, but it wasn't

4    based on the gender dynamics. It was based on these women made

5    a report to the administration.

6              **THE COURT:**  Right.

7              **MS. SHERIDAN:**  About the men's conduct fostering

8    sexual assaults, increased sexual assaults on campus. And in

9    response, in direct response to those complaints and to

10   raising these issues to everybody's attention, they were

11   subjected to over 700 direct threats of graphic sexual

12   violence. That's a very different situation than this one.

13             **THE COURT:**  But is it because in number or is it --

14             **MS. SHERIDAN:**  It's not only in number, it's because

15   the intent was so evident. The intent was to shut them down,

16   to stop them from speaking.

17             **THE COURT:**  And here --

18             **MS. SHERIDAN:**  And here --

19             **THE COURT:**  --what is pleaded is the intent was to

20   get him off campus; to rid the campus of predators and to get

21   him off of at least with regard to the lacrosse team.  I mean,

22   sure, it's not nearly as --

23             **MS. SHERIDAN:**  Right, but also as -- I mean, the

24   genesis of these complaints is his conduct, not because he

25   defended himself. I mean, regardless of how --

1          **THE COURT:**  How do you separate that out?  You just
2   said the genesis of all this is his conduct.
3          **MS. SHERIDAN:**  Yes.
4          **THE COURT:**  What conduct are you speaking of?
5          **MS. SHERIDAN:**  I mean, he definitely had a sexual
6   encounter with this woman and she -- he believes it was
7   consensual and she believes it wasn't.
8          **THE COURT:**  Okay. And a finder of fact after a
9   hearing process that you as the University give him, concluded
10  that --
11         **MS. SHERIDAN:**  --that his version was more
12  believable than hers. That was one.
13         **THE COURT:**  It all stems from a sexual encounter,
14  right?  So now why when there's subsequent activity based on
15  not only the sexual encounter but the process, why is it now
16  suddenly devoid of any sex-based intent?  You wouldn't be
17  saying that when Ms. Roe accused Mr. Doe of rape, that that
18  wasn't sex-based, right?
19         **MS. SHERIDAN:**  When she accused him of rape was that
20  sex-based?
21         **THE COURT:**  Yeah, was it -- if the University --
22         **MS. SHERIDAN:**  She was accusing him of rape not
23  because he was a man, she was accusing him of rape because of
24  the conduct.
25         **THE COURT:**  Okay.

1    **MS. SHERIDAN:**  So he's not being targeted because of

2    his gender. He's being targeted because of the perceived

3    conduct. That's how Ms. Roe perceived the encounter. And, you

4    know, somebody could go to a Title IX process and be very --

5    it doesn't mean that it didn't happen. It doesn't mean that

6    she wasn't raped.

7         **THE COURT:**  I understand that and I'm not suggesting

8    that. You see, this is why this case is so important because

9    emotions run incredibly high for everybody involved.  And I'm

10   trying to take that out of it and really understand the

11   analysis here.

12        **MS. SHERIDAN:**  I think the Court is really putting

13   the University in a difficult position if we're going to have

14   to regulate speech following the process.

15        **THE COURT:**  Well let me ask you this then: Doesn't

16   it make sense if that's the argument, to make the argument

17   square on in the pleadings?

18        **MS. SHERIDAN:**  I should have, Your Honor.  I should

19   have.

20        **THE COURT:**  Yes, that's one. And two, if we're

21   really going to do this issue justice for the University --

22        **MS. SHERIDAN:**  Yes.

23        **THE COURT:**  --as well as all of the students, right

24   now I've got to tell you, it's my firm view I need some

25   discovery. I'm not -- and I do not want to write on this

1    assuming facts that are not developed, that may not be

2    accurate, that don't really squarely address the University's

3    primarily concern about why this case is outside of the Title

4    IX context, right?  That's a very, very vexing place for a

5    Court to be because as we see, cases that were written ten

6    years ago or five years ago don't seem to square with the

7    jurisprudence now.  And often in a Motion to Dismiss stage,

8    that's when the mistakes happen, if that makes sense.

9         **MS. SHERIDAN:**  That does make sense to me, Your

10   Honor.  So if I could shift gears slightly --

11        **THE COURT:**  Sure.

12        **MS. SHERIDAN:**  --to the *Cummings* argument which is

13   that the complaint hasn't alleged anything here other than

14   emotional distress damages. It hasn't alleged --

15        **THE COURT:**  I thought that they took that out and

16   now alleged damages and argue under *Mercer* if it's nominal,

17   then we get attorneys' fees, but at least this is a toehold

18   into the damages world that *Cummings* really doesn't treat. I

19   know you say that --

20        **MS. SHERIDAN:**  It doesn't treat it square on, but it

21   does indicate that you have to have economic damages.

22        **THE COURT:**  Well, you have to have damage that would

23   lead to an award of nominal damages, right?

24        **MS. SHERIDAN:**  I don't think that that's what

25   *Cummings* indicates.

1          THE COURT:  Well, *Cummings* is about emotional

2     damages, right?  I mean, you literally say in your reply that

3     it overrules *Mercer*. And I don't see it because it was about

4     emotional damages and *Mercer* was about if all you have is you

5     get the instruction on nominal damages and the jury agrees and

6     says there's nominal damages, then you can get attorneys'

7     fees.  So I'm not sure --

8          MS. SHERIDAN:  Okay, I don't read *Cummings* that way,

9     Your Honor. If I could shift --

10         THE COURT:  How do you read it?

11         MS. SHERIDAN:  Well, that basically Title IX is --

12    what you get in Title IX are contract-like damages which are

13    economic damages.  And I don't think like in a breach of

14    contract, there's no entitlement to nominal damages. And it's

15    why, you know, it's why you don't get punitive damages either

16    under Title IX. These are damages that only would come up in

17    the context of a breach of contract. So that's how I read

18    *Cummings*.

19         THE COURT:  So you're reading *Cummings* broadly to

20    say that it eliminates nominal damages?

21         MS. SHERIDAN:  For Title IX cases, yes.

22         THE COURT:  And that's based on --

23         MS. SHERIDAN:  That's based on the construct that

24    you can only get the types of damages you could get in a

25    breach of contract action which are economic damages, they're

1    not nominal damages.

2              **THE COURT:**  Okay.

3              **MS. SHERIDAN:**  And so I'd like to shift gears again,

4    Your Honor.

5              **THE COURT:**  Sure.

6              **MS. SHERIDAN:**  And that is to the claims against the

7    individual defendants, Ms. Karmiol and Ms. Nastase. Because I

8    really do believe that given Your Honor has indicated it's a

9    murky area and it's a difficult area, that they're entitled to

10   qualified immunity under these particular facts, that there

11   was no clearly established right.

12             **THE COURT:**  Except that's a defense, right?  That's

13   an affirmative defense.

14             **MS. SHERIDAN:**  But it's an affirmative defense that

15   should be decided at the earliest moment that the Court can.

16   And there's just nothing in *Feminist Majority* that puts them

17   on notice that this type of speech, speech made from one

18   individual to -- one group of students to another group of

19   students about the complainant that is not clearly related to

20   gender, is not clearly retaliatory, that that required them to

21   do anything other than what they did. And, you know --

22             **THE COURT:**  So you're saying on the equal protection

23   claim they're entitled to qualified immunity even though

24   that's a slightly different -- I mean, yes, it involves --

25             **MS. SHERIDAN:**  Yes. And --

1          **THE COURT:**  -- a *Feminist Majority* theory, but also

2     on this case, this claim alleges there was one process for Ms.

3     Roe and one process for Mr. Doe. And if you -- if, if in the

4     end of the day I find that the process for Mr. Doe involved a

5     claim of sexual harassment that was known and not acted upon.

6          **MS. SHERIDAN:**  Yeah, but you have to look at whether

7     Mr. Doe and Ms. Roe were similarly situated.

8          **THE COURT:**  Okay.

9          **MS. SHERIDAN:**  And Ms. Roe's complaint is something

10    that we can all agree clearly fell within Title IX. It was a

11    complaint of sexual assault.

12         **THE COURT:**  I understand that.

13         **MS. SHERIDAN:**  But his claim, it's one of defamation

14    essentially.

15         **THE COURT:**  But until we get the facts on that,

16    right?  So say it ends up being --

17         **MS. SHERIDAN:**  But in terms of the facts that were

18    alleged. And --

19         **THE COURT:**  I understand that.  But again, if I'm

20    going to be careful on the sexual harassment piece, then I'm

21    going to be equally careful on equal protection.  Because it

22    all -- you all said it in your pleadings, it largely rises and

23    falls on the same theory. And there are allegations pled that

24    there was one process for Ms. Doe and one process for Mr. Roe.

25    If you're right and the facts demonstrate that this is not

1    sexual harassment, this is defamation.

2         **MS. SHERIDAN:**  But I don't see how they're similarly

3    situated.

4         **THE COURT:**  But the point is the facts that are

5    going to be generated will answer that question. Plausibly,

6    plausibly Mr. Doe has averred that these comments were

7    directed, they were at least in part sex-based. Because "no

8    girl should have to" have her -- "wake up with her pants

9    undone." "I was raped by two boys." "I'm going to tell your

10   club that you are a rapist." "The Title IX office is going to

11   hear the complaints and direct accordingly" based off again,

12   the allegations that Ms. Roe was believed. That's how it

13   reads, most favorably to the plaintiff.

14        So if I can't find as a matter of law right now with

15   comfort that the claims are to be dismissed because they're

16   not sex-based, then how can I make the decision they're not

17   similarly situated?  How can I do that if I don't answer the

18   first question?

19        **MS. SHERIDAN:**  Because one type of complaint is

20   clearly sex-based. The other one is in a much -- I mean, if it

21   is at all.  And I know that Your Honor is drawing all the

22   inferences in favor of the plaintiff as you're required to do,

23   but is in a much different category. So the fact that they

24   were treated differently, that one received a full process and

25   one was screened out has to do with the nature of the

1   complaints themselves and not with the gender of the

2   complainants.

3         **THE COURT:**  But it wasn't just screened out. The

4   allegations are it was screened out because the persons in

5   authority in the Title IX office communicated after the case

6   was done that well, Ms. Roe complained of good faith.  So in

7   other words, we can't do anything without --

8         **MS. SHERIDAN:**  But I don't see how that's evidence

9   of discriminatory animus to say that the initial complaint was

10  made in good faith. I don't see in the context of --

11        **THE COURT:**  When he's coming to say "She continues

12  to call me a rapist to the people who are now kicking me out

13  of a club that I belonged to for the last four years," that

14  context.  Why is that a response that does not indicate a

15  disparate treatment?  Like in other words, the plaintiff is

16  saying, draw from this, Judge, that there should have at least

17  been a conversation that was started off similarly to the

18  first one that we had which is, we'll talk to PSA. We'll tell

19  them to stop harassing you, right?  Why did it devolve from

20  there?  And then it was, but we're not going to protect your

21  identity and then we're not going to talk to them if we can't

22  tell them who you are.  And then we take what Ms. Roe says in

23  good faith and that Roe took these actions not because she was

24  harassing and retaliating you, but because she believed you

25  raped her.

1    I mean again, why am I not at this stage giving the

2    benefit of the doubt to the plaintiff?

3         **MS. SHERIDAN:**  Because these are difficult decisions

4    and the Title IX coordinator shouldn't be having to defend

5    individual claims against them for making difficult decisions

6    in gray areas. That's exactly what qualified immunity is

7    supposed to do.

8         **THE COURT:** And at least in the *Feminist Majority*

9    there is a platform for complaining about student-on-student

10   sexual harassment, so if this is sexual harassment --

11        **MS. SHERIDAN:**  If, but that's the big if and that's

12   why it falls within qualified immunity.  If the Court, if we

13   have to engage in discovery for the Court to make that

14   determination, I'm not sure how a Title IX officer could be on

15   notice that this was somehow discriminatory.

16        **THE COURT:**  Well, my first question to you is -- one

17   of the questions, what policies do you have? What procedures

18   do you have?  I can't get an answer on that. So yes, there

19   might be a little bit of discovery on that because I don't

20   know the answer. And that answer matters with regard to

21   knowledge and deliberate indifference. And frankly, I don't

22   see from a practical perspective if there's going to be

23   discovery on the facts, then it's going to overlap with both

24   claims because like the conversation we're having, right, it

25   rises and falls on at least what are the facts?  And then how

1   close is it to being clearly established. It may not be

2   clearly established. You may win at the end of the day.

3          **MS. SHERIDAN:**   Thank you, Your Honor. I understand

4   your position.

5          **THE COURT:**   And so I'm clear when I talk to the

6   plaintiff, this is not an easy decision. This is actually a

7   decision, again, aimed at making sure when I finally put pen

8   to paper, that we've got enough to give both sides some

9   clarity and some certainty so that whoever appeals me, there

10  is a record by which the Court can really nail down these

11  important -- these are critical issues for the University. I

12  fully recognize that.

13         **MS. SHERIDAN:**   Understood.  And I have to say I was

14  somewhat constrained by the four corners of the complaint.

15         **THE COURT:**   Right.

16         **MS. SHERIDAN:**   I did debate whether to expand this

17  and make this more like -- or in the alternative, Summary

18  Judgment and so here we are.

19         **THE COURT:**   And on that note, Ms. Sheridan -- I'll

20  speak to the plaintiffs about this in a moment.  As you

21  probably already figured out, I'm largely inclined to deny the

22  motion, but for Count Five.  There is no ex parte on here and

23  really, when you get up, just keep that in mind.

24         **MS. SHERIDAN:**   Thank you, Your Honor.  Yes.

25         **THE COURT:**   Right, there's an alternative universe

1    in which the student is graduated, that dog is not going to

2    hunt. But what I am envisioning is that we would then talk

3    about in advance, perhaps in a recorded conference, what

4    discovery is going to look like.  Because this is not going to

5    be, you know, a frolic for the plaintiffs and that needs to be

6    proportionate to the issues.  What we have to deal with is

7    this case on these facts. I know it probably sounds to the

8    court reporter like I'm speaking in code, but I want to be

9    clear that I'm going to take an active role in discovery so

10   that it's not what I think the University is concerned about.

11   Am I getting that right, Ms. Sheridan?

12            **MS. SHERIDAN:**  Yes.  Thank you, Your Honor.  We are

13   worried about extra burdens, for sure.

14            **THE COURT:**  I can understand that.

15            **MS. SHERIDAN:**  Thank you.

16            **THE COURT:**  Okay. Mr. Bradley?

17            **MR. NORTH:**  Thank you, Your Honor.  Benjamin North.

18            **THE COURT:**  North. You know, it's funny.  I said it

19   and I was like, "That's not right." But I read it and it was

20   here.  I didn't want to call you Benjamin, but Ms. Smith has

21   you as I guess Mr. and Mrs. Bradley. Mr. North, I'm sorry.

22            **MR. NORTH:**  That's quite all right, Your Honor.

23   Just before I begin my argument, I just want to inform the

24   Court of a couple of things.  The first is that I have a

25   stuttering disability, so it just might take me a bit longer

1    than my colleague on the other side to argue.

2         **THE COURT:** No problem.

3         **MR. NORTH:** The second thing is as you might be able

4    to tell, I have allergies or a bad cold or something so I'd

5    just ask the Court to bear with me on that front, as well.

6         **THE COURT:** I'm sorry. They're cleaning in the court

7    and it smells like bleach.  So I'm sorry if it's aggravating

8    you. No worries, you take your time.

9         **MR. NORTH:** I can't really smell it anyway, so no

10   worries.

11        **THE COURT:** Okay.

12        **MR. NORTH:** But beginning with my argument, in the

13   interest of not taking up too much of the Court's time, I just

14   wanted to address what I consider to be a few key points in

15   this argument today.

16       The first is clarifying the pleadings standard under

17   Title IX considering *Sheppard*, *Twombly* and *Davis;* the second

18   is responding to the defendants' arguments that the harassment

19   here was not plausibly on the basis of sex which the Court has

20   shown an interest in during defendants' arguments; and the

21   third is whether the University here plausibly acted clearly

22   unreasonably in light of the known circumstances.

23       Of course if the Court would like me to address another

24   area, I'm happy to do that.

25        **THE COURT:** Well, do you agree that it largely rises

1     and falls, the harassment, the retaliation, although I think

2     that the University raises a good point. I'm not really sure

3     whether under any set of facts there could be retaliation

4     based on your client's participation in the Title IX process,

5     but at this stage I just, I can't.  I can't say that as a

6     matter of law, right, there's nothing, there's no plausible

7     version of the facts in which he was not retaliated by Roe and

8     others because of that process and his defense of himself. But

9     it's a novel theory and in the end, I don't know if that's

10    going to prevail. I just need more facts.

11        But would you agree -- I guess the larger point is would

12    you agree that essentially it all comes down to whether the

13    facts make plausible that the harassment and retaliation is

14    sex-based?

15             **MR. NORTH:**  I think that's right, Your Honor.  And I

16    think the keyword there is "plausible."  This kind of gets

17    into the first point I was hoping to cover, but the pleading

18    standard here ever since *Twombly/Iqbal* is that a complaint

19    must state the claim early and that it's plausible on its

20    face.  It doesn't need to disprove, same context as Title IX,

21    other potential reasons for why the defendant acted the way

22    they did.

23        So for example, that the harassment was on the basis of

24    sex. What the pleading standard requires is the plaintiff to

25    allege facts sufficient to make it plausible that the

```
1    harassment was on the basis of sex.  It does not require

2    plaintiffs to disprove other possible reasons for the

3    harassment.

4         So I would agree with Your Honor that at the pleading

5    stage, I think that the plaintiff has alleged facts sufficient

6    to show that sex was one plausible reason for the harassment.

7              THE COURT:  And precisely in your complaint what

8    would you point to?

9              MR. NORTH:  What I would point to -- and Your Honor

10   has already gone into this with the defendant, is that this is

11   an accusation of rape. It all comes down to -- it all relates

12   back to a sexual encounter. Of course sexual encounters have

13   to do with sex.  That's the first thing I would say is that an

14   accusation of sexual misconduct is obviously on the basis of

15   sex.

16        The second thing I would say is that in the context of

17   what was going on on campus during this case, context being

18   that the underlying Title IX process had just resolved and

19   that immediately thereafter the complainant in that case and

20   defendants 2 and 3 engage -- and what I should say they're all

21   female -- against my client who is a male -- they all engage

22   in a concerted campaign to call him a rapist. And again, a

23   rapist, that's an act that has something to do with sex,

24   obviously. And I think in the context of -- in the context of

25   -- what an accusation of rape means I should say, I think it's
```

1   speech on the basis of sex in the same way that what some of

2   the cases we've cited are. And I know I said that very

3   sloppily, but let me kind of explain here.

4        Of course rape, the term "rapist" is a sex-mutual word.

5   Of course I concede that. But to take defendants' arguments to

6   limit the Title IX claim to only sex-specific language would

7   unduly constrain the purpose of Title IX and actually seems to

8   contradict some of the cases that they cited.  For example,

9   *Feminist Majority Foundation* as defendants themselves argued

10  just a moment ago, *Feminist Majority Foundation* concerned

11  threats of physical and sexual violence which, of course,

12  threats of physical and sexual violence are not themselves

13  limited to only men and women. A man can be threatened by

14  rape, a woman can be threatened by rape. There's nothing about

15  that threat inherently just looking at the words that is

16  limited to one sex or another. But of course the act in the

17  threat does relate to sex.  And that in the same way an

18  accusation of being a rapist relates to sex. So I think again,

19  it's just plausible that this is harassment on the basis of

20  sex. The Court does not need to find that it's not harassment

21  on the basis of some other factor, it just needs to find for

22  the moment as plausible.

23              **THE COURT:**  In trying to really drill down on this

24  what does it mean to be on the basis of sex, I do think it's a

25  different context.  But the high court has given some guidance

1    on this in *Bostock* dealing with that very question of how do

2    we define sex.  And making it clear that your burden is not to

3    show, again, one -- that there's only one motive, but that it

4    is -- or not even a primary motive, but a motive on the basis

5    of sex. And I found that to be instructive because where some

6    of these other cases don't -- the real work is going to be to

7    define the contours here because the fact of the matter is

8    this is a person who is accused of rape who is now saying

9    they're the victim of sex-based harassment and that's just

10   taking this whole area of the law in a different direction.

11   Right?  But when it was in the more traditional direction

12   which is a woman either being discriminated against because

13   she complained about rape or a woman saying -- the victim of

14   sex-based violent speech, it didn't require the same searching

15   analysis. Does that make sense?

16           **MR. NORTH:**   Yes.  I think there are a couple points

17   there, Your Honor. But the first -- but yes, to address I

18   guess your last point first, I do think that makes sense. I

19   definitely acknowledge we're in kind of a -- I wouldn't

20   necessarily say unique totally factual circumstance when it

21   comes to a deliberate indifference claim.  And the reason I

22   say wouldn't totally consider it unique is because still here

23   we have a complainant complaining to the University and the

24   University chose to do nothing about the complaints. So in

25   that sense, of course --

 1          **THE COURT:**  But the University would say because

 2     it's not Title IX actionable. I mean, that's why I wanted to

 3     have the conversation with Ms. Sheridan about, well, you

 4     didn't just do nothing. You did do something, but then you

 5     chose to do nothing. In other words, why did the University

 6     Title IX office get involved at all?

 7          But to answer more their point and I know I am bouncing

 8     around and I'm sorry, but my monkey brain just went to their

 9     point which is what's the limiting principle?  What's the

10     reason that this isn't going -- this case isn't going to open

11     up the floodgates for any accuser, accused rather, who is

12     exonerated to now say well, they're talking about me on

13     campus. Therefore Title IX, do something.

14          **MR. NORTH:**  Yes.  I think that's a great question

15     and I have a couple of responses for that. The first thing is

16     just to address I guess the plain language of Your Honor's

17     question, I don't think this would create a cause of action

18     for every exonerated student because not every case involves

19     allegations of rape outside of the Title IX process subsequent

20     to the resolution of the Title IX process. So that is to say

21     allegations made within the Title IX process are, of course,

22     we're not saying that those -- you know, that they should have

23     disciplined the complainant, let's say, for making the initial

24     report to Title IX. So anything within this underlying Title

25     IX process.

1          **THE COURT:**  You're saying it's separate.

2          **MR. NORTH:**  That's, of course, the first limiting

3     principle. The second limiting principle I would say is that,

4     you know, this is -- there was, in fact, some sex-specific

5     language here. It wasn't just calling John Doe a rapist, but

6     what it was also was, you know, this language about no girl

7     wants to wake up with her pants undone, two boys assaulted me.

8     Girl and boy are certainly sex-specific language. So I think

9     that given those two limiting principles, some explicitly

10    sex-specific language and two, this speech happened after the

11    resolution of the underlying Title IX case in which the

12    student was exonerated in which the school, in fact, formally

13    determined that there was no basis or to be specific I should

14    say that it was not more likely than not that he committed a

15    sexual offense. I kind of consider that exonerated, but I

16    would speak more carefully, I suppose.

17         So I think we have the favorable resolution to the

18    underlying Title IX process, the post-resolution speech

19    calling him a rapist that's outside the reporting mechanism of

20    the University, and then the explicit sex-specific language

21    that we have by female students. So I think all of those kind

22    of limit what is alleged to be a new cause of action here. I

23    consider it to be a relatively straightforward deliberate

24    indifference claim, but I do acknowledge that we're not

25    complaining of a sexual assault and then the University

1    doesn't do anything about it, we're complaining about

2    harassment, that is speech that the University doesn't do

3    anything about it. So if that answers Your Honor's question.

4            **THE COURT:**  It does.

5            **MR. NORTH:**  Okay.  And just to go back to an earlier

6    question that Your Honor raised, I think that -- and this is

7    actually my first point that I had intended to bring up was

8    that *Twombly* and *Iqbal* maintain the plausibility standard for

9    all pleadings except for claims of mistake or fraud that are

10   subject to a heightened pleading standard.

11       And with respect to Title IX, the Fourth Circuit's recent

12   opinion in *Sheppard* I think is instructive in that *Sheppard*

13   held that Title IX bars all discrimination on the basis of sex

14   and education and that a plaintiff must plausibly allege but

15   for causation.

16       And as the Court hinted at, the Fourth Circuit cited the

17   Supreme Court's opinion in *Bostock v. Clayton County*, Court's

18   discussion of but for causation.  And the Supreme Court in

19   that case explained that so long as the plaintiff's sex was

20   one but for cause in that decision, that's enough to trigger

21   the law. So I would say just to kind of brief full circle

22   perhaps that under *Sheppard's* reasoning and *Bostock* reasoning,

23   so long as sex was one but for cause of the harassment, that

24   would be enough at the pleading stage to survive a Motion to

25   Dismiss and I think we've done that.

```
 1          So with that, I suppose I will turn to the last point I
 2    was intending to address today because I believe I've
 3    sufficiently covered the plausibility standard and whether the
 4    conduct was plausibly sex-based.  So the last point that I was
 5    intending to cover was that defendants acted clearly and
 6    reasonably in light of the known circumstances.  And John Doe
 7    alleged in the complaint that he repeatedly made all of the
 8    harassment conduct known to defendants and pleaded with them
 9    to do something and then, of course, they did nothing.
10          THE COURT:  And if it's not sex-based, then all of
11    the claims fail, right?  If it is then we go to the next
12    stage --
13          MR. NORTH:  I think that is right, Your Honor.
14          THE COURT:  --which is at least with regard to the
15    equal protection, was it clearly established.
16          MR. NORTH:  I think that's right, Your Honor, yes.
17    I think there's really no argument the University can make
18    that if you assume it's sex-based harassment, there's really
19    no argument that they can make that they did anything about it
20    because they didn't do anything about it. They received
21    reports over and over again and they chose to do nothing, even
22    going so far as to state that the underlying report was made
23    in good faith or the accusations were made in good faith, even
24    though they formally determined that he was not responsible
25    for those allegations.
```

1        So for those reasons, I'd agree with Your Honor in that

2   the next question then would just be qualified immunity on the

3   equal protection claims. And there I would say that of course

4   qualified immunity is an affirmative defense. It can be

5   resolved and most often is resolved in Summary Judgment.  And

6   I think that once the Court and the parties have had the

7   benefit of discovery, that that would be the more appropriate

8   place to resolve the question of qualified immunity.  For

9   these purposes, *Feminist Majority* did clearly hold that a

10  university can be liable for student-on-student sexual

11  harassment and student-on-student retaliatory harassment. So

12  for the pleading stage, I think that's sufficient to survive

13  qualified immunity.

14        **THE COURT:**  And I think the last question I would

15  have at this point unless what you're about to say sparks more

16  questions is what is exactly the plausibility of the

17  retaliatory harassment?  How is it retaliation for

18  participation in the Title IX process rather than retaliation

19  for the outcome?  I didn't even mean to set it up as an

20  either/or. Tell me why there's enough facts in the complaint

21  that it's retaliation based on the participation in the

22  process.

23        **MR. NORTH:**  Well, I would say a couple things. The

24  first thing is that the harassment began very shortly after he

25  was -- his participation ended. So there's some sort of nexus

1    there between the fact that he's participating and then he is

2    subject to this harassment. So there's a temporal proximity

3    here.  But then as Your Honor indicated during my colleague's

4    argument, there's also a subject matter proximity here in that

5    the retaliatory harassment covers the exact same subject

6    material as John Doe's defense of himself during the timeline

7    process and, of course, the underlying complaint thereto.

8         So I think that for those reasons and I'm sure there are

9    reasons that I've stated in my brief that I'm not recalling,

10   we would say that it's plausible.  Again, it only has to be

11   one plausible explanation for the retaliatory -- for the

12   harassment. So for those reasons and the reasons stated in our

13   brief, defendants' motion should be denied.  Thank you.

14            **THE COURT:**   Thank you. Okay. So as I've indicated,

15   this is an extremely important case. It's very difficult to

16   call at the Motion to Dismiss stage. And that given that I

17   really do take very seriously the plausibility standard, ECF

18   52 is denied as to Count One which is the student-on-student

19   harassment claim for the reasons that we've discussed.  And to

20   be clear, I'm just -- I'm not persuaded by *Nungesser*.  I think

21   it's distinguishable in its facts.  It's wrongly decided.  57,

22   I'm sorry, it's ECF 57.  And to decide a case of that import I

23   think on a Motion to Dismiss standard is just not going to do

24   it, especially in light of I do find that the Fourth Circuit

25   standard in *Jennings* at least has been plausibly met here

1    given the allegations that we've discussed in totality. Not

2    just calling someone a rapist, but all the facts in the

3    complaint.  I found *Rouse v. Duke University* and *Doe v. East*

4    *Haven* instructive and I guess one could say I'm pressing on my

5    own questions as to why those cases were so easily decided

6    when the woman was a complainant and why we struggle so much

7    when it's the man who is the complainant with similar

8    allegations in terms of making an allegation of rape and then

9    having much adverse speech directed at the plaintiff in *Rouse*

10   or in *Doe*. And it was in *Doe*, in fact, very easy for the case

11   to be concluded through a trial.  And for the Second Circuit

12   to say it's certainly a reasonable juror could have found that

13   those responses to her allegation of rape were sex-based and

14   yet we struggle here with that. And I just need more facts to

15   understand why it's different from the University's

16   perspective.

17        So I'm going to deny dismissal of Count One on the

18   question of whether this was sex-based harassment. It's

19   plausible given all the facts in the complaint.

20        Similarly, with regard to whether the harassment was

21   severe and pervasive, under the prevailing standard, being

22   barred from -- or being denied access to a program or

23   activity, being excluded from a program or activity is

24   sufficiently severe and pervasive. That's been alleged here

25   and so I don't see any grounds to say that there's no set of

1    facts given in the light most favorable to the plaintiff that

2    would otherwise not meet that element. So I deny the motion on

3    that ground.

4         No facts to support deliberate indifference:  Again, for

5    the reasons we've discussed, it largely rises and falls on

6    whether the conduct at issue is on the basis of sex. I think

7    for the reasons we've discussed I can't determine that it's

8    not.  And under the plausibility standard, there are enough

9    facts to suggest in the light most favorable to Mr. Doe that

10   it is. And so deliberate indifference, clearly the remaining

11   facts are that the Title IX office knew, they knew

12   specifically what the complaints were. They took certain

13   action, but not sufficient action certainly under *Feminist*

14   *Majority.*  And so for that reason, when the plaintiff alleges

15   reaching out to the office on at least four occasions over the

16   course of several months, filing two formal complaints, being

17   told we will take certain action and then that is not taken

18   under the facts that have been alleged, that is sufficient to

19   constitute at this point deliberate indifference.

20        With regard to the retaliation claim, Count Two, for

21   largely the same reasons I'm going to allow it to go forward.

22   I do query whether it's going to be -- this is a different

23   case than *Feminist Majority* and the claimed participation in

24   the protected activity is different. But again, staying

25   faithful to the *Iqbal/Twombly* standard, I think that there is

1    enough plausibly pled that this is retaliatory harassment
2    because of Mr. Doe's participation in the Title IX proceeding,
3    the results, and the fallout. We'll see where we end up after
4    Summary Judgment.
5        On the damages point, I have to say that I don't see
6    *Cummings* as wiping out *Mercer*.  And when I read the complaint
7    it claims damages. It doesn't -- it actually under the prayer
8    for relief, notes that they are claiming compensatory,
9    special, and punitive damages. I don't believe there's any --
10   I'm not sure -- Title IX doesn't allow for punitive damages,
11   but there are defamation claims and that's not been really
12   addressed. But as to damages, there have been actual damages
13   pled.  And so I don't see *Cummings* as just wiping the slate
14   clean. Perhaps it reaches emotional damages. And your point,
15   Ms. Sheridan, about it being contract-based claims may be, but
16   that doesn't in my view negate that under *Mercer,* Title IX
17   litigants may be entitled to nominal damages and the
18   attorneys' fees that flow. So certainly you can take another
19   shot at convincing me otherwise, but on these pleadings I
20   don't see it.
21       Okay, with regard to equal protection, Count Four,
22   similarly and in the individual capacities at this juncture
23   I'm going to deny it for largely the same reasons. I think the
24   different new argument that the defendants press is that it is
25   not clearly established that the constitutional or statutory

```
1    right at issue is simply not clearly established. And that may

2    be the winning argument after discovery, but qualified

3    immunity is a fact-bound defense. Certainly the defendant is

4    right. I must decide it at the earliest possible moment and

5    I'm saying I can't decide it at this juncture, but that

6    doesn't mean I won't after the facts are more clearly laid

7    out.

8         And so given where we are in the procedural posture is

9    largely the reason why I cannot say Count Four is barred for

10   the personal capacity claims by qualified immunity. It may be

11   in the end.

12        With respect to Count Five, the equal protection claim in

13   Karmiol and Nastase's official capacities, I'm going to grant

14   dismissal on that. I don't see any facts that trigger ex parte

15   Young and otherwise as agents of the state the defendants are

16   entitled to Eleventh Amendment immunity to be protected from a

17   suit in this court. So Count Five is dismissed and is

18   dismissed with prejudice.

19        Any questions with regard to the ruling at this point?

20   We'll talk about next steps.

21             MS. SHERIDAN:  No thank you, Your Honor.

22             THE COURT:  All right. With regard to ECF 58 which

23   is Defendant 2's Motion for Summary Judgment.

24             MR. CONDLIFF: Good afternoon, Your Honor.  Jack

25   Condliff for the Defendant 2 in this matter. I'm going to be
```

1    incredibly brief.  I really don't have a lot to say about

2    this. I did note the criticism of my motion about not having

3    cited the cases in Summary Judgment.  Quite correct, I just

4    wasn't thinking about it at the time. I apologize to the

5    Court.

6         I will also say I'm familiar with the cases cited by the

7    plaintiffs about early Summary Judgment and the right to take

8    discovery. I've been a plaintiff's attorney for 31 years.  I

9    know those cases by heart so I'm not going to dispute that

10   fact, but the reason I filed this motion is a very simple one

11   which is that Defendant 2 is the wrong person.  They sued the

12   wrong person.  She wasn't there.  She wasn't at any of the

13   meetings.  And as her affidavit states, she simply wasn't

14   involved in what is being complained of here.

15        **THE COURT:**  I thought that there was a response with

16   respect to online participation. And that the complaint does

17   not squarely state that this was only in person advocacy.  As

18   a matter of fact, social media was used and is often used.  So

19   why at this very early stage would I say in the light most

20   favorable to the nonmoving party, clearly Defendant 2 could

21   not have participated in the alleged events?

22        **MR. CONDLIFF:**  Well, I didn't see any allegations

23   that Defendant 2 made online posts. There were online posts --

24        **THE COURT:**  There were online meetings where she was

25   -- wasn't there?  I thought I read an affidavit that was

 1   submitted by plaintiff with respect -- am I wrong about that?

 2   With respect to an online meeting.

 3            **MR. CONDLIFF:**  Let me go back to that, Your Honor. I

 4   have to reread -- I have it right here, at least I thought I

 5   did. That's the problem with being paperless, Your Honor, is

 6   you don't always --

 7            **THE COURT:**  I mean, why isn't this -- really, we're

 8   not -- we've had no discovery. You're right, it's going to be

 9   resolved with a handful of interrogatories and maybe a short

10   deposition.

11            **MR. CONDLIFF:**  I understand.  I'm just concerned

12   about my client's time and being involved in this. She has

13   graduated.  She has a job at the United Nations NGO and I'm

14   trying to get her out of the middle of dodge. I mean, this --

15   Defendant 3 categorically denies the substance of the

16   allegations, but she's not denying that they sued the person

17   they think they were supposed to sue. Defendant 2 is saying,

18   you just got the wrong person. You should not have sued me in

19   this matter.

20       I agree it may be short discovery, but short discovery to

21   a layperson and short discovery to a lawyer are two vastly

22   different things and it is intrinsic. So that is my concern.

23   That's why I filed this so early. I mean, I knew the Court

24   might reject it, but I wanted to make the point early on that

25   with Defendant 2, she shouldn't be in this case at all.

1      **THE COURT:**  And it's not that Defendant 2 wasn't in

2    leadership in the PSA.

3      **MR. CONDLIFF:**  She absolutely was, but she wasn't

4    there.

5      **THE COURT:**  You're saying she was not on campus and

6    therefore not involved in the chain of events?

7      **MR. CONDLIFF:**  She was at home, ill, getting taken

8    care of. You've got the affidavit there in front of you and I

9    don't want to discuss the cause here on the public record, but

10   yeah, she was not doing well. She was instructed by her doctor

11   not to return to campus, that it was okay to do online

12   learning.  And for these events she was not the person

13   participating or exercising her leadership role.

14      **THE COURT:**  Okay, all right.  I get the argument.

15   Let me see what the plaintiff has to say about it.

16      Mr. North, we're told Defendant 2, wrong person.

17      **MR. NORTH:**  Yes, and I appreciate opposing counsel's

18   candor and his argument. I guess my brief response would be we

19   don't know that she wasn't involved. I mean, she says she

20   wasn't involved through her affidavit. We have in our

21   affidavit and I think on page 6 of our opposition brief at

22   least a link to one PSA meeting in which she was present and

23   she spoke.

24      **THE COURT:**  And it was online, right?  Am I right

25   about that?  Wasn't it online?

```
 1          MR. NORTH:  I reviewed the video this morning. The

 2     hyperlink is in footnote 4 on page 6.  But I reviewed it this

 3     morning and she was physically in person. Now I don't know if

 4     that room was on campus or what, but she was sitting there in

 5     person with a group of what looked to be students. Again, I

 6     don't know beyond that, but it was a PSA meeting from what it

 7     seemed.  So, you know, it's not appropriate of course for a

 8     defendant to just say hey, I wasn't involved and short-circuit

 9     litigation. It looks like at least from our investigation and

10     from this video that she was there, she was involved and for

11     those reasons, Summary Judgment is inappropriate.

12          THE COURT:  Yeah, okay. Well I agree. I'm going to

13     deny it at this juncture. Again, I'll say the same thing.  I'm

14     not interested in Mr. Condliff making anyone go through a

15     protracted, expensive, and unnecessary discovery battle. So

16     I'm going to keep it tight and if the defense is going to be

17     "not me," let's get to the discovery that resolves that

18     quickly.

19          MR. CONDLIFF:  I don't think it's expensive for my

20     client.  I'm pro bono, but--

21          THE COURT:  Well, for you and I appreciate your

22     services in that regard.  But at this juncture pre-discovery

23     where there's been sufficient showing on the plaintiff's part

24     that it would be inappropriate to grant Summary Judgment at

25     this juncture without additional discovery because there's at
```

1   least some facts to suggest Defendant 2 was involved in PSA

2   during the relevant times, I'll deny the motion.

3          **MR. CONDLIFF:**   Thank you, Your Honor.

4          **THE COURT:**   Okay, Counsel, let's talk next steps.

5   Customarily what I would do is issue just a generic scheduling

6   order and then have you all discuss and file in response that

7   the milestone date A) joint status report. I suggest we do

8   that but then the next -- what you file in response in that

9   joint status report I urge you to make it a little bit more

10  detailed and surgical with respect to what discovery you

11  intend to exchange so that I can have a more meaningful

12  conversation with you all.  If there's going to be concern

13  that it is far afield, it's not dealing with the issues that

14  are squarely concerning the Court in the next stage, that we

15  have that conversation and I'll have the follow-up, what I

16  call the Rule 16 conference. We'll do it recorded because I

17  would anticipate that if all is well and you say "We're all

18  working well, we're keeping it proportionate and we're in

19  agreement on that," well it will be a really quick

20  conversation and we're done. If there's any concern about it

21  then we're having a hearing on the record so we can

22  memorialize it and go forward. So if there are any discovery

23  disputes, we know where we started. I handle all my discovery

24  disputes so we'll have on the record my letter order regarding

25  discovery which basically tries to streamline the issues.

1           If at any point you encounter a discovery dispute that

2    cannot be resolved by way of meet and confer, put it in a

3    letter to me and I'll get you all on the line within a week or

4    so of that letter to resolve it in a recorded status and if

5    necessary, I'll bring you all in and we see each other in

6    person. I don't like to do that because it's expensive and

7    time consuming for you all, but it's available.

8           So that is my proposed next step. I'll pump that out --

9    well, we need a date by which you'll answer the complaint

10   defendants and then I will issue a scheduling order.

11          Do you all need more time than 14 days that would

12   otherwise be allotted, defendants?

13          **MS. SHERIDAN:**  If we could have -- next week is

14   actually spring break.  If we could have an extra week that

15   would be great.

16          **THE COURT:**  So it would be 21 days.  Plaintiff, any

17   issue with that?

18          **MR. NORTH:**  No objection, Your Honor.

19          **THE COURT:**  Okay, so the answer will be due 21 days

20   from today. Once we get that we'll pump out a scheduling

21   order. There will be a date by which you'll file with me the

22   joint status report. The dates that are merely suggestions,

23   I'll say that in terms of the schedule, I expect that you all

24   will work together to come up with milestone dates that work

25   collectively for the case. If you put those in the joint

1   status report to me and they're reasonable, I'm not going to

2   stand in the way of peace.  I will make that the operative

3   scheduling order and then we'll make sure that we're all on

4   the same page with regards to discovery. Sounds good?

5           **MS. SHERIDAN:**  Thank you.

6           **MR. NORTH:** Yes, Your Honor.  Thank you.

7           **THE COURT:**  All right, thank you all.  I really

8   appreciate your time. Take care.

9           **(Proceeding concluded at 2:24 p.m.)**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4

 5            I, Nadine M. Bachmann, Certified Realtime Reporter

 6    and Registered Merit Reporter, in and for the United States

 7    District Court for the District of Maryland, do hereby

 8    certify, pursuant to 28 U.S.C. § 753, that the foregoing is a

 9    true and correct transcript of the stenographically-reported

10    proceedings held in the above-entitled matter and that the

11    transcript page format is in conformance with the regulations

12    of the Judicial Conference of the United States.

13

14                         Dated this 24th day of April, 2023.

15

16                         -S-

17            _____

18                         NADINE M. BACHMANN, CRR, RMR
                           FEDERAL OFFICIAL COURT REPORTER
19

20

21

22

23

24

25
```

**1**

**1** [2] - 2:9, 14:20
**101** [1] - 1:24
**12(b)(6** [1] - 4:16
**14** [1] - 54:11
**16** [1] - 53:16
**17th** [1] - 2:6
**1:01** [1] - 3:1

**2**

**2** [12] - 14:21, 18:12, 36:20, 48:25, 49:11, 49:20, 49:23, 50:17, 50:25, 51:1, 51:16, 53:1
**2's** [1] - 48:23
**200** [2] - 1:15, 2:6
**2022** [1] - 10:19
**2023** [2] - 1:9, 56:14
**21** [2] - 54:16, 54:19
**21201** [1] - 1:24
**21202** [2] - 2:6, 2:12
**21204** [1] - 2:9
**22-0872-PX** [1] - 1:4
**22030** [1] - 1:18
**22314** [1] - 1:16
**24th** [1] - 56:14
**28** [2] - 1:9, 56:8
**2:24** [1] - 55:9
**2C** [1] - 1:9

**3**

**3** [3] - 18:12, 36:20, 50:15
**300** [2] - 1:18, 2:12
**31** [1] - 49:8

**4**

**4** [1] - 52:2
**4020** [1] - 1:18
**410-962-4753** [1] - 1:25
**4th** [1] - 1:24

**5**

**52** [2] - 4:2, 44:18
**57** [2] - 44:21, 44:22
**58** [2] - 4:4, 48:22

**6**

**6** [2] - 51:21, 52:2

**7**

**700** [1] - 22:11
**717** [1] - 1:15
**753** [1] - 56:8

**8**

**84** [1] - 19:14

**9**

**900** [2] - 2:8, 2:12

**A**

**able** [1] - 34:3
**above-entitled** [1] - 56:10
**absolutely** [1] - 51:3
**accept** [1] - 21:9
**accepted** [1] - 4:21
**access** [1] - 45:22
**according** [3] - 6:15, 10:1, 12:1
**accordingly** [1] - 29:11
**accurate** [1] - 25:2
**accusation** [4] - 36:11, 36:14, 36:25, 37:18
**accusations** [2] - 9:23, 42:23
**accused** [10] - 5:3, 5:24, 10:1, 13:24, 14:6, 14:14, 23:17, 23:19, 38:8, 39:11
**accuser** [5] - 5:15, 14:12, 14:20, 16:3, 39:11
**accusing** [3] - 11:2, 23:22, 23:23
**acknowledge** [2] - 38:19, 40:24
**act** [2] - 36:23, 37:16
**acted** [4] - 28:5, 34:21, 35:21, 42:5
**action** [5] - 5:3, 9:3, 14:20, 26:25, 39:17, 40:22, 46:13, 46:17
**actionable** [4] - 9:4, 9:5, 9:6, 39:2
**actions** [2] - 13:23, 30:23
**active** [1] - 33:9
**actively** [1] - 19:22
**activity** [4] - 23:14, 45:23, 46:24
**actual** [2] - 20:17, 21:12, 47:12

**additional** [1] - 52:25
**address** [6] - 25:2, 34:14, 34:23, 38:17, 39:16, 42:2
**addressed** [1] - 47:12
**adjudicate** [1] - 13:18
**adjudicated** [2] - 14:22
**adjudication** [1] - 15:22
**administration** [1] - 22:5
**advance** [2] - 4:5, 33:3
**advances** [1] - 8:4
**adverse** [2] - 9:3, 45:9
**advocacy** [1] - 49:17
**affidavit** [5] - 49:13, 49:25, 51:8, 51:20, 51:21
**afield** [1] - 53:13
**afternoon** [7] - 3:10, 3:11, 3:12, 3:16, 3:17, 3:18, 3:22, 3:25, 48:24
**agent's** [1] - 6:16
**agents** [1] - 48:15
**aggravating** [1] - 34:7
**ago** [3] - 25:6, 37:10
**agree** [7] - 7:10, 9:17, 28:10, 34:25, 35:11, 35:12, 36:4, 43:1, 50:20, 52:12
**agreed** [1] - 19:16
**agreement** [1] - 53:19
**agrees** [1] - 26:5
**Aided** [1] - 1:21
**aimed** [2] - 8:8, 32:7
**al** [2] - 1:6, 3:4
**Alexandria** [1] - 1:16
**allegation** [4] - 10:8, 13:4, 45:8, 45:13
**allegations** [20] - 6:13, 10:10, 10:12, 10:13, 11:5, 12:1, 12:3, 13:5, 14:2, 15:16, 28:23, 29:12, 30:4, 39:19, 39:21, 42:25, 45:1, 45:8, 49:22, 50:16
**allege** [2] - 35:25, 41:14
**alleged** [14] - 6:2, 18:7, 20:2, 25:13, 25:14, 25:16, 28:18, 36:5, 40:22, 42:7, 45:24, 46:18, 49:21
**alleges** [4] - 10:22, 20:5, 28:2, 46:14
**alleging** [2] - 6:10, 16:1

**allergies** [1] - 34:4
**allotted** [1] - 54:12
**allow** [3] - 5:1, 46:21, 47:10
**alternative** [2] - 32:17, 32:25
**Amendment** [6] - 15:5, 15:20, 16:12, 16:16, 16:21, 48:16
**Amy** [2] - 1:17, 3:8
**analysis** [4] - 11:11, 13:12, 24:11, 38:15
**Angela** [2] - 2:4, 3:15
**animus** [4] - 13:7, 16:18, 16:19, 30:9
**Ann** [2] - 2:4, 3:12
**announces** [1] - 10:18
**answer** [8] - 29:5, 29:17, 31:18, 31:20, 39:7, 54:9, 54:19
**answers** [1] - 41:3
**anticipate** [1] - 53:17
**anyway** [1] - 34:9
**apartment** [1] - 18:11
**apologize** [1] - 49:4
**appeals** [1] - 32:9
**Appearances** [1] - 2:1
**appreciate** [4] - 4:5, 51:17, 52:21, 55:8
**appropriate** [3] - 12:6, 43:7, 52:7
**April** [1] - 56:14
**area** [4] - 27:9, 34:24, 38:10
**areas** [2] - 21:17, 31:6
**argue** [2] - 25:16, 34:1
**argued** [4] - 11:19, 21:24, 22:1, 37:9
**argument** [28] - 4:9, 10:4, 15:7, 15:10, 15:25, 16:5, 16:7, 16:9, 16:12, 16:17, 17:8, 20:24, 20:25, 21:10, 24:16, 25:12, 33:23, 34:12, 34:15, 42:17, 42:19, 44:4, 47:24, 48:2, 51:14, 51:18
**arguments** [5] - 7:6, 7:19, 34:18, 34:20, 37:5
**arising** [1] - 13:7
**arose** [3] - 5:23, 9:23
**assault** [3] - 11:17, 28:11, 40:25
**assaulted** [1] - 40:7
**assaults** [2] - 22:8
**Assistant** [1] - 3:13
**association** [2] - 6:1
**assume** [3] - 15:14,

15:18, 42:18
**assuming** [1] - 25:1
**attempt** [1] - 11:6
**attending** [1] - 18:14
**attention** [1] - 22:10
**Attorney** [2] - 2:5, 3:13
**attorney** [1] - 49:8
**attorneys'** [3] - 25:17, 26:6, 47:18
**authority** [1] - 30:5
**available** [1] - 54:7
**Avenue** [1] - 2:9
**averred** [1] - 29:6
**award** [1] - 25:23
**awful** [1] - 17:24

**B**

**B-e-a-s-l-e-y** [1] - 3:20
**BACHMANN** [1] - 56:18
**Bachmann** [2] - 1:23, 56:5
**bad** [1] - 34:4
**Baltimore** [3] - 1:24, 2:6, 2:12
**barred** [2] - 45:22, 48:9
**bars** [1] - 41:13
**based** [31] - 4:16, 6:25, 9:7, 13:6, 13:7, 16:18, 16:19, 21:23, 22:4, 23:14, 23:16, 23:18, 23:20, 26:22, 26:23, 29:7, 29:11, 29:16, 29:20, 35:4, 35:14, 38:9, 38:14, 42:4, 42:10, 42:18, 43:21, 45:13, 45:18, 47:15
**baseline** [1] - 16:22
**basis** [12] - 34:19, 35:23, 36:1, 36:14, 37:1, 37:19, 37:21, 37:24, 38:4, 40:13, 41:13, 46:6
**battle** [1] - 52:15
**bear** [1] - 34:5
**BEASLEY** [1] - 3:18
**Beasley** [2] - 2:11, 3:19
**BEFORE** [1] - 1:12
**began** [1] - 43:24
**begin** [2] - 12:4, 33:23
**beginning** [2] - 3:6, 34:12
**behalf** [2] - 3:19, 3:23
**behave** [1] - 14:6
**believable** [1] - 23:12

believes [2] - 23:6, 23:7
belong [1] - 19:12
belonged [3] - 6:7, 8:16, 30:13
belongs [1] - 14:14
Ben [1] - 3:18
benefit [2] - 31:2, 43:7
Benjamin [5] - 1:14, 2:11, 3:7, 33:17, 33:20
best [1] - 7:14
between [8] - 5:24, 9:24, 11:21, 17:15, 18:3, 20:3, 20:7, 44:1
beyond [1] - 52:6
big [1] - 31:11
Binnall [1] - 1:15
bit [4] - 18:23, 31:19, 33:25, 53:9
Blankinship [1] - 1:17
bleach [1] - 34:7
body [1] - 17:25
bono [1] - 52:20
Bostock [3] - 38:1, 41:17, 41:22
bouncing [1] - 39:7
bound [4] - 9:22, 12:20, 13:11, 48:3
boy [2] - 11:1, 40:8
boyfriend [1] - 20:4
boys [3] - 10:20, 29:9, 40:7
BRADLEY [1] - 3:10
Bradley [4] - 1:17, 3:9, 33:16, 33:21
brain [1] - 39:8
breach [3] - 26:13, 26:17, 26:25
break [1] - 54:14
breathing [1] - 21:16
brief [6] - 41:21, 44:9, 44:13, 49:1, 51:18, 51:21
bring [2] - 41:7, 54:5
broadcast [1] - 14:9
broadly [1] - 26:19
burden [1] - 38:2
burdens [1] - 33:13
business [1] - 19:19
buying [1] - 8:18

C

campaign [1] - 36:22
campus [10] - 6:6, 14:9, 22:8, 22:20, 36:17, 39:13, 51:5,
51:11, 52:4
cancelled [1] - 18:11
candor [1] - 51:18
cannot [4] - 5:11, 14:24, 48:9, 54:2
capacities [2] - 47:22, 48:13
capacity [1] - 48:10
care [2] - 51:8, 55:8
careful [4] - 7:15, 7:16, 28:20, 28:21
carefully [1] - 40:16
CASE [1] - 1:4
case [24] - 4:7, 9:22, 12:20, 14:21, 14:22, 17:15, 24:8, 25:3, 28:2, 30:5, 33:7, 36:17, 36:19, 39:10, 39:18, 40:11, 41:19, 44:15, 44:22, 45:10, 46:23, 50:25, 54:25
cases [14] - 7:13, 8:13, 11:4, 11:14, 11:19, 25:5, 26:21, 37:2, 37:8, 38:6, 45:5, 49:3, 49:6, 49:9
categorically [1] - 50:15
category [1] - 29:23
causation [2] - 41:15, 41:18
caused [1] - 9:19
certain [3] - 20:12, 46:12, 46:17
certainly [7] - 8:11, 16:7, 40:8, 45:12, 46:13, 47:18, 48:3
certainty [1] - 32:9
CERTIFICATE [1] - 56:1
Certified [1] - 56:5
certify [1] - 56:8
chain [1] - 51:6
challenging [1] - 5:8
characterize [1] - 7:2
chose [3] - 38:24, 39:5, 42:21
circle [1] - 41:21
Circuit [5] - 8:7, 22:1, 41:16, 44:24, 45:11
circuit [1] - 52:8
Circuit's [1] - 41:11
circumstance [1] - 38:20
circumstances [4] - 5:19, 7:16, 34:22, 42:6
cite [1] - 15:12
cited [5] - 37:2, 37:8, 41:16, 49:3, 49:6

Civil [1] - 3:3
CIVIL [1] - 1:4
claim [16] - 4:16, 5:1, 9:18, 12:4, 13:15, 27:23, 28:2, 28:5, 28:13, 35:19, 37:6, 38:21, 40:24, 44:19, 46:20, 48:12
claimant [1] - 12:11
claimed [1] - 46:23
claiming [1] - 47:8
claims [12] - 13:19, 27:6, 29:15, 31:5, 31:24, 41:9, 42:11, 43:3, 47:7, 47:11, 47:15, 48:10
clarifying [1] - 34:16
clarity [1] - 32:9
Clayton [1] - 41:17
clean [1] - 47:14
cleaning [1] - 34:6
clear [8] - 8:1, 11:14, 12:14, 19:8, 32:5, 33:9, 38:2, 44:20
clearly [21] - 4:11, 18:19, 21:14, 22:3, 27:11, 27:19, 27:20, 28:10, 29:20, 32:1, 32:2, 34:21, 42:5, 42:15, 43:9, 46:10, 47:25, 48:1, 48:6, 49:20
CLERK [1] - 3:2
client [2] - 36:21, 52:20
client's [2] - 35:4, 50:12
close [3] - 6:2, 21:17, 32:1
club [5] - 8:15, 16:4, 29:10, 30:13
clubs [1] - 16:3
co [1] - 3:8
co-counsel [1] - 3:8
coach [2] - 17:12, 17:15
code [1] - 33:8
cold [1] - 34:4
colleague [1] - 34:1
colleague's [1] - 44:3
collectively [1] - 54:25
College [3] - 2:3, 3:4, 3:14
COLLEGE [1] - 1:6
comfort [1] - 29:15
coming [1] - 30:11
commenced [1] - 3:1
comments [6] - 11:6, 17:10, 17:22, 17:23, 29:6

committed [1] - 40:14
committee [1] - 10:18
communicated [1] - 30:5
communicates [1] - 19:17
compensatory [1] - 47:8
complainant [10] - 6:3, 6:13, 11:7, 14:12, 27:19, 36:19, 38:23, 39:23, 45:6, 45:7
complainants [2] - 7:9, 30:2
complained [4] - 11:15, 30:6, 38:13, 49:14
complaining [6] - 11:9, 19:7, 31:9, 38:23, 40:25, 41:1
complains [1] - 21:10
complaint [38] - 5:17, 5:18, 6:15, 6:20, 6:22, 10:2, 10:11, 10:21, 11:4, 11:24, 12:1, 18:18, 19:1, 19:9, 19:11, 19:21, 20:2, 20:5, 20:20, 21:9, 21:12, 25:13, 28:9, 28:11, 29:19, 30:9, 32:14, 35:18, 36:7, 42:7, 43:20, 44:7, 45:3, 45:19, 47:6, 49:16, 54:9
complaints [10] - 5:12, 6:11, 19:22, 22:9, 22:24, 29:11, 30:1, 38:24, 46:12, 46:16
Computer [1] - 1:21
Computer-Aided [1] - 1:21
concede [1] - 37:5
concept [1] - 9:20
concern [4] - 25:3, 50:22, 53:12, 53:20
concerned [3] - 33:10, 37:10, 50:11
concerning [1] - 53:14
concerted [1] - 36:22
concluded [5] - 18:8, 19:6, 23:9, 45:11, 55:9
conclusion [2] - 5:12, 10:15
conclusory [2] - 10:12, 19:2
CONDLIFF [5] - 3:22, 48:24, 49:22, 50:3, 50:11, 51:3, 51:7,

52:19, 53:3
Condliff [4] - 2:8, 3:23, 48:25, 52:14
conduct [18] - 8:3, 8:23, 11:15, 13:23, 16:20, 16:25, 17:20, 18:20, 20:18, 22:7, 22:24, 23:2, 23:4, 23:24, 24:3, 42:4, 42:8, 46:6
Conduct [2] - 16:25, 20:6
confer [2] - 14:25, 54:2
conference [2] - 33:3, 53:16
Conference [1] - 56:12
conformance [1] - 56:11
confused [1] - 8:19
consensual [1] - 23:7
consequences [1] - 9:2
consider [4] - 34:14, 38:22, 40:15, 40:23
considering [1] - 34:17
constitute [2] - 15:5, 46:19
constitutes [2] - 7:23, 18:5
constitutional [1] - 47:25
constrain [1] - 37:7
constrained [1] - 32:14
construct [1] - 26:23
consuming [1] - 54:7
contact [1] - 20:7
contemplated [1] - 4:20
context [12] - 9:24, 10:5, 25:4, 26:17, 30:10, 30:14, 35:20, 36:16, 36:17, 36:24, 37:25
Continued [1] - 2:1
continues [2] - 12:12, 30:11
contours [2] - 14:1, 38:7
contract [5] - 26:12, 26:14, 26:17, 26:25, 47:15
contract-based [1] - 47:15
contract-like [1] - 26:12
contradict [1] - 37:8

**conversation** [10] - 10:16, 10:22, 12:14, 20:14, 30:17, 31:24, 39:3, 53:12, 53:15, 53:20
**convincing** [1] - 47:19
**coordinator** [1] - 31:4
**corners** [1] - 32:14
**correct** [3] - 7:24, 49:3, 56:9
**Counsel** [1] - 53:4
**counsel** [2] - 3:5, 3:8
**counsel's** [1] - 51:17
**Count** [8] - 32:22, 44:18, 45:17, 46:20, 47:21, 48:9, 48:12, 48:17
**County** [1] - 41:17
**couple** [4] - 33:24, 38:16, 39:15, 43:23
**coupled** [1] - 21:13
**course** [16] - 15:1, 22:1, 34:23, 36:12, 37:4, 37:5, 37:11, 37:16, 38:25, 39:21, 40:2, 42:9, 43:3, 44:7, 46:16, 52:7
**COURT** [117] - 1:1, 3:11, 3:16, 3:21, 3:25, 4:14, 4:23, 5:17, 6:25, 7:5, 7:11, 7:21, 7:24, 8:6, 8:14, 8:19, 8:25, 9:8, 9:17, 10:10, 10:16, 11:23, 12:7, 12:13, 13:21, 14:11, 14:18, 15:1, 15:7, 15:10, 15:14, 15:24, 16:8, 16:16, 17:3, 17:7, 17:21, 18:16, 18:22, 19:3, 19:9, 20:11, 20:16, 20:22, 21:7, 21:20, 21:25, 22:6, 22:13, 22:17, 22:19, 23:1, 23:4, 23:8, 23:13, 23:21, 23:25, 24:7, 24:15, 24:20, 24:23, 25:11, 25:15, 25:22, 26:1, 26:10, 26:19, 26:22, 27:2, 27:5, 27:12, 27:22, 28:1, 28:8, 28:12, 28:15, 28:19, 29:4, 30:3, 30:11, 31:8, 31:16, 32:5, 32:15, 32:19, 32:25, 33:14, 33:16, 33:18, 34:2, 34:6, 34:11, 34:25, 36:7, 37:23, 39:1, 40:1, 41:4, 42:10, 42:14,

43:14, 44:14, 48:22, 49:15, 49:24, 50:7, 51:1, 51:5, 51:14, 51:24, 52:12, 52:21, 53:4, 54:16, 54:19, 55:7, 56:18
**court** [5] - 21:18, 33:8, 34:6, 37:25, 48:17
**Court** [27] - 1:23, 3:3, 4:1, 4:17, 4:19, 9:19, 12:21, 13:4, 13:19, 24:12, 25:5, 27:15, 31:12, 31:13, 32:10, 33:24, 34:5, 34:19, 34:23, 37:20, 41:16, 41:18, 43:6, 49:5, 50:23, 53:14, 56:7
**Court's** [6] - 4:22, 4:24, 8:18, 34:13, 41:17
**Courtroom** [1] - 1:9
**courts** [1] - 15:23
**cover** [2] - 35:17, 42:5
**covered** [1] - 42:3
**covers** [1] - 44:5
**create** [1] - 39:17
**critical** [1] - 32:11
**criticism** [1] - 49:2
**CRR** [2] - 1:23, 56:18
**crystal** [1] - 12:14
**Cummings** [9] - 25:12, 25:18, 25:25, 26:1, 26:8, 26:18, 26:19, 47:6, 47:13
**customarily** [1] - 53:5

# D

**damage** [1] - 25:22
**damages** [26] - 25:14, 25:16, 25:18, 25:21, 25:23, 26:2, 26:4, 26:5, 26:6, 26:12, 26:13, 26:14, 26:15, 26:16, 26:20, 26:24, 26:25, 27:1, 47:5, 47:7, 47:9, 47:10, 47:12, 47:14, 47:17
**date** [3] - 53:7, 54:9, 54:21
**Dated** [1] - 56:14
**dates** [2] - 54:22, 54:24
**Davis** [4] - 17:18, 21:18, 34:17
**days** [1] - 54:11, 54:16, 54:19
**deal** [1] - 33:6
**dealing** [2] - 38:1, 53:13

**debate** [1] - 32:16
**December** [3] - 18:12, 19:9, 19:23
**decide** [3] - 44:22, 48:4, 48:5
**decided** [3] - 27:15, 44:21, 45:5
**decides** [2] - 19:15, 19:17
**deciding** [1] - 12:22
**decision** [7] - 5:1, 14:4, 21:13, 29:16, 32:6, 32:7, 41:20
**decisions** [2] - 21:18, 31:3, 31:5
**defamation** [4] - 13:19, 28:13, 29:1, 47:11
**defend** [2] - 11:25, 31:4
**defendant** [9] - 3:19, 3:23, 4:3, 19:10, 19:12, 35:21, 36:10, 48:3, 52:8
**Defendant** [13] - 2:7, 2:10, 48:23, 48:25, 49:11, 49:20, 49:23, 50:15, 50:17, 50:25, 51:1, 51:16, 53:1
**Defendants** [3] - 1:7, 2:2, 18:12
**defendants** [10] - 3:14, 27:7, 36:20, 37:9, 42:5, 42:8, 47:24, 48:15, 54:10, 54:12
**defendants'** [4] - 34:18, 34:20, 37:5, 44:13
**defended** [1] - 22:25
**defense** [9] - 11:22, 27:12, 27:13, 27:14, 35:8, 43:4, 44:6, 48:3, 52:16
**define** [2] - 38:2, 38:7
**defined** [2] - 8:1, 8:2
**definitely** [2] - 23:5, 38:19
**definition** [3] - 6:23, 9:12, 21:2
**definitions** [1] - 9:13
**degradate** [1] - 8:10
**degrade** [1] - 9:4
**degrading** [1] - 17:5
**deliberate** [11] - 17:20, 18:5, 20:13, 21:4, 21:7, 31:21, 38:21, 40:23, 46:4, 46:10, 46:19
**demonstrate** [1] -

28:25
**denied** [3] - 44:13, 44:18, 45:22
**denies** [1] - 50:15
**deny** [8] - 12:18, 13:13, 32:21, 45:17, 46:2, 47:23, 52:13, 53:2
**denying** [1] - 50:16
**Department** [4] - 5:15, 8:1, 8:2, 15:2
**deposition** [1] - 50:10
**DEPUTY** [1] - 3:2
**designed** [1] - 9:3
**detailed** [1] - 53:10
**determination** [1] - 31:14
**determine** [1] - 46:7
**determined** [2] - 40:13, 42:24
**determining** [1] - 15:19
**developed** [1] - 25:1
**devoid** [1] - 23:16
**devolve** [1] - 30:19
**dichotomist** [1] - 13:1
**difference** [2] - 17:14, 18:3
**different** [12] - 5:7, 21:25, 22:12, 27:24, 29:23, 37:25, 38:10, 40:15, 46:22, 46:24, 47:24, 50:22
**differently** [1] - 29:24
**difficult** [6] - 4:7, 24:13, 27:9, 31:3, 31:5, 44:15
**difficulty** [1] - 13:17
**direct** [4] - 11:18, 22:9, 22:11, 29:11
**directed** [8] - 6:7, 7:3, 8:13, 8:14, 8:17, 8:23, 29:7, 45:9
**direction** [2] - 38:10, 38:11
**disability** [1] - 33:25
**disaggregate** [1] - 11:11
**disaggregating** [1] - 12:16
**disagree** [1] - 12:25
**disciplined** [1] - 39:23
**discovery** [52] - 5:2, 24:25, 31:13, 31:19, 31:23, 33:4, 33:9, 43:7, 48:2, 49:8, 50:8, 50:20, 50:21, 52:15, 52:17, 52:22, 52:25, 53:10, 53:22, 53:23, 53:25, 54:1,

55:4
**discriminated** [1] - 38:12
**discrimination** [1] - 41:13
**discriminatory** [2] - 30:9, 31:15
**discuss** [2] - 51:9, 53:6
**discussed** [4] - 44:19, 45:1, 46:5, 46:7
**discussion** [1] - 41:18
**Dismiss** [8] - 4:2, 7:13, 12:17, 12:22, 25:7, 41:25, 44:16, 44:23
**dismiss** [1] - 4:16
**dismissal** [2] - 13:14, 45:17, 48:14
**dismissed** [3] - 29:15, 48:17, 48:18
**disparaging** [1] - 11:5
**disparate** [1] - 30:15
**disprove** [2] - 35:20, 36:2
**dispute** [2] - 49:9, 54:1
**disputes** [2] - 53:23, 53:24
**distinguishable** [1] - 44:21
**distress** [1] - 25:14
**DISTRICT** [2] - 1:1, 1:1
**District** [1] - 56:7
**Division** [1] - 2:5
**DIVISION** [1] - 1:2
**doctor** [1] - 51:10
**dodge** [1] - 50:14
**Doe** [36] - 3:3, 4:17, 5:10, 6:5, 6:6, 6:7, 6:9, 6:10, 6:12, 6:14, 7:3, 7:5, 7:8, 8:15, 10:6, 10:23, 18:9, 18:13, 18:14, 19:6, 19:13, 20:3, 20:17, 21:8, 23:17, 28:3, 28:4, 28:7, 28:24, 29:6, 40:5, 42:6, 45:3, 45:10, 46:9
**DOE** [1] - 1:3
**Doe's** [5] - 4:19, 18:8, 19:15, 44:6, 47:2
**dog** [1] - 33:1
**done** [4] - 5:9, 30:6, 41:25, 53:20
**doubt** [1] - 31:2
**down** [5] - 22:15, 32:10, 35:12, 36:11, 37:23
**draw** [3] - 10:11,

10:15, 30:16
**drawing** [1] - 29:21
**drill** [1] - 37:23
**Drive** [1] - 1:18
**due** [1] - 54:19
**Duke** [1] - 45:3
**during** [5] - 34:20, 36:17, 44:3, 44:6, 53:2
**dynamics** [1] - 22:4

## E

**earliest** [2] - 27:15, 48:4
**early** [5] - 35:19, 49:7, 49:19, 50:23, 50:24
**easily** [1] - 45:5
**East** [1] - 11:9
**east** [1] - 45:3
**easy** [2] - 32:6, 45:10
**ECF** [5] - 4:2, 4:4, 44:17, 44:22, 48:22
**economic** [3] - 25:21, 26:13, 26:25
**education** [1] - 41:14
**Education** [5] - 2:5, 5:15, 8:2, 8:3, 15:3
**either** [3] - 4:9, 26:15, 38:12
**either/or** [1] - 43:20
**element** [1] - 46:2
**Eleventh** [1] - 48:16
**eliminates** [1] - 26:20
**emotional** [4] - 25:14, 26:1, 26:4, 47:14
**emotions** [1] - 24:9
**employment** [1] - 17:17
**encounter** [10] - 5:24, 9:24, 12:8, 20:3, 23:6, 23:13, 23:15, 24:3, 36:12, 54:1
**encounters** [1] - 36:12
**end** [6] - 12:22, 28:4, 32:2, 35:9, 47:3, 48:11
**ended** [1] - 43:25
**ends** [1] - 28:16
**engage** [4] - 12:12, 31:13, 36:20, 36:21
**entitled** [5] - 27:9, 27:23, 47:17, 48:16, 56:10
**entitlement** [1] - 26:14
**envisioning** [1] - 33:2
**equal** [6] - 27:22, 28:21, 42:15, 43:3, 47:21, 48:12
**equally** [1] - 28:21
**equipped** [1] - 13:18
**especially** [1] - 44:24
**Esquire** [5] - 1:14, 1:17, 2:4, 2:8, 2:11
**essentially** [4] - 6:12, 16:13, 28:14, 35:12
**established** [6] - 27:11, 32:1, 32:2, 42:15, 47:25, 48:1
**et** [2] - 1:6, 3:4
**event** [2] - 10:20, 18:15
**events** [4] - 10:3, 49:21, 51:6, 51:12
**evidence** [1] - 30:8
**evident** [1] - 22:15
**evidentiary** [1] - 11:24
**ex** [2] - 32:22, 48:14
**exact** [1] - 44:5
**exactly** [4] - 13:19, 16:11, 31:6, 43:16
**example** [2] - 35:23, 37:8
**except** [2] - 27:12, 41:9
**exchange** [1] - 53:11
**excluded** [1] - 45:23
**executive** [1] - 10:18
**exercise** [1] - 15:4
**exercising** [1] - 51:13
**exhibits** [1] - 17:19
**exist** [1] - 13:2
**exonerated** [8] - 5:2, 5:25, 10:1, 13:14, 39:12, 39:18, 40:12, 40:15
**expand** [1] - 32:16
**expanded** [1] - 9:14
**expect** [1] - 54:23
**expected** [1] - 21:18
**expensive** [3] - 52:15, 52:19, 54:6
**experts** [1] - 15:20
**explain** [2] - 4:22, 37:3
**explained** [1] - 41:19
**explanation** [1] - 44:11
**explicit** [2] - 16:7, 40:20
**explicitly** [1] - 40:9
**extend** [1] - 5:14
**extension** [1] - 4:20
**extent** [1] - 20:1
**extra** [2] - 33:13, 54:14
**extremely** [1] - 44:15

## F

**face** [2] - 8:21, 35:20
**fact** [15] - 5:19, 7:12, 9:22, 12:20, 13:11, 23:8, 29:23, 38:7, 40:4, 40:12, 44:1, 45:10, 48:3, 49:10, 49:18
**fact-bound** [4] - 9:22, 12:20, 13:11, 48:3
**fact-specific** [1] - 5:19
**factor** [1] - 37:21
**facts** [43] - 9:22, 10:8, 12:16, 12:19, 12:20, 13:10, 13:12, 17:12, 18:24, 18:25, 19:2, 20:12, 20:16, 21:3, 25:1, 27:10, 28:15, 28:17, 28:25, 29:4, 31:23, 31:25, 33:7, 35:3, 35:7, 35:10, 35:13, 35:25, 36:5, 43:20, 44:21, 45:2, 45:14, 45:19, 46:1, 46:4, 46:9, 46:11, 46:18, 48:6, 48:14, 53:1
**factual** [1] - 38:20
**fail** [1] - 42:11
**failure** [1] - 4:16
**fair** [2] - 5:10, 5:20
**Fairfax** [1] - 1:18
**faith** [6] - 6:13, 30:6, 30:10, 30:23, 42:23
**faithful** [1] - 46:25
**fallout** [1] - 47:3
**falls** [5] - 28:23, 31:12, 31:25, 35:1, 46:5
**false** [1] - 12:2
**familiar** [1] - 49:6
**far** [3] - 7:22, 42:22, 53:13
**favor** [3] - 5:11, 18:8, 29:22
**favorable** [5] - 19:18, 40:17, 46:1, 46:9, 49:20
**favorably** [1] - 29:13
**favors** [1] - 8:5
**February** [2] - 10:19, 19:24
**Federal** [1] - 1:23
**FEDERAL** [1] - 56:18
**fees** [3] - 25:17, 26:7, 47:18
**fell** [1] - 28:10
**female** [2] - 36:21, 40:21
**Feminist** [11] - 8:12, 21:20, 21:22, 27:16, 28:1, 31:8, 37:9, 37:10, 43:9, 46:13, 46:23
**FERPA** [1] - 14:8
**few** [2] - 18:8, 34:14
**figure** [2] - 15:21, 16:21
**figured** [1] - 32:21
**file** [3] - 53:6, 53:8, 54:21
**filed** [2] - 49:10, 50:23
**files** [1] - 18:17
**filing** [1] - 46:16
**finally** [1] - 32:7
**finder** [1] - 23:8
**firm** [1] - 24:24
**first** [21] - 4:2, 9:11, 14:4, 14:7, 15:25, 18:19, 19:9, 20:25, 29:18, 30:18, 31:16, 33:24, 34:16, 35:17, 36:13, 38:17, 38:18, 39:15, 40:2, 41:7, 43:24
**First** [5] - 15:5, 15:20, 16:12, 16:16, 16:21
**Five** [3] - 32:22, 48:12, 48:17
**five** [2] - 16:1, 25:6
**fledged** [1] - 20:10
**floodgates** [2] - 12:18, 39:11
**Floor** [2] - 1:24, 2:6
**flow** [1] - 47:18
**folks** [1] - 7:14
**follow** [1] - 53:15
**follow-up** [1] - 53:15
**following** [1] - 24:14
**footnote** [1] - 52:2
**FOR** [1] - 1:1
**foregoing** [1] - 56:8
**form** [1] - 12:3
**formal** [2] - 18:17, 46:16
**formally** [2] - 40:12, 42:24
**format** [1] - 56:11
**forward** [3] - 5:2, 46:21, 53:22
**fostering** [1] - 22:7
**Foundation** [2] - 37:9, 37:10
**four** [4] - 16:1, 30:13, 32:14, 46:15
**Four** [2] - 47:21, 48:9
**fours** [1] - 12:23
**Fourth** [5] - 8:6, 22:1, 41:11, 41:16, 44:24
**frankly** [2] - 7:12, 31:21
**fraud** [1] - 41:9
**friends** [1] - 18:9
**frolic** [1] - 33:5
**front** [2] - 34:5, 51:8
**full** [3] - 20:10, 29:24, 41:21
**full-fledged** [1] - 20:10
**fully** [2] - 7:19, 32:12
**funds** [1] - 4:21
**funny** [1] - 33:18

## G

**gears** [2] - 25:10, 27:3
**gender** [5] - 9:11, 22:4, 24:2, 27:20, 30:1
**gendered** [3] - 9:21, 10:5, 18:19
**General** [2] - 2:5, 3:13
**generated** [1] - 29:5
**generic** [1] - 53:5
**genesis** [2] - 22:24, 23:2
**girl** [5] - 10:20, 11:1, 29:8, 40:6, 40:8
**given** [9] - 21:16, 27:8, 37:25, 40:9, 44:16, 45:1, 45:19, 46:1, 48:8
**Grace** [2] - 2:4, 3:14
**graduated** [2] - 33:1, 50:13
**grant** [2] - 48:13, 52:24
**graphic** [1] - 22:11
**gray** [2] - 21:17, 31:6
**great** [2] - 39:14, 54:15
**Greenbelt** [1] - 1:10
**ground** [1] - 46:3
**grounds** [1] - 45:25
**group** [4] - 7:3, 27:18, 52:5
**Group** [1] - 1:15
**guess** [8] - 5:6, 21:19, 33:21, 35:11, 38:18, 39:16, 45:4, 51:18
**guidance** [1] - 37:25

## H

**handful** [1] - 50:9
**handle** [1] - 53:23
**happy** [1] - 34:24
**harassing** [4] - 19:13, 20:18, 30:19, 30:24
**harassment** [48] - 6:22, 6:23, 7:2, 7:23, 8:1, 8:2, 8:7, 8:20, 8:23, 9:1, 9:16, 11:15, 20:23, 20:25,

13:25

# I

**identity** [1] - 30:21
**ill** [2] - 13:18, 51:7
**ill-equipped** [1] - 13:18
**immediately** [1] - 36:19
**immunity** [11] - 27:10, 27:23, 31:6, 31:12, 43:2, 43:4, 43:8, 43:13, 48:3, 48:10, 48:16
**import** [1] - 44:22
**important** [6] - 4:7, 7:8, 9:10, 24:8, 32:11, 44:15
**impose** [1] - 4:17
**impute** [1] - 5:20
**IN** [1] - 1:1
**inappropriate** [2] - 52:11, 52:24
**inclined** [1] - 32:21
**including** [1] - 13:23
**increased** [1] - 22:8
**incredibly** [2] - 24:9, 49:1
**indicate** [2] - 25:21, 30:14
**indicated** [3] - 27:8, 44:3, 44:14
**indicates** [1] - 25:25
**indicating** [1] - 5:13
**indifference** [11] - 17:20, 18:5, 20:13, 21:4, 21:7, 31:21, 38:21, 40:24, 46:4, 46:10, 46:19
**individual** [4] - 27:7, 27:18, 31:5, 47:22
**individuals** [1] - 14:23
**inferences** [1] - 29:22
**inform** [1] - 33:23
**inherently** [4] - 9:21, 10:5, 12:19, 37:15
**initial** [4] - 7:22, 7:25, 30:9, 39:23
**instances** [1] - 11:13
**instruct** [1] - 19:13
**instructed** [1] - 51:10
**instruction** [1] - 26:5
**instructive** [3] - 38:5, 41:12, 45:4
**insulting** [1] - 11:5
**intend** [1] - 53:11
**intended** [1] - 41:7
**intending** [2] - 42:2, 42:5

**intent** [4] - 22:15, 22:19, 23:16
**interactions** [1] - 6:12
**interest** [2] - 34:13, 34:20
**interested** [2] - 7:11, 52:14
**interfere** [1] - 14:16
**interrogatories** [1] - 50:9
**intimate** [1] - 18:1
**intrinsic** [1] - 50:22
**introduce** [1] - 3:5
**investigate** [1] - 6:19
**investigation** [7] - 6:6, 14:3, 18:10, 18:14, 20:10, 52:9
**involved** [22] - 14:3, 14:23, 17:8, 17:15, 17:16, 18:1, 19:10, 19:21, 19:25, 20:8, 24:9, 28:4, 39:6, 49:14, 50:12, 51:6, 51:19, 51:20, 52:8, 52:10, 53:1
**involves** [4] - 9:12, 15:15, 27:24, 39:18
**Iqbal** [1] - 41:8
**Iqbal/Twombly** [1] - 46:25
**issue** [8] - 12:12, 16:24, 24:21, 46:6, 48:1, 53:5, 54:10, 54:17
**issues** [5] - 22:10, 32:11, 33:6, 53:13, 53:25
**itself** [3] - 5:1, 9:15, 14:7
**IX** [61] - 4:18, 4:20, 4:21, 5:9, 5:14, 5:20, 6:2, 6:17, 9:6, 11:22, 12:3, 12:11, 12:12, 13:18, 14:2, 15:6, 16:2, 18:4, 18:7, 18:18, 18:21, 19:11, 19:19, 20:8, 20:9, 21:11, 21:16, 24:4, 25:4, 26:11, 26:12, 26:16, 26:21, 28:10, 29:10, 30:5, 31:4, 31:14, 34:17, 35:4, 35:20, 36:18, 37:6, 37:7, 39:2, 39:6, 39:13, 39:19, 39:20, 39:21, 39:24, 39:25, 40:11, 40:18, 41:11, 41:13, 43:18, 46:11, 47:2, 47:10, 47:16

# J

**Jack** [3] - 2:8, 3:22, 48:24
**Jane** [1] - 10:17
**January** [1] - 19:23
**Jennings** [7] - 8:6, 8:12, 17:12, 17:15, 44:25
**job** [1] - 50:13
**John** [13] - 4:17, 6:5, 6:6, 6:7, 6:9, 6:10, 6:12, 6:14, 7:5, 8:15, 40:5, 42:6, 44:6
**JOHN** [1] - 1:3
**joint** [4] - 53:7, 53:9, 54:22, 54:25
**Judge** [1] - 1:12, 13:13, 30:16
**Judgment** [9] - 4:4, 32:18, 43:5, 47:4, 48:23, 49:3, 49:7, 52:11, 52:24
**Judicial** [1] - 56:12
**juncture** [5] - 47:22, 48:5, 52:13, 52:22, 52:25
**jurisprudence** [1] - 25:7
**juror** [1] - 45:12
**jury** [2] - 21:19, 26:5
**justice** [1] - 24:21

# K

**Karmiol** [6] - 2:4, 3:14, 19:10, 19:12, 27:7, 48:13
**keep** [3] - 17:1, 32:23, 52:16
**keeping** [1] - 53:18
**keeps** [1] - 17:24
**Keith** [1] - 1:17
**key** [1] - 34:14
**keyword** [1] - 35:16
**kicking** [2] - 16:4, 30:12
**kind** [6] - 35:16, 37:3, 38:19, 40:15, 40:21, 41:21
**kinds** [2] - 17:4, 17:10
**King** [1] - 1:15
**knowledge** [3] - 20:17, 21:12, 31:21
**known** [4] - 28:5, 34:22, 42:6, 42:8

# L

**lacrosse** [4] - 18:9,

18:13, 18:15, 22:21
**laid** [1] - 48:6
**language** [8] - 8:8, 37:6, 39:16, 40:5, 40:6, 40:8, 40:10, 40:20
**largely** [7] - 28:22, 32:21, 34:25, 46:5, 46:21, 47:23, 48:9
**larger** [1] - 35:11
**last** [6] - 3:19, 30:13, 38:18, 42:1, 42:4, 43:14
**law** [7] - 7:12, 12:23, 13:2, 29:14, 35:6, 38:10, 41:21
**Law** [1] - 1:15
**lawyer** [1] - 50:21
**layperson** [1] - 50:21
**lays** [1] - 11:24
**lead** [1] - 25:23
**leaders** [1] - 6:4
**leadership** [2] - 51:2, 51:13
**learn** [1] - 5:23
**learning** [1] - 51:12
**least** [14] - 11:25, 22:21, 25:17, 29:7, 30:16, 31:8, 31:25, 42:14, 44:25, 46:15, 50:4, 51:22, 52:9, 53:1
**legs** [1] - 12:21
**letter** [3] - 53:24, 54:3, 54:4
**liability** [2] - 4:18, 4:20
**liable** [1] - 43:10
**light** [7] - 19:18, 34:22, 42:6, 44:24, 46:1, 46:9, 49:19
**likely** [1] - 40:14
**limit** [2] - 37:6, 40:22
**limited** [2] - 37:13, 37:16
**limiting** [4] - 39:9, 40:2, 40:3, 40:9
**line** [1] - 54:3
**link** [5] - 11:21, 20:21, 51:22
**linking** [1] - 20:21
**Listen** [1] - 17:10
**literally** [2] - 16:9, 26:2
**litigants** [1] - 47:17
**litigation** [1] - 52:9
**living** [1] - 9:9
**LLC** [1] - 2:11
**Lombard** [2] - 1:24, 2:12
**look** [5] - 4:22, 18:5, 18:6, 28:6, 33:4

21:1, 21:4, 21:9, 21:15, 28:5, 28:20, 29:1, 31:10, 34:18, 35:1, 35:13, 35:23, 36:1, 36:3, 36:6, 37:19, 37:20, 38:9, 41:2, 41:23, 42:8, 42:18, 43:11, 43:17, 43:24, 44:2, 44:5, 44:12, 44:19, 45:18, 45:20, 47:1
**hard** [2] - 4:24, 7:16
**Haven** [2] - 11:10, 45:4
**hear** [2] - 4:11, 29:11
**hearing** [10] - 3:5, 5:20, 5:25, 9:23, 10:1, 11:25, 14:3, 19:6, 23:9, 53:21
**HEARING** [1] - 1:11
**hears** [1] - 19:11
**heart** [1] - 49:9
**heightened** [1] - 41:10
**held** [2] - 41:13, 56:10
**hereby** [1] - 56:7
**high** [2] - 24:9, 37:25
**Higher** [1] - 2:5
**higher** [1] - 17:19
**himself** [5] - 11:22, 11:25, 22:25, 35:8, 44:6
**hinted** [1] - 41:16
**hold** [1] - 43:9
**home** [1] - 51:7
**Honor** [42] - 3:7, 3:10, 3:12, 3:18, 3:22, 4:12, 4:15, 7:20, 11:13, 11:14, 12:10, 13:16, 15:12, 15:17, 20:19, 24:18, 25:10, 26:9, 27:4, 27:8, 29:21, 32:3, 32:24, 33:12, 33:17, 33:22, 35:15, 36:4, 36:9, 38:17, 41:6, 42:13, 42:16, 43:1, 44:3, 48:21, 48:24, 50:3, 50:5, 53:3, 54:18, 55:6
**Honor's** [2] - 39:16, 41:3
**HONORABLE** [1] - 1:12
**hoping** [1] - 35:17
**humiliate** [3] - 8:9, 9:4
**humiliating** [2] - 11:6, 17:5
**hunt** [1] - 33:2
**hyperlink** [1] - 52:2
**hypothetically** [1] -

**looked** [1] - 52:5
**looking** [1] - 37:15
**looks** [1] - 52:9
**loses** [1] - 12:11

## M

**Mackie** [1] - 2:11
**maintain** [1] - 41:8
**Majority** [11] - 8:12, 21:20, 21:22, 27:16, 28:1, 31:8, 37:9, 37:10, 43:9, 46:14, 46:23
**male** [2] - 10:9, 36:21
**man** [9] - 5:24, 9:14, 9:24, 11:2, 17:7, 23:23, 37:13, 45:7
**manner** [1] - 9:3
**March** [1] - 1:9
**Marie** [1] - 2:4
**MARYLAND** [3] - 1:1, 1:5, 1:6
**Maryland** [11] - 1:10, 1:24, 2:3, 2:5, 2:6, 2:12, 3:4, 3:14, 56:7
**material** [1] - 44:6
**matter** [12] - 3:2, 6:24, 7:25, 12:7, 29:14, 35:6, 38:7, 44:4, 48:25, 49:18, 50:19, 56:10
**matters** [2] - 5:22, 31:20
**MD** [1] - 2:9
**mean** [49] - 4:24, 5:5, 5:6, 5:7, 5:11, 5:18, 6:15, 6:23, 7:22, 8:2, 8:23, 9:11, 11:10, 12:5, 12:8, 14:10, 16:13, 16:24, 17:3, 17:9, 17:18, 18:7, 18:18, 18:21, 18:22, 19:25, 20:4, 20:9, 20:13, 21:15, 21:25, 22:21, 22:23, 22:25, 23:5, 24:5, 26:2, 27:24, 29:20, 31:1, 37:24, 39:2, 43:19, 48:6, 50:7, 50:14, 50:23, 51:19
**meaningful** [1] - 53:11
**means** [2] - 13:14, 36:25
**mechanism** [1] - 40:19
**media** [3] - 10:19, 10:20, 49:18
**meet** [4] - 6:23, 21:1, 46:2, 54:2

**meeting** [3] - 50:2, 51:22, 52:6
**meetings** [2] - 49:13, 49:24
**memorialize** [1] - 53:22
**men** [1] - 37:13
**men's** [1] - 22:7
**Mercer** [5] - 25:16, 26:3, 26:4, 47:6, 47:16
**merely** [1] - 54:22
**Merit** [1] - 56:6
**met** [1] - 44:25
**microphone** [1] - 4:11
**middle** [2] - 6:18, 50:14
**might** [5] - 9:5, 31:19, 33:25, 34:3, 50:24
**milestone** [2] - 53:7, 54:24
**mind** [1] - 32:23
**mirrors** [1] - 15:3
**misconduct** [2] - 13:24, 36:14
**mistake** [2] - 7:11, 41:9
**mistakes** [1] - 25:8
**modern** [1] - 9:13
**moment** [8] - 12:18, 15:15, 20:24, 27:15, 32:20, 37:10, 37:22, 48:4
**monkey** [1] - 39:8
**month** [1] - 18:15
**months** [2] - 12:2, 46:16
**morning** [3] - 3:7, 52:1, 52:3
**most** [6] - 19:18, 29:13, 43:5, 46:1, 46:9, 49:19
**motion** [9] - 12:18, 15:25, 32:22, 44:13, 46:2, 49:2, 49:10, 53:2
**Motion** [10] - 4:2, 4:3, 7:13, 12:17, 12:22, 25:7, 41:24, 44:16, 44:23, 48:23
**MOTIONS** [1] - 1:11
**motions** [3] - 3:5, 4:1, 7:14
**motivation** [1] - 13:8
**motive** [4] - 13:2, 38:3, 38:4
**move** [3] - 4:10, 9:6, 21:4
**moved** [1] - 4:15
**moving** [1] - 20:22

**MR** [29] - 3:7, 3:18, 3:22, 33:17, 33:22, 34:3, 34:9, 34:12, 35:15, 36:9, 38:16, 39:14, 40:2, 41:5, 42:13, 42:16, 43:23, 48:24, 49:22, 50:3, 50:11, 51:3, 51:7, 51:17, 52:1, 52:19, 53:3, 54:18, 55:6
**MS** [89] - 3:10, 3:12, 3:17, 4:12, 4:15, 5:6, 6:21, 7:1, 7:10, 7:20, 7:22, 7:25, 8:11, 8:17, 8:20, 9:5, 9:10, 10:7, 10:12, 11:13, 12:5, 12:10, 13:16, 14:7, 14:16, 14:25, 15:2, 15:9, 15:12, 15:17, 16:6, 16:13, 16:23, 17:6, 17:14, 18:2, 18:17, 18:25, 19:8, 19:25, 20:15, 20:19, 21:6, 21:14, 21:22, 22:3, 22:7, 22:14, 22:18, 22:23, 23:3, 23:5, 23:11, 23:19, 23:22, 24:1, 24:12, 24:18, 24:22, 25:9, 25:12, 25:20, 25:24, 26:8, 26:11, 26:21, 26:23, 27:3, 27:6, 27:14, 27:25, 28:6, 28:9, 28:13, 28:17, 29:2, 29:19, 30:8, 31:3, 31:11, 32:3, 32:13, 32:16, 32:24, 33:12, 33:15, 48:21, 54:13, 55:5
**murky** [1] - 27:9
**must** [3] - 35:19, 41:14, 48:4
**mutual** [1] - 37:4

## N

**NADINE** [1] - 56:18
**Nadine** [2] - 1:23, 56:5
**nail** [1] - 32:10
**name** [3] - 3:19, 19:15, 19:16
**named** [1] - 10:6
**names** [1] - 8:21
**Nastase** [8] - 2:4, 3:15, 10:23, 20:2, 20:5, 27:7
**Nastase's** [1] - 48:13
**Nations** [1] - 50:13
**nature** [2] - 8:3, 29:25
**navigating** [1] - 13:17

**nearly** [1] - 22:22
**necessarily** [2] - 5:22, 38:20
**necessary** [3] - 9:20, 54:5
**need** [8] - 7:15, 24:24, 35:10, 35:20, 37:20, 45:14, 54:9, 54:11
**needs** [4] - 10:20, 19:14, 33:5, 37:21
**negate** [1] - 47:16
**never** [2] - 11:19
**new** [3] - 4:18, 40:22, 47:24
**next** [9] - 6:5, 42:11, 43:2, 48:20, 53:4, 53:8, 53:14, 54:8, 54:13
**nexus** [1] - 43:25
**NGO** [1] - 50:13
**NO** [1] - 1:4
**nominal** [8] - 25:16, 25:23, 26:5, 26:6, 26:14, 26:20, 27:1, 47:17
**nonmoving** [1] - 49:20
**NORTH** [19] - 3:7, 33:17, 33:22, 34:3, 34:9, 34:12, 35:15, 36:9, 38:16, 39:14, 40:2, 41:5, 42:13, 42:16, 43:23, 51:17, 52:1, 54:18, 55:6
**North** [4] - 1:14, 3:8, 33:17, 33:18
**north** [2] - 33:21, 51:16
**note** [2] - 32:19, 49:2
**notes** [1] - 47:8
**Notes** [1] - 1:21
**nothing** [10] - 6:11, 10:11, 27:16, 35:6, 37:14, 38:24, 39:4, 39:5, 42:9, 42:21
**notice** [2] - 27:17, 31:15
**novel** [1] - 35:9
**Number** [1] - 3:3
**number** [6] - 3:19, 3:23, 4:3, 21:8, 22:13, 22:14
**numerous** [1] - 21:11
**Nungesser** [13] - 4:25, 9:18, 12:25, 13:1, 13:3, 13:4, 13:6, 16:14, 16:16, 16:17, 16:20, 21:2, 44:20

## O

**objection** [1] - 54:18
**obligations** [1] - 5:14
**obviously** [2] - 36:14, 36:24
**occasions** [3] - 16:1, 21:11, 46:15
**occur** [1] - 18:11
**occurred** [2] - 11:21, 18:6
**occurs** [1] - 8:7
**October** [2] - 19:6, 19:23
**OF** [3] - 1:1, 1:5, 56:1
**offense** [3] - 6:14, 10:24, 40:15
**offensive** [1] - 17:5
**office** [15] - 6:3, 6:17, 14:2, 16:2, 17:24, 19:11, 19:19, 20:8, 21:11, 29:10, 30:5, 39:6, 46:11, 46:15
**Office** [3] - 2:5, 16:25, 20:6
**officer** [1] - 31:14
**official** [1] - 48:13
**OFFICIAL** [2] - 56:1, 56:18
**Official** [1] - 1:23
**officials** [1] - 21:16
**often** [3] - 25:7, 43:5, 49:18
**once** [4] - 5:4, 14:21, 43:6, 54:20
**One** [2] - 44:18, 45:17
**one** [33] - 7:3, 12:19, 13:2, 13:10, 13:11, 14:1, 14:22, 22:12, 23:12, 24:20, 27:17, 27:18, 28:2, 28:3, 28:13, 28:24, 29:19, 29:20, 29:24, 29:25, 30:18, 31:16, 36:6, 37:16, 38:3, 41:20, 41:23, 44:11, 45:4, 49:10, 51:22
**online** [8] - 49:16, 49:23, 49:24, 50:2, 51:11, 51:24, 51:25
**open** [1] - 39:10
**operative** [1] - 55:2
**opinion** [2] - 41:12, 41:17
**opposed** [1] - 10:9
**opposing** [1] - 51:17
**opposition** [1] - 51:21
**order** [12] - 7:6, 7:7, 7:17, 14:16, 20:7, 20:25, 53:6, 53:24,

54:10, 54:21, 55:3
**organization** [1] - 6:7
**organizations** [1] - 14:13
**otherwise** [4] - 46:2, 47:19, 48:15, 54:12
**outcome** [1] - 43:19
**outside** [3] - 25:3, 39:19, 40:19
**overlap** [1] - 31:23
**overrules** [1] - 26:3
**overstated** [1] - 9:18
**own** [2] - 12:21, 45:5

**P**

**p.m** [2] - 3:1, 55:9
**page** [5] - 16:8, 51:21, 52:2, 55:4, 56:11
**pants** [3] - 10:21, 29:8, 40:7
**paper** [1] - 32:8
**paperless** [1] - 50:5
**paragraph** [1] - 19:14
**Park** [3] - 2:3, 3:4, 3:14
**PARK** [1] - 1:6
**parse** [1] - 11:7
**part** [7] - 10:6, 11:7, 11:8; 17:16, 18:22, 29:7, 52:23
**parte** [2] - 32:22, 48:14
**participated** [2] - 19:22, 49:21
**participating** [3] - 17:2, 44:1, 51:13
**participation** [7] - 35:4, 43:18, 43:21, 43:25, 46:23, 47:2, 49:16
**particular** [1] - 27:10
**parties** [4] - 8:17, 12:8, 20:8, 43:6
**parts** [2] - 17:11, 17:25
**party** [3] - 9:2, 18:11, 49:20
**Paul** [1] - 2:6
**PAULA** [1] - 1:12
**PC** [1] - 1:17
**peace** [1] - 55:2
**pen** [1] - 32:7
**pending** [2] - 3:2, 4:1
**penetration** [1] - 9:12
**penis** [1] - 9:13
**Pennsylvania** [1] - 2:9
**people** [3] - 7:9, 19:22, 30:12
**perceived** [5] - 6:14,

10:23, 20:17, 24:2, 24:3
**perhaps** [4] - 9:19, 33:3, 41:22, 47:14
**permits** [1] - 18:4
**perpetrator** [2] - 6:14, 10:24
**persisted** [1] - 17:22
**person** [18] - 5:2, 6:3, 9:4, 11:16, 11:17, 13:23, 14:19, 38:8, 49:11, 49:12, 49:17, 50:16, 50:18, 51:12, 51:16, 52:3, 52:5, 54:6
**personal** [6] - 13:6, 13:7, 16:18, 16:19, 48:10
**persons** [1] - 30:4
**perspective** [2] - 31:22, 45:16
**persuaded** [1] - 44:20
**pervasive** [3] - 21:3, 45:21, 45:24
**phase** [3] - 14:4, 14:20, 14:21
**physical** [2] - 37:11, 37:12
**physically** [1] - 52:3
**pick** [1] - 13:10
**picking** [3] - 18:23, 18:25, 20:12
**piece** [1] - 28:20
**place** [5] - 10:4, 10:17, 20:7, 25:4, 43:8
**Place** [1] - 2:6
**plain** [1] - 39:16
**Plaintiff** [2] - 1:3, 1:14
**plaintiff** [23] - 3:6, 3:8, 8:13, 8:15, 9:18, 11:8, 16:1, 19:4, 19:18, 29:13, 29:22, 30:15, 31:2, 32:6, 35:24, 36:5, 41:14, 45:9, 46:1, 46:14, 50:1, 51:15, 54:16
**plaintiff's** [3] - 41:19, 49:8, 52:23
**plaintiffs** [4] - 32:20, 33:5, 36:2, 49:7
**platform** [1] - 31:9
**plausibility** [5] - 41:8, 42:3, 43:16, 44:17, 46:8
**plausible** [14] - 11:23, 13:5, 13:10, 35:6, 35:13, 35:16, 35:19, 35:25, 36:6, 37:19, 37:22, 44:10, 44:11, 45:19

**plausibly** [8] - 29:5, 29:6, 34:19, 34:21, 41:14, 42:4, 44:25, 47:1
**pleaded** [3] - 19:4, 22:19, 42:8
**pleading** [6] - 35:17, 35:24, 36:4, 41:10, 41:24, 43:12
**pleadings** [10] - 4:24, 5:4, 9:9, 15:8, 15:11, 24:17, 28:22, 34:16, 41:9, 47:19
**pleads** [1] - 5:18
**pled** [4] - 20:16, 28:23, 47:1, 47:13
**PLLC** [1] - 1:15
**podium** [2] - 4:10, 4:13
**point** [21] - 10:17, 18:17, 29:4, 35:2, 35:11, 35:17, 36:8, 36:9, 38:18, 39:7, 39:9, 41:7, 42:1, 42:4, 43:15, 46:19, 47:5, 47:14, 48:19, 50:24, 54:1
**points** [2] - 34:14, 38:16
**policies** [1] - 31:17
**policy** [8] - 13:22, 13:24, 14:5, 14:19, 14:21, 14:23, 15:3, 16:22
**position** [7] - 15:6, 15:19, 15:21, 18:1, 18:2, 24:13, 32:4
**possible** [2] - 36:2, 48:4
**post** [1] - 40:18
**post-resolution** [1] - 40:18
**posts** [2] - 49:23
**posture** [1] - 48:8
**potential** [1] - 35:21
**practical** [1] - 31:22
**prayer** [1] - 47:7
**pre** [1] - 52:22
**pre-discovery** [1] - 52:22
**precisely** [1] - 36:7
**predators** [1] - 22:20
**prejudice** [1] - 48:18
**preliminary** [1] - 6:24
**present** [1] - 51:22
**president** [2] - 18:10, 18:13
**press** [1] - 47:24
**pressing** [1] - 45:4
**prevail** [1] - 35:10

**prevailing** [1] - 45:21
**previously** [1] - 4:18
**primarily** [1] - 25:3
**primary** [1] - 38:4
**principle** [3] - 39:9, 40:3
**principles** [1] - 40:9
**privilege** [1] - 15:21
**pro** [1] - 52:20
**problem** [5] - 7:12, 13:3, 13:9, 34:2, 50:5
**procedural** [1] - 48:8
**procedures** [1] - 31:17
**proceeding** [2] - 11:22, 47:2
**Proceeding** [2] - 3:1, 55:9
**proceedings** [1] - 56:10
**process** [36] - 5:9, 5:10, 5:13, 5:20, 5:21, 12:11, 13:25, 14:1, 14:7, 14:8, 14:15, 14:17, 14:24, 17:2, 18:8, 23:9, 23:15, 24:4, 24:14, 28:2, 28:3, 28:4, 28:24, 29:24, 35:4, 35:8, 36:18, 39:19, 39:20, 39:21, 39:25, 40:18, 43:18, 43:22, 44:7
**professor** [1] - 17:10
**program** [2] - 45:22, 45:23
**prohibited** [1] - 18:14
**prompts** [1] - 10:21
**prong** [1] - 7:22
**proper** [1] - 12:18
**properly** [1] - 20:5
**proportionate** [2] - 33:6, 53:18
**proposed** [1] - 54:8
**protect** [1] - 30:20
**protected** [8] - 14:8, 15:4, 15:15, 15:20, 16:19, 19:20, 46:24, 48:16
**protecting** [1] - 19:15
**protection** [6] - 27:22, 28:21, 42:15, 43:3, 47:21, 48:12
**protracted** [1] - 11:24, 52:15
**proven** [1] - 12:1
**provide** [1] - 15:4
**proximity** [4] - 12:5, 12:7, 44:2, 44:4
**PSA** [9] - 6:4, 10:18,

14:13, 19:13, 30:18, 51:2, 51:22, 52:6, 53:1
**public** [1] - 51:9
**pump** [2] - 54:8, 54:20
**punitive** [3] - 26:15, 47:9, 47:10
**purpose** [3] - 3:5, 21:10, 37:7
**purposes** [1] - 43:9
**pursuant** [1] - 56:8
**push** [2] - 4:24, 13:13
**pushing** [1] - 12:15
**put** [4] - 10:17, 32:7, 54:2, 54:25
**puts** [1] - 27:16
**putting** [1] - 15:18, 24:12
**puzzled** [1] - 4:22
**PX-22-0872** [1] - 3:3

**Q**

**qualified** [10] - 27:10, 27:23, 31:6, 31:12, 43:2, 43:4, 43:8, 43:13, 48:2, 48:10
**query** [1] - 46:22
**questions** [6] - 4:6, 18:1, 31:17, 43:16, 45:5, 48:19
**quick** [1] - 53:19
**quickly** [1] - 52:18
**quite** [3] - 33:22, 49:3

**R**

**raise** [1] - 7:18
**raised** [1] - 41:6
**raises** [1] - 35:2
**raising** [1] - 22:10
**rape** [23] - 5:3, 5:25, 9:12, 9:13, 9:14, 9:25, 11:1, 11:2, 11:9, 23:17, 23:19, 23:22, 23:23, 36:11, 36:25, 37:4, 37:14, 38:8, 38:13, 39:19, 45:8, 45:13
**raped** [7] - 6:4, 10:19, 11:18, 14:14, 24:6, 29:9, 30:25
**rapist** [19] - 6:5, 8:15, 9:2, 9:11, 9:14, 9:21, 10:3, 14:14, 18:10, 18:13, 29:10, 30:12, 36:22, 36:23, 37:4, 37:18, 40:5, 40:19, 45:2
**rapist'** [1] - 16:3

**rather** [3] - 10:5, 39:11, 43:18
**rationale** [1] - 4:24
**reaches** [1] - 47:14
**reaching** [1] - 46:15
**read** [6] - 26:8, 26:10, 26:17, 33:19, 47:6, 49:25
**reading** [3] - 10:6, 20:20, 26:19
**reads** [1] - 29:13
**real** [1] - 38:6
**really** [29] - 4:5, 5:17, 7:7, 7:16, 9:9, 9:10, 10:15, 12:23, 13:13, 17:4, 24:10, 24:12, 24:21, 25:2, 25:18, 27:8, 32:10, 32:23, 34:9, 35:2, 37:23, 42:17, 42:18, 44:17, 47:11, 49:1, 50:7, 53:19, 55:7
**Realtime** [1] - 56:5
**reason** [6] - 36:6, 38:21, 39:10, 46:14, 48:9, 49:10
**reasonable** [2] - 45:12, 55:1
**reasonably** [1] - 42:6
**reasoning** [2] - 41:22
**reasons** [13] - 35:21, 36:2, 43:1, 44:8, 44:9, 44:12, 44:19, 46:5, 46:7, 46:21, 47:23, 52:11
**recalling** [1] - 44:9
**received** [3] - 5:10, 29:24, 42:20
**recent** [1] - 41:11
**recognize** [1] - 32:12
**recognized** [1] - 4:19
**record** [5] - 3:6, 32:10, 51:9, 53:21, 53:24
**recorded** [3] - 33:3, 53:16, 54:4
**refer** [1] - 20:1
**referred** [1] - 20:5
**referring** [1] - 11:14
**reg** [1] - 15:12
**regard** [1] - 14:19, 20:24, 22:21, 31:20, 42:14, 45:20, 46:20, 47:21, 48:19, 48:22, 52:22
**regarding** [3] - 6:22, 10:14, 53:24
**regardless** [1] - 22:25
**regards** [1] - 55:4
**Registered** [1] - 56:6
**regs** [1] - 8:3

**regulate** [4] - 15:6, 16:23, 16:24, 24:14
**regulation** [1] - 5:16
**regulations** [2] - 15:3, 56:11
**reject** [1] - 50:24
**relate** [1] - 37:17
**related** [1] - 27:19
**relates** [2] - 36:11, 37:18
**relationship** [1] - 17:18
**relatively** [1] - 40:23
**relevant** [1] - 53:2
**reliance** [1] - 16:14
**relief** [1] - 47:8
**rely** [1] - 21:2
**remaining** [1] - 46:10
**repeatedly** [1] - 42:7
**reply** [2] - 15:13, 26:2
**report** [9] - 11:16, 11:17, 22:5, 39:24, 42:22, 53:7, 53:9, 54:22, 55:1
**Reported** [1] - 1:22
**reported** [1] - 56:9
**reporter** [1] - 33:8
**Reporter** [3] - 1:23, 56:5, 56:6
**REPORTER** [2] - 56:1, 56:18
**reporting** [1] - 40:19
**reports** [1] - 42:21
**representing** [1] - 3:13
**represents** [1] - 4:19
**requests** [1] - 8:5
**require** [3] - 18:20, 36:1, 38:14
**required** [2] - 27:20, 29:22
**requires** [1] - 35:24
**reread** [1] - 50:4
**resolution** [4] - 39:20, 40:11, 40:17, 40:18
**resolve** [2] - 43:8, 54:4
**resolved** [5] - 36:18, 43:5, 50:9, 54:2
**resolves** [1] - 52:17
**respect** [8] - 5:9, 8:11, 41:11, 48:12, 49:16, 50:1, 50:2, 53:10
**respond** [1] - 18:22
**respondent** [2] - 5:8, 10:9
**responding** [1] - 34:18
**response** [11] - 11:16, 18:4, 18:21, 20:12, 22:9, 30:14, 49:15,

51:18, 53:6, 53:8
**responses** [2] - 39:15, 45:13
**responsible** [1] - 42:24
**resulted** [1] - 5:11
**results** [1] - 47:3
**retaliated** [1] - 35:7
**retaliating** [1] - 30:24
**retaliation** [13] - 11:18, 11:20, 15:5, 20:21, 20:23, 21:5, 35:1, 35:3, 43:3, 43:17, 43:18, 43:21, 46:20
**retaliatory** [9] - 18:20, 20:18, 21:24, 27:20, 43:11, 43:17, 44:5, 44:11, 47:1
**return** [1] - 51:11
**reviewed** [2] - 52:1, 52:2
**Richards** [1] - 2:11
**rid** [1] - 22:20
**rights** [1] - 15:4
**rises** [4] - 28:22, 31:25, 34:25, 46:5
**RMR** [2] - 1:23, 56:18
**Roe** [14] - 10:17, 10:22, 10:24, 20:3, 23:17, 24:3, 28:3, 28:7, 28:24, 29:12, 30:6, 30:22, 30:23, 35:7
**Roe's** [2] - 18:9, 28:9
**role** [2] - 33:9, 51:13
**Rollins** [1] - 2:11
**room** [2] - 21:16, 52:4
**Rouse** [3] - 11:10, 45:3, 45:9
**rug** [1] - 15:17
**Rule** [1] - 53:16
**ruling** [1] - 48:19
**rumors** [1] - 8:22
**run** [1] - 24:9

**S**

**Saint** [1] - 2:6
**schedule** [1] - 54:23
**scheduled** [1] - 18:11
**scheduling** [4] - 53:5, 54:10, 54:20, 55:3
**school** [1] - 40:12
**screened** [3] - 29:25, 30:3, 30:4
**searching** [1] - 38:14
**seated** [2] - 3:23, 4:9
**Second** [1] - 45:11
**second** [6] - 4:3,

21:19, 34:3, 34:17, 36:16, 40:3
**see** [23] - 4:21, 8:18, 10:7, 15:14, 16:11, 20:6, 20:20, 24:8, 25:5, 26:3, 29:2, 30:8, 30:10, 31:22, 45:25, 47:3, 47:5, 47:13, 47:20, 48:14, 49:22, 51:15, 54:5
**seem** [1] - 25:6
**sense** [6] - 24:16, 25:8, 25:9, 38:15, 38:18, 38:25
**separate** [3] - 16:1, 23:1, 40:1
**September** [2] - 18:8, 19:6
**series** [1] - 10:3
**seriously** [1] - 44:17
**services** [2] - 20:2, 52:22
**set** [3] - 35:3, 43:19, 45:25
**sets** [1] - 13:1
**setting** [1] - 12:23
**several** [1] - 46:16
**severe** [3] - 21:3, 45:21, 45:24
**sex** [47] - 6:25, 7:1, 8:8, 9:7, 13:7, 16:18, 16:19, 21:23, 23:16, 23:18, 23:20, 29:7, 29:16, 29:20, 34:19, 35:14, 35:24, 36:1, 36:6, 36:13, 36:15, 36:23, 37:1, 37:4, 37:6, 37:16, 37:17, 37:18, 37:20, 37:24, 38:2, 38:5, 38:9, 38:14, 40:4, 40:8, 40:10, 40:20, 41:13, 41:19, 41:23, 42:4, 42:10, 42:18, 45:13, 45:18, 46:6
**sex-based** [19] - 9:7, 13:7, 16:18, 16:19, 21:23, 23:16, 23:18, 23:20, 29:7, 29:16, 29:20, 35:14, 38:9, 38:14, 42:4, 42:10, 42:18, 45:13, 45:18
**sex-mutual** [1] - 37:4
**sex-specific** [6] - 8:8, 37:6, 40:4, 40:8, 40:10, 40:20
**Sexual** [1] - 8:7
**sexual** [37] - 5:23, 6:14, 6:22, 6:23, 7:23, 8:3, 8:4, 8:5,

9:16, 9:24, 10:24, 11:17, 12:8, 13:24, 21:1, 21:9, 21:15, 22:8, 22:11, 23:5, 23:13, 23:15, 28:5, 28:11, 28:20, 29:1, 31:10, 36:12, 36:14, 37:11, 37:12, 40:15, 40:25, 43:10
**Sheppard** [3] - 34:17, 41:12
**Sheppard's** [1] - 41:22
**Sheridan** [7] - 2:4, 3:13, 4:9, 32:19, 33:11, 39:3, 47:15
**SHERIDAN** [88] - 3:12, 3:17, 4:12, 4:15, 5:6, 6:21, 7:1, 7:10, 7:20, 7:22, 7:25, 8:11, 8:17, 8:20, 9:5, 9:10, 10:7, 10:12, 11:13, 12:5, 12:10, 13:16, 14:7, 14:16, 14:25, 15:2, 15:9, 15:12, 15:17, 16:6, 16:13, 16:23, 17:6, 17:14, 18:2, 18:17, 18:25, 19:8, 19:25, 20:15, 20:19, 21:6, 21:14, 21:22, 22:3, 22:7, 22:14, 22:18, 22:23, 23:3, 23:5, 23:11, 23:19, 23:22, 24:1, 24:12, 24:18, 24:22, 25:9, 25:12, 25:20, 25:24, 26:8, 26:11, 26:21, 26:23, 27:3, 27:6, 27:14, 27:25, 28:6, 28:9, 28:13, 28:17, 29:2, 29:19, 30:8, 31:3, 31:11, 32:3, 32:13, 32:16, 32:24, 33:12, 33:15, 48:21, 54:13, 55:5
**shift** [3] - 25:10, 26:9, 27:3
**short** [5] - 50:9, 50:20, 50:21, 52:8
**short-circuit** [1] - 52:8
**shortly** [1] - 43:24
**shot** [1] - 47:19
**show** [2] - 36:6, 38:3
**showing** [1] - 52:23
**shown** [1] - 34:20
**shut** [1] - 22:15
**side** [1] - 34:1
**sides** [1] - 32:8
**silence** [2] - 6:9, 6:19
**silencing** [1] - 5:14
**similar** [2] - 11:5, 45:7

**similarly** [6] - 28:7, 29:2, 29:17, 30:17, 45:20, 47:22
**simple** [1] - 49:10
**simpler** [1] - 14:12
**simply** [2] - 48:1, 49:13
**sitting** [1] - 52:4
**situated** [3] - 28:7, 29:3, 29:17
**situation** [1] - 22:12
**slate** [1] - 47:13
**slightly** [2] - 25:10, 27:24
**sloppily** [1] - 37:3
**Smalkin** [1] - 2:11
**smell** [1] - 34:9
**smells** [1] - 34:7
**Smith** [1] - 33:20
**social** [2] - 10:18, 49:18
**someone** [2] - 9:1, 45:2
**sometimes** [1] - 7:14
**somewhat** [1] - 32:14
**soon** [1] - 12:2
**sorry** [8] - 15:9, 16:6, 16:14, 33:21, 34:6, 34:7, 39:8, 44:22
**sort** [3] - 13:7, 14:23, 43:25
**sounds** [2] - 33:7, 55:4
**SOUTHERN** [1] - 1:2
**sparks** [1] - 43:15
**speaking** [3] - 22:16, 23:4, 33:8
**special** [1] - 47:9
**specific** [10] - 5:19, 6:11, 8:8, 10:7, 37:6, 40:4, 40:8, 40:10, 40:13, 40:20
**specifically** [1] - 46:12
**specified** [1] - 19:1
**speculative** [1] - 10:15
**speech** [22] - 7:3, 8:13, 8:14, 8:23, 11:21, 12:12, 15:6, 15:15, 15:20, 16:23, 17:4, 17:9, 19:20, 24:14, 27:17, 37:1, 38:14, 40:10, 40:18, 41:2, 45:9
**spreading** [1] - 14:12
**spring** [1] - 54:14
**square** [3] - 24:17, 25:6, 25:20
**squarely** [3] - 25:2, 49:17, 53:14
**stage** [11] - 12:17,

25:7, 31:1, 35:5, 36:5, 41:24, 42:12, 43:12, 44:16, 49:19, 53:14
**stand** [1] - 55:2
**standard** [3] - 17:19, 34:16, 35:18, 35:24, 41:8, 41:10, 42:3, 44:17, 44:23, 44:25, 45:21, 46:8, 46:25
**start** [2] - 4:8, 5:7
**started** [2] - 30:17, 53:23
**starts** [1] - 14:12
**state** [5] - 4:16, 35:19, 42:22, 48:15, 49:17
**State** [1] - 2:5
**statements** [1] - 10:14
**STATES** [1] - 1:1
**States** [2] - 56:6, 56:12
**states** [1] - 49:13
**status** [5] - 53:7, 53:9, 54:4, 54:22, 55:1
**statutory** [1] - 47:25
**stay** [4] - 4:9, 13:12, 19:25, 20:23
**staying** [1] - 46:24
**stemming** [1] - 10:2
**stems** [1] - 23:13
**stenographically** [1] - 56:9
**stenographically-reported** [1] - 56:9
**Stenotype** [1] - 1:21
**step** [4] - 6:5, 16:10, 54:8
**steps** [2] - 48:20, 53:4
**still** [3] - 6:6, 14:15, 38:22
**stood** [1] - 16:11
**stop** [3] - 19:13, 22:16, 30:19
**straightforward** [1] - 40:23
**streamline** [1] - 53:25
**Street** [3] - 1:15, 1:24, 2:12
**stretch** [1] - 12:19
**stringent** [1] - 17:19
**struggle** [2] - 45:6, 45:14
**student** [18] - 6:1, 14:1, 17:9, 17:20, 17:21, 17:23, 31:9, 33:1, 39:18, 40:12, 43:10, 43:11, 44:18
**Student** [2] - 16:25, 20:6
**student-on-student**

[5] - 17:20, 31:9, 43:10, 43:11, 44:18
**students** [7] - 7:4, 14:5, 24:23, 27:18, 27:19, 40:21, 52:5
**stuttering** [1] - 33:25
**subject** [7] - 12:3, 12:7, 20:25, 41:10, 44:2, 44:4, 44:5
**subjected** [2] - 8:8, 22:11
**submitted** [1] - 50:1
**subsequent** [2] - 13:5, 23:14, 39:19
**substance** [1] - 50:15
**suddenly** [2] - 5:3, 23:16
**sue** [1] - 50:17
**sued** [3] - 49:11, 50:16, 50:18
**sufficient** [6] - 35:25, 36:5, 43:12, 46:13, 46:18, 52:23
**sufficiently** [2] - 42:3, 45:24
**suggest** [3] - 46:9, 53:1, 53:7
**suggesting** [2] - 12:10, 24:7
**suggestions** [1] - 54:22
**suit** [1] - 48:17
**Suite** [4] - 1:15, 1:18, 2:8, 2:12
**Summary** [9] - 4:3, 32:17, 43:5, 47:4, 48:23, 49:3, 49:7, 52:11, 52:24
**support** [2] - 21:3, 46:4
**supporters** [1] - 5:15
**supporting** [1] - 10:8
**supportive** [1] - 20:1
**suppose** [2] - 40:16, 42:1
**supposed** [2] - 31:7, 50:17
**Supreme** [2] - 41:17, 41:18
**surgical** [1] - 53:10
**surrounding** [1] - 5:19
**survive** [2] - 41:24, 43:12

# T

**table** [1] - 11:3
**targeted** [2] - 24:1, 24:2
**team** [4] - 18:9, 18:11,

18:15, 22:21
**team's** [1] - 18:13
**temporal** [2] - 12:5, 44:2
**ten** [1] - 25:5
**term** [4] - 9:11, 9:15, 9:21, 37:4
**terms** [4] - 5:1, 28:17, 45:8, 54:23
**THE** [120] - 1:1, 1:1, 1:5, 1:12, 3:2, 3:11, 3:16, 3:21, 3:25, 4:14, 4:23, 5:17, 6:25, 7:5, 7:11, 7:21, 7:24, 8:6, 8:14, 8:19, 8:25, 9:8, 9:17, 10:10, 10:16, 11:23, 12:7, 12:13, 13:21, 14:11, 14:18, 15:1, 15:7, 15:10, 15:14, 15:24, 16:8, 16:16, 17:3, 17:7, 17:21, 18:16, 18:22, 19:3, 19:9, 20:11, 20:16, 20:22, 21:7, 21:20, 21:25, 22:6, 22:13, 22:17, 22:19, 23:1, 23:4, 23:8, 23:13, 23:21, 23:25, 24:7, 24:15, 24:20, 24:23, 25:11, 25:15, 25:22, 26:1, 26:10, 26:19, 26:22, 27:2, 27:5, 27:12, 27:22, 28:1, 28:8, 28:12, 28:15, 28:19, 29:4, 30:3, 30:11, 31:8, 31:16, 32:5, 32:15, 32:19, 32:25, 33:14, 33:16, 33:18, 34:2, 34:6, 34:11, 34:25, 36:7, 37:23, 39:1, 40:1, 41:4, 42:10, 42:14, 43:14, 44:14, 48:22, 49:15, 49:24, 50:7, 51:1, 51:5, 51:14, 51:24, 52:12, 52:21, 53:4, 54:16, 54:19, 55:7
**themselves** [3] - 30:1, 37:9, 37:12
**theory** [4] - 4:19, 28:1, 28:23, 35:9
**thereafter** [1] - 36:19
**therefore** [2] - 39:13, 51:6
**thereto** [1] - 44:7
**thinking** [3] - 11:9, 11:10, 49:4
**third** [3] - 8:17, 9:2,

34:21
**third-party** [1] - 9:2
**threat** [2] - 37:15, 37:17
**threaten** [1] - 8:25
**threatened** [2] - 20:4, 37:13, 37:14
**threatening** [2] - 8:21, 17:1
**threats** [4] - 8:24, 22:11, 37:11, 37:12
**Three** [1] - 2:10
**three** [1] - 3:19
**throwing** [1] - 16:20
**tight** [1] - 52:16
**timeline** [3] - 18:6, 19:4, 44:6
**Title** [61] - 4:18, 4:20, 4:21, 5:9, 5:14, 5:19, 6:2, 6:17, 9:6, 11:22, 12:3, 12:11, 12:12, 13:17, 14:2, 15:5, 16:2, 18:4, 18:7, 18:17, 18:21, 19:11, 19:19, 20:8, 20:9, 21:11, 21:16, 24:4, 25:3, 26:11, 26:12, 26:16, 26:21, 28:10, 29:10, 30:5, 31:4, 31:14, 34:17, 35:4, 35:20, 36:18, 37:6, 37:7, 39:2, 39:6, 39:13, 39:19, 39:20, 39:21, 39:24, 40:11, 40:18, 41:11, 41:13, 43:18, 46:11, 47:2, 47:10, 47:16
**today** [7] - 3:4, 4:6, 12:14, 19:19, 34:15, 42:2, 54:20
**toehold** [1] - 25:17
**together** [1] - 54:24
**took** [4] - 10:16, 25:15, 30:23, 46:12
**totality** [1] - 45:1
**totally** [2] - 38:20, 38:22
**toward** [2] - 10:17, 14:6
**Towson** [1] - 2:9
**traditional** [2] - 9:12, 38:11
**transcript** [2] - 56:9, 56:11
**Transcription** [1] - 1:21
**treat** [3] - 6:21, 25:18, 25:20
**treated** [1] - 29:24
**treatment** [1] - 30:15

10

trial [1] - 45:11
tricky [1] - 18:23
tries [1] - 53:25
trigger [2] - 41:20, 48:14
triggers [1] - 20:9
true [3] - 8:11, 17:6, 56:9
try [3] - 11:11, 14:11, 16:24
trying [7] - 7:16, 15:14, 16:21, 17:1, 24:10, 37:23, 50:14
Tuesday [1] - 1:9
turn [1] - 42:1
turned [2] - 11:3, 21:19
two [12] - 3:23, 4:1, 6:4, 10:19, 12:20, 24:20, 29:9, 40:7, 40:9, 40:10, 46:16, 50:21
Two [2] - 2:7, 46:20
two's [1] - 4:3
Twombly [2] - 34:17, 41:8
Twombly/lqbal [1] - 35:18
type [7] - 4:18, 15:22, 16:24, 18:18, 18:20, 27:17, 29:19
types [1] - 26:24
typically [2] - 5:8, 8:4

## U

U.S.C [1] - 56:8
ultimately [1] - 12:1
under [20] - 5:14, 6:6, 9:6, 14:8, 15:4, 15:5, 18:10, 18:13, 25:16, 26:16, 27:10, 34:16, 35:3, 41:22, 45:21, 46:8, 46:13, 46:18, 47:7, 47:16
underlying [7] - 5:19, 36:18, 39:24, 40:11, 40:18, 42:22, 44:7
understood [2] - 19:16, 32:13
undone [3] - 10:21, 29:9, 40:7
unduly [1] - 37:7
unfortunately [1] - 15:2
unique [2] - 38:20, 38:22
UNITED [1] - 1:1
United [3] - 50:13, 56:6, 56:12

universe [1] - 32:25
universities [1] - 13:17
university [1] - 43:10
UNIVERSITY [1] - 1:5
University [38] - 1:18, 2:3, 3:3, 3:13, 4:8, 4:18, 4:21, 4:25, 5:8, 5:21, 6:9, 6:10, 7:8, 13:22, 15:6, 15:18, 15:19, 16:11, 16:22, 17:16, 17:17, 23:9, 23:21, 24:13, 24:21, 32:11, 33:10, 34:21, 35:2, 38:23, 38:24, 39:1, 39:5, 40:20, 40:25, 41:2, 42:17, 45:3
University's [6] - 4:2, 5:13, 14:5, 14:19, 25:2, 45:15
university's [1] - 6:2
unless [1] - 43:15
unnecessary [1] - 52:15
unreasonably [1] - 34:22
unwelcome [3] - 8:3, 8:4
up [17] - 4:10, 10:21, 10:25, 12:23, 13:1, 26:16, 28:16, 29:8, 32:23, 34:13, 39:11, 40:7, 41:7, 43:19, 47:3, 53:15, 54:24
urge [1] - 53:9
urging [1] - 4:17

## V

VA [2] - 1:16, 1:18
vagina [1] - 9:13
variable [1] - 13:1
vastly [1] - 50:21
vendetta [2] - 13:6, 16:18
version [2] - 23:11, 35:7
versus [1] - 18:4
vexing [1] - 25:4
victim [4] - 8:7, 9:15, 38:9, 38:13
video [2] - 52:1, 52:10
view [2] - 24:24, 47:16
violation [1] - 20:7
violence [3] - 22:12, 37:11, 37:12
violent [1] - 38:14
vs [1] - 1:4

## W

wait [1] - 7:5
wake [3] - 10:21, 29:8, 40:7
walk [2] - 19:4, 19:5
wants [1] - 40:7
week [3] - 54:3, 54:13, 54:14
weeks [1] - 18:8
West [1] - 2:9
whole [2] - 9:25, 38:10
win [1] - 32:2
winning [1] - 48:2
wiping [2] - 47:6, 47:13
woman [17] - 5:24, 6:1, 9:14, 9:24, 9:25, 11:1, 11:4, 11:8, 11:17, 17:8, 23:6, 37:14, 38:12, 38:13, 45:6
women [2] - 22:4, 37:13
word [2] - 14:13, 37:4
words [8] - 6:16, 7:17, 8:9, 13:23, 30:7, 30:15, 37:15, 39:5
world [1] - 25:18
worried [1] - 33:13
worries [2] - 34:8, 34:10
wrapped [1] - 10:25
wrapping [1] - 4:25
wrestle [1] - 9:19
write [1] - 24:25
written [2] - 7:14, 25:5
wrongly [1] - 44:21

## X

XINIS [1] - 1:12

## Y

years [4] - 25:6, 30:13, 49:8
Young [1] - 48:15
yourselves [1] - 3:6

## §

§ [1] - 56:8