IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JOSHUA WRIGHT,                                )
                                              )
            *Plaintiff,*                       )
      v.                                       )
                                              )     Case No. 1:24-cv-2 (PTG/IDD)
THE RECTOR AND VISITORS OF GEORGE              )
      MASON UNIVERSITY, *et al.*,              )
                                              )
            *Defendants.*                      )

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiff's Motion for a Preliminary Injunction (Dkt. 5) and Defendants' Motion to Dismiss (Dkt. 6). Plaintiff, a former law professor of the Rector and Visitors of George Mason University ("George Mason" or "University"), has filed this civil action against the University as well as its Title IX Coordinator, Thomas Bluestein ("Defendant Bluestein"). *See* Dkt. 1-2 ("Compl.").

The action stems from competing Title IX sexual harassment and retaliation complaints: the first was filed against Plaintiff by his former student, Elyse Dorsey ("Dorsey"), and the second was filed by Plaintiff against Dorsey. George Mason dismissed Plaintiff's Title IX complaint while proceeding with an investigation into Dorsey's claims. As a result, Plaintiff filed the instant suit, challenging Defendants' actions as violating Title IX of the Education Amendments of 1972 ("Title IX"); the Equal Protection and Due Process Clauses of the Fourteenth Amendment; the First Amendment; and common law. Plaintiff also seeks a preliminary injunction to enjoin Defendants from continuing their Title IX investigation. *See* Dkt. 5.

Separately, Defendants have filed a motion seeking to dismiss the Complaint based on lack of subject matter jurisdiction as well as failure to state a claim. For the reasons that follow,

Plaintiff's Motion for a Preliminary Injunction (Dkt. 5) is denied and Defendants' Motion to Dismiss (Dkt. 6) is granted in part and denied in part.

### Factual and Procedural Background

The following facts, taken from Plaintiff's Complaint, are accepted as true for purposes of this matter:[1]

In 2004, Joshua Wright ("Plaintiff") began working as a law professor at George Mason. Compl. ¶ 5. In 2016, Plaintiff became a tenured professor at the University. *Id.* ¶ 9. During the time of his professorship, Plaintiff engaged in other professional endeavors, including serving as a commissioner of the Federal Trade Commission, holding positions in private law practices, and managing his own consulting business. *Id.* ¶¶ 11–12.

While teaching at George Mason, Plaintiff met Dorsey, who was his student. *See id.* ¶ 39. In the summer of 2010, Plaintiff and Dorsey "began a romantic relationship" that "continued for eleven years, on an on-and-off basis." *Id.* ¶¶ 40–41. Throughout their relationship, Plaintiff and Dorsey collaborated on several academic and legal projects together, and the two supported each other's careers. *Id.* ¶¶ 43–47. For instance, in 2021, Plaintiff helped create a fellowship at the University of Virginia for Dorsey to obtain. *Id.* ¶ 48.

In late October 2021, Plaintiff ended his on-and-off relationship with Dorsey, telling her, in writing, that he was breaking up with her to pursue another romantic relationship. *Id.* ¶ 50. Immediately after ending the relationship, Dorsey allegedly became "hostile and vindictive." *Id.* ¶ 51. According to Plaintiff, Dorsey sent him a series of text messages questioning why and how he broke up with her; came uninvited to the law school and waited for Plaintiff outside of one of

---

[1] In considering a motion to dismiss for failure to state a claim, "a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff[.]" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

his classes before following him to his office; yelled at Plaintiff and demanded to speak with him about their relationship once the two were in his office; and repeatedly contacted Plaintiff's current girlfriend as well as his assistant. *Id.* ¶¶ 52–57.

Then, on December 12, 2021, Dorsey filed a formal Title IX complaint against Plaintiff with George Mason, alleging, among other things, that Plaintiff sexually assaulted her at the beginning of their relationship. *Id.* ¶¶ 60, 62. Dorsey's Title IX complaint also alleges that Dorsey broke up with Plaintiff (instead of the other way around) and because of this, Plaintiff (1) removed Dorsey as an adjunct faculty member at George Mason for a spring 2022 Antitrust II course in the online LLM program; and (2) frustrated/delayed Dorsey's receipt of stipend funds associated with a visiting scholar position at the University of Virginia. *Id.* ¶ 63. On July 8, 2022, Dorsey amended her Title IX complaint to also allege that after she filed her complaint, Plaintiff retaliated against her by restricting her ability to teach an antitrust class at George Mason. *Id.* ¶ 67. However, according to Plaintiff, "the position was already filled on October 13, 2021, eight days prior to [Plaintiff and Dorsey's] relationship ending." *Id.* ¶ 69.

On January 28, 2022, George Mason notified Plaintiff that it was opening a formal Title IX investigation based on Dorsey's complaint pursuant to 34 C.F.R. § 106.45. *Id.* ¶ 77. That same day, the University's Title IX office issued a "No Contact Order" prohibiting Plaintiff and Dorsey from contacting each other either directly or indirectly. *Id.* ¶ 78. Although Dorsey's formal complaint was filed in December 2021, and George Mason notified Plaintiff about the investigation in January 2022, the University did not appoint an investigator to interview him until mid-May 2022. *Id.* ¶ 82. During the intervening time, Dorsey and Angela Landry ("Landry"), another one of Plaintiff's former students, allegedly "embarked on a campaign to contact [Plaintiff's consulting] clients and tell them, falsely, that he sexually harassed them and other

students." *Id.* ¶ 87.  George Mason's Title IX investigation of the allegations against Plaintiff remains ongoing. *Id.* ¶ 86.

On June 6, 2022, Plaintiff filed his own Title IX complaint against Dorsey. *Id.* ¶ 88.  In his Title IX complaint, Plaintiff alleged that Dorsey "had (1) retaliated against him; [and] (2) sexually harassed him by contacting his clients and telling them falsely that he sexually harassed or assaulted her[;] and by her coming to [Plaintiff's] office uninvited and berating him about their romantic relationship[;] and by calling his girlfriend repeatedly[.]" *Id.* ¶ 89.  Plaintiff's Title IX complaint also alleged that Dorsey had violated the No Contact Order by contacting Plaintiff's clients to harass and defame him. *Id.*

Without conducting an investigation, George Mason dismissed Plaintiff's Title IX complaint against Dorsey. *Id.* ¶ 90.  In its dismissal notice ("Notice of Dismissal"), the University considered Plaintiff's claim that Dorsey may have been an "active employee[.]"  *See id.* ¶ 93; Dkt. 7-1 at 1.  Ultimately, the University concluded that because Dorsey was neither enrolled nor employed by George Mason at the time that Plaintiff filed his complaint, the University lacked "jurisdiction to pursue the [] complaint." *See* Compl. ¶¶ 91–92; Dkt 7-1 at 1.

Plaintiff acknowledges that Title IX regulations allow a university to dismiss a complaint where the respondent is not enrolled or employed at the university.  Compl. ¶ 92.  However, Plaintiff alleges that Dorsey did have some sort of employment relationship with George Mason in that she "had an arrangement to monitor an online LLM class at the University when that course was offered." *Id.* ¶ 93.  Plaintiff further alleges that George Mason's reference to Dorsey as not being an "active employee" in the Notice of Dismissal suggests that Dorsey was employed by George Mason in some manner. *Id.*

Sometime after the dismissal of Plaintiff's Title IX complaint, Dorsey and Landry sent Plaintiff and George Mason a letter demanding a multi-million-dollar payment to settle their Title VII and Title IX claims against Plaintiff and the University. *Id.* ¶¶ 96, 99. Despite the ongoing Title IX investigation, the University paid Dorsey and Landry $475,000 to settle their claims. *Id.* ¶¶ 101, 147.

On June 26, 2023, Plaintiff submitted his resignation letter, believing that he would not receive any fair process from George Mason. *Id.* ¶¶ 103–04. His resignation became effective on August 8, 2023. *Id.* ¶ 104.

The same day that Plaintiff's resignation took effect, Dorsey publicly announced her claims of sexual harassment against Plaintiff and her criticism of George Mason for delaying the adjudication of her Title IX complaint. *Id.* ¶¶ 105–06. In response to Dorsey's public statements, several of George Mason's administrators made their own public statements about the allegations. *Id.* ¶ 107. On or about August 21, 2023, the dean of the law school ("Dean Randall") sent an email to the entire student body addressing the allegations against Plaintiff and disclosing that George Mason had restricted Plaintiff from contacting students. *Id.* ¶¶ 108–09. Prior to sending this email, Dean Randall called and told Plaintiff that his "hands were tied" and that the law school needed to make a statement because "they were getting killed by the press." *Id.* ¶ 112.

On August 28, 2023, George Mason's president published a statement that the University would be reforming its policies and increasing Title IX training in response to the allegations against Plaintiff. *Id.* ¶ 115. Then, on or about August 30, 2023, Dean Randall sent an email to the law school's alumni, expressing "deep concern[]" about the allegations against Plaintiff and stating that the school would be conducting a review of its Title IX process to ensure "a safe and welcoming environment for everyone." *Id.* ¶¶ 113–14. In September 2023, George Mason

implemented a new policy banning consensual relationships between students and employees. *Id.*
¶¶ 30, 116. That same month, George Mason released a public statement thanking Dorsey and
Landry for being "brave women [who] courageously came forward to bring allegations of sexual
misconduct to the [U]niversity's attention." *Id.* ¶¶ 124–25.

On August 24, 2023, amid the publicity surrounding the allegations made against him,
Plaintiff sued Dorsey and Landry for defamation in state court. *Id.* ¶ 120. In response to Plaintiff's
defamation lawsuit, Dorsey filed an amended Title IX complaint to include the allegation that
Plaintiff's lawsuit constitutes retaliation under Title IX and the University's Title IX policy. *Id.* ¶
132. Plaintiff's defamation lawsuit remains ongoing. *See id.* ¶ 120.

On September 7, 2023, George Mason, through Defendant Bluestein, sent Plaintiff an
amended notice stating that it had accepted Dorsey's amended complaint. *Id.* ¶ 133. In response
to George Mason's amended notice, Plaintiff—through counsel—sent the University a letter
raising Plaintiff's concerns that the school's decision to investigate him for filing a lawsuit would
(1) unconstitutionally chill his First Amendment right to petition his government for a redress of
grievances; (2) violate Title IX's regulations by expanding the "education program or activity" of
the school to include a court of law; and (3) demonstrate bias against Plaintiff on the basis of sex.
*Id.* ¶ 136. On October 4, 2023, Defendant Bluestein sent Plaintiff an email stating that the
University's Title IX hearing officer would analyze federal case law to assess whether Plaintiff's
defamation lawsuit constitutes retaliation under Title IX and the University's Title IX policy. *See
id.* ¶¶ 140, 146.

On November 30, 2023, Plaintiff filed this instant lawsuit against Defendants in Fairfax
County Circuit Court. *Id.* at 1. On January 2, 2024, Defendants removed the case to federal court
pursuant to 28 U.S.C. § 1441. Dkt. 1. The Complaint raises nine causes of action: (1) Title IX

deliberate indifference claim (against George Mason); (2) Title IX selective enforcement claim (against George Mason); (3) Title IX – *Sheppard* claim (against George Mason); (4) Fourteenth Amendment, Equal Protection claim (against Defendant Bluestein in his individual capacity); (5) Fourteenth Amendment, Equal Protection claim (against Defendant Bluestein in his official capacity); (6) First Amendment, Petition Clause claim (against Defendant Bluestein in his individual capacity); (7) First Amendment, Petition Clause claim (against Defendant Bluestein in his official capacity); (8) Fourteenth Amendment, Due Process claim (against Defendant Bluestein in his official capacity); and (9) breach of contract claim (against George Mason). Compl. at 28–41.

Subsequently, the parties filed their respective motions. Dkts. 5, 6. Plaintiff has moved for a preliminary injunction "prohibiting Defendants from continuing their investigation of [Dorsey's amended Title IX] complaint against [Plaintiff]," titled the 'Second Amended Notice of Investigation' … until [Plaintiff's] claims are fully litigated in this Court." Dkt. 5 at 1. Defendants moved to dismiss all nine counts of Plaintiff's Complaint, with prejudice, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction as to certain claims and failure to state a claim as to all claims, respectively. Dkt. 6. On March 21, 2024, this Court held a hearing on the parties' motions. *See* Dkt. 16. Following the hearing, the Court took the matter under advisement. *Id.* This matter is now ripe for disposition.

## Legal Standard

### A.   *Motion to Dismiss*

#### 1.   *Rule 12(b)(1) Motion to Dismiss*

Federal district courts are courts of limited subject matter jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). "If the court determines at any time that it

lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that subject matter jurisdiction is proper by a preponderance of the evidence. *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009). "In determining whether subject matter jurisdiction exists, the court must evaluate the allegations in the complaint as 'mere evidence,' and so may consider evidence outside the pleadings without converting the motion challenging jurisdiction into a summary judgment motion." *Richmond, Fredericksburg & Potomac R. R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). Dismissal on the grounds of sovereign immunity is appropriate pursuant to Rule 12(b)(1). *See Hendy v. Bello*, 555 F. App'x 224, 226–27 (4th Cir. 2014).

    2.    *Rule 12(b)(6) Motion to Dismiss*

    To survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This pleading standard does not require detailed factual allegations; rather, the plaintiff must plead factual content allowing the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, a complaint is insufficient if it relies upon "naked assertions" and "unadorned conclusory allegations" devoid of "factual enhancement." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citations omitted).

    When reviewing a motion brought under Rule 12(b)(6), the court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (internal citations omitted). However, the court need not accept as true "'legal conclusions

drawn from the facts' or any other 'unwarranted inferences, unreasonable conclusions, or arguments.'" *Kashdan v. George Mason Univ.*, 70 F.4th 694, 700 (4th Cir. 2023) (citation omitted). Furthermore, in ruling on a 12(b)(6) motion, the court may consider "documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The court may also consider documents attached to a motion to dismiss so long as they are "integral to and explicitly relied upon in the complaint" and the authenticity of such documents is not disputed. *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

## Analysis

This Court will start its analysis with consideration of Defendants' Motion to Dismiss (Dkt. 6).

### 1.    *Count One — Deliberate Indifference Claim Against George Mason*

Plaintiff claims that George Mason acted deliberately indifferent to the sexual harassment he alleges he suffered. Specifically, Plaintiff alleges that Dorsey harassed him by "slandering [him] as a perpetrator of sexual harassment[.]" Compl. ¶ 156. However, in his Opposition to Defendants' Motion to Dismiss, Plaintiff contends for the first time that Dorsey also sexually harassed him by berating him in public about their prior romantic and sexual relationship.[2] Dkt. 12 at 14. Plaintiff asserts that this harassment was because of his sex. *See* Compl. ¶ 156.

---

[2] During the motions hearing, the Court questioned Plaintiff about the apparent discrepancy between Plaintiff's sexual harassment allegations raised in the Complaint versus that stated in his Opposition. At that time, Plaintiff conceded that the Complaint did not fully lay out Plaintiff's allegations of sexual harassment, and Plaintiff asked for leave to amend the Complaint to do so. However, for the reasons discussed *infra*, the Court finds that such amendment would be futile. *U.S. ex rel. Wilson v. Kellogg Brown & Roof, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) ("a district court may deny leave [to amend] if amending the complaint would be futile[.]").

To state a deliberate indifference claim under Title IX, a plaintiff must plausibly allege that "(1) the educational institution receives federal funds, (2) the plaintiff was subjected to harassment based on [his] sex, (3) the harassment was sufficiently severe and pervasive to create a hostile environment in an educational program or activity, and (4) there is a basis to impute liability to the institution." *Stover v. Coll. of William & Mary in Va.*, 635 F. Supp. 3d 429, 442 (E.D. Va. 2022). Defendants argue that Plaintiff fails to sufficiently allege the second, third, and fourth elements of a deliberate indifference claim. *See* Dkt. 7 at 6. The Court agrees.

"Sexual harassment occurs when the victim is subjected to sex-specific language that is aimed to humiliate, ridicule, or intimidate." *Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007). Here, Plaintiff asserts that he was subject to harassment on the basis of his sex because "false accusations of sexual harassment contain 'sex-specific language aimed to humiliate, ridicule, or intimidate[.]'" Dkt. 12 at 14 (citation omitted). The Fourth Circuit, however, explicitly rejected this argument in *Balazs v. Liebenthal*, 32 F.3d 151 (4th Cir. 1994). There, the Court determined that an allegation of being falsely accused of sexual harassment "in no way states a cause of action that [the] plaintiff himself was a victim of discrimination based on his sex." 32 F.3d at 155 (affirming the dismissal of the plaintiff's sex discrimination claim under Title VII in part on the grounds that "the complaint [was] devoid of any allegation that plaintiff was discriminated against because of *his* sex.").

Plaintiff attempts to distinguish *Balazs* by asserting that the case involved a claim of sexual *discrimination*, whereas the instant case involves a claim of sexual *harassment*. *See* Dkt. 12 at 15–16. This distinction, particularly within the context of a Title IX civil action, is unsupported by relevant case law. Specifically, the Supreme Court has made clear that "*sexual harassment is discrimination* in the school context under Title IX[.]" *Davis v. Monroe Cnty. Bd. of Educ.*, 526

U.S. 629, 650 (1999) (emphasis added) (quotation marks omitted).  Accordingly, the Court finds that *Balazs* is applicable to this instant action.  Thus, Plaintiff's allegation that Dorsey falsely accused him of sexual harassment does not support his claim that he was subject to harassment on the basis of his sex.

Likewise, the Court finds that Plaintiff cannot plausibly state a claim of sexual harassment based on Dorsey allegedly berating him about their prior relationship.  Plaintiff relies on *Luskin v. University of Maryland, College Park, Maryland*, 2023 WL 2985121 (4th Cir. Apr. 18, 2023), for the proposition that Dorsey targeted Plaintiff due to his sex, because she wanted a romantic relationship with him.  *See* Dkt. 12 at 14–15.  The Court, however, finds *Luskin* to be distinguishable.  In *Luskin*, the district court determined that a reasonable factfinder could infer from a series of incidences that a male classmate wanted a romantic relationship with the female complainant and "thus targeted her because of her sex."  2023 WL 2985121, at *3 (citation and quotation marks omitted).  However, in his Complaint, Plaintiff alleges that Dorsey berated him by "yell[ing] at him regarding the *end* of their relationship" and how Plaintiff chose to end things, not that Dorsey went after him in pursuit of their previous relationship.  *See* Compl. ¶¶ 53, 55 (emphasis added).  In short, Plaintiff has failed to plausibly allege that Dorsey's conduct was due to his sex; and the Court does not find that a reasonable inference can be drawn that Plaintiff was subject to sex-based harassment.

As to the third element, the Court finds that Plaintiff has failed to plausibly allege that "the harassment was sufficiently severe and pervasive to create a hostile environment in an educational program or activity."  *Stover*, 635 F. Supp. 3d at 442.  "Harassment reaches the sufficiently severe or pervasive level when it creates 'an environment that a reasonable person would find hostile or abusive' and that the victim [himself] 'subjectively perceive[s] . . . to be abusive.'"  *Jennings*, 482

11

F.3d at 696 (citation omitted). Further, a plaintiff asserting a Title IX deliberate indifference claim must sufficiently allege that the harassment had a "concrete, negative effect on [his] ability to participate in [the institution's educational] program[s] or activit[ies]." *Id.* at 699 (quotation marks and citations omitted).

Here, Plaintiff claims that the harassment was "sufficiently severe and pervasive because the harassment was widespread at the University and in the general public." Compl. ¶ 157. However, this claim is contradicted by the Complaint, which alleges that Dorsey did not go public with her accusations against Plaintiff until August 2023, after Plaintiff resigned from the University. *Id.* ¶ 106. Furthermore, Plaintiff does not plausibly allege that Dorsey's conduct interfered with his ability to teach at the University or otherwise partake in its educational programs or activities. Plaintiff remained a tenured professor at George Mason until he resigned on August 8, 2023. *See id.* ¶ 104. While Plaintiff asserts that, as a result of Dorsey's conduct, he experienced emotional distress, he does not allege that his decision to resign from the University was due to either Dorsey's conduct or the alleged emotional distress. *See* Dkt. 12 at 18. Rather, Plaintiff resigned because he believed that "he was not going to receive any fair process" by the University. Compl. ¶ 103. Given this allegation, Plaintiff fails to plausibly allege that he experienced harassment that created a hostile environment at George Mason that interfered with his ability to participate in the University's educational programs or activities.

Finally, the Complaint does not plausibly allege facts to meet the fourth element of Plaintiff's deliberate indifference claim: whether there is a basis to impute liability to the University. "To impute liability, the institution's response to the alleged harassment must be 'clearly unreasonable in light of the known circumstances.'" *Stover*, 635 F. Supp. 3d at 442 (quoting *Davis*, 526 U.S. at 648). Here, Plaintiff submits that George Mason acted deliberately

indifferent to his sexual harassment claim by dismissing his Title IX complaint without taking any investigatory action or formal steps in response to the complaint. Dkt. 12 at 18. However, the University's Notice of Dismissal indicates that George Mason's then Title IX Coordinator, Crystal Coombes, met with Plaintiff a week after the complaint was filed to "review and clarify [Plaintiff's] complaint." *See* Dkt. 7-1 at 1.[3] Further, it identifies the University's reason for dismissing Plaintiff's Title IX complaint: the University had determined that Dorsey "was no longer enrolled at or employed by the University" at the time Plaintiff filed his complaint. *Id.*

Plaintiff concedes that under Title IX's regulations, George Mason was permitted to dismiss his Title IX complaint if the University determined that Dorsey was neither enrolled at nor employed by the University at the time Plaintiff filed his formal complaint. *See* Compl. ¶ 92; Dkt. 12 at 18. Specifically, the regulations provided that the recipient of federal educational funds "may dismiss [a] formal complaint . . . if at any time during the investigation or hearing[,]" the recipient determined that "the respondent [of the complaint was] no longer enrolled or employed by the recipient[.]" 34 C.F.R. § 106.45(b)(3)(ii).[4] Here, the Complaint states that as a part of her formal Title IX complaint, Dorsey claimed that she was removed as the adjunct faculty for the online LLM course for Spring 2022. *See* Compl. ¶ 67. The Complaint further alleges that by October 13, 2021, someone else had already filled the teaching position for the antitrust class Dorsey sought to teach at the University, several months before Plaintiff filed his own Title IX complaint. *Id.* ¶

---

[3] Defendants attached the Notice of Dismissal as an exhibit to the memorandum in support of their Motion to Dismiss. *See* Dkt. 7-1. The Court can consider this exhibit as Plaintiff does not dispute its authenticity, and the exhibit is integral to and relied upon in the Complaint. *See Phillips*, 190 F.3d at 618.

[4] This regulation has since been amended to read as follows: "A recipient may dismiss a complaint of sex discrimination made through its grievance procedures under this section" if "[t]he respondent is not participating in the recipient's education program or activity and is not employed by the recipient[.]" 34 C.F.R. § 106.45(d)(1)(ii) (effective August 1, 2024).

69. Thus, the Complaint indicates that any employment Dorsey had with the University ceased prior to Plaintiff filing his Title IX complaint.

Plaintiff nevertheless argues that George Mason's use of the term "active employee" in the Notice of Dismissal somehow suggests that Dorsey was employed by the University in some manner. Dkt. 12 at 19. The Court finds this argument unpersuasive. The use of the term "active employee" referred to *Plaintiff's* stated belief as to Dorsey's employment status and not the University's. Specifically, the Notice of Dismissal provides that during the June 13, 2022 meeting between Ms. Coombes, Plaintiff, and his advisor, Plaintiff had articulated that "special circumstances existed in the School of Law asynchronous MLL [*sic.*] program that would provide that [Dorsey] was an active employee." Dkt. 7-1 at 1. However, the University had determined that at that time, Dorsey "was not actively teaching as an adjunct faculty member nor working for the University in any other known capacity[.]" *Id.* Plaintiff has failed to raise any specific allegations to the contrary. Accordingly, based on these circumstances, and in accordance with Title IX, George Mason had the authority to dismiss Plaintiff's Title IX complaint. Given these facts, Plaintiff has failed to plausibly allege a basis to impute liability to the University.

In sum, the Court finds that Plaintiff has failed to state a plausible claim of deliberate indifference against George Mason. For this reason, Count One of the Complaint is dismissed.

**2.      *Count Two -- Selective-Enforcement Claim Against George Mason***

Next, Plaintiff raises a Title IX selective-enforcement claim against George Mason. In essence, Plaintiff asserts that he and Dorsey were similarly situated with respect to their Title IX complaints. Compl. ¶ 165. Yet, according to Plaintiff, the University treated him differently on the basis of his sex when it decided to dismiss his Title IX complaint while continuing to investigate the claims in Dorsey's complaint. *See id.* ¶¶ 163–68.

14

"To state a selective-enforcement claim, a plaintiff must plausibly allege that regardless of his guilt or innocence, his gender was a but-for cause of . . . the decision to initiate the challenged disciplinary proceeding[.]" *Kashdan*, 70 F.4th at 701. A plaintiff can state such a selective-enforcement claim "by plausibly showing that a similarly situated person of the opposite sex was treated more favorably." *Id.* Here, the Court does not find that Plaintiff has plausibly stated that Dorsey is a proper comparator for the purposes of his selective-enforcement claim.

In evaluating Title IX claims, a court may "look to case law interpreting Title VII of the Civil Rights Act of 1964[.]" *Jennings*, 482 F.3d at 695. Within the context of Title VII, a plaintiff is similarly situated to his proposed comparator if "they are similar in all relevant aspects . . . Such a showing would include evidence that [the plaintiff and comparator . . .] were subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (quotation marks and citations omitted).

In *Sheppard v. Visitors of Virginia State University*, 993 F.3d 230 (4th Cir. 2021), the Fourth Circuit considered whether a plaintiff had plausibly alleged a Title IX sex discrimination claim under the selective enforcement theory. There, the plaintiff alleged that following an altercation between himself, his former girlfriend, and another female student, the university had discriminated against plaintiff on the basis of his sex by selectively enforcing its code of conduct in deciding to suspend the plaintiff but not the female student. *Sheppard*, 993 F.3d at 233, 237. The Fourth Circuit affirmed the district court's dismissal of the plaintiff's complaint, finding that the plaintiff had not plausibly alleged that he and the female student were similarly situated. *Id.* at 237. The Court specifically determined that although the plaintiff and his proposed comparator had been involved in the same altercation and subject to the same student code of conduct, the two

15

were not in "similar positions" because their underlying conduct were "temporally and elementally distinct" from each other.  *Id.*   The same is true in this instant action.

Here, Plaintiff contends that he and Dorsey were similarly situated because the two "alleged conduct [in their respective Title IX complaints] that, if true, would constitute a violation of University policy[.]" Dkt. 12 at 19.  Despite Plaintiff's assertion to the contrary, the allegations in his Complaint, accepted as true, show that he and Dorsey were not similarly situated.  Plaintiff's Title IX complaint accused Dorsey of sexually harassing him by slandering him as a perpetrator of sexual harassment.  *See* Compl. ¶ 89.  In contrast, Dorsey's Title IX complaint accused Plaintiff of (1) sexually assaulting her when he was a law professor and Dorsey was his student; and (2) engaging in *quid pro quo* sexual harassment.  *See id.* ¶¶ 62–63.  Therefore, the allegations in Plaintiff and Dorsey's respective Title IX complaints involved distinct factual allegations, alleged behavior, and temporal differences that undermine Plaintiff's claim that he and Dorsey were in similar positions with respect to their complaints.

Furthermore, Plaintiff and Dorsey differed with respect to their employment status at the time that they initially filed their respective Title IX complaints.  At the time that Dorsey filed her initial complaint in December 2021, Plaintiff was employed by George Mason.  *See id.* ¶ 62.  In contrast, as noted earlier, Plaintiff has not plausibly alleged that Dorsey was similarly employed by the University at the time that he filed his Title IX complaint.  *See id.* ¶¶ 69, 88, 90–91.  As discussed earlier, Title IX expressly permits a university to dismiss a complaint brought against an individual that is not enrolled or employed by the university.  Thus, Plaintiff and Dorsey were not in similar positions.

Plaintiff submits that if Dorsey was not considered an employee when he filed his Title IX complaint, then the two were similarly situated, at least with respect to the University's handling

16

of Dorsey's amended Title IX complaint. Plaintiff reasons that he was no longer employed by the University at the time that Dorsey amended her Title IX complaint. Yet, despite neither being employed by the University, George Mason dismissed Plaintiff's complaint while allowing Dorsey to amend hers. Plaintiff submits that this constitutes sex-based discrimination under Title IX. *See* Dkt. 12 at 21.

Plaintiff appears to ignore the fact that when Dorsey moved to amend her complaint, the University had already begun an investigation into the claims Dorsey made against Plaintiff when she filed her initial, formal Title IX complaint; and this investigation was initiated *while Plaintiff was still employed* by the University. This differs from the circumstances of Plaintiff's situation, in which he filed an initial formal complaint against a respondent (Dorsey) who was not enrolled or employed by George Mason at the time. Therefore, the Court finds that differentiating circumstances distinguish Plaintiff's situation from that of Dorsey's. As such, Plaintiff has not plausibly alleged that he and Dorsey were similarly situated.

Separately, the Court finds that Plaintiff has failed to plausibly allege that his sex was a but-for cause of George Mason's decision to dismiss his Title IX complaint while continuing its investigation into Dorsey's claims. To state a sex discrimination, selective-enforcement claim under Title IX, a plaintiff must plausibly allege that his sex was "the 'but for' cause of his treatment under [the university's] disciplinary proceedings." *Sheppard*, 993 F.3d at 238. In *Sheppard*, the Fourth Circuit found that the plaintiff had "failed to plead facts sufficient to give rise to a plausible inference of discrimination that was caused by his sex" in part because the plaintiff did not "point[] to [any] discriminatory reason" for the challenged action. *Id.* at 237–38. Here, Plaintiff asserts that the alleged "disparate treatment was caused by [his] sex." Compl. ¶ 167. However, this is a conclusory allegation that by itself, is insufficient to state a plausible claim of sex discrimination.

*See Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 732–33 (E.D. Va. 2015) (finding that the plaintiff's "two allegations that gender bias is the 'only' explanation" for the university's decision to expel him were "entirely conclusory and entitled to no weight under *Twombly*" and did not state a plausible sex discrimination claim under Title IX). Plaintiff fails to raise any specific factual allegations that give rise to a plausible inference that his sex was the but-for cause of George Mason's decision to dismiss his Title IX complaint and not Dorsey's. Accordingly, Plaintiff's selective-enforcement claim shall be dismissed.

3. **Counts Four and Five -- Equal Protection Claim Against Defendant Bluestein**

Separate from his selective-enforcement claim against George Mason, Plaintiff has also asserted equal protection claims against Defendant Bluestein in his individual and official capacities. These claims are predicated on the same set of facts as the selective-enforcement claim. *Compare* Compl. ¶¶ 165–67 (alleging that the University treated Plaintiff differently from Dorsey because of his sex) *with id.* ¶¶ 182–84 (same).

To state a claim under the Equal Protection Clause, "a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated, and that the unequal treatment was the result of discriminatory animus." *Sheppard*, 993 F.3d at 238 (quotation and citation omitted). Courts have determined that because the requirements for pleading a Title IX selective-enforcement claim and an equal protection claim based on sex are similar, dismissal of one claim generally forecloses the other. *See id.* at 234 (affirming the district court's decision to dismiss both the plaintiff's Title IX and equal protection claims "relying on the same facts" because "they fail for largely the same reasons[.]"); *see also Doe*, 132 F. Supp. 3d at 734 (finding that because the plaintiff's equal protection claim was based on the same facts as his Title IX discrimination claim, the equal protection claim "fail[ed] for the same reasons that doomed [the discrimination claim]: the allegations [were] insufficient to state a plausible claim.").

Here, as with the selective enforcement claim, Plaintiff's equal protection claims also fail because Plaintiff has not plausibly alleged either that (1) he and Dorsey were similarly situated or (2) that the University's decision to dismiss his Title IX complaint while proceeding with its investigation of Dorsey's complaint was because of his sex. Further, the Complaint is devoid of any specific allegations that Bluestein *himself* was motivated by discriminatory animus. As such, the Complaint fails to sufficiently allege facts that give rise to a plausible equal protection claim against Defendant Bluestein. *See Sheppard*, 993 F.3d at 238 ("Absent any specific allegations that [the school administrator] was motivated by discriminatory animus, [the plaintiff's] Amended Complaint fails to give rise to a plausible equal protection claim and was properly dismissed."). For these reasons, the Court will dismiss Plaintiff's equal protection claims against Defendant Bluestein.

### 4.  Count Three – *Sheppard* Claim Against George Mason

Plaintiff asserts a separate Title IX cause of action pursuant to *Sheppard v. Visitors of Virginia State University*, 993 F.3d 230 (4th Cir. 2021). Specifically, Plaintiff alleges that under *Sheppard*, Title IX "bar[s] discipline in educational institutions subject to Title IX where the plaintiff's sex is a but-for cause of the discipline." Compl. ¶ 173. While he has not been formally disciplined, Plaintiff contends that he is "imminently going to be disciplined by the University," and has already essentially been "publicly and officially disciplin[ed]" by the University by virtue of its "public statements in support of his female accusers and against him." *Id.* ¶ 174.

However, in his Opposition, Plaintiff argues, for the first time, that a purported *Sheppard* claim is not limited to disciplinary proceedings, but instead, "broadly asks whether a plaintiff's sex is a but-for cause of the University's action." Dkt. 12 at 22. This proposition is contradicted by *Sheppard*, which expressly determined what a party must plead to assert a Title IX claim in the

19

context of "higher-education *disciplinary proceedings*." 993 F.3d at 235 (emphasis added). Thus, to the extent that there is a cognizable Title IX claim under a *Sheppard* theory, such a claim must be based on a Title IX disciplinary proceeding or action.

Moreover, Plaintiff's argument that he is "imminently going to be disciplined by the University" is foreclosed by *Reid v. James Madison University*, 90 F.4th 311 (4th Cir. 2024). In *Reid*, the Fourth Circuit considered when, for the purpose of evaluating a statute of limitations defense, "a plaintiff's claims that a university violated Title IX's anti-discrimination provisions" accrues. 90 F.4th at 313. The Court ultimately held that a Title IX claim does not accrue until the institution "reache[s] a final decision in [the plaintiff's] Title IX proceedings." *Id.* at 321.

Here, the Complaint makes clear that George Mason's Title IX investigation into the accusations made by Dorsey against Plaintiff remains ongoing. *See* Compl. ¶ 86. Accordingly, there has been no final determination made as to the Title IX proceedings. Similarly, under *Sheppard* and *Reid*, the public statements made by the University's officers do not constitute a final determination made in disciplinary proceedings. Accordingly, Plaintiff's *Sheppard* claim has not yet accrued and is premature. As such, the Court will dismiss the claim, but without prejudice.[5]

### 5. *Count Eight – Due Process Claim Against Defendant Bluestein*

Plaintiff has also raised a due process claim against Defendant Bluestein in his official capacity. The due process claim is based on the allegation that George Mason's public statements "in support of [Plaintiff's] female accusers and in condemnation of him" deprived Plaintiff of his liberty interest in his professional reputation and ability to pursue his occupation of choice. Compl.

---

[5] Defendants contend that even if Plaintiff were to be found responsible for the claims made against him, "he will not face discipline because he is no longer a Mason employee." Dkt. 7 at 15. Despite Defendants' argument, the Court is not inclined at this time to completely shut the door on Plaintiff's claim given that it is not ripe.

¶¶ 219–25. Plaintiff, however, concedes that his Complaint does not sufficiently allege facts to support this claim. Dkt. 12 at 29. Plaintiff requests leave to amend to allege that he was constructively terminated from his job and effectively forced to resign in violation of the Due Process Clause. *Id.* In response, Defendants argue that amendment would be futile because Defendant Bluestein is entitled to sovereign immunity and therefore, the Court lacks subject matter jurisdiction over Plaintiff's due process claim. *See* Dkt. 13 at 17–18. The Court agrees.

It is well-established that sovereign immunity protects unwilling States from suits brought in federal court, and "also extends to state agencies and other government entities properly characterized as 'arms' of the State." *Amison v. George Mason Univ.*, 2023 WL 8946774, at *2 (4th Cir. Dec. 28, 2023). "[S]tate officers acting in their official capacity are entitled to [sovereign immunity] protection because 'a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office[.]'" *Id.* (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). The Supreme Court recognized an exception to the doctrine of sovereign immunity, "permit[ting] a federal court to issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law[.]" *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). The exception, however, is narrow and only applies to "prospective relief, [and] does not permit judgments against state officers declaring that they violated federal law in the past[.]" *Amison*, 2023 WL 8946774, at *3 (quotation marks and citation omitted).

It is undisputed that George Mason is an "arm" of the Commonwealth of Virginia. *See Litman v. George Mason Univ.*, 186 F.3d 544, 547 (4th Cir. 1999) (observing that George Mason "is a state-created university" that is "'subject at all times to the control of the Virginia General

Assembly.'") (quoting Va. Code Ann. § 23-91.24)).[6] Despite this, Plaintiff asserts that his due process claim falls under the *Ex parte Young* exception to sovereign immunity. Dkt. 12 at 7–8. It does not.

Initially, Plaintiff argued that as to his due process claim, he sought prospective relief by way of "an order directing the recission of the government's statements against him[.]" *Id.* at 8. However, the University's statements were made in the past, and Plaintiff does not allege that similar statements will be made in the future. Thus, Plaintiff essentially seeks a declaration that the University's past conduct was unlawful. Such relief is not permitted under *Ex parte Young*. *See DeBauche v. Trani*, 191 F.3d 499, 505 (4th Cir. 1999) ("The *Ex parte Young* exception . . . does not apply when the alleged violation of federal law occurred entirely in the past.")

Now, Plaintiff seeks to amend his due process claim to allege that he was constructively terminated by, among other things, being "placed on extended leave prior to his resignation and prevented from being around students or teaching[.]" Dkt. 12 at 29. These allegations, accepted as true, fail to establish application of the *Ex parte Young* exception. Defendant's alleged conduct occurred prior to Plaintiff's resignation, which took effect on August 8, 2023. Compl. ¶ 104. Thus, Plaintiff's proposed constructive termination claim is predicated on past conduct. Accordingly, this claim cannot fall under the *Ex parte Young* exception when the claim does not involve an alleged ongoing violation of federal law. *See DeBauche*, 191 F.3d at 505.

Consequently, the Court finds that allowing Plaintiff to amend his due process claim would be futile as Defendant Bluestein is protected by sovereign immunity. As such, the Court lacks subject matter jurisdiction over this claim. Accordingly, Count Eight is dismissed without

---

[6] The Court notes that the version of the Virginia code section quoted here differs from the current version in form but not in substance. *See* Va. Code Ann. § 23.1-1500 ("The board shall at all times be under the control of the General Assembly.").

prejudice. *See Reid*, 90 F.4th at 318 (noting that dismissal of a claim for lack of subject matter jurisdiction must be without prejudice).

6.    ***Count Nine – Breach of Contract Claim Against George Mason***

In the Complaint, Plaintiff further asserts that George Mason violated its Title IX policy in at least four ways; and because the policy is incorporated by reference into Plaintiff's employment contract, each violation constitutes a breach of the employment contract. *See* Compl. ¶¶ 227–29. Defendants argue that sovereign immunity bars Plaintiff's breach of contract claim because Plaintiff failed to comply with the requirements of Virginia Code Ann. § 2.2-814. Dkt. 7 at 29.

As noted earlier, sovereign immunity protects unwilling States from suits brought in federal court, and "also extends to state agencies and other government entities properly characterized as 'arms' of the State." *Amison*, 2023 WL 8946774, at *2. Virginia law provides a limited waiver of sovereign immunity for pecuniary claims brought against the Commonwealth. *See* Va. Code Ann. § 2.2-814; *see also Amaram v. Va. State Univ.*, 476 F. Supp. 2d 535, 540 (E.D. Va. 2007) (providing that Virginia Code Ann. § 2.2-814 "represents a limited waiver of sovereign immunity" for a "pecuniary claim against the Commonwealth[.]"). However, Virginia Code Ann. § 2.2-814 provides that "[a]ny person having any pecuniary claim against the Commonwealth upon any legal ground shall present the same to the head of the department, division, institution or agency of the Commonwealth responsible for the alleged act or omission which, if proved, gives rise to the claim[.]" Va. Code Ann. § 2.2-814. It is only after the presented claim is denied that the cause of action is deemed to have accrued. Va. Code Ann. § 8.01-192.

Here, Defendants argue that Plaintiff has not satisfied the requirements of § 2.2-814 because he did not (1) present his breach of contract claim to the head of the University and (2) did not assert any claim for pecuniary damages prior to initiating this instant action. *See* Dkt. 13

at 18–19.  In response, Plaintiff contends that he has complied with the statute's requirements by

presenting the breach of contract claim to the University's counsel in a September 11, 2023 letter.

Dkt. 12 at 10.

Having considered the letter, the Court finds that Plaintiff has not complied with the

requirements of § 2.2-814.[7]  Specifically, the Court finds that Plaintiff fails to establish that serving

the letter to George Mason's legal counsel equates to serving the head of the University.  As to

this issue, the Fourth Circuit's decision in *Cominelli v. Rector & Visitors of the University of

Virginia*, 362 F. App'x 359 (4th Cir. 2010), is instructive.

In *Cominelli*, the Fourth Circuit affirmed a district court's decision to dismiss a breach of

contract claim against the University of Virginia for failure to comply with § 2.2-814.  362 F.

App'x at 364.  There, the plaintiff presented the breach of contract claim to the university's counsel

rather than the university's president.  *See Cominelli v. Rector & Visitors of the Univ. of Va.*, 589

F. Supp. 2d 706, 719 (W.D. Va. 2008).  The district court determined that the president of the

University of Virginia was the proper head of the university, and although the university's counsel

represented the president, he was not the head of the state agency for purposes of complying with

the statute.  *Id.*  Likewise, in this instant action, Plaintiff has not presented his breach of contract

claim to the head of George Mason, and as such, he has failed to comply with § 2.2-814.  Moreover,

even if the letter was presented to George Mason's president, the Court finds that it failed to assert

a pecuniary claim against the University.  *See* Dkt. 12-1 at 2, 4 (indicating Plaintiff's desired relief

---

[7] Plaintiff included the letter as a part of an exhibit attached to his Opposition to Defendants'
Motion to Dismiss.  *See* Dkt. 12 at 2–5.  Defendants argue that the Court should not consider the
letter because Plaintiff did not cite to or incorporate the letter in his Complaint.  *See* Dkt. 13 at 18.
However, the Court will consider the letter as Fourth Circuit case law clearly establishes that in
determining whether subject matter jurisdiction exists, a court may consider evidence outside of
the pleadings without turning a motion to dismiss into a motion for summary judgment.  *See
Richmond, Fredericksburg & Potomac R. R. Co*, 945 F.2d at 768.

for the University's alleged breach of the employment contract was either dismissal of the Second Amended Notice or a stay of the University's Title IX investigation). Therefore, Plaintiff's breach of contract claim is barred by sovereign immunity.

In his Opposition, Plaintiff requests leave to amend to comply with § 2.2-814's requirements. Dkt. 12 at 10. However, the Court finds that such amendment would be futile because Plaintiff fails to state a plausible breach of contract claim. *See Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008) (affirming that dismissal with prejudice is warranted where "amendment would be futile in light of the [complaint's] fundamental deficiencies.").

To state a breach of contract claim, a plaintiff must allege "(1) a legally enforceable obligation of a defendant to [the] plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004). Here, as noted earlier, Plaintiff alleges that George Mason breached his employment contract by violating its own Title IX policy in at least four ways. *See* Compl. ¶ 229. Specifically, Plaintiff alleges that George Mason "breached its own policy (and thus, the contract) by, among other things," (1) investigating Dorsey's retaliation claim even though the Fairfax County Circuit Court is not within the University's "substantial control"; (2) using the term "active employee" to reject Plaintiff's Title IX complaint, though the term appears nowhere in the University's policy; (3) making public statements condemning Plaintiff and supporting his accusers in the middle of the Title IX investigation, where the University was required to presume Plaintiff not responsible until found otherwise; and (4) instructing its hearing officer to apply First Amendment case law in evaluating Dorsey's retaliation claim, though the University's policy does not empower hearing officers to do so. *Id.*

Excluding Plaintiff's contention about George Mason's use of the term "active employee," the three other ways in which Plaintiff alleges the University breached its Title IX policy all occurred after Plaintiff's employment contract terminated following his formal resignation. Thus, there was no longer an agreement to breach. Plaintiff argues that this is somehow immaterial because the "University policy . . . remains in force as to [Plaintiff] by virtue of the University's decision to continue to impose its Title IX process on [him]." Dkt. 12 at 30. However, Plaintiff neither cites any legal authority nor points to any specific provision in the employment contract that could lead this Court to reasonably infer that George Mason remained legally bound by a contract that had already terminated. Therefore, Plaintiff has failed to plausibly allege that following his resignation, the University owed any legally enforceable obligation to him pursuant to the terminated employment contract.

Similarly, Plaintiff's contentions about the University's purported use of the term "active employee" in its Notice of Dismissal of Plaintiff's Title IX complaint are also insufficient to plausibly allege a breach of contract claim. Plaintiff does not point to any particular provision of either the University's Title IX policy or the employment contract that prohibits the use of the term "active employee." Nor does Plaintiff explain how the use of this term constitutes a breach of a legally enforceable obligation. As such, this allegation does not support Plaintiff's breach of contract claim. Accordingly, Plaintiff's breach of contract claim is dismissed.

### 7.    *Counts Six and Seven – First Amendment Claims Against Defendant Bluestein*

Lastly, Counts Six and Seven raise First Amendment, Petition Clause claims against Defendant Bluestein in his individual and official capacity, respectively. In particular, Plaintiff alleges that Defendant Bluestein violated his First Amendment right to petition his government for redress by accepting Dorsey's amended Title IX complaint, which charged Plaintiff with retaliation for filing his defamation lawsuit against her and Landry. *See* Compl. at 35–38.   In

keeping, Plaintiff requests "injunctive relief in the form of an order directing Defendant Bluestein to dismiss Ms. Dorsey's amended complaint" and asks this Court to issue "an order staying the [Title IX] investigation[.]" *Id.* ¶ 217; Dkt. 5-1 at 16.

Defendants move to dismiss these two counts, arguing that (1) Plaintiff cannot state a plausible First Amendment claim because, in light of the ongoing investigation, the University must be able to assess whether Plaintiff's defamation lawsuit constitutes unlawful retaliation under Title IX; and (2) to the extent Plaintiff can state a First Amendment claim against Defendant Bluestein in his official capacity, the claim against Defendant Bluestein in his individual capacity should be dismissed under qualified immunity. *See* Dkt. 7 at 22–25. Separately, Defendants oppose Plaintiff's motion for a preliminary injunction, asserting that Plaintiff is unable to satisfy the requirements for such injunctive relief. *See generally* Dkt. 11.

### A. Plausibility of Plaintiff's First Amendment Retaliation Claim

To state a First Amendment retaliation claim, a plaintiff must allege that "(1) [he] engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendants' conduct." *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005). Here, Plaintiff alleges that in retaliation for filing his defamation lawsuit, George Mason, through Defendant Bluestein, accepted Dorsey's amended Title IX complaint even though neither Dorsey nor Plaintiff were enrolled or employed by the University at the time Dorsey submitted her amended complaint. *See* Compl. ¶¶ 132–39. Plaintiff further alleges that (1) George Mason seeks to punish him for filing his lawsuit, which constitutes First Amendment protected activity; (2) the University's acceptance of Dorsey's amended complaint has a chilling effect on the exercise of his First Amendment protected activity because

it amounts to "an official threat of enforcement" or punishment; and (3) George Mason's retaliatory motive is evidenced by "the University ma[king] public statements praising [Plaintiff's] female accusers and condemning him, pa[ying] his false accusers $475,000, and dismiss[ing] his [Title IX] complaint[] while allowing []Dorsey's to proceed[.]" *See id.* ¶¶ 147–49, 198–200, 205.

As to the first element of Plaintiff's claim, Defendants concede that to the extent Plaintiff's defamation lawsuit properly constitutes protected activity, then Plaintiff satisfies this element. *See* Dkt. 7 at 23. However, Defendants argue that because Title IX prohibits retaliatory conduct that does not constitute First Amendment protected activity, and binding precedent establishes that certain lawsuits may fall outside the bounds of protected activity, then there is a question of whether Plaintiff's defamation lawsuit is protected by the First Amendment. *See id.* at 22–23 (citing 34 C.F.R. § 106.71; *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 743 (1983) (holding that "baseless litigation is not immunized by the First Amendment right to petition"); *Darveau v. Detecon, Inc.*, 515 F.3d 334, 341 (4th Cir. 2008)). Defendants further contend that because Dorsey alleged in her amended complaint that Plaintiff filed the defamation lawsuit in retaliation for her Title IX complaint, then George Mason, as the educational institution overseeing the Title IX investigation, must be able to investigate whether Plaintiff's lawsuit constitutes retaliation under Title IX. *Id.*

In considering Defendants' arguments, the Court finds that they attempt to challenge the merits of Plaintiff's First Amendment claim rather than merely focusing on the "legal sufficiency of [the] complaint[.]" *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) ("A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint[.]"). Here, the Court finds that the Complaint sufficiently alleges that Plaintiff engaged in First Amendment protected activity.

Specifically, Plaintiff alleges that on the day his resignation became effective, Dorsey publicized her accusations against him in the media. Compl. ¶ 105. As a result, he was "subjected to near constant press inquiries and media articles labeling him a perpetrator of sexual harassment[.]" *Id.* ¶ 106. Plaintiff contends that it was "[i]n response to the [] very public defamation" by Dorsey, along with Landry, that he filed his defamation lawsuit on August 24, 2023. *Id.* ¶ 120. Accepting these allegations as true, the Court finds that Plaintiff has plausibly alleged that in filing his defamation lawsuit, he engaged in First Amendment protected activity by seeking recourse from his government for allegedly defamatory conduct levied against him.

The Court further finds that Plaintiff has sufficiently alleged that Defendants' conduct adversely affects his First Amendment right. "[F]or purposes of a First Amendment retaliation claim under [42 U.S.C.] § 1983, a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Constantine*, 411 F.3d at 500 (internal quotation marks and citation omitted). This is an objective inquiry which turns on "conduct that tends to *chill* such [First Amendment] activity, not just conduct that *freezes* it completely." *Id.*

Here, Plaintiff alleges that the University's decision to charge him with retaliation by accepting Dorsey's amended Title IX complaint "produces an unconstitutional 'chilling effect' on protected First Amendment activity even absent any finding of responsibility, because the charge of retaliation is an official threat of enforcement[.]" Compl. ¶ 205. Plaintiff further alleges that even after raising his concerns to the University regarding the potentially chilling effect on Plaintiff's First Amendment right, the University responded that Plaintiff could seek court relief while the University continued with its investigation. *See id.* ¶¶ 136, 138–39.

29

This Court is persuaded that Defendants' conduct could plausibly have a chilling effect on a reasonable person's exercise of the First Amendment right to petition one's government for redress of grievances. In particular, the Court finds that Plaintiff has plausibly alleged that being placed under an investigation for pursuing one's right to seek legal remedies against potentially defamatory conduct would, by its very nature, likely deter an objectively reasonable person from freely exercising their right to petition. Accordingly, the Court finds that Plaintiff has plausibly alleged that Defendants have taken an adverse action against him.

Finally, as to the third element, "[i]n order to establish th[e] causal connection, a plaintiff in a retaliation case must show, at the very least, the defendant was aware of [him] engaging in protected activity…. Knowledge alone, however, does not establish a causal connection between the protected activity and the adverse action. There must also be some degree of temporal proximity to suggest a causal connection." *Constantine*, 411 F.3d at 501 (quotation marks and internal citations omitted).

Here, Plaintiff alleges that (1) he filed his defamation lawsuit on August 24, 2023; (2) on September 7, 2023, Defendant Bluestein notified him that the University had accepted Dorsey's amended Title IX complaint and would be investigating whether Plaintiff's lawsuit constitutes retaliation under Title IX; (3) as of October 4, 2023, the University's appointed investigator has been investigating Plaintiff's lawsuit; and (4) during this period of time, the University made a number of public statements praising Dorsey and Landry while condemning Plaintiff. *See* Compl. ¶¶ 120, 124–25, 133–34, 146.

The Court finds that based on these allegations Plaintiff has plausibly alleged a causal connection between his First Amendment activity and the University's adverse action. Two weeks separated the time between when Plaintiff filed his defamation lawsuit and when the University

30

accepted Dorsey's Title IX complaint.  Thus, the close temporal proximity between Plaintiff's apparent protected activity and the University's alleged adverse action helps plausibly establish the causal connection of Plaintiff's First Amendment retaliation claim.  Moreover, the Court agrees with Plaintiff that the public statements the University made amid the ongoing Title IX investigation plausibly allege a retaliatory motive behind the University's decision to accept Dorsey's amended complaint and investigate Plaintiff's defamation lawsuit.

Chief among those statements are (1) the University President's August 28, 2023 statement informing the George Mason community that the University would be reforming some of its policies, including its policy around sexual or romantic relationships between students and employees, in light of "a situation that [the University was] addressing involving accusations of sexual misconduct by a former member of the Scalia Law School faculty[;]" and (2) the University's September 14, 2023 statement thanking Dorsey and Landry for being "brave women [who] courageously came forward to bring allegations of sexual misconduct to the university's attention" and "condemn[ing] any attempt to silence or intimidate individuals from making good faith complaints of misconduct[.]" *See Compl.* ¶¶ 115, 124–25; *see also* Dkt. 7-4 at 2–3.[8]  Though these statements did not explicitly identify Plaintiff by name, it is evident that the statements were made in reference to Plaintiff and the allegations against him.  Given the fact that these statements were made within a short period of time between when Plaintiff filed his defamation lawsuit and the University accepted Dorsey's amended Title IX complaint, Plaintiff has adequately alleged a causal connection between his First Amendment activity and the University's adverse action.

---

[8] The Court may consider the collection of the University's public statements attached to Defendants' Motion to Dismiss as the statements were incorporated into the Complaint by reference. *See Tellabs, Inc.*, 551 U.S. at 322.

Accordingly, the Court finds that Plaintiff has stated a plausible First Amendment retaliation claim as to Counts Six and Seven.

### B. Qualified Immunity Defense

The Court, however, must address Defendants' argument that Defendant Bluestein is immune from suit in his individual capacity (Count Six of the Complaint) under the doctrine of qualified immunity. *See* Dkt. 7 at 24. Qualified immunity "shields government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Meyers v. Balt. Cnty., Md.*, 713 F.3d 723, 731 (4th Cir. 2013). "To be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538 (4th Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). However, "it is not required that a right violated already have been recognized by a court in a specific context before such right may be held 'clearly established' for purposes of qualified immunity." *Meyers*, 713 F.3d at 734. Rather, the concern is whether the contours of the right "are sufficiently clear that a 'reasonable official would understand that what he is doing violates that right.'" *Booker*, 855 F.3d at 538 (quoting *Carroll v. Carman*, 574 U.S. 13, 16 (2014)).

In this case, Defendants assert that there is no clearly established Supreme Court or Fourth Circuit case law addressing the First Amendment within the context of Title IX. Dkt. 7 at 24. Thus, Defendant Bluestein cannot be held personally liable for allegedly violating Plaintiff's First Amendment right. *Id.* at 24–25. In response, Plaintiff contends that "[w]hen the University decided to punish [Plaintiff] for filing his lawsuit, it was clearly established that filing lawsuits is constitutionally protected activity." Dkt. 12 at 28. Despite Plaintiff's argument to the contrary,

the Court finds that Defendant Bluestein is entitled to qualified immunity from suit in his individual capacity.

Although the Court finds that Plaintiff has plausibly alleged a violation of his First Amendment right to petition, it was not sufficiently clear that by accepting a retaliation claim in a Title IX investigation, Defendant Bluestein was violating Plaintiff's First Amendment right. First, the Court notes the fact that no other court has been faced with addressing the interplay between Title IX—and specifically its prohibition against retaliatory conduct—and the First Amendment. Therefore, this is a matter of first impression. This, in and of itself, weighs strongly toward finding that Plaintiff's right to file his defamation lawsuit amid the Title IX investigation was not clearly established.

Moreover, as will be discussed in depth below, both Supreme Court and Fourth Circuit precedent establish that a lawsuit lacking a reasonable basis in law and fact may constitute unlawful retaliation and is entitled to no protection under the First Amendment. *See Bill Johnson's,* 461 U.S. at 743; *Darveau,* 515 F.3d at 341. Further, the parties do not dispute the fact that Title IX prohibits retaliatory conduct that is unprotected by the First Amendment. *See* Dkt. 7 at 23; Dkt. 12 at 2, 28; *see also* 34 C.F.R. § 106.71. Therefore, the Court finds that in the wake of the ongoing Title IX investigation and allegations that Plaintiff's defamation lawsuit constitutes retaliation under Title IX, it was within the purview of Defendant Bluestein, as George Mason's Title IX Coordinator, to consider whether Plaintiff's lawsuit may have violated Title IX. Thus, the Court is persuaded that a reasonable official in Defendant Bluestein's position would not have understood that investigating the defamation lawsuit as part of the ongoing Title IX proceeding violated Plaintiff's First Amendment right. Therefore, the Court finds that Defendant Bluestein is

33

entitled to qualified immunity.   Accordingly, the Court will dismiss Count Six against Defendant Bluestein but Count Seven may proceed.

   *C. Plaintiff's Motion for a Preliminary Injunction*

   Having found that Plaintiff has plausibly alleged a First Amendment retaliation claim against Defendant Bluestein in his official capacity, the Court must now address whether Plaintiff is entitled to his request for a preliminary injunction to enjoin Defendants from continuing their Title IX investigation during the pendency of this civil action. *See* Dkt. 5.

   "Rule 65 of the Federal Rules of Civil Procedure provides for the issuance of preliminary injunctions as a means of preventing harm to one or more of the parties before the court can fully adjudicate the claims in dispute." *Fred Hutchinson Cancer Research Ctr. v. BioPet Vet Lab, Inc.*, 768 F. Supp. 2d 872, 874 (E.D. Va. 2011).   "[A] preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Perry v. Judd*, 471 F. App'x 219, 223 (4th Cir. 2012) ("*Perry II*") (quoting *Winter v. Natural Res. Def Council, Inc.*, 555 U.S. 7, 22 (2008)).   Such remedy is "never awarded as of right." *Winter*, 555 U.S. at 24.   In deciding whether to grant Plaintiff's motion for a preliminary injunction, the Court must consider whether Plaintiff has demonstrated "'[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.'" *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346 (4th Cir. 2009) (alterations in original) (quoting *Winter*, 555 U.S. at 20), *vacated on other grounds*, 559 U.S. 1089 (2010).

   To succeed on the merits of his First Amendment retaliation claim, Plaintiff must establish that "(1) [he] engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship

between [his] protected activity and the defendants' conduct." *See Constantine*, 411 F.3d at 499. The Court will address each element in turn.

### (i) First Amendment Protected Activity

As noted earlier, Defendants argue that whether Plaintiff engaged in First Amendment protected activity remains in question as Title IX prohibits retaliatory conduct that is not protected by the First Amendment. Specifically, under Title IX, conduct that is meant to threaten or intimidate an individual for exercising any right or privilege secured by the statute or for filing a complaint constitutes unlawful retaliation. *See* 34 C.F.R. § 106.71.[9] Prior to August 1, 2024, the regulation also provided that the "exercise of rights protected under the First Amendment does not constitute retaliation" under Title IX. *Id.* § 106.71(b)(1).[10] Defendants contend that in light of the ongoing Title IX investigation and Dorsey's accusation that Plaintiff filed his lawsuit in retaliation for her Title IX complaint, George Mason must be able to assess whether Plaintiff's defamation lawsuit is not protected by the First Amendment and constitutes unlawful retaliation under Title IX.

Defendants argue that in making this assessment, the University adopted the correct legal standard taken from Supreme Court and Fourth Circuit case law, which considers whether the lawsuit lacks a reasonable basis in law or fact and was filed with a retaliatory motive. Dkt. 7 at 23. Plaintiff challenges Defendants' articulated standard, arguing that the applicable standard for determining whether a lawsuit falls outside of First Amendment protection is whether the lawsuit

---

[9] The regulation was amended to include a definition for "retaliation." *See* 34 C.F.R. § 106.2 (effective August 1, 2024).

[10] This language was omitted from the current version of 106.71. *See* 34 C.F.R. § 106.71 (effective August 1, 2024).

"is utterly baseless or filed with knowledge of its falsity." Compl. ¶ 199. Plaintiff maintains that his lawsuit is not utterly baseless but rather, properly constitutes First Amendment protected activity. *See id.* ¶ 201; Dkt. 5-1 at 8.

In *Bill Johnson's*, the Supreme Court defined the type of lawsuit that is not protected by the First Amendment. There, the Court considered whether the National Labor Relations Board ("NLRB") had the authority to halt the prosecution of a state civil action filed by an employer in retaliation for employees exercising their federally protected labor rights "without also finding that the lawsuit lacks a reasonable basis in fact." 461 U.S. at 733. In holding that the NLRB could not do so, the Court reasoned that while it was unlawful to prosecute meritorious actions, the same could not be said for suits that lacked a reasonable basis and do not fall "within the scope of First Amendment protection[.]" *Id.* at 743. The Court stated that "[j]ust as false statements are not immunized by the First Amendment right to freedom of speech, baseless litigation is not immunized by the First Amendment right to petition." *Id.* (internal citations omitted). The Court then defined a baseless lawsuit as one that is filed with a "[r]etaliatory motive" and that "lacks a reasonable basis in fact or law[.]" *Id.* at 748.

Following *Bill Johnson's*, the Fourth Circuit later applied the Supreme Court's articulation of a baseless lawsuit in *Darveau v. Detecon, Inc.*, 515 F.3d 334 (4th Cir. 2008). Relying on the *Bill Johnson's* holding, the Fourth Circuit reversed the dismissal of the plaintiff's retaliation claim under the Fair Labor Standards Act. The Court held that the plaintiff had sufficiently alleged that, in retaliation for his filing his civil action, his employer's lawsuit against him for fraud was filed "with a retaliatory motive and without a reasonable basis in fact or law." *Darveau*, 515 F.3d at 343. Since *Bill Johnson's* and *Darveau*, various courts have applied their holding in other legal contexts involving retaliation claims. *See, e.g., Samirah v. Dist. Smiles, PLLC*, 2023 WL 3932317,

at *4 (D. Md. June 9, 2023) (finding that in an action brought under 42 U.S.C. § 1981, the plaintiff has sufficiently alleged that the defendants' counterclaims "were filed with a retaliatory motive and that they lack[ed] a basis in fact or law."); *Melendez v. Poy Loung DC Group, LLC*, 2018 WL 4637007, at *12 (D.D.C. Sept. 27, 2018) (stating that a baseless counterclaim could form the basis of a retaliation claim under the District of Columbia Wage Payment and Collection Law). This Court, therefore, finds that under binding precedent, a lawsuit filed with a retaliatory motive and lacking a reasonable basis in fact or law does not constitute First Amendment protected activity. Accordingly, the Court finds that Defendants have adopted the correct legal standard in assessing whether Plaintiff's defamation lawsuit falls outside the scope of First Amendment protection.

The Court, however, is persuaded that Plaintiff has established that his lawsuit is not baseless so as to be deprived of First Amendment protection. Under *Bill Johnson's* and *Darveau*, "[a] suit has a reasonable basis in fact if it raises 'a genuine issue of material fact that turns on the credibility of witnesses or on the proper inferences to be drawn from undisputed facts.'" *Castillo v. Urquhart*, 855 F. App'x 877, 879 (4th Cir. 2021) (quoting *Bill Johnson's*, 461 U.S. at 745)). "A suit has a reasonable basis in law 'if there is any realistic chance that the plaintiff's legal theory might be adopted.'" *Id.* (quoting *Bill Johnson's*, 461 U.S. at 747)).

Here, the Court finds that Plaintiff's defamation lawsuit has a reasonable basis in fact and law. As discussed earlier, Plaintiff alleges that following his resignation from George Mason, Dorsey and Landry "went to the media to begin spreading their lies publicly." Compl. ¶ 105. As a result of Dorsey and Landry making false accusations against him, Plaintiff asserts he was "subjected to near constant press inquiries and media articles labeling him a perpetrator of sexual harassment[.]" *Id.* ¶ 106. In response to these public statements, Plaintiff filed his defamation lawsuit. *Id.* ¶ 120. The Court finds that there is likely a genuine issue of material fact as to whether

Dorsey and Landry's public statements were false; and this issue is likely to turn on the credibility of potential witnesses during the state court proceeding. The Court further finds that Plaintiff's assertion that he has been falsely accused of sexual harassment, subject to public scrutiny because of these alleged false statements, and suffered damages as a result creates a realistic chance that a court of law could adopt Plaintiff's legal theory and find that he was defamed. Moreover, the Court notes that Plaintiff's defamation lawsuit has, at least in part, made it past the demurrer stage—the state court equivalent of a 12(b)(6) motion to dismiss. *See* Dkt. 12 at 28 n.18 (noting that the defamation lawsuit has made it past the demurrer). This fact, in and of itself, defeats the notion that Plaintiff's lawsuit lacks a reasonable basis in fact or law.

As to a retaliatory motive, the Court is also persuaded that Plaintiff did not file his defamation lawsuit in retaliation for Dorsey filing her Title IX complaint. Title VII case law is helpful in assessing this issue. Specifically, within the context of a Title VII retaliation claim, the Fourth Circuit has stated that a temporal gap between notice of the protected activity and the adverse action may be "sufficiently long so as to weaken significantly the inference of causation between the two events." *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003). In this present matter, Dorsey filed her initial Title IX complaint on December 12, 2021. Compl. ¶ 60. On January 28, 2022, Plaintiff received notice of Dorsey's Title IX complaint when the University informed him that it would be launching a formal investigation. *Id.* ¶ 77. However, Plaintiff did not file his defamation lawsuit until August 24, 2023. *Id.* ¶ 120. Thus, more than a year had passed between the time that Plaintiff was notified of Dorsey's Title IX complaint and when he filed his lawsuit. The Court finds that this extensive temporal gap between when Dorsey filed her initial Title IX complaint and Plaintiff initiated his defamation lawsuit significantly weakens any

inference of causation between these two actions and lessens any claim that Plaintiff's defamation lawsuit was filed with a retaliatory motive.

Accordingly, the Court finds that Plaintiff has demonstrated that he engaged in protected First Amendment activity in filing his defamation lawsuit.

### (ii) Adverse Action

The Court is similarly persuaded that Plaintiff can establish the second element of his First Amendment retaliation claim. In opposition to Plaintiff's Motion for a Preliminary Injunction, Defendants argue that the University has taken no adverse action that has a chilling effect on Plaintiff's ability to bring a lawsuit protected by the First Amendment because "it has made clear that it will not take any action for lawsuits that fall within the Petition Clause's protection." Dkt. 11 at 8. However, as explained earlier, the Court finds that Plaintiff has demonstrated that the University's investigation into his defamation lawsuit may, in and of itself, have a chilling effect on Plaintiff's ability to exercise his First Amendment rights. Specifically, the Court finds that the mere potential finding of responsibility under Title IX, amid the ongoing defamation litigation, could deter a person of ordinary firmness in Plaintiff's position from proceeding with the lawsuit. Furthermore, given the publicity surrounding Dorsey's allegations against Plaintiff, the chilling effect of Defendants' conduct is all the more evident even absent a final determination of responsibility against Plaintiff. Accordingly, the Court finds that Plaintiff has established that Defendants' acceptance of Dorsey's amended Title IX complaint and its decision to investigate whether his lawsuit is protected by the First Amendment constitutes adverse action.

### (iii) Causation

Finally, there is the issue of causation. As noted earlier, the third element of a First Amendment retaliation claim requires that a plaintiff establish that "there was a causal relationship

between [the plaintiff's] protected activity and the defendants' conduct." *Constantine*, 411 F.3d at 499. However, in *Martin v. Duffy*, 977 F.3d 294 (4th Cir. 2020), the Fourth Circuit refined this causation analysis.

In *Martin*, the plaintiff, a state prisoner, sued one of the prison's captains, arguing that the captain had placed him in administrative segregation in retaliation for filing a grievance against another correctional officer. 977 F.3d at 297–98. In assessing the plaintiff's First Amendment retaliation claim, the Fourth Circuit applied, but adjusted, the same-decision test recognized in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977).[11] *Id.* at 297, 302. In doing so, the Court recognized two types of First Amendment retaliation claims: "(1) claims where the principal dispute is whether protected or unprotected conduct caused a defendant to take adverse action, and (2) claims where the principal dispute is whether a defendant took adverse action for retaliatory purposes." *Id.* at 303 (citing *Greenwich Citizens Comm., Inc. v. Cntys. of Warren & Washington Indus. Dev. Co.*, 77 F.3d 26, 33 (2d Cir. 1996)). In the first category—dual-motive cases—the defendant's adverse action occurs after the plaintiff engages in both protected and unprotected conduct. *Id.* "In th[e] second category of cases—'unitary event' cases—the plaintiff's protected conduct is a single event 'that could prompt either a permissible or an impermissible reason on the part of the defendant to act.'" *Id.* (quoting *Greenwich*, 77 F.3d at 33). The Fourth Circuit held that in unitary event retaliation cases, application of the same-decision test "asks not whether the defendant would have reached the same decision absent the

---

[11] Within the employment context, the same-decision test provides that after an employee establishes a *prima facie case* of retaliation, the employer can defeat the claim by proving that "it would have reached the same decision . . . in the absence of the protected conduct." *Mt. Healthy*, 429 U.S. at 287.

plaintiff's protected conduct, but whether the defendant would have reached the same decision absent a retaliatory motive." *Id.* at 303–04.

Here, the Court finds this present matter to involve a unitary event retaliation claim. As stated in the Complaint, after Plaintiff filed his defamation lawsuit, Dorsey moved to amend her Title IX complaint; and in accepting this amended complaint, the University "charged [Plaintiff] with retaliation because he filed his lawsuit." Compl. ¶¶ 132–33. Therefore, Defendants' adverse action—accepting Dorsey's amended complaint and, subsequently, investigating Plaintiff's defamation lawsuit—"undisputedly flow[s] from [] [P]laintiff's protected conduct"—the filing of his lawsuit. *See Martin*, 977 F.3d at 303. Thus, under the *Martin* analysis for unitary event claims, the Court must consider whether Defendants are able to rebut any *prima facie* case of retaliation in this matter by showing that they would have reached the same decision absent a retaliatory motive. Considering the law and the parties' arguments, the Court finds that Defendants have done so.

In opposition to Plaintiff's Motion for a Preliminary Injunction, Defendants assert that George Mason's decision to allow Dorsey to amend her Title IX complaint and investigate her retaliation claim was not done with any retaliatory motive. *See* Dkt. 11 at 10. Rather, Defendants claim that the decision was done with the "sole motivation" of "meet[ing] its obligations under Title IX to investigate and adjudicate a claim of retaliation in a manner that respects the rights of all parties, including their rights under the First Amendment, as required by the Title IX regulation." *Id.* at 10–11. In support of this assertion, Defendants point to Defendant Bluestein's October 4, 2023 email to Plaintiff and his counsel. Dkt. 11-1. In that email, Bluestein explained that the University would be limiting its investigation to whether Plaintiff engaged in conduct that falls outside of First Amendment protection, and that the University was taking this approach to

be "in compliance with the Title IX Regulation and the First Amendment[.]" *See id.* at 2.  The

email further stated that "[i]f it is determined that the lawsuit can constitute Retaliation, the hearing

officer will also determine whether it does constitute Retaliation using the definition of Retaliation

in Policy 1202[.]" *Id.*

> At that time, Title IX's regulation against retaliation stated that,
>
> [n]o recipient [of federal funds] or other person may intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by title IX or this part, or because the individual has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under this part.

34 C.F.R. § 106.71(a).  As noted earlier, the regulation also stated that the "exercise of rights

protected under the First Amendment does not constitute retaliation." *Id.* § 106.71(b)(1).  Thus,

under this regulation, any act that is not protected by the First Amendment and that is made to

intimidate, threaten, or coerce in order to interfere with someone exercising their rights under Title

IX constitutes retaliation. *Id.* § 106.71.

Here, Plaintiff falls within the scope of the Title IX regulation.  As already discussed,

Dorsey—whose initial Title IX complaint formed the basis of this ongoing investigation—

amended her complaint to allege that Plaintiff's defamation lawsuit was retaliation for Dorsey's

Title IX complaint.  Thus, to the extent that Dorsey's retaliation claim has any merit and relates to

the ongoing Title IX investigation, Defendants' decision to accept Dorsey's amended complaint

and investigate her retaliation claim is a permissible reason to "charge" Plaintiff with retaliation.[12]

Therefore, this Court is persuaded that under the *Martin* analysis, Defendants have established that

---

[12] For the reasons stated earlier, this Court found that the lack of temporal proximity undercuts the suggestion that Plaintiff's defamation lawsuit was filed with a retaliatory motive.  This Court, however, does not express the view that Defendants cannot consider the merits of Dorsey's retaliation claim.

the University would have reached the same decision to investigate Plaintiff's lawsuit as potentially constituting unlawful retaliation absent a retaliatory motive.   Though Plaintiff may disagree with George Mason's choice to investigate Dorsey's retaliation claim, mere disagreement is not enough to establish that the decision was done with a retaliatory motive.   For this reason, the Court finds that on the merits of his First Amendment retaliation claim, Plaintiff is unable to establish a causal relationship between his protected activity and the University's conduct.   Thus, he is unable to establish a likelihood of success on the merits of his claim.   Given that Plaintiff cannot meet this first requirement for a preliminary injunction, the Court will not consider the remaining requirements.   *See Coleman v. Chase Bank*, No. 3:14-cv-101, 2014 WL 2533400, at *3 (E.D. Va. June 5, 2014) ("Because Plaintiffs cannot show a likelihood of success on the merits, the Court need not address the remaining factors" for preliminary injunctive relief).

Accordingly, the Court will deny Plaintiff's motion.

### Conclusion

For the foregoing reasons, Plaintiff's Motion for a Preliminary Injunction (Dkt. 5) is denied and Defendants' Motion to Dismiss (Dkt. 6) is granted in part and denied in part.

An order will issue.

September 19, 2024
Alexandria, Virginia

/s/
Patricia Tolliver Giles
**United States District Judge**

43